# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **JUNIPER NETWORKS, INC.,**<br>1194 North Mathilda Avenue,<br>Sunnyvale, CA 94089 | ) ) ) ) | |
| Plaintiff, | ) ) | Civil No. _____ |
| v. | ) ) | **JURY DEMAND** |
| **ABDULLAH ALI BAHATTAB,**<br>College of Telecommunication & Electronics<br>P.O. Box 50868<br>Jeddah 21533<br>Saudi Arabia | ) ) ) ) ) ) | |
| Defendant. | ) ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Juniper Networks, Inc., files this complaint for declaratory judgment against defendant Abdullah Ali Bahattab and alleges as follows:

### THE PARTIES

1.     Juniper Networks, Inc. ("Juniper") is a Delaware corporation having its principal place of business at 1194 North Mathilda Avenue, Sunnyvale, CA 94089.

2.     Upon information and belief, Defendant Abdullah Ali Bahattab ("Bahattab") is a citizen of Saudi Arabia, currently residing in Jeddah, Saudi Arabia.  Upon information and belief, Bahattab is an Assistant Professor of the Computer Technology Department at the College of Telecommunication & Electronics, P.O. Box 50868, Jeddah, 21533 Saudi Arabia.  His fax number is: +9662 6176783.  His email addresses are abahattab@yahoo.com and abahattab@gmail.com.

3.    Bahattab is the owner and assignee of U.S. Patent No. 6,816,457 ("the '457 Patent") entitled "Predictive Routing Table Cache Population," which issued November 9, 2004. A copy of the '457 Patent is attached hereto as Exhibit A.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), in that it involves substantial claims arising under the United States Patent Act, 35 U.S.C. § 1 *et. seq*.

5.    This Court may declare the rights and other legal relations of the parties pursuant to the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202, because there is a case of actual controversy within the Court's jurisdiction to provide a declaratory judgment that the '457 Patent is invalid, unenforceable, and not infringed.

6.    Personal jurisdiction exists over Bahattab pursuant to 35 U.S.C. § 293 because Bahattab is a United States patentee who does not reside within the United States and who has not made a designation of a resident agent on whom process may be served.

7.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(d).

## THE PRESENCE OF AN ACTUAL CONTROVERSY

8.    On May 14, 2002, Bahattab sent an email to Juniper Networks (Middle East) introducing himself and the invention behind the '457 Patent.

9.    On January 29, 2005, Bahattab sent Juniper Networks (Middle East) an email threatening to sue Juniper Networks (Middle East) for infringement of the '457 Patent. (*See* Exhibit B.) Juniper Networks (Middle East) is the operating name of Juniper Networks Ireland Limited, which is a wholly owned subsidiary of Juniper.

10.    On May 30, 2005, Bahattab's counsel sent a letter to Juniper's General Counsel asserting that Juniper's JUNOS product may infringe the '457 Patent. (*See* Exhibit C.)

11.    On April 18, 2007, Bahattab filed an action in the Dubai Court of First Instance (Case No. 291/2007), against Juniper Networks (Middle East) asserting that Juniper Networks

(Middle East) manufactures, uses and sells products that infringe at least one claim of the '457 Patent (the "Dubai Litigation"). (*See* Exhibit D.)

12.    In the Dubai Litigation and the letters he sent to Juniper, Bahattab has alleged ownership and control of the '457 Patent.

13.    Therefore, an actual controversy exists between Juniper and Bahattab with respect to the '457 Patent. Juniper reasonably believes that Bahattab intends to impact Juniper's business activities.

## COUNT I
## DECLARATORY JUDGMENT OF INVALIDITY

14.    The allegations of paragraphs 1 through 13 are incorporated by reference as if fully set forth herein.

15.    Each of the claims of the '457 Patent is invalid for failure to satisfy the provisions of sections 102 and 103 of Title 35 of the United States Code.

16.    On information and belief, each of the claims of the '457 Patent is invalid for failure to include all the inventors on the patent application, pursuant to 35 U.S.C. §§ 102(f) and 116.

## COUNT II
## DECLARATORY JUDGMENT OF UNENFORCEABILITY

17.    The allegations of paragraphs 1 through 16 are incorporated by reference as if fully set forth herein.

18.    On information and belief, the '457 patent is unenforceable due to inequitable conduct because Bahattab failed to disclose to the U.S. Patent and Trademark Office information known to him that was material to the patentability of the claimed invention, all with an intent to deceive the Patent Office.

19.    On information and belief, Bahattab intentionally misrepresented and failed to disclose all of the inventors of the '457 patent to the Patent Office during the patent prosecution process.

20.     Bahattab published a paper with three other authors, Bohdan Bodnar, George Kraft, and Martha Evens, titled "Predicting IP addresses to speed up routing lookup" ("Predicting IP Addresses") at the 2000 Advanced Simulation Technologies Conference, which took place on April 16-20, 2000.

21.     "Predicting IP Addresses" was published two months prior to the date on which Bahattab filed his initial application for the '457 patent.

22.     "Predicting IP Addresses" discloses the same subject matter as the '457 patent.

23.     Bahattab did not identify or disclose the other three authors of "Predicting IP Addresses" to the Patent Office.

24.     The Patent Office issued the '457 patent on the basis that all of the inventors had been named.

25.     At the time of the aforesaid acts, Bahattab was aware of his duty of candor and good faith owed to the Patent Office under 37 C.F.R. § 1.56 during the prosecution of the '457 patent.

26.     On information and belief, in doing the aforesaid acts, Bahattab violated the duty of candor and good faith, and did so with an intent to mislead or deceive the Patent Office as to the existence of other inventors of the '457 patent.

27.     As a result of the foregoing inequitable conduct, the claims of the '457 patent are unenforceable.

## COUNT III
## DECLARATORY JUDGMENT OF NONINFRINGEMENT

28.     The allegations of paragraphs 1 to 27 are incorporated by reference as if fully set forth herein.

29.     Juniper has not directly infringed, contributed to the infringement, or actively induced infringement of any claim of the '457 Patent, nor has it otherwise committed any acts of infringement on any rights of Bahattab.

30.     Juniper seeks a declaration of noninfringement with respect to its activities and the '457 patent.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Juniper prays that:

A.     The Court declare invalid each of the claims of the '457 Patent;

B.     The Court declare the '457 Patent unenforceable;

C.     The Court declare that Juniper has not directly infringed, contributed to the infringement, or actively induced infringement of any claim of the '457 Patent, nor has it otherwise committed any acts of infringement on any rights of Bahattab;

D.     The Court issue an injunction against Bahattab and anyone acting in privity or concert with Bahattab from charging infringement or instituting any legal action for infringement of the '457 Patent against Juniper or anyone acting in privity with Juniper, including the divisions, successors, assigns, agents, suppliers, manufacturers, contractors and customers of Juniper;

E.     Juniper be awarded its costs in this action;

F.     Juniper be awarded its attorneys fees pursuant to 35 U.S.C. § 285; and

G.     Juniper be awarded such other and further relief as this Court deems is just and proper.

## DEMAND FOR A JURY TRIAL

Juniper hereby demands a trial by jury in this action.

Respectfully submitted,

Alan M. Fisch (DC-453068)
afisch@kayescholer.com
Jason F. Hoffman (DC-467827)
jahoffman@kayescholer.com
David L. Cousineau (DC-482691)
dcousineau@kayescholer.com
KAYE SCHOLER LLP
The McPherson Building
901 Fifteenth Street, N.W.
Washington, D.C.  20005-2327
(202) 682-3500 Tel.
(202) 682-3580 Fax.

Attorneys for
JUNIPER NETWORKS, INC.

Dated: October 3, 2007

# EXHIBIT A



US006816457B1

(12) **United States Patent**
Bahattab

(10) Patent No.: **US 6,816,457 B1**
(45) Date of Patent: **Nov. 9, 2004**

(54) **PREDICTIVE ROUTING TABLE CACHE POPULATION**

(76) Inventor: **Abdullah Ali Bahattab**, 3100 S. Michigan Ave., Apt. #902, Chicago, IL (US) 60616

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 844 days.

(21) Appl. No.: **09/633,754**

(22) Filed: **Aug. 7, 2000**

**Related U.S. Application Data**

(60) Provisional application No. 60/208,888, filed on Jun. 2, 2000.

(51) Int. Cl.⁷ ............................................. H04L 12/56
(52) U.S. Cl. ....................................... 370/232; 370/234
(58) Field of Search ................................. 370/229, 230, 370/230.1, 231, 232, 234, 235, 389, 392, 395.7, 428, 429, 395.2, 395.21

(56) **References Cited**

U.S. PATENT DOCUMENTS

5,488,608 A  *  1/1996  Flammer, III ................ 370/400
6,118,760 A  *  9/2000  Zaumen et al. .............. 370/229

* cited by examiner

Primary Examiner—Alit Patel
Assistant Examiner—William Schultz
(74) Attorney, Agent, or Firm—DeMont & Breyer, LLC

(57) **ABSTRACT**

A router and method for routing table cache population technique is disclosed. In particular, the illustrative embodiment routes packets through it more quickly than comparatively expensive routers in the prior art. The present invention recognizes that a fast router has small routing table cache that has a high hit ratio and that a high hit ratio can be achieved with a small routing table cache by predicting which entries will be needed in the routing table cache in the future and by populating the routing table cache with those entries before they are needed. The illustrative embodiment of the present invention comprises: an input port for receiving a succession of packets, wherein each of the packets comprises a destination address; a plurality of output ports; a switching fabric for interconnecting the input port to each of the plurality of output ports; a processor or building a temporal model of the occurrence of the destination addresses at the input port, for populating the routing table cache based on the temporal model and at least one entry that is stored in a routing table, and for routing at least one of the packets from the input port to one of the output ports through the switching fabric based on the entry that is stored in the routing table cache.

**2 Claims, 5 Drawing Sheets**



Case 1:07-cv-01771-PLF-AK     Document 1-2     Filed 10/03/2007     Page 3 of 12



Fig. 1



FIG. 2

FIG. 3



FIG. 4



FIG. 5



FIG. 6



FROM STEP 505

MODEL BUILDING

SEGREGATION STAGE ~601

DETERMINATION STAGE ~602

506

TO STEP 507

US 6,816,457 B1

1

# PREDICTIVE ROUTING TABLE CACHE POPULATION

## CROSS-REFERENCE TO RELATED APPLICATIONS

This application claims the benefit of U.S. Provisional Application No. 60/208,888, filed Jun. 2, 2000, which provisional application is incorporated by reference.

## FIELD OF THE INVENTION

The present invention relates to telecommunications in general, and, more particularly, to the design of a router for use in a packet network.

## BACKGROUND OF THE INVENTION

In a packet network, the finite speed of light and the finite speed at which a router can operate precludes the traversal of a packet from one side of the network to another instantaneously. Therefore, there is always some delay between when a transmitting network terminal transmits a packet and when the receiving network terminal receives the packet.

In some cases, this delay is unimportant. For example, some data (e.g., most e-mail messages, etc.) is not perishable or highly time-sensitive and the sender and receiver of the data might consider it unimportant whether the packet takes 5 milliseconds, 5 seconds or even 5 minutes to traverse the network. In contrast, other data (e.g., voice, full-motion video, instant messaging, etc.) is perishable or highly time-sensitive and, therefore, the sender and receiver of the data might consider it very important that the packets traverse the network quickly.

When packet networks were originally conceived and designed and constructed, little or no consideration was given to ensuring that a fixed number of packets could be sent across a packet network with a maximum delay. Average delays were considered, and packet networks were engineered to consider average delays, but little or no consideration was given to engineering the maximum delay. Increasingly, however, packet networks are being considered for carrying time-sensitive data for applications such as Internet telephony and television broadcasting.

Perhaps the most significant source of delay in a packet network is due to the speed at which the routers operate. It is well known in the prior art how to make and use fast routers, but their extra speed comes at a price, and, therefore, it is not typically economical to build them. In fact, it is well known in the prior art how to trade cost for performance when designing and building routers.

Nevertheless, the need exists for a router that is more powerful than comparatively expensive routers in the prior art.

## SUMMARY OF THE INVENTION

The present invention is a router and routing table cache population technique that avoids some of the costs and disadvantages associated with techniques in the prior art. In particular, the illustrative embodiment routes packets through it more quickly than comparatively expensive routers in the prior art.

The present invention recognizes that a router with a small routing table cache can be fast if the routing table cache has a high hit ratio, and that a high hit ratio can be achieved by predicting which entries will be needed in the routing table cache in the future and by populating the routing table cache with those entries before they are needed. In accordance with the illustrative embodiment of the present invention, this is accomplished by: (i) building one or more temporal models of the occurrence of needed entries based on empirical data, (ii) by using the temporal model(s) to predict which entries are most likely to be needed at some time in the future, and (iii) by populating the router table cache with those entries before they are needed.

The illustrative embodiment of the present invention comprises: an input port for receiving a succession of packets, wherein each of the packets comprises a destination address; a plurality of output ports; a switching fabric for interconnecting the input port to each of the plurality of output ports; a processor or building a temporal model of the occurrence of the destination addresses at the input port, for populating the routing table cache based on the temporal model and at least one entry that is stored in a routing table, and for routing at least one of the packets from the input port to one of the output ports through the switching fabric based on the entry that is stored in the routing table cache.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 depicts a block diagram of the salient components of a router in accordance with the illustrative embodiment of the present invention.

FIG. 2 depicts a block diagram of the salient components of input port 101, which is a component of the router in FIG. 1.

FIG. 3 is a graph that depicts the relationship of the hit ratio of routing table cache 203 as a function of the number of entries in routing table cache 203.

FIG. 4 is a graph that depicts the relationship of the average search time for routing table cache 203 as a function of the number of entries in routing table cache 203.

FIG. 5 depicts a flowchart of the salient steps performed by router 100 each time it receives and routes a packet.

FIG. 6 depicts a flowchart of the steps involved in periodically or sporadically generating a temporal model, as depicted in FIG. 5.

## DETAILED DESCRIPTION

FIG. 1 depicts a block diagram of the salient components of a router in accordance with the illustrative embodiment of the present invention. Because the nomenclature of packet networking is not well standardized, a router is sometimes called a "packet switch," a "datagram switch," a "cell switch," an "ATM switch," a "gateway," a "firewall," or a "bridge" depending on the purpose for which the router is being used and on the educational and industrial background of the person using the term. However, for the purposes of this specification, a "router" is defined as a switch that is capable of receiving one or more packets, each of which comprises a destination address, and of routing each packet to an output port based on that destination address.

Router 100 comprises: input port 101, a plurality of output ports, output port 102-1 through 102-j, switching fabric 103, and router table 104, all interconnected as shown. Some embodiments of the present invention have more than one input port, and in those cases each input port works in the same manner as input port 101 and each contends with the others for access to routing table 104.

As is clear to those skilled in the art, switching fabric 103 is a space-division switch or a time-division switch or any combination of space-division switches and time-division switches (e.g., a space-time-space-division switch, etc.) that

US 6,816,457 B1

**3**

is capable of transporting a packet from input port **101** to one of output ports **102-1** through **102-**$j$ under the direction of input port **101**. It will be clear to those skilled in the art how to make and use switching fabric **103**.

Routing table **104** is a table that contains a plurality of entries. For the purpose of this specification, an "entry" is defined as a mapping of one or more network addresses to one or more output ports of a router. When an entry maps a network address to more than one of a router's output ports, the entry might implicitly or explicitly prioritize those output ports so that, for example, if one is congested, another might be used. Table 1 depicts an illustrative portion of routing table **104** that contains five illustrative entries, wherein the destination addresses are depicted in IPv4 dotted-decimal notation. The first four illustrative entries (i.e., 110.23.43.15/102-73, 110.23.43.16/102-13, 110.23.43.17/102-44, and 110.23.43.18/102-26) are illustrative of individual network addresses. The fifth illustrative entry (i.e., 112.7.111.x/102-15) is illustrative of an entry in which more than one network address is mapped to one of a router's output ports. It will be clear to those skilled in the art how to make and use embodiments of the present invention with other network addresses in other formats such as IPv6.

TABLE 1

| Portion of Routing Table 104 | |
|---|---|
| Network Address | Output Port |
| . . . | . . . |
| 110.23.43.15 | 102-73 |
| 110.23.43.16 | 102-13 |
| 110.23.43.17 | 102-44 |
| 110.23.43.18 | 102-26 |
| . . . | . . . |
| 112.7.111.x | 102-15 |
| . . . | . . . |

Routing table **104** can comprise a large number of entries (e.g., thousands, millions, billions, etc.), and therefore, whether routing table **104** resides in random access memory (e.g., semiconductor memory, etc.) or not (e.g., hard disk, etc.), the shear number of entries in routing table **104** can cause the process of looking up a needed entry to be slow regardless of the data structure employed for storing the entries. Furthermore, when an embodiment of the present invention comprises more than one output port, the contention among the input ports can exacerbate the average latency associated with the process of looking up a needed entry in routing table **104**. It will be clear to those skilled in the art how to make and use routing table **104**.

Output ports **102-1** through **102-**$j$ comprises the interface circuitry for receiving packets from switching fabric **103** and for transmitting the departing packets on the appropriate output. It will be clear to those skilled in the art how to make and use output ports **102-1** through **102-**$j$.

FIG. 2 depicts a block diagram of the salient components of input port **101**, which comprises: processor **201** and memory **202**, which itself comprises routing table cache **203**. Processor **201** is a special-purpose processor or a general-purpose processor whose instructions are stored in memory **202** or a combination of the two. Memory **202** is advantageously a small, fast semiconductor memory that holds the instructions and data for processor **201**.

To ameliorate the latency associated with looking up routing information in routing table **104**, input port **101** advantageously comprises routing table cache **203**. Routing

**4**

table cache **203** is a cache memory that advantageously holds the most frequently accessed entries of routing table **104**. Table 2 depicts an illustrative portion of routing table cache **203**.

TABLE 2

| Portion of Routing Table Cache 203 | |
|---|---|
| Network Address | Output Port |
| . . . | . . . |
| 110.23.43.15 | 102-73 |
| 110.23.43.18 | 102-26 |
| . . . | . . . |

Typically, it is faster for processor **201** to retrieve an entry from routing table cache **203** than it is for processor **201** to retrieve the same entry from routing table **104** for three reasons. First, because routing table cache **203** is smaller than routing table **104**, routing table cache **203** is typically stored in a physically faster memory than is routing table **104** (e.g., semiconductor RAM vs. hard disk, etc.). Second, processor **201** does not have to contend other processors for access to routing table cache **203**, whereas processor **201** would have to contend for access to routing table **104** when router **100** comprises a plurality of input ports. And third, because the number of entries in routing table cache **203** is typically orders of magnitude smaller than the number of entries in routing table **104**, the process of searching through routing table cache **203** for a needed entry is typically much smaller than is the process of searching through routing table **104** for the same entry, regardless of the data structure employed.

It will be clear to those skilled in the art how to decide how many entries routing table cache **203** should contain. In deciding this number, there are two factors that are advantageously considered.

First, as shown in FIG. **3**, as the number of entries in routing table cache **203** increases, the hit ratio also increases, albeit with diminishing returns. This suggests that router **100** can be made faster by increasing the number of entries in routing table cache **203**. For the purposes of this specification, the phrase "hit ratio" is defined as the ratio of the number of entries that processor **201** finds in routing table cache **203** divided by the total number of entries that processor **201** needs.

Second, as shown in FIG. **4**, as the number of entries in routing table cache **203** increases, the time it takes processor **201** to search through routing table cache **203** to find a needed entry also increases. This suggests that router **100** can be made faster by decreasing the number of entries in routing table cache **203**.

Although these two factors might seem to cancel each other, in general, the speed of router **100** is improved by having a small cache that is populated so as to have as high a hit ratio as possible.

The illustrative embodiment of the present invention seeks to have a high hit ratio by proactively populating routing table cache **203**. In particular, the illustrative embodiment populates routing table cache **203** by: (i) building a temporal model of the occurrence of needed entries based on empirical data, (ii) by using the temporal model to predict which entries are most likely to be needed at some time in the future, and (iii) by populating router table cache **203** with those entries before they are needed. This is in contrast to routing table cache population techniques in the prior art that are either: (i) random, or (ii) reactive.

A brief discussion of how router **100** would be populated in accordance with some routing table cache population

US 6,816,457 B1

**5**

techniques in the prior art will facilitate an understanding of how it is populated in accordance with the illustrative embodiment and will also assist in understanding the difference between the prior art and the illustrative embodiment.

One routing table cache population technique in the prior art is the "random population technique." In accordance with the random population technique, routing table cache **203** would be populated with entries from routing table **104** that were selected at random. In other words, if routing table **104** contained n entries, the probability that routing table cache **203** would be populated with any given entry would be 1/n. Furthermore, in accordance with the random population technique, once routing table cache **203** was populated, its contents would not be changed in response to empirical data on which entries were actually needed. The advantage of the random population technique is that it requires little processing overhead, but the disadvantage is that it has a very low hit ratio—so low, in fact, that the random population technique is not much better than, and is possibly worse than, having no routing table cache at all.

Another routing table cache population technique in the prior art is the "random replacement technique." In accordance with this technique, routing table cache **203** would be initially populated with entries from routing table **104** that were selected at random. Thereafter, when processor **201** accessed a particular entry in routing table cache **203** (i.e., a cache hit), processor **201** would do nothing to routing table cache **203**, but when processor **201** did not find a needed entry in routing table cache **203** (i.e., a cache fault) and had to resort to routing table **104** for the entry, processor **201** would randomly replace an entry in routing table cache **203** with the entry just retrieved from routing table **104**. The theory underlying this technique is based on the recognition that an entry that has been needed once is more likely to be needed again than is a randomly-chosen entry, and, therefore, this technique seeks to improve the hit ratio (in comparison to the random population technique) by seeking to anticipate what entries will be needed in the future. The advantages of the random replacement technique are that it requires little processing overhead and that it usually has a higher hit ratio than the random population technique. It is disadvantageous, however, in that it does not take into consideration what entries are deleted and might delete a commonly needed entry. Furthermore, in contrast to the illustrative embodiment of the present invention, the random replacement technique is reactive, which means that it would only populate routing table cache **203** with an entry in reaction to a need for that entry. That is, it only populates routing table cache **203** with an entry after than entry has been needed, in contrast to the present invention which populates routing table cache **203** with entries before they are needed. The random replacement technique is advantageous in that it requires little processing overhead, which decreases the average delay through router **100**.

A third replacement technique in the prior art is the "least-recently-used" or "LRU" technique. In accordance with the least-recently-used technique, routing table cache **203** would be initially populated with entries from routing table **104** that were selected at random. Thereafter, processor **201** would keep track of how recently each entry in routing table cache **203** was accessed. When processor **201** accesses a particular entry in routing table cache **203** (i.e., a cache hit), that entry would be marked as having been recently used, but when processor **201** did not find a needed entry in routing table cache **203** (i.e., a cache fault) and was forced to resort to routing table **104** for the entry, processor **201**

**6**

would replace the least-recently-used entry in routing table cache **203** with the entry just retrieved from routing table **104**. The theory underlying this technique is based on the recognition that an entry that has been recently used is more likely to be needed again than is the least-recently-used entry. The least-recently-used technique is advantageous in that it has a high hit ratio relative to all known routing table cache replacement techniques in the prior art. The least-recently-used technique is disadvantageous in that it requires that processor **201** spend a great deal of time keeping track of how recently each entry in routing table cache **203** is accessed, which increases the average delay through router **100**. But like the random population technique and the random replacement technique, and in contrast to the illustrative embodiment, the least-recently-used technique is reactive.

FIG. **5** depicts a flowchart of the operation of the illustrative embodiment of the present invention, which seeks to have a high hit ratio by predictively populating routing table cache **203**.

At step **501**, processor **201** initially populates routing table cache **203** with entries from routing table **104** that are selected at random. It will be clear to those skilled in the art how to perform step **501**.

At step **502**, as input port **101** receives a temporal succession of packets, each of which comprises a destination address. As part of step **502**, processor **201** examines each packet to determine the network address to which the packet is addressed. It will be clear to those skilled in the art how to perform step **502**.

At step **503**, processor **201** retrieves the routing information for each destination address from routing table cache **203**, if possible, and from routing table **104**, if necessary. For example, if the network address to which the packet is addressed is "110.23.43.18," then processor **201** only need look in routing table cache **203** to determine that the packet is to be transmitted via output port **102-6** (see Table 2). Alternatively, if the network address to which the packet is addressed is "110.23.43.17," then processor **201** cannot learn from routing table cache **203** how to direct the packet and must query routing table **104** to learn that the packet is to be transmitted via output port **102-4** (see Table 1). It will be clear to those skilled in the art how to perform step **503**.

At step **504**, processor **201** transmits each packet and the information on how it should be routed (i.e., the output port to which it should be routed) to switching fabric **103**, which transports it to the appropriate port. It will be clear to those skilled in the art how to perform step **504**.

At step **505**, processor **201** continually compiles statistics on the temporal succession of packets. In particular, processor **201** advantageously counts how many times each entry is needed in a short time interval, such as 2 milliseconds, over a longer time horizon, such as 1 second. For example, processor **201** advantageously knows how many times each entry was needed in each 2 millisecond interval during the prior 1 second. Therefore, processor **201** retains a data set (i.e., 500 data points) for each destination address. Table 3 depicts an illustrative portion of the information compiled and retained in step **505**.

US 6,816,457 B1

7

8

TABLE 3

| 500 Data Points for Destination Addresses | | | |
|---|---|---|---|
| Time | . . . | Address 110.23.43.17 | Address 110.23.43.18 | . . . |
| t = 0 | . . . | 5 | 1 | . . . |
| t = −2 ms | . . . | 0 | 3 | . . . |
| t = −4 ms | . . . | 5 | 0 | . . . |
| t = −6 ms | . . . | 0 | 0 | . . . |
| t = −8 ms | . . . | 5 | 2 | . . . |
| t = −10 ms | . . . | 0 | 0 | . . . |
| t = −12 ms | . . . | 5 | 14 | . . . |
| t = −14 ms | . . . | 0 | 4 | . . . |
| . . . | . . . | . . . | . . . | . . . |
| t = −998 ms | . . . | 5 | 12 | . . . |
| t = −1000 ms | . . . | 0 | 5 | . . . |

The purpose of step **505** is to compile data on the need for each needed entry so as to determine if patterns can be discerned that can be exploited. For example, an examination of Table 3 reveals a clear pattern of the need for the entry for network address 110.23.43.17 (i.e., it is needed in alternating 2 millisecond intervals) but no such clear pattern is immediately apparent for the entry for network address 110.23.43.18. But merely because no such pattern is immediately apparent does not mean that a real pattern does not exist, and, therefore, the illustrative embodiment employs mathematical tools to reveal the patterns.

As part of step **505**, processor **201** periodically or sporadically determines the autocorrelation for each data set because it provides useful insight into the existence of temporal patterns within each data set. When the autocorrelations for each destination address are computed, a strong correlation is revealed to exist in some of the data points, which only a weak correlation is indicated in others. The utility of this difference will be revealed in step **601**, which is discussed below. The illustrative embodiment computes the autocorrelation for each destination address with a lag of k=n/4=125. The autocorrelation for a data set of n data points, with lag k, is given by:

$$r_k = \frac{\sum_{t=1}^{N-k} (x_t - \bar{x})(x_{t+k} - \bar{x})}{\sum_{t=1}^{N} (x_t - \bar{x})^2} \qquad \text{(Eq. 1)}$$

At step **506**, processor **201** periodically or sporadically builds a temporal model for the data set associated with each destination address. In accordance with the illustrative embodiment, and as shown in FIG. **6**, the building of the temporal model comprises two stages:

1. the segregation stage, and
2. the determination stage.

At step **601**, the segregation stage, the illustrative embodiment determines which of the data sets (whose autocorrelation was computed in step **505**) are highly correlated and which are not. To do this, processor **201** determines a confidence band equal to

$$2\left(\frac{\pm 2}{\sqrt{n}}\right),$$

where n is the number of data points (e.g., 500) in each data set. After the autocorrelation function for all lags is computed, then the mean of the autocorrelation functions is

also computed. If the mean for a data set is greater than or equal to the confidence band, the illustrative embodiment considers that data set to be highly correlated; otherwise it considers it to be not highly correlated.

At step **602**, the determination stage, the illustrative embodiment selects a temporal model structure for each data set associated with each destination address. In other words, the illustrative embodiment seeks to select the temporal model structure for each data set that best predicts the future occurrence of the destination address associated with the data set. In accordance with the illustrative embodiment of the present invention, processor **201** builds one temporal model based on the highly correlated data sets to predict the occurrence of all destination addresses whose data sets are highly correlated and builds one temporal model based on the not-highly correlated data sets to predict the occurrence of all destination addresses whose data sets are not-highly correlated.

For the highly correlated data sets, the illustrative embodiment uses the autoregressive moving-average model (1, 2) structure

$$W_t = \Phi_1 w_{t-1} - \Theta_1 a_{t-1} - \Theta_2 a_{t-2} + a_t \qquad \text{(Eq. 2)}$$

and for the not highly correlated data sets, the illustrative embodiment uses the autoregressive moving-average model (1, 3) structure

$$W_t = \Phi_1 w_{t-1} - \Theta_1 a_{t-1} - \Theta_2 a_{t-2} - \Theta_3 a_{t-3} + a_t \qquad \text{(Eq. 3)}$$

where $W_t$ is the value of the data point in a series after subtracting the mean of the series, $\Phi$ is the autoregressive parameter, which describes the effect of unit change in $W_{t-1}$ on $W_t$, $\Theta$ is the moving average parameter, the number (2 or 3) refers to the number of moving average parameters, and $a_t$ is the white noise error.

It will be clear to those skilled in the art, however, that in alternative embodiments of the present invention other temporal model structures can be used. For example, one temporal model structure can be used for all of the data sets which obviates the necessity for computing autocorrelation of each data set and of categorizing each data set based on its correlation value. Furthermore, it will be clear to those skilled in the art how to categorize each data set into two or more categories and to select different temporal model structures for each category. And still furthermore, it will be clear to those skilled in the art how to choose different temporal model structures than those shown above.

Next, processor **201** builds a temporal model for each of a randomly selected number (e.g., 10 to 20) of destination addresses that have highly correlated data sets and for each of a randomly selected number (e.g., 10 to 20) of destination addresses that do not have highly correlated data sets. The reason that only a few models are built is because can be too computationally burdensome for processor **201** to build a different temporal model for each data set, and at least one of the temporal models that are built are likely to provide an acceptable model for the other data sets. In alternative embodiments of the present invention, processor **201** builds a unique temporal model for each data set. It will be clear to those skilled in the art how to determine the number of models built given the computational resources available.

Next, processor **201** selects one temporal model from the dozen or so that were built in step **602** to use with all of the data sets that are highly correlated and one temporal model from the dozen or so that were built in step **602** to use with all of the data sets that are not highly correlated. To chose the best model for each group of data sets, the illustrative

US 6,816,457 B1

9 | 10

embodiment advantageously uses the mean absolute error (MAE). This is done by determining which model does the best job of predicting the occurrence of not only its own future addresses, but also the best job of predicting the occurrence of the future addresses of the other addresses for which models were built in step **602**. The best model is the one that in general has the lower values of mean absolute error for the data of the other addresses.

At the end of step **506**, one temporal model is advantageously selected for predicting the occurrence of addresses associated with highly correlated data sets and a second temporal model is advantageously selected for predicting the occurrence of addresses associated with not highly correlated data sets.

At step **507**, processor **201** periodically or sporadically repopulates routing table cache **203** based on the temporal models built in step **506** and on the entries in routing table **104**. To accomplish this, processor **201** advantageously uses the model for the highly correlated data sets to predict the number of occurrences of each destination address in the next time interval (i.e., 2 milliseconds). If the model predicts that the destination address will be needed in the next time interval, processor **201** retrieves the entry for that destination address from routing table **104** and populates routing table cache **203** with that entry. If the model does not predict the occurrence of that destination address in the next time interval, then processor **201** does nothing.

If, after processor **201** has predicted the occurrence of each destination address associated with the highly correlated data, there is space in routing table cache **203** processor **201** next uses the model for the not highly correlated data sets to predict the number of occurrences of each destination address in the next time interval (i.e., 2 milliseconds). If the model predicts that the destination address will be needed in the next time interval, processor **201** retrieves the entry for that destination address from routing table **104** and populates routing table cache **203** with that entry. If the model does not predict the occurrence of that destination address in the next time interval, then processor **201** does nothing. The reason processor **201** populates routing table cache **203** with the highly correlated data first is because if there isn't room in routing table cache **203** for both the highly correlated data and the not highly correlated data, the highly correlated data sets should have priority.

To ameliorate interruptions, routing table cache **203** should comprises two portions, one of which is active and being used for routing packets and the other which is inactive and being populated in accordance with step **507**. This enables the predicted entries to be populated in the inactive portion and to switch that portion to active at the appropriate time.

After step **507**, control returns to step **502**.

It is to be understood that the above-described embodiments are merely illustrative of the present invention and that many variations of the above-described embodiments can be devised by those skilled in the art without departing from the scope of the invention. It is therefore intended that such variations be included within the scope of the following claims and their equivalents.

What is claimed is:

1. A router comprising:

an input port for receiving a succession of packets, wherein each of said packets comprises a destination address;

a plurality of output ports;

a switching fabric for interconnecting said input port to each of said plurality of output ports; and

a processor for building a temporal model of the occurrence of said destination addresses at said input port, for populating said routing table cache based on said temporal model and at least one entry that is stored in a routing table, and for routing at least one of said packets from said input port to one of said output ports through said switching fabric based on said entry that is stored in said routing table cache;

wherein said temporal model is based on the autoregressive moving average of the occurrence of said destination addresses.

2. A method comprising:

receiving a temporal succession of packets at an input port, wherein each of said packets comprises a destination address;

generating a temporal model based on the occurrence of said destination addresses;

populating a routing table cache based on said temporal model and at least one entry that is stored in a routing table; and

forwarding at least one of said packets from said input port to one of a plurality of output ports based on said entry that is stored in said routing table cache;

wherein said temporal model is based on the autoregressive moving average of the occurrence of said destination addresses.

\* \* \* \* \*

# EXHIBIT B

**Scott Coonan**

| | |
|---|---|
| **From:** | abdullah bahattab [abahattab@yahoo.com] |
| **Sent:** | Saturday, January 29, 2005 12:10 AM |
| **To:** | Chris Moore |
| **Subject:** | RE: Important |

Dear Mr. Chris,

 This is Dr. Abdullah Bahattab. We have exchanged emails since year 2002 regarding my patent.  if you see below, you will remember the subject.

 Shortly, at that time I have sent to you my patent (the two papers, which describe the patent) to check if your company like it and your answer was stated below that I should talk to Cisco.

 Just few months ago, your company has starting produce  enterprise routers.  this routers is using the main idea of my patent to forward the packets.  My patent has been approved in Nov. 2004.

 In fact, I'm talking to a lawyer to sue your company since they used my patent without my permission.  If your company did not take a positve step and make a deal with me for the license within one moth, the lawyer will start the official procedures.

by the way, I have all the correspodance that we exchanged at that time to prove that I have sent you my patent two years ago and now your company have new routers with the same concept.

 Please forward this message to the HQ and/or to the right person.

 Regards,
 Abdullah bahattab,Ph.D.
 +966503636731

--- Chris Moore <cmoore@juniper.net> wrote:

> Abdullah,
>
> Our Technical Director has reviewed this issue and provides the
> following response :
>
> "Predictive routing table cache population (the patent pending topic)
> is not something we would have a direct interest in.  In general,
> caching techniques are not appropriate in Internet or service provider
> backbones, so we don't make use of a cache in any of our M-series or
> T-Series products."
>
> So, it would appear that your pending patent may be more relevant to
> enterprise routing companies such as Cisco - why don't you give them a
> try.
>
> Thanks for your interest.
>
> Regards
>
> Chris Moore
> Regional Sales Manager
> Juniper Networks (Middle East)
> PO Box 500191
> Dubai
> UAE
>
> Office +9714 391 6834
> Mobile +97150 657 1900

```
>
> -----Original Message-----
> From: abdullah bahattab [mailto:abahattab@yahoo.com]
> Sent: 14 May 2002 11:24
> To: Chris Moore
> Subject: Important
>
>
>
>  Hi Chris,
>
>  I have a patent-pending to speed up the backbone routers. If you are
> interested in this idea, please contact me so I can send you my paper.
> Attached you find my resume.
>
>  Also, If you are looking for a professional in Saudi Arabia to work
> for your company, I'll be more than happy to do so.
>
>  Sincerely,
>  Abdullah Bahattab, Ph.D.
>  Jeddah College of Electronic Technology  Saudi Arabia.
>
>
> _____
> Do You Yahoo!?
> LAUNCH - Your Yahoo! Music Experience
> http://launch.yahoo.com


_____
Do you Yahoo!?
Yahoo! Mail - Find what you need with new enhanced search.
http://info.mail.yahoo.com/mail_250
```

2

# EXHIBIT C



**T G C**

Corporate
Lawyers

**www.tgc.pl**

telefon:
+48 (22) 658 8644
+48 (22) 658 8645

fax:
+48 (22) 827 6915

e-mail:
TGC@tgc.pl

TGC Ordowska
Kancelaria Prawnicza
Sp. k.

ul. Królewska 27
00-060 Warszawa
Polska

May 30, 2005

Mr Mitchell Gaynor
General Counsel
Juniper Networks, Inc.
1194 North Mathilda Avenue
Sunnyvale, California 94089 USA

*By registered post and
by e-mail: mgaynor@juniper.net*

Dear Mr. Gaynor:

We have been retained by Abdullah Ali Bahattab, the inventor of a router and routing table cache population technique registered under United States Patent No. 6,816,457.

Our client is concerned that the JUNOS enterprise router OS being marketed by Juniper Networks, Inc. may infringe United States Patent No. 6,816,457.

We should be grateful if you could let us have Juniper Networks, Inc.'s views on whether any JUNOS product infringes Mr. Bahattab's patent.

Sincerely,

Steven Wood

P:\Word documents\TGC Clients\Bahattab\Initial Letter.doc

Rejestracja:
Sąd Rejonowy
dla m.st. Warszawy
XIX Wydział Krajowego

# EXHIBIT D



DUBAI COURTS

محكمة دبي الابتدائية

التــــاريخ : ٢٢-٠٤-٢٠٠٧
الرقـــــم : ٢٠٠٧/١٧٥٠٤

**إعلان صحيفة الدعوى**

في الدعوى رقم : ٢٠٠٧/٢٩١ مدني جزئي     المسجلة بتاريخ : ١٩-٠٤-٢٠٠٧

موضوع القضية : المطالبة بندب خبير كمبيوتر والزام المدعى عليها الرسوم والمصاريف واتعاب المحاماة

المدعى : عبدالله بن علي باحطاب

عنوانه - المملكة العربية السعودية - جده - محله المختار مكتب المحامي/ عارف الطريفي- دبي -ديرة - شارع المكتوم- برج الريم - الطابق ٨- شقة ٨٠٢

ويمثله : عارف محمد خادم سالم الطريفي

المدعى عليه : شركة جونير تتوريكس الشرق الأوسط

عنوانه : إمارة دبي- مدينة دبي للانترنت - بناية بنك دبي الاسلامي - رقم (٧) الطابق الاول مكتب رقم (١٠١)

المطلوب إعلانه : شركة جونير تتوريكس الشرق الأوسط

صفته عليه : مدعى عليه

عنوانه : إمارة دبي- مدينة دبي للانترنت - بناية بنك دبي الاسلامي - رقم (٧) الطابق الاول مكتب رقم (١٠١) رقم الهاتف : ٠٤٣٩٠٨٦٥١

موضوع الإعلان : نعلمكم بأن المدعى أقام عليكم الدعوى المذكورة أعلاه و حددت لها المحكمة جلسة يوم الثلاثاء الموافق ٠٨-٠٥-٢٠٠٧ الساعة ٠٨:٣٠ صباحا في القاعة رقم (١) والتى يرجب عليكم حضورها و نخطركم بأنه لكم الحق بتقديم ما لديكم من مذكرات أو مستندات موقع عليها منكم قبل قبل الجلسة بثلاثة أيام.

المرفقات : صورة من لائحة الدعوى + حافظة مستندات

رئيس الشعبة

إعداد:عايده عبيد السويدي     رقم المهمة : ٢٤٩٧٧ / ٢٠٠٧

إنه في يوم    الموافق / /    في الساعة       

بناحية     المحضر بالمحكمة انتقلت لإعلان المطلوب إعلانه :    أنا

توقيع المحضر

توقيع المستلم أو بصمة إبهامه



المعارف للمحاماة والاستشارات القانونية

AL MAARIF ATTORNYS & LEGAL CONSULTANTS

هيئة المكتب
عارف الطريفي
سامـح زيدان

لدى محكمه دبي الابتدائية ......... الموقرة

الدعوى رقم /٢٠٠٧/ مدني جزئي

المدعى /

الدكتور /عبد الله بن على باحطاب

العنوان / جدة – المملكة العربية السعودية- محله المختار مكتب المحامي / عارف الطريفى الشامسى

دبي – ديرة – شارع المكتوم –برج الريم – الطابق (٨) – شقه (٨٠٢)

وكاله المحامي / عارف الطريفى الشامسى

البريد الالكتروني (٥٥٣٤١٦) رقم (٣٥١)

ضـــد

المدعى عليهم / شركة جونيير تتوريكس الشرق الأوسط

العنوان / إمارة دبي  - مدينه دبى للانترنت – بنايه بنك دبي الاسلامى رقم (٧) الطابق الأول

مكتب رقم (١٠١)                    هاتف / ٠٤٣٩٠٨٦٥١

لائحة الدعوى

– المدعي هو صاحب براءة الاختراع المسجلة لدى الولايات المتحدة الامريكيه تحت تطبيق ٠٩٣٣٦,٤٥٧ بتاريخ ٢٠٠٤/١١/٩ مفادها فيه جديدة في تأهيل حجب المواقع بتوجيه المجسدات التوضيحية لحزم البيانات من خلال موجهه اصغر من الموجهات الغالية نسبيا واختراعه يتعرف على موجه تسريع مزود بحجب مواقع جدوليه توجيهيه صغيرة مرفقه بجهاز مقياس  النسب (مرفق صوره من بيانات الاختراع )(مستند رقم ١).

– وحيث أن المدعى عليها هي إحدى الشركات التي يشكل هذا الاختراع أهميه كبرى لها نظرا لطبيعة عملها في الشبكات الالكترونية .

– لذا قام المدعي بمخاطبتها بتاريخ ٢٠٠٢/٥/٢٢ عبر البريد الالكتروني وقام بعرض الاختراع عليها فقامت المدعي عليها بالرد عليه بتاريخ ٢٠٠٢/٥/٢٥ برسالة قررت قيامها بدراسة الاختراع

شارع المكتوم برج الريم الطابق الثامن، المكتب ٨٠٢، تليفون : ٢٢٢٩٩٤٤-٠٤ فاكس : ٢٢٢٥٥٩٥-٠٤، ص.ب : ٤٠٥٥٥ دبي – ا.ع.م.

Al Maktoum Road, Al Reem Tower, 8th Floor, Office No. 802, Tel: 04-2229944, Fax: 04-2225595, P.O. Box 40555, Dubai-U.A.E.

E-mail : almarif1@emirates.net.ae

وعدم مناسبة الاختراع لأعمالهم وبعدم استفادتهم من تقنيه الحجب ونصحوه بمراسله شركه (سيسكو) حيث يمكن أن يكون هذا الاختراع مناسبا لأعمالهم .(مستند رقم ١و٢)

– ثم وعن طريق الصدفة فوجئ المدعى بأن المدعى عليها قامت باستخدام اختراعه في شبكاتها واستخدمت تقنية الحجب الواردة بهذا الاختراع ودون موافقة المدعى ودون علمه الأمر الذي يمثل اعتداء منها غير مشروع على حقوق المدعى التي أدرت عليها مئات الملايين من الأرباح.

وحيث أن دوله الأمارات عضو في اتفاقية حماية الملكية الفكرية بموجب المرسوم رقم ٢١ لسنه ١٩٧٥ وتطبيقا لنصوص قانون الملكية الفكرية والصناعية والمادة رقم ١٠٧– ١١١ من قانون المعاملات المدنية فانه يحق للمدعى مقاضاة المدعى عليها للمطالبة بحقوقة وبالتعويض عما أصابه من ضرر مادي ومعنوي وحيث أن مقدار الفائدة التي عادت على المدعى عليها من جراء استخدامها غير الشرعي لبراءة الاختراع الخاصة بالمدعى يصعب تقيمها بدون خبير متخصص في هذا العمل .

<u>لذلــــــــك</u>

<u>يلتمس المدعى من هيئه المحكمة الموقرة:-</u>

أولا : تحديد اقرب جلسة لنظر الدعوى وإعلان الخصم بها .

ثانيا : ندب خبير كمبيوتر في الدعوى لمعاينه مواقع المدعى عليها وشبكاتها لإثبات قيام المدعى عليها باستخدام تقنيه واختراع المدعى وحساب وضبط مقدار الأموال التي عادت عليها من جراء هذا الاستخدام . مع إلزام المدعى عليها الرسوم والمصاريف ومقابل أتعاب المحاماة.

بكل احترام وتقدير ،،،،،،،،

وكاله المحامى / عارف الطريقى الشامسى



المعارف للمحاماة والاستشارات القانونية
AL MAARIF ATTORNYS & LEGAL CONSULTANTS

هيئة المكتب
عارف الطريفي
سامح زيدان

محكمة دبي الابتدائية ٠٠٠٠ الموقرة

دعوي رقم    /٢٠٠٧ مدني جزئي

حافظة مستندات مقدمة من

_____

المدعي / د. عبدالله بن علي باحطاب

بوكالة المحامي / عارف الطريفي الشامسي

ضـــد

المدعي عليها / شركة جونير نتوريكس الشرق الأوسط .

| م | تاريخ المستند | عـــدد الاوراق | البيــــــــــــــــان |
|---|---|---|---|
| ١- | ٢٠٠٠/٨/٧ | ٣ | صورة من تسجيل براءة الإختـــراع الخاصـة بالسيد / باحطاب. مع رسم توضــيحي يـبين الفكرة الجديدة للدكتور/ عبدالله باحطاب . |
| ٢- | ٢٠٠٢/٥/٢٥ | ١ | صورة من الرسالة التي قامت الشركة المـدعى عليها بإرسالها  للدكتور / عبدالله باحطـاب تخبره فيها بإطلاعها علـي الإختـــراع و بـأن موضوع براءة الإختراع الخاص به لن يفيـدها في شيء في نشاطها وتشكره علي ذلك . |

فقط عدد مستندين مكونين من اربعة ورقات لاغير.

بكل احترام وتقدير ،،،،،،،،،،،

بوكالة المحامي / عارف الطريفي الشامسي

شارع المكتوم برج الريم الطابق الثامن، المكتب ٨٠٢، تليفون : ٢٢٢٩٩٤٤-٠٤، فاكس : ٢٢٢٥٥٩٥-٠٤، ص.ب : ٤٠٥٥٥ دبي - ١٠م.ع.م.
Al Maktoum Road, Al Reem Tower, 8th Floor, Office No. 802, Tel: 04-2229944, Fax: 04-2225595, P.O. Box 40555, Dubai-U.A.E.
E-mail : almarif1@emirates.net.ae

**KAMIL BASHIR**

**LEGAL TRANSLATION**

Tel.: +971-4-2973343
Fax :+971-4-2976838
P.O. Box : 8812, Dubai - U.A.E.
E-mail :
kamil189@yahoo.com

**KAMIL BASHIR**
**LEGAL TRANSLATION**

كـامـل بشـير
للترجـمة القانونية

هاتف : ٩٧١-٤-٢٩٧٣٣٤٣+
فاكس : ٩٧١-٤-٢٩٧٦٨٣٨+
ص.ب : ٨٨١٢ ، دبي – أ.ع.م.
بريد إلكتروني :
kamil189@yahoo.com

١٢) براءة الاختراع في الولايات المتحدة الأمريكية

المخترع: السيد/ باحطاب

(٥٤) تأهيل حجب جدول التوجيه التنبئي

(٧٦) المخترع        : عبد الله علي باحطاب ٣١٠٠ إس

متشيجين أفي – شقة رقم ٩٠٢ – شيكاغو آي إل

الولايات المتحدة الأمريكية ٦٠٦١٦

(*) ملاحظة        : وفقاً لأي إقرار بإخلاء المسؤولية يتم تمديد أو تعديل فترة هذه البراءة

بمقتضى القانون المطبق في الولايات المتحدة الأمريكية ١٥٤ (أو)

بموجب ٨٤٤ يوم.

(٢١) رقم التطبيق      : ٠٩/٦٣٣,٧٥٤

(٢٢) تاريخ الإضبار     : ٧ أغسطس ٢٠٠٠

بيانات التطبيق الخاصة بالولايات المتحدة الأمريكية

(٦٠) رقم التطبيق المؤقت: ٦٠/٢٠٨,٨٨٨ تم إضباره بتاريخ ٢ يونيو ٢٠٠٠

(٥١) سي إل دولي .......................... إتش ٠٤ إل، ٥٦/١٢

(٥٢) سي إلى الولايات المتحدة ................... ٣٧٠/٢٣٢، ٣٧٠/٢٣٤

(٥٨) مجال البحث .......................... ٢٣٠ ،٣٧٠/٢٢٩

٣٧٠/٢٣٠,١ ،٢٣١ ،٢٣٢ ،٢٣٤ ،٢٣٥ ،٣٨٩ ،٣٩٢

٣٩٥,٧ ،٤٢٨ ،٤٢٩ ،٣٩٥,٢ ،٣٩٥,٢١

(٥٦)  المراجع المعتمدة

مستندات براءة الاختراع في الولايات المتحدة الأمريكية

٥,٤٨٨,٦٠٨ إيه * ١ ١٩٩٦/١ فلامر، ٣ .............................. ٣٧٠/٤٠٠

٦,١١٨,٧٦٠ إيه * ٩ ١٠٠٠/٩ زامين إي تي إيه إل ................. ٣٧٠/٢٢٩

* معتمد من قبل الفاحص

كامـل بشير للترجـمة القـانونية
KAMIL BASHIR LEGAL TRANSLATION
إنجليزي – عربي – إنجليزي
English-Arabic-English
د. كامل بشير
Kamil Bashir (Ph.D.)
Sworn Legal Translator        مترجم قانوني محلّف
Licensed by the
Ministry of Justice (U.A.E)    مرخص من قبل وزارة العدل-أ.ع.م.

الولايات المتحدة ٠٠٦٨١٦٤٥٧ بيه ١



**KAMIL BASHIR**

**LEGAL TRANSLATION**

Tel. : +971-4-2973343
Fax : +971-4-2976838
P.O. Box : 8812, Dubai - U.A.E.
E-mail :
kamil189@yahoo.com

KAMIL BASHIR
LEGAL TRANSLATION

كـــامـــلء بـشــــيـر
للتـرجـمـة الـقـانـونـيـة

هاتف : ٢٩٧٣٣٤٣-٤-٩٧١+
فاكس : ٢٩٧٦٨٣٨-٤-٩٧١+
ص.ب ٨٨١٢ ، دبي – أ.ع.م
بريد الكتروني :
kamil189@yahoo.com

(١٠) براءة اختراع رقم: الولايات المتحدة ١بيه ٦،٨١٦،٤٥٧

(٤٥) تاريخ إصدار براءة الاختراع   ٩ نوفمبر ٢٠٠٤.

الفاحص الرئيسي – اليل باتيل

مساعد الفاحص – ويليام شكولتز

(٧٤) وكيل أو العميل أو الشركة – ديمونت و برير ذ.م.م

(٥٧)       الفكرة

مرفق طيه الموجه والطريقة الـمعدة من أجل تقنية توجيه تأهيل حجب المواقع المجدول وعلـــى وجه التحديد يعتبر توجيه المجسدات التوضيحية لحزم البيانات من خلال الموجه أصغر مـن الموجهات الغالية نسبياً في العمليات الفنية السابقة. الاختراع الحالي يتعرف على موجه سريع مزود بحجب مواقع جدولية توجيهية صغيرة مرفقة بجهاز مقياس النسب التي يمكن الحصول عليها بواسطة حجب جدولي توجيهي صغير يستطيع أن يتتبأ بالمداخل المطلوبة في الحجـب الجدولي التوجيهي في المستقبل وحتى عن طريق تأهيل حجب المواقع الجدولي التوجيهي لتلك المدخلات قبل طلبها. يتكون المجسم التوضيحي للاختراع الحالي من: لوحة إدخال لاسـتقبال تتابع حزم البيانات التي تتكون كل حزمة فيها من أحد العناوين المقصودة، وتعددية لوحـات الإخراج: هيكل تحويلي لتداخل لوحة الإدخال مع كل وحدة تعددية للوحات الإخراج، ومعالج أو إنشاء نموذج مؤقت خاص بظهور العناوين الموجهة للجهة المقصودة للوحة الإدخال مـن أجل تأهيل حجب المواقع الجدولي التوجيهي اعتماداً على النموذج المؤقت ومدخل واحد على الأقل المخزن في الجدول التوجيهي، ومن أجل توجيه حزمة بيانات واحدة على الأقـل مـن لوحة الإدخال على إحدى لوحات الإخراج من خلال الهيكل التحويلي القـائم علـى المـدخل المخزن في حجب المواقع الجدولي التوجيهي.

يوجد رسم توضيحي يبين الفكرة الجديدة للسيد / باحطاب



KAMIL BASHIR LEGAL TRANSLATION
English-Arabic-English
Kamil Bashir (Ph.D.)
Sworn Legal Translator
Licensed by the
Ministry of Justice (U.A.E)

د. كامل بشير
مترجم قانوني معلف
مرخص من وزارة العدل أ.ع.م.

٦٠

US006816457B1

(12) **United States Patent**
Bahattab

(10) Patent No.: **US 6,816,457 B1**
(45) Date of Patent: **Nov. 9, 2004**

(54) **PREDICTIVE ROUTING TABLE CACHE POPULATION**

(76) Inventor: Abdullah Ali Bahattab, 3100 S. Michigan Ave., Apt. #902, Chicago, IL (US) 60616

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 844 days.

(21) Appl. No.: 09/633,754

(22) Filed: **Aug. 7, 2000**

**Related U.S. Application Data**

(60) Provisional application No. 60/208,888, filed on Jun. 2, 2000.

(51) Int. Cl.[7] .................................. H04L 12/56
(52) U.S. Cl. .......................... 370/232; 370/234
(58) Field of Search .......................... 370/229, 230, 370/230.1, 231, 232, 234, 235, 389, 392, 395.7, 428, 429, 395.2, 395.21

(56) **References Cited**

U.S. PATENT DOCUMENTS

5,488,608 A    1/1996 Flammer, III .............. 370/400
6,118,760 A    9/2000 Zaumen et al. ............. 370/229

* cited by examiner

Primary Examiner—Alit Patel
Assistant Examiner—William Schultz
(74) Attorney, Agent, or Firm—DeMont & Breyer, LLC

(57) **ABSTRACT**

A router and method for routing table cache population technique is disclosed. In particular, the illustrative embodiment routes packets through it more quickly than comparatively expensive routers in the prior art. The present invention recognizes that a fast router has small routing table cache that has a high hit ratio and that a high hit ratio can be achieved with a small routing table cache by predicting which entries will be needed in the routing table cache in the future and by populating the routing table cache with those entries before they are needed. The illustrative embodiment of the present invention comprises: an input port for receiving a succession of packets, wherein each of the packets comprises a destination address; a plurality of output ports; a switching fabric for interconnecting the input port to each of the plurality of output ports; a processor or building a temporal model of the occurrence of the destination addresses at the input port, for populating the routing table cache based on the temporal model and at least one entry that is stored in a routing table, and for routing at least one of the packets from the input port to one of the output ports through the switching fabric based on the entry that is stored in the routing table cache.

2 Claims, 5 Drawing Sheets







كامل بشير للترجمة القانونية
KAMIL BASHIR LEGAL TRANSLATION
English-Arabic-English

Kamil Bashir (Ph.D.)                    د. كامل بشير
Sworn Legal Translator          مترجم قانوني محلف
Licensed by the            مرخص من وزارة العدل إ.ع.م
Ministry of Justice (U.A.E.)

**KAMIL BASHIR**

**LEGAL TRANSLATION**

Tel. : +971-4-2973343
Fax : +971-4-2976838
P.O. Box : 8812, Dubai - U.A.E.
E-mail :
kamil189@yahoo.com

KAMIL BASHIR
LEGAL TRANSLATION

كامـــل بشــير
للترجمة القانونية

هاتف: ٢٩٧٣٣٤٣-٤-٩٧١+
فاكس: ٢٩٧٦٨٣٨-٤-٩٧١+
ص.ب: ٨٨١٢. دبي - أ.ع.م.
بريد الكتروني:
kamil189@yahoo.com

الموضوع : آر.إي                    : هام

التاريخ : يوم السبت، ٢٥ مايو ٢٠٠٢  الساعة: ٥:٣٠:٠٣ + ٠١٠٠

من : "كربس موور"                   moore@juniper.net

إلى : عبد الله با حطاب             abahattab@yahoo.com

تحية طيبة وبعد،،،،

نفيدكم علماً بأن المدير الفني في شركتنا قد راجع هذا الأمر وقدم لنا الإجابة التالية:

"تأهيل حجب جدول التوجه التبئي" (موضوع تعليق براءة الاختراع) هو شيء لا يهمنا بشكل مباشر. وبشكل عام، تعتبر تقنيات الحجب غير مناسبة للاستعمال في الانترنت أو المخدم الرئيسي للشبكة، لذلك فإننا لا نستفيد من تقنية الحجب في أي من منتجات سلسلة – أم أو سلسلة – تي.

وبناء على ذلك، يبدو بأن براءة الاختراع المعلقة بك من الممكن أن تكون أكثر ارتباطاً بشركات توجيه الدشر بع مثل سيسكو – لماذا لا تعطوهم فرصة للمحاولة.

شكراً على اهتمامكم.

وتفضلوا بقبول فائق التحية والاحترام،،،،،

كريس موور
مدير المبيعات الإقليمي
جونيبر نتوريكس (الشرق الأوسط)
ص.ب: ٥٠٠١٩١
دبي
إ.ع.م
رقم هاتف العمل: ٦٨٣٤ ٣٩١ ٩٧١٤+
رقم الهاتف المتحرك: ١٩٠٠ ٦٥٧ ٩٧١٤+
.............. الرسالة الأصلية: ........................
من: عبد الله با حطاب – البريد الالكتروني: abahattab@yahoo.com
تاريخ الإرسال: ١٤ مايو ٢٠٠٢  الساعة: ١١:٢٤
إلى: كريس موور
الموضوع: هام

KAMIL BASHIR LEGAL TRANSLATION
English-Arabic-English
Kamil Bashir (Ph.D.)
Sworn Legal Translator
Licensed by the
Ministry of Justice (U.A.E)

**Subject:**    RE: Important

**Date:**    Sat, 25 May 2002 05:30:03 +0100

**From:**    "Chris Moore" <cmoore@juniper.net>    📖Add to Address Book

**To:**    "abdullah bahattab" <abahattab@yahoo.com>

Abdullah,

Our Technical Director has reviewed this issue and provides the
following response :

"Predictive routing table cache population (the patent pending topic)
is
not
something we would have a direct interest in.  In general,
caching techniques are not appropriate in Internet or service provider
backbones, so we don't make use of a cache in any of our M-series or
T-Series products."

So, it would appear that your pending patent may be more relevant to
enterprise routing companies such as Cisco - why don't you give them a
try.

Thanks for your interest.

Regards

Chris Moore
Regional Sales Manager
Juniper Networks (Middle East)
PO Box 500191
Dubai
UAE

Office +9714 391 6834
Mobile +97150 657 1900

-----Original Message-----
From: abdullah bahattab [mailto:abahattab@yahoo.com]
Sent: 14 May 2002 11:24
To: Chris Moore
Subject: Important



# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| JUNIPER NETWORKS, INC. | ABDULLAH ALI BAHATTAB |

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** 88888
**(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT 99999
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Alan M. Fisch
Jason F. Hoffman, David L. Cousineau
Kaye Scholer LLP
901 Fifteenth Street, N.W.
Washington, DC 20005
202.682.3500

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
◉ 3 Federal Question (U.S. Government Not a Party)
○ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

◉ **E. General Civil (Other)**       OR       ○ **F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☒ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

A declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 that U.S. Patent No. 6,816,457 is invalid, unenforceable, and not infringed.

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23    **DEMAND $** [_____]    Check YES only if demanded in complaint    **JURY DEMAND:**    YES ☒    NO ☐

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE  October 3, 2007    SIGNATURE OF ATTORNEY OF RECORD  *Alan M. Fisch*

---

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.