# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JUNIPER NETWORKS, INC.,

      Plaintiff,

v.                                        Case No.: 1:07-cv-01771-PLF (AK)

ABDULLAH ALI BAHATTAB,

      Defendant.

_____/

## DEFENDANT DR. BAHATTAB'S MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

### I. Introduction

Under Fed. R. Civ. P. 26(1), this Court may, in association with a request for production, "for good cause, issue an order . . ." including an order "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." In this motion, Defendant Dr. Abdullah Ali Bahattab moves for entry of a protective order, largely to the benefit of Juniper Networks, Inc. ("Plaintiff" or "Juniper"), so that discovery may move forward without further delay.

Defendant Dr. Bahattab finds himself in the unusual position of bringing this protective order largely out of concern that further delay in the filing for a protective order will unduly delay discovery from Juniper Networks. It has now been well over two months since Juniper first represented that it would provide Dr. Bahattab with a draft protective order, and Juniper is now generally objecting to Dr. Bahattab's First Set of Document Requests and

Interrogatories,[1] on the basis that a protective order has yet to be entered. *See* Ex. D "Juniper's Interrogatory Responses" p. 2, 35, 40; Ex. E "Juniper's Document Request Responses" p. 2, *passim.*

The Parties have conferred back-and-forth on the protective order for well over two months and Dr. Bahattab believes the parties have issues warranting resolution by the Court.

Recalling the history of the Parties' exchanges, during the Parties' L.Cv.R. 16.3 status conference held on May 21, 2008, Juniper indicated that it would provide Dr. Bahattab with its proposed protective order for review. Over a month passed from the L.Cv.R. 16.3 conference without any proposal or other word from Juniper regarding a protective order. Given this period of silence on the issue, Dr. Bahattab provided Juniper with his own initial draft protective order via email on Monday, June 23, 2008, in the hopes that the Parties could agree on an order without judicial intervention and avoid any unnecessary delay in discovery. As such, Dr. Bahattab was forced to anticipate the confidentiality concerns that are primarily that of Juniper Networks but nevertheless tried to provide a non-controversial protective order that would be acceptable with minimal revisions. Discovery from Juniper remains of critical importance to Dr. Bahattab as was discussed during the scheduling order teleconference with the Court on June 16, 2008. Hence, in the email attaching the proposed protective order, counsel for

---

[1] Juniper and Dr. Bahattab exchanged document requests and interrogatories on June 12, 2008, with a due date of July 14, 2008. Dr. Bahattab received a copy of Juniper's Objections and Responses which were postmarked on June 14, 2008 and arrived on June 18, 2008 via U.S. Mail.

Dr. Bahattab also expressed the desire to file a stipulated order within the week beginning on June 23.[2]

A week passed without word from Juniper, at which time counsel for Dr. Bahattab followed-up with Juniper via email on Monday, June 30, 2008, asking for a date certain when Juniper would provide its revisions to the protective order. *See* Ex. C.  On the following day, Juniper indicated by email that it would provide Dr. Bahattab with revisions on Wednesday, which was followed by an email on Wednesday, July 2nd with Juniper's revisions to the protective order, just before the July 4th holiday weekend. Dr. Bahattab then provided Juniper with an updated draft particularly stating the positions regarding the various substantive additions and deletions on July 14, 2008, and asked that Juniper advise when it would provide Dr. Bahattab with the final round of edits stating its positions so that it could be filed with the Court.

Another three days went by without an indication from Juniper when its revisions would be available.  Yet again, on July 17, 2008, counsel for Dr. Bahattab followed-up via email with Juniper to determine when these revisions would be available. *See* Ex. A.   Juniper then indicated that it would provide these revisions on July 22, 2008.

On July 22, without simply revising the protective order in preparation for filing, Juniper drafted an email consisting largely of restatements of its opposition that were already included in Dr. Bahattab's previous revisions. *Compare* Ex. B "Juniper's Revisions to Proposed Protective Order July 22, 2008" *with* Ex. F "Dr. Bahattab's Proposed Protective Order of July

---

[2] On the following day, Tuesday, June 24, 2008, Juniper requested via email an editable "Word" version of the draft protective order, which was provided within approximately twenty minutes of Juniper's request.

14, 2008." Counsel for Dr. Bahattab contacted Juniper counsel on August 7, 2008 to schedule a conference to discuss outstanding issues regarding the protective order. *See* Ex. G.  On August 14, 2008, the Parties held a teleconference to discuss the outstanding issues, a summary of which is outlined in Exhibit H "Emails between B. Jordan and J. Hoffman re: Protective Order Conference Summary," dated August 14-15, 2008.

Throughout this process, Juniper has exhibited no particular hunger to see that a protective order be filed an entered in this case, and correspondence on the matter has repeatedly been at the demand of Dr. Bahattab after periods of silence from Juniper.  The ultimate result of this process may be the delay of discovery from Juniper Networks, the receipt of which is of critical importance to Dr. Bahattab.

## II.     Argument

Despite the lengthy process of conferring on this protective order, the parties are largely in apparent agreement as to the substance and content of the protective order. Nevertheless, Dr. Bahattab has identified five key areas of disagreement with Juniper over the substance of the protective order.[3]  These include (a) the Parties' obligations to properly designate privileged or confidential information, (b) the availability of source code past the close of discovery, (c) a blanket restriction on sending source code outside the United States that effectively restricts the retention of a technical advisor outside the United States, (d) an arbitrary page limit on source code printouts, and (e) the time periods for entering an objection against a technical advisor.

---

[3] A summary of Juniper's positions on these issues are as shown in Exhibits B and H.

### a.  The Parties Should Properly Designate Privileged and Confidential Information

Dr. Bahattab proposes section 2.1.3., as appearing in the Proposed Order, specifying that an entire document should not be withheld as privileged if partial redaction of that document would suffice. *See, e.g.*, *U.S. v. Am. Tel. & Tel. Co.*, 86 F.R.D. 603, 610-13, footnotes to Guideline No. 5 (D.D.C. 1979) (Greene, J.) ("When a document contains both privileged and unprivileged material, the unprivileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material."). While Juniper Networks proposes the addition of the sentence: "This provision shall not apply where it is impractical, infeasible, or unduly burdensome to redact the affected document" (Ex. B), Dr. Bahattab believes the inclusion of such a sentence is unnecessary and contrary to each Party's duty to redact only those portions of a document that are privileged.

Similarly, Dr. Bahattab proposes section 2.2.3, as appearing in the Proposed Order, specifying that an entire document should not be marked as confidential if partial marking of the document would suffice. Marking an entire document as Confidential Information when such is only found in certain portions of the document runs the risk of abuse—especially with source code documents of extended length—and also would lack good cause pursuant to Fed. R. Civ. P. 26(c)(1). *See generally In re Ullico Inc. Ligitation*, 237 F.R.D. 314 (D.D.C. 2006) (Kay, Mag.); *PHE, Inc. v. Dept. of Justice*, 139 F.R.D. 249, 252 (D.D.C. 1991) ("To establish 'good cause' . . . a movant must articulate a real and specific harm and not just stereotyped and conclusory statements."); *John Does I-VI v. Yogi*, 110 F.R.D. 629, 632 (D.D.C. 1986) ("To establish good cause under Rule 26(c) the courts have generally required a 'particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements . . . .

5

With respect to the claim of confidential business information, this standard demands that the company prove that disclosure will result in a 'clearly defined and very serious injury to its business.'").

Furthermore, designating only confidential portions of documents as Confidential Information will make discovery more efficient, particularly with regards to Juniper's software. The JUNOS operating system incorporates the "FreeBSD" operating system, which is an "open source" operating system whose code is readily available to the public. *See* JUNOS End User License Agreement, http://www.juniper.net/techpubs/glossary/copyright.html (last visited July 8, 2008) ("This product includes FreeBSD software developed by the University of California, Berkeley, and its contributors"); About FreeBSD, http://www.freebsd.org/about.html (last visited July 8, 2008) (". . . FreeBSD is available free of charge and comes with full source code."). Therefore, Dr. Bahattab expects that a significant portion of the JUNOS software should not be marked "Confidential-Source Code," and that those portions of the JUNOS code that *do* consist of Confidential Information will be of the most interest as they will likely include routing code that is not publicly available as part of the FreeBSD project. A judicious marking of only confidential portions of documents will assist Dr. Bahattab in determining which portions of the documents are of primary interest. This is especially important in light of the fact that the JUNOS operating system is purported to contain over 20 million lines of code. Jim Duffy, *Cisco's IOS vs. Juniper's JUNOS,* Network World, April 17, 2008, at 2, http://www.networkworld.com/news/2008/041708-cisco-juniper-operating-systems.html.

Accordingly, Dr. Bahattab proposes the inclusion of section 2.2.3, which reads as follows: "Documents should not be given a blanket designation of 'Confidential Information;' only confidential portions of documents should be designated."

6

### b. Any Source Code Produced by the Parties Should be Available Until the Conclusion of Trial

Dr. Bahattab opposes Juniper's proposal that access to source code shall end at the close of expert discovery. *See* Proposed Order § 3.2.1.4. Dr. Bahattab notes that access to the source code may be helpful to the preparation of his case up to and including trial, not unlike most relevant evidence produced in discovery. Juniper cannot show good cause for including such a restriction, pursuant to Fed. R. Civ. P. 26(c)(1), because "[t]o establish 'good cause' a movant must articulate a real and specific harm . . ." *PHE, Inc. v. Dept. of Justice*, 139 F.R.D. 249, 252 (D.D.C. 1991). In light of the various safeguards established for source code throughout this protective order, simply disallowing access to the source code after the March 13, 2009 close of expert discovery is without good cause. Dr. Bahattab also notes that any expense incurred by a party during this period is at their own election pursuant to section 3.2.1.2, as both parties have the option of simply providing source code directly to the other side without the use of a third party secure site.

Dr. Bahattab also opposes Juniper's proposal that access to the source code shall only be available "during normal business hours," as such proposal also lacks good cause. *Id.* Dr. Bahattab proposes instead that access be made available on a 24-hour basis in anticipation of the pressures of preparing his case and the potential for technical advisors who are unavailable during normal business hours due to other employment or duties.

### c. The Parties Should Not be Effectively Prohibited from Retaining Technical Advisors Outside the United States

Juniper proposes that section 3.2.1.9 of the protective order should include a restriction that source code must be viewed within the United States and that source code cannot be removed or transmitted outside the United States "in any format." Dr. Bahattab contends that

7

Plaintiff's proposal is, in effect, an unnecessary geographical limitation on who may serve as a technical advisor in this case. The procedures set forth in section 4.2 already require that the parties give notice in advance of providing confidential information to technical advisors. This provision further requires that technical advisors read and acknowledge this order and enter into the attached non-disclosure agreement which includes consent to the jurisdiction of the District Court for the District of Columbia for the enforcement of this order. Section 4.2 of this order allows the parties to confer and lodge any non-resolvable objections with the court. This is the proper procedure for addressing Juniper's particular concerns as they may arise—it cannot be said that *every* transmission of source code, regardless of type and quantity, outside the United States *in any manner of format* under every circumstance poses an undue risk to Juniper. Juniper's proposed blanket restriction of access would require Dr. Bahattab to pay for the relocation of any foreign Technical Advisors to the United States pending and during trial in order for the Technical Advisor to consult source code, which is unduly burdensome and without good cause. Juniper's global presence and Dr. Bahattab's own foreign residency make it reasonably likely that a technical advisor best-suited to Dr. Bahattab is not located in the United States. Furthermore, such a blanket limitation forecloses potential efficiencies in consulting with the Dubai Court of First Instance's court-appointed expert who is already conducting a technological investigation in the ongoing action between Dr. Bahattab and Juniper Networks in the United Arab Emirates.

### d. The Parties Should Not be Restricted to Printing Only 500 Pages of Source Code

Juniper proposes a restriction, in section 3.2.1.11 of the protective order, that printouts of source code may not exceed 500 pages. Dr. Bahattab contends that a page limitation

8

is unnecessarily restrictive and unmerited, especially a page limitation that is so draconian as to effectively deny Dr. Bahattab access to what may be highly probative evidence. Even thus far, discovery requests have been directed toward thirty or more products, each of which may have multiple versions of software associated with them, resulting in untold numbers of relevant pages of code. For example, as noted on its website, Juniper has at least 33 major iterations of its JUNOS router software. *See* Titles and Descriptions of Juniper Networks Documentation for J-series, M-series, MX-series, and T-series Routing Platforms, http://www.juniper.net/techpubs/software/junos/titles.html (last visited July 8, 2008); JUNOS Software: Documentation Archives, http://www.juniper.net/techpubs/software/junos/eol.html (last visited July 8, 2008). Version 9.0 of the JUNOS operating system released in early 2008 is purported to have over 20 million lines of code. Jim Duffy, *Cisco's IOS vs. Juniper's JUNOS,* Network World, April 17, 2008, at 2, http://www.networkworld.com/news/2008/041708-cisco-juniper-operating-systems.html. Furthermore, Juniper's E-series routers run on a different operating system, JUNOSe, which has its own functions, feature sets, and presumably its own separate source code. *Id.*

In light of the source code involved, Juniper's proposed page limitation is unduly restrictive. Juniper's suggested rigid 500 page limit quickly reduces to a mere 15 pages per major software release. At 25 lines per page, this represents a mere 375 lines of code out of a possible 20 million that Dr. Bahattab would be able to print. Dr. Bahattab has no way of determining what portions of Juniper's source code are relevant to the case without further discovery, and it is doubtful that a 500 page limit would suffice given the scope of the code that is likely to be involved. Accordingly, Dr. Bahattab does not agree to such an arbitrary page limitation.

e.  **The Timeframe for Resolving Objections to Technical Advisors Should Not be Unnecessarily Long**

Dr. Bahattab proposes that a party may object to the other party's initial notice of intent to retain a technical advisor who will have access to Confidential Information within five (5) calendar days or waive any objection.  If the proposing party refuses to withdraw its proposed technical advisor, then Dr. Bahattab further proposes that an objecting party must move for a ruling on a technical advisor within two (2) calendar days of the proposing party's refusal to withdraw a technical advisor.  By this time, the moving party will have had seven days to refine and/or reconsider their objection.  Additionally, Dr. Bahattab proposes a three (3) calendar day period for the non-moving (proposing) party to respond, with no further briefing permitted by either party.  For simplicity of reference, this timing schedule shall be referred to as "5-2-3 calendar-day" timing.  By comparison, Juniper proposes "5-5-5-5 business day" timing, which includes an additional five (5) business day period for a reply brief.

With regard to this provision, the Parties' negotiated toward, but ultimately failed to agree on, a tentative compromise of "6-5-5 calendar-day" timing during their conference held on August 14, 2008.  *See* Ex. H.  This attempted compromise was unsuccessful because of the apparently mistaken presumption that no reply would be permitted.  The presumption arose because of the absence of a provision for a reply in the draft protective order and the explicit assertion by Dr. Bahattab that there would be "no further reply for the moving party."  *See* Ex. F at 21.  Juniper now argues that there also must be a provision for a reply (presumably within five (5) business days pursuant to the Federal Rules) which was contrary to the understanding of Dr. Bahattab.  Juniper's proposal, even as shortened by potential compromise, including the reply period, incorporates a potential delay of at least sixteen calendar days and 5 business days

10

(potentially 23 calendar days) between initial notice of a technical advisor to the filing of an opposition of the motion, and is now even in excess of Dr. Bahattab's understanding of Juinper's initial proposal of "5-5-5 business-day" timing.  Factoring in the Court's time to decide on any objections, introduction of a technical expert to the case could easily be delayed well over a month, and such delay would significantly impact Dr. Bahattab's ability to complete expert reports before the Court-ordered December 15, 2008 deadline.  Dr. Bahattab's proposals are intended to prevent any unnecessary delay that would unfairly prejudice either party.

**III.    Conclusion**

For the above reasons, defendant Dr. Bahattab respectfully requests that the Court grant his motion for a protective order.

Dated: August 15, 2008                    Respectfully submitted,
                                          DEWEY & LEBOEUF, LLP
                                          1101 New York Avenue, N.W., Suite 1100
                                          Washington, D.C. 20005-4213
                                          hasbill@dl.com
                                          Tel: 202-986-8141
                                          Fax: 202-956-3263

                                          By:  s/Henry W. Asbill
                                          Henry W. Asbill (DC Bar No. 938811)

                                          FERRELL LAW, P.A.
                                          34th Floor, Miami Center
                                          201 South Biscayne Blvd.
                                          Miami, FL 33131
                                          gmahfood@ferrellworldwide.com
                                          Tel: 305-371-8585
                                          Fax: 305-371-5732

                                          By: s/George G. Mahfood
                                          George G. Mahfood (Fl. Bar No.  0077356)
                                          *Appearing Pro Hac Vice*

                                          *Attorneys for the Defendant*

11

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUNIPER NETWORKS, INC.,

     Plaintiff,

        v.                         Case No.: 1:07-cv-01771-PLF

ABDULLAH ALI BAHATTAB,

     Defendant.

_____/

CERTIFICATE OF SERVICE

     I hereby certify that on August 18, 2008, I electronically filed this Corrected Motion for a Protective Order with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to received electronically Notices of Electronic Filing.

                      Respectfully submitted,
                      DEWEY & LEBOEUF, LLP
                      1101 New York Avenue, N.W., Suite 1100
                      Washington, D.C. 20005-4213
                      hasbill@dl.com
                      Tel: 202-986-8141
                      Fax: 202-956-3263

                      By: _s/Henry W. Asbill_____
                            Henry W. Asbill (DC Bar No. 938811)

FERRELL LAW, P.A.
34th Floor, Miami Center
201 South Biscayne Blvd.
Miami, FL 33131
gmahfood@ferrellworldwide.com
Tel: 305-371-8585
Fax: 305-371-5732

By: _s/George G. Mahfood_____
    George G. Mahfood (Fl. Bar No. 0077356)
    *Appearing Pro Hac Vice*

Attorneys for the Defendant

SERVICE LIST

JUNIPER NETWORKS, INC. v. ABDULLAH ALI BAHATTAB

CASE NO.: Case No.: 1:07-cv-01771-PLF
United States District Court for the District Of Colombia


Alan M. Fisch
E-mail:  afisch@kayescholer.com
Jason F. Hoffman
E-mail:  jahoffman@kayescholer.com
David L. Cousineau
E-mail:  dcousineau@kayescholer.com
Kay Scholer LLP
The McPherson Building
901 Fifteenth Street, N.W.
Washington, DC  20005
Tel:  202-682-3500 / Fax:  202-682-3580
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUNIPER NETWORKS, INC.,                )
                                       )
                Plaintiff,             )
                                       )
        v.                             )
                                       )        Civil No. 1:07cv1771-PLF (AK)
ABDULLAH ALI BAHATTAB,                 )
                                       )
                Defendant.             )
                                       )

## [PROPOSED] PROTECTIVE ORDER

1.      **DEFINITIONS**

    1.1.    "Confidential Information" means Confidential Information that is technical,

commercial, financial or marketing in nature and that the designating party reasonably and in

good faith believes is confidential and that its disclosure would result in a clearly defined and

very serious injury to its business.

    1.2.    "Disclosing Party" means any Party or third party who produces for inspection,

provides access to, provides copies of, or otherwise discloses Confidential Information in

connection with this litigation.

    1.3.    "Document" or "documents" mean documents and writings, and include, but are

not limited to, records, exhibits, reports, samples, electronic messages, compilations, transcripts,

video or audio recordings, disks, affidavits, briefs, summaries, notes, abstracts, drawings,

company records and reports, answers to interrogatories, responses to requests for admissions,

and motions, including copies or computer-stored or electronic versions or compilations of any

of the foregoing.

1.4. "Producing Party" shall mean any Party who discloses or produces for inspection

Confidential Information.

1.5. "Requesting Party" shall mean any Party who requests the production, inspection

or disclosure of Confidential Information from a Producing Party.

1.6. "Receiving Party" shall mean any Party who receives the Confidential

Information of a Producing Party.

1.7. "Outside Counsel" shall mean the attorneys and employees of Kaye Scholer LLP

for plaintiff Juniper Networks, Inc. and the attorneys and employees of Dewey & LeBoeuf, LLP

and Ferrell Law, P.A., for defendant Dr. Abdullah Ali Bahattab.

## 2.     PRODUCING AND DESIGNATING INFORMATION

2.1. Generally

2.1.1. Any information produced or disclosed in this action (in pretrial

discovery, as a deposition transcript or exhibit, in a pleading or otherwise) deemed to contain or

constitute Confidential Information shall be so designated by any party to this action, or any

other supplier of that information, (1) in writing by typing, stamping, or affixing conspicuously

on its face (in such a manner as will not interfere with the legibility thereof ) Confidential" or

"Confidential -- Source Code" at the time of production or service thereof, or (2) orally on the

record at a deposition or conference. Oral notice shall be effective only for those parties in

attendance personally or by counsel, or for those parties who receive a transcript containing or

marked with a confidentiality designation.  The designating party shall use due care to designate only information that truly merits such designation.

2.1.2.   All documents produced by a Disclosing Party shall bear identifying numbers when a copy or copies are given to the Receiving Party together with a designation identifying the disclosing entity.

2.1.3.1.   Documents containing privileged information may not be withheld from production if the privileged information can be redacted. Any producing party may redact privileged or protected material from documents and things it produces, including matter that the producing party claims is subject to the attorney-client privilege, work product immunity or other privilege or immunity. The producing party shall mark each document or thing where matter has been redacted with a legend stating "REDACTED FOR PRIVILEGE" or a comparable descriptive notice. Where a document consists of more than one page, at least the first page and each page on which information has been redacted shall be so marked. The producing party shall preserve an unredacted version of each document. This provision shall not affect any obligation to provide a log of information redacted or otherwise withheld on the basis of the attorney-client privilege, work product immunity or other privilege or immunity.

2.1.3.2.   Notwithstanding the requirements of FRCP 26(b)(5), a party may withhold and not log privileged communications to or from its outside counsel or privileged documents created by its outside counsel that were created or made after the party consulted that counsel to obtain professional legal services from that counsel relating to the prosecution or defense of a claim in this litigation.

2.1.4.   To the extent that documents, things, and deposition testimony are sought from a third party, such third party shall have the right to designate any such documents, things,

or deposition testimony as "Confidential" and the use and disclosure of such Confidential

Information by any Receiving Party shall be governed in all respects by the terms of this Order.

       2.1.5.   The use of Confidential Information during trial or any hearing in this

matter shall be governed by relevant local rules of the Court, future orders of the Court, or by

stipulation between the parties.

    2.2.     Production of Documents and Things

       2.2.1.   The designating party shall mark each affected document or thing with a

legend stating "Confidential" as appropriate, or a comparable notice. Where a document consists

of more than one page, at least the first page and each page on which Confidential Information

appears shall be so marked. This provision shall not apply where it is impractical or infeasible to

mark the affected document or thing such as in the case of an original that cannot be readily

copied.  In that event, the designating party shall provide separate written notice.

       2.2.2.   In the case of Confidential Information produced in a non-paper medium

(e.g., videotape, audiotape, computer disks, etc.), the appropriate designation shall be affixed to

the outside of the medium or its container so as to clearly give notice of the designation.

       2.2.3.   Documents should not be given a blanket designation of 'Confidential

Information;' only confidential portions of documents should be designated.

       2.2.4.   The Parties must use reasonable care to avoid designating any material as

Confidential Information that is not entitled to such designation or is generally available to the

public.

    2.3.     Depositions

2.3.1.   A party may designate deposition transcripts and exhibits as Confidential Information (a) orally on the record during the deposition; or (b) by notifying all other parties in writing within 30 calendar days of receiving the transcript of the exhibits, transcript, or portions thereof, that contain Confidential Information.

2.3.2.   Until 30 calendar days after receiving a deposition transcript, each party shall treat the entirety of each deposition transcript, all information disclosed therein, and each exhibit thereto as "Confidential" unless before the deposition, the exhibit was properly treated as not having any Confidential Information. After the 30 day period, however, deposition transcripts, all information disclosed therein and each exhibit thereto, shall be treated in accordance with how they are actually designated.

2.3.3.   During a deposition, Confidential Information may be disclosed to (a) stenographers, videographers, and Court personnel, as necessary; and (b) a deponent during the deponent's deposition if

2.3.3.1.      The deponent is listed as an author, addressee, or recipient on the face of a document designated "Confidential";

2.3.3.2.      The deponent had seen the Confidential Information prior to the deposition;

2.3.3.3.      The Confidential Information was produced by or obtained from said deponent or the deponent's employer;

2.3.3.4.      The parties stipulate in writing to allow the deponent to review the document; or

2.3.3.5.    Upon order of the Court for good cause shown.

## 3.    LIMITATIONS ON USING AND DISCLOSING INFORMATION

3.1.    Limitations on Use and Disclosure

3.1.1.   All Confidential Information produced, exchanged or disclosed in this lawsuit shall be used solely for the purpose of litigating this case, and for no other business, commercial or other purpose whatsoever.

3.1.2.   Anything designated "Confidential" shall not be disclosed or made available to any person or entity other than:

3.1.2.1.    Outside Counsel, including litigation support personnel (e.g., copy services, computer consulting and support services, visual aid providers, translators, or other independent litigation support services) who are retained by Outside Counsel for purposes of assisting counsel in this action. Any outside attorney or law firm other than those indicated above may be added to this Protective Order as counsel of record for a Party upon 10 calendar days advance written notice to all other Parties, but shall not be added to the Protective Order nor entitled to access any Confidential Information should any other Party object in writing to the designation of counsel during such 10 day period. Any objection to the addition of any attorney or law firm to Outside Counsel shall be resolved by the Court if not resolved by the Parties;

3.1.2.2.    Technical advisors pursuant to the provisions of Section 4 of this Protective Order;

3.1.2.3.        Mock jurors who are specifically retained by a Party to this action for purposes of this litigation and who are not otherwise currently employed by (1) a Party, or (2) any predecessor, parent or affiliated company of a Party; provided that each mock juror signs the Nondisclosure Agreement, Attachment A to the Protective Order;

3.1.2.4.        The Court and any persons the Court employs whose duties require access to the information, including jurors and court reporters; and

3.1.2.5.        Officers before whom a deposition or other testimony is taken (e.g., stenographic reporters and videographers) and necessary clerical and support personnel who are assisting such officers, who are provided a copy of this Protective Order and advised that Confidential Information disclosed to them may not be used in any manner other than with respect to this action.

3.2.    Source Code

3.2.1.  Documents or other things that are designated Confidential Information and contain a party's source code may be designated "Confidential – Source Code." Source Code shall be produced in its entirety in computer searchable format, without redaction, alteration or deletion. All "Comments" related to Source Code and source code files, including any "Comments" kept separately from the Source Code and/or source code files, shall be produced. The definition of "Comments" includes "check-in comments," "revision comments," and other similar comments. Executable files and object code files shall be produced with the source code. Source Code shall be provided the following further protections

3.2.1.1.        Each party producing software and/or computer source code ("Source Code") shall produce Source Code in searchable electronic form on CDs, DVDs,

or hard drives bearing production identification numbers and marked as "Confidential – Source Code;"

          3.2.1.2.      The Source Code CDs, DVDs, or hard drives shall, at the Producing Party's discretion, be produced directly to the Receiving Party or made available for inspection as follows:

          In the case of production of Source Code by Juniper, the Source Code will be made available for review at a single secure site in Washington, DC, at a location within the control of outside counsel of record for Dr. Bahattab.  In the case of production of Source Code at a secure site by Dr. Bahattab, the Source Code will be made available for review at a single secure site in Washington, DC, at a location within the control of outside counsel of record for Juniper.

          As an alternative, any Producing Party may make its source code available for review at a single secure site in Washington, DC within the control of a third party (*i.e.*, escrow company) according to the additional terms in Paragraphs 3.2.1.4 and 3.2.1.5.  If a Producing Party exercises this option, it assumes the payment of all costs related thereto.

          3.2.1.3.      The Source Code will be viewed only on non-networked computers in secure, locked areas of the designated offices of the Receiving Party (the "Source Code Custodian") except as provided herein;

          3.2.1.4.      For Third Party Control of Source Code.  The third party secure site shall be provided at the Producing Party's expense in the District of Columbia and shall be available from the date of this Protective Order until the conclusion of trial in this matter on three (3) business days' written notice of the first use and on twenty-four (24) hours written notice of any subsequent use.  If the secure site is used on consecutive days, notice should be

- 8 -

given by 5:00 p.m. on the day prior to use. A party reviewing the Source Code shall, with proper

notice, have 24-hour access to the secure site seven days a week.

              3.2.1.5.          Access to information designated "Confidential – Source

Code," shall be limited to Source Code Custodians and the persons described in Paragraph 3.1.2.

Information designated "Confidential – Source Code" shall not be produced, provided, disclosed,

summarized, described, or characterized to any party, person, or entity other than those specified

in Paragraph 3.1.2.

              3.2.1.7.          A Receiving Party may include excerpts of Source Code in

a pleading, exhibit, expert report, discovery document, deposition transcript, other Court

document, or any drafts of these documents ("Source Code Documents"); each excerpt of Source

Code quoted in a Source Code Document shall be insubstantial when compared to the entire

Source Code produced by the Producing Party -- as an example, excerpts of approximately 25 to

40 lines in length would be allowed;

              3.2.1.8.          To the extent portions of Source Code are quoted in a

Source Code Document, either (1) the entire document will be stamped and treated as

Confidential – Source Code or (2) those pages containing quoted Source Code will be separately

bound, and stamped and treated as Confidential – Source Code;

              3.2.1.9.          No electronic copies of Source Code shall be made, except

as necessary to provide an electronic copy of such source code at each such location and to

maintain back-up copies of the information on each such computer. However, to the extent

portions of Source Code are quoted in a Source Code Document, Source Code Custodians and

the persons described in Paragraph 3.1.2. shall be permitted to store and access Source Code

Documents on a computer and on a computer network that limits access to only necessary

viewers; Source Code custodians and the persons described in Paragraph 3.1.2. may also send Source Code Documents to authorized persons via electronic mail;

       3.2.1.10.     Source Code Documents stored on a computer or computer network shall be password protected so as to limit access to authorized persons;

       3.2.1.11.     Any and all such printouts or photocopies shall be marked "Confidential – Source Code";

       3.2.1.12.     The Receiving Party shall maintain a log of all files that are printed or photocopied;

       3.2.1.13.     Should such printouts or photocopies be transferred back to electronic media, such media shall continue to be labeled "Confidential – Source Code" and shall continue to be treated as such;

       3.2.1.14.     If the Receiving Party or its technical advisor makes printouts or photocopies of portions of Source Code, the Receiving Party shall keep the printouts or photocopies in a secured locked area in the office of the outside counsel or technical advisor. The Receiving Party may also temporarily keep the printouts or photocopies at:  (i) the sites where any depositions relating to source code are taken for the dates associated with the taking of the deposition; (ii) the Court; or (iii) any intermediate location reasonably necessary to transport the information (*e.g.,* a hotel prior to a deposition).

3.3.    Filing Under Seal

     3.3.1.  A Party seeking to file with the Court any material (including without limitation, pleadings, motions, transcripts or portions thereof) that comprises, contains, discloses, reproduces or paraphrases any designated Confidential Information shall file the material under seal with the Court pursuant to the procedures governed by L. Civ. R. 5.1(j)(2), (3), and (4).

3.4.    Depositions

3.4.1.   Unless modified by agreement of counsel or Court order, only those persons authorized by this Protective Order to receive Confidential Information may be present during those portions of a deposition which may require the disclosure of Confidential Information.

3.4.2.   If during the course of a Disclosing Party's deposition, a Disclosing Party believes a portion of its testimony constitutes Confidential Information, counsel for the Producing Party may designate on the record such testimony and the resulting portion of the deposition transcript as "Confidential."

3.4.3.   Each deposition transcript and exhibits thereto shall be presumptively deemed to contain Confidential Information and subject to the provisions of this Protective Order for a period of 30 calendar days following receipt of the transcript by counsel for the deponent. Within the 30 days, counsel for the deponent or for any Party to this action may designate certain portions of the transcript and/or exhibits as "Confidential" by notifying all counsel of record in writing of the designation, and such pages or portions thereof and exhibits shall be treated as Confidential Information subject to the terms of this Protective Order. If no confidentiality designations are made within 30 calendar days after receipt of the transcript, the transcript shall be considered not to contain any Confidential Information.

3.5.    Exceptions

Notwithstanding any provision of this Protective Order, nothing in this Protective Order shall prohibit or otherwise restrict the use or disclosure of information, documents or things, if, at the time of such use or disclosure:

      3.5.1.   A Party is merely using or disclosing its own information. A Party may freely use and disclose its own Confidential Information without restriction.

      3.5.2.   The Court has ordered such use or disclosure, or the Court has ordered the relevant information undesignated.

      3.5.3.   Each Party that produced the information or designated the information as Confidential Information has consented in writing to such use or disclosure.

      3.5.4.   The information is used or disclosed in the examination, at a deposition hearing, or trial, of any current or former officer, director, employee, agent, expert or consultant of the Party whose information is used or disclosed, so long as that person had access or knowledge of the information.

      3.5.5.   The person or entity receiving the information wrote, was the source for, or lawfully previously received that information.

      3.5.6.   The information (1) was part of the public domain or publicly available when it was produced, or (2) becomes part of the public domain or publicly available through no act, omission or fault of any Receiving Party or its counsel or agents, and through no unlawful or improper act of any other person.

3.5.7.   The information is or was independently developed, prior to receipt in this litigation, by the Party wishing to use or disclose the information; or

3.5.8.   The information (1) is or was in the lawful possession of the Party wishing to use or disclose the information and (2) was not acquired under any obligation of confidentiality to the designating Party, nor through the illegal or improper act of any person.

**4.      DISCLOSURE OF TECHNICAL ADVISORS**

4.1.    Information designated by the producing party as "Confidential" or "Confidential - Source Code", and such copies of this information as are reasonably necessary for maintaining, defending or evaluating this litigation may be furnished and disclosed to the Receiving Party's technical advisors.  The term "technical advisor" shall mean an independent, outside expert witness or consultant with whom counsel may deem it necessary to consult.

4.2.    No disclosure of Confidential Information to a technical advisor shall occur until a signed form attached hereto as Attachment A stating that the technical advisor has read and understands this Protective Order and agrees to be bound by its terms has been provided to the Producing Party.  A party desiring to disclose Confidential Information to a technical advisor shall also give prior written notice to the producing party, who shall have six (6) calendar days after such notice is given to object in writing. The party desiring to disclose Protected Information to a technical advisor must provide the following information for each technical advisor: name, address, curriculum vitae, current employer, employment history for the past four (4) years, and a listing of cases in which the witness has testified as an expert at trial or by deposition within the preceding four years. No Confidential Information shall be disclosed to such expert(s) or consultant(s) until after the expiration of the foregoing notice period.

4.3.    A party objecting to disclosure of Confidential Information to a technical advisor

shall state with particularity the ground(s) of the objection and the specific categories of

documents that are the subject of the objection. The objecting party's consent to the disclosure of

Confidential Information to a technical advisor shall not be unreasonably withheld, and its

objection must be based on that party's good faith belief that disclosure of its Confidential

Information to the technical advisor will result in specific business or economic harm to that

party.

4.4.    If after consideration of the objection, the party desiring to disclose the

Confidential Information to a technical advisor refuses to withdraw the technical advisor, that

party shall provide notice to the objecting party.  Thereafter, the objecting party, shall move the

Court, within five (5) calendar days of receiving such notice, for a ruling on its objection. A

failure to file a motion within the five (5) calendar day period shall operate as an approval of

disclosure of the Confidential Information to the technical advisor.  After the filing of the motion

with the Court, the non-moving party shall have five (5) calendar days to respond to the motion.

There will be no reply for the moving party.  The parties agree to cooperate in good faith to

shorten the time frames set forth in this paragraph if necessary to abide by any discovery or

briefing schedules.

4.5.    The objecting party shall have the burden of showing to the Court "good cause"

for preventing the disclosure of its Confidential Information to the technical advisor. This "good

cause" shall include a particularized showing that: (1) the Confidential Information is

confidential commercial information, (2) disclosure of the Confidential Information would result

in a clearly defined and serious injury to the objecting party's business, and (3) the proposed

- 14 -

technical advisor is in a position to allow the Confidential Information to be disclosed to the objecting party's competitors.

**5.      CHALLENGES TO DESIGNATIONS**

5.1.      Any Party to this action may contest at any time the designation of anything as Confidential Information by giving the designating Party written notice that identifies the relevant designated information and states in reasonable detail the reasons why the information should not be so designated. Any Parties in disagreement about such designations shall meet and confer in good faith in person or by telephone to attempt to resolve their disagreement. If those Parties cannot resolve their disagreement within 10 calendar days after a Party contests the designation, any Party may thereafter petition the court to resolve the matter. If such an objection or petition is made, such information shall be treated according to the designation that the designating Party gives it until the issue is resolved in writing by the Parties or the petition is decided by the Court or an appellate court, should appellate review by sought.

5.2.      "In any motion challenging a designation, the designating Party shall have the burden of establishing the need for classification as 'Confidential Information.'"

**6.      WAIVER AND INADVERTENT DISCLOSURES**

6.1.      Privilege

6.1.1.   Nothing in this Protective Order shall require disclosure of information that is protected by the attorney-client privilege, work product doctrine, or other privilege or immunity.

- 15 -

6.1.2.   Nothing in this Protective Order shall be deemed to waive any applicable privilege or immunity, or to limit the relief available to a Party claiming that it inadvertently disclosed information subject to any privilege, doctrine, or immunity.

6.1.3.   If information subject to a claim of attorney-client privilege, work product doctrine, or other privilege or immunity is nevertheless inadvertently or unintentionally produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to any such privilege, doctrine, or immunity.

6.1.4.   Any party that inadvertently produces materials protected by the attorney-client privilege, work product doctrine, or other privilege or immunity may obtain the return of those materials by notifying the recipient(s), as soon as reasonably possible after the producing party becomes aware of any inadvertent or unintentional disclosure, and providing a privilege log for the inadvertently produced materials.  The recipient(s) shall then gather and return all copies of the privileged material to the Producing Party, except for any pages containing privileged markings by the recipient, which pages shall instead be destroyed and certified as such by the recipient to the Producing Party.

6.1.5.   This Protective Order will not preclude any Party from moving the Court for an order directing the disclosure of information withheld under a claim of privilege or immunity.

6.2.     Inadvertent Disclosures - Confidential Information

6.2.1.   If a Party inadvertently fails to mark a document containing Confidential Information with the appropriate designation, it may later apply such a designation by providing

- 16 -

counsel for each other Party written notice of the proper designation for each affected document or thing. Upon receiving such a notice, each party shall treat the affected documents or things, and all copies thereof, as designated as the notice states, and each Receiving Party shall make a reasonable effort to (1) prevent improper use or disclosure of such information and (2) obtain the return of such information that it disclosed to any person not authorized to receive such designated information. The designating Party shall also provide a properly marked replacement for each affected document and thing.

6.2.2.   If a Producing Party inadvertently discloses information without designating such information as Confidential Information, that disclosure shall not be deemed a waiver of confidentiality with regard to that information, or similar or related information.

6.2.3.   Neither the existence of this Protective Order, nor the designation of anything as Confidential Information shall, in and of itself, raise any inference as to whether the designated information is confidential.

## 7.    COMPLIANCE

7.1.    Individuals who receive Confidential Information agree to subject themselves to the jurisdiction of the United States District Court for the District of Columbia for the sole purpose of enforcement of the Protective Order.

7.2.    If any information that is designated (at the time of use or disclosure) as Confidential Information is used or disclosed other than in the manner authorized by this Protective Order, then the Party responsible for such use or disclosure shall immediately disclose such use or disclosure to counsel of record and each entity that supplied or designated the affected information and, without prejudice to other rights and remedies available to the supplier

- 17 -

or designator, shall make every effort to obtain the return of such information and prevent further

improper use or disclosure of such information. Such disclosure shall include: (a) a description

of the Confidential Information used or disclosed (with Bates numbers of any documents

involved, if known); (b) the date and nature of the use and disclosure; (c) the identity of the

person(s) who made such use or disclosure and to whom the Confidential Information was

disclosed; and (d) a description of the efforts taken to comply with the provisions of this

paragraph.

     7.3.     Except as provided for elsewhere in this Protective Order, any disclosure or use

by any person or entity of any inadvertently disclosed or inadvertently non-designated

information shall not be deemed a violation of this Protective Order if such disclosure or use

occurs before that person or entity receives written notice of that inadvertent disclosure or

nondesignation.

## 8.     CONCLUSION OF LITIGATION

     8.1.     Absent a court order or written permission of the disclosing and designating Party

or Parties, and unless otherwise stated in another provision in this Protective Order, all

provisions of this Protective Order that restrict the disclosure or use of information shall continue

to be binding after the conclusion of this action.

     8.2.     Upon written request by the Disclosing Party after the conclusion of this litigation

and all appeals therefrom, and absent a court order to the contrary, all documents or things

containing or comprising "Confidential Information" shall be returned to the Disclosing Party or

destroyed.  Each Party or entity that received or has any such documents or things, or copies

thereof, shall certify in writing to counsel for the Producing Party that it returned or destroyed, at

its option, every such document and thing, and all copies, summaries and abstracts thereof, in its possession, custody or control.

8.3.    Each firm having counsel of record may retain for archival purposes one copy of all pleadings, papers filed with the court, written discovery requests, deposition transcripts, transcripts of court proceedings, correspondence and work product, including portions designated as Confidential Information, subject to the continuing obligations of all other provisions of this Protective Order, and provided that nothing in said archival copy shall be disclosed to anyone other than that counsel's partners, associates or employees.

8.4.    The Court retains jurisdiction even after final disposition of this litigation to enforce this Protective Order and to make such amendments, modifications, deletions and additions to this Protective Order as the court may from time to time deem appropriate.

8.5.    The Parties reserve all rights to apply to the court at any time, before or after final disposition, for an order: (a) modifying this Protective Order; (b) seeking further protection against discovery or other use of Confidential Information, or documents, transcripts or other materials reflecting Confidential Information; or (c) seeking further production, discovery, disclosure or use of claimed Confidential Information, or documents, transcripts or other materials reflecting Confidential Information.

## 9.    MODIFICATION

9.1.    Changes or exceptions to this Protective Order may be made only by written agreement of the Parties subject to court approval, or by court order.

9.2.    This Protective Order does not abridge and is without prejudice to the rights of a Party (a) to oppose or object to the disclosure, production, use or admissibility of anything, or to refuse to disclose or produce anything based on any available legal grounds or objections, (b) to modify or seek relief from this Protective Order, (c) to seek judicial review or other appropriate action regarding any court ruling concerning information that is or was designated Confidential Information, (d) to seek any additional protection that the party deems appropriate, or (e) to seek the joinder of additional persons authorized to review material under Paragraph 3.1.2, or to seek leave to show a "Confidential" document to a particular person.

Respectfully Submitted,


/s/ Henry W. Asbill_____
Henry W. Asbill (DC-938811)
DEWEY & LEBOEUF LLP
1101 New York Avenue, N.W.
Suite 1100
Washington, D.C.  20005-4213
hasbill@dl.com
Tel:  (202) 986-8141
Fax:  (202) 956-3263


/s/ George G. Mahfood_____
George G. Mahfood (Fl. Bar No. 0077356)
(appearing *pro hac vice*)
FERRELL LAW, P.A.
34th Floor, Miami Center
201 South Biscayne Boulevard
Miami, FL  33131
gmahfood@ferrellworldwide.com
Tel:  (305) 371-8585
Fax:  (305) 371-5732

*Attorneys for Defendant*
*Abdullah Ali Bahattab*

## <u>ORDER</u>

Good cause appearing, it is so **ORDERED**.

Dated: _____, 2008

      _____
      Honorable Alan Kay
      United States Magistrate Judge
      U.S. District Court, District of Columbia

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **JUNIPER NETWORKS, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 1:07cv1771-PLF (AK) |
| | ) | |
| **ABDULLAH ALI BAHATTAB,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## NONDISCLOSURE AGREEMENT

1.      My name is _____.

I live at _____, _____, _____.

I am employed as (position) _____ at

_____ (name and address of employer).

2.      I have received a copy of the Protective Order entered in the above

captioned litigation and have reviewed its provisions.

3.      I understand the provisions of the Protective Order, and agree to comply with and

to be bound by its provisions, unless and until modified by further order of the Court.

4.      I will not disclose to any individuals, other than those specifically authorized in

the Order, any information designated as Confidential Information pursuant to the Order.  I will

not copy, use or disclose any information designated as Confidential Information, except for the

purpose of the litigation.

5.      I understand that any violation of the Order may constitute contempt of a court

order and/or subject me to sanctions. I hereby consent to the jurisdiction of the United States

District Court for the District of Columbia for the sole purposes of enforcing this Order.  I

declare under penalty of perjury under the laws of the United States that the foregoing is true and

correct. Executed this _____ day of _____, 20__, at _____, _____.

Dated: _____          _____
                                                                    (Signature)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JUNIPER NETWORKS, INC.,

      Plaintiff,

v.                                  Case No.: 1:07-cv-01771-PLF (AK)

ABDULLAH ALI BAHATTAB,

      Defendant.

_____ /

## CERTIFICATION OF HENRY W. ASBILL
## PURSUANT TO FED. R. CIV. P. 26(c)(1)

    1.      I am a partner in the law firm of Dewey & LeBoeuf, LLP, and a member in good standing of the District of Columbia Bar.  I am appearing as counsel to Dr. Abdullah Ali Bahattab in this action.

    2.      I hereby certify that counsel for Dr. Bahattab have in good faith conferred with counsel for Juniper Networks, Inc., through electronic mail communications between the parties dated June 23, June 24, June 30, July 1, July 2, July 14, July 17, and July 22 of 2008, and a teleconference between the parties held on August 14, 2008, in an effort to resolve the disputed issues regarding the proposed protective order without Court action.

    3.      Despite our efforts, the parties have been unable to reach agreement.

    I declare, under penalty of perjury, that the foregoing is true and correct.

Executed on *August 15, 2008*                                     

                                        Henry W. Asbill (DC Bar No. 938811)
                                        DEWEY & LEBOEUF, LLP
                                        1101 New York Avenue, N.W., Suite 1100
                                        Washington, D.C. 20005-4213

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JUNIPER NETWORKS, INC.,

      Plaintiff,

v.                                Case No.: 1:07-cv-01771-PLF (AK)

ABDULLAH ALI BAHATTAB,

      Defendant.

_____/

## DECLARATION OF BRANDON M. JORDAN IN SUPPORT OF DEFENDANT'S MOTION FOR PROTECTIVE ORDER

1.      I am an adult resident of Washington, D.C.

2.      I am an Associate Pending Admission at Dewey & LeBoeuf, LLP (VA Bar No. 75054, D.C. Pending).

3.      Attached hereto as Exhibit A is a true and correct copy of email correspondence between myself, Brandon M. Jordan, and counsel for Juniper Networks, Jason Hoffman occurring July 17, 2008 regarding revisions to the draft protective order and other matters.

4.      Attached hereto as Exhibit B is a true and correct copy of email correspondence from counsel for Juniper Networks, Jason Hoffman, as received by myself, Brandon M. Jordan on July 22, 2008 regarding Juniper's positions as to the draft protective order.

1

5.      Attached hereto as Exhibit C is a true and correct copy of email correspondence from myself, Brandon M. Jordan, to counsel for Juniper Networks, Jason Hoffman, on June 30, 2008 regarding Juniper's silence on producing revisions to the draft protective order.

6.      Attached hereto as Exhibit D is a true and correct copy of Juniper Networks, Inc.'s Objections and Answers to Abdullah Ali Bahattab's First Set of Interrogatories as served on counsel for Dr. Bahattab, dated July 14, 2008.

7.      Attached hereto as Exhibit E is a true and correct copy of Juniper Networks, Inc.'s Objections and Responses to Abdullah Ali Bahattab's First Set of Requests for Production of Documents and Things as served on counsel for Dr. Bahattab, dated July 14, 2008.

8.      Attached hereto as Exhibit F is a true and correct copy of email correspondence from myself, Brandon M. Jordan, to counsel for Juniper Networks, Jason Hoffman, Alan Fisch, and David Cousineau, and the attached Proposed Protective Order intending to show the parties' positions as of the date of sending, July 14, 2008.

9.      Attached hereto as Exhibit G is a true and correct copy of email correspondence from myself, Brandon M. Jordan, to counsel for Juniper Networks, Jason Hoffman, Alan Fisch, and David Cousineau, requesting a teleconference to discuss the proposed protective order and other matters, dated August 7, 2008.

10.     Attached hereto as Exhibit H is a true and correct copy of email correspondence between myself, Brandon M. Jordan, and counsel for Juniper Networks, Jason Hoffman, dated August 14-15, 2008, summarizing positions taken during the Parties' teleconference held on August 14, 2008.

2

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed on _Aug. 15, 2008_

Brandon M. Jordan

3

# EXHIBIT A

## Jordan, Brandon

| | |
|---|---|
| **From:** | Jordan, Brandon |
| **Sent:** | Thursday, July 17, 2008 7:49 PM |
| **To:** | 'JaHoffman@kayescholer.com' |
| **Cc:** | AFisch@kayescholer.com; Meade, Courtney; dcousineau@kayescholer.com; Mahfood, George; Asbill, Henry; Auchter, Robert; SChu@kayescholer.com |
| **Subject:** | RE: Juniper v. Bahattab: Protective Order, Document Request Responses, Interrogatory Responses |

Mr. Hoffman,

Thank you for your response. With regards to the protective order, it is certainly our intent to provide Juniper with adequate time to incorporate its positions into the latest revisions. We note, however, that in our electronic mail message of Monday, July 14, 2008 we asked merely for a date by which we could expect Juniper's comments and or revisions to the protective order. Juniper did not provide any response whatsoever to our simple request for identification of a date.

It now appears that the process of moving for a protective order (should that become necessary) has been delayed by a series of events. Specifically, Juniper did not provide an initial draft as it had represented it would be doing, forcing Dr. Bahattab to draft a protective order out of concern that the discovery process will be delayed further without such an order. Dr. Bahattab was forced to anticipate the confidentiality concerns that are primarily that of Juniper Networks but nevertheless tried to provide a non-controversial protective order that would be acceptable with minimal revisions. The process of proposing and responding to revisions to Dr. Bahattab's draft that we provided to you has now gone on for almost a full month (that is generous because it does not include the month during which Juniper did not provide a draft as it had represented it would do in the L.Cv.R. 16.3 conference).

The ultimate result of this process may be the delay of discovery from Juniper Networks, the receipt of which is of critical importance to Dr. Bahattab.

Today's email was in response to your silence to Monday's request for a date when we could expect your revisions. Accordingly, and in light of your email, we will await Juniper's revisions on Tuesday, July 22.

As for Juniper's document requests and interrogatory responses, while we appreciate your representation that these were mailed on Monday, neither Mr. Asbill (as he has indicated to you by email) nor Mr. Mahfood have received this delivery. Note that Mr. Asbill's office at Dewey & LeBoeuf in D.C. is located only three blocks from your offices and that Mr. Mahfood's office is in Florida. Given that these packages have yet to arrive, we would ask for any digital courtesy copies of this material that you can provide to us.

Thank you,

Brandon

----------------------------------------------------------
Brandon M. Jordan
Associate Pending Admission
Dewey & LeBoeuf LLP
1101 New York Avenue, N.W., Suite 1100
Washington, D.C. 20005
Direct: +1 202 346 7915
General: +1 202 346 8000
Fax: +1 202 346 8102
brandon.jordan@dl.com
www.dl.com

-----Original Message-----
From: JaHoffman@kayescholer.com [mailto:JaHoffman@kayescholer.com]
Sent: Thursday, July 17, 2008 5:23 PM
To: Jordan, Brandon
Cc: AFisch@kayescholer.com; Meade, Courtney; dcousineau@kayescholer.com; Mahfood, George; Asbill, Henry; Auchter, Robert; SChu@kayescholer.com

Subject: Re: Juniper v. Bahattab: Protective Order, Document Request Responses, Interrogatory Responses

Brandon,

Thank you for your email.

First, Juniper provided its significant revisions to Bahattab's proposed protective order on July 2, 2008.  I note that Bahattab took 12 days to respond to Juniper's revisions.  Only three days have passed since that time and Juniper is reviewing Bahattab's proposed arguments regarding the protective order.  Juniper will provide its response by Tuesday, July 22.

Second, Juniper served on counsel of record in this matter its responses to Bahattab's discovery on July 14, 2008, the due date for such responses, via U.S. Mail.  Please let me know if Mr. Asbill and Mr. Mahfood did not receive their respective packages.


*************************************
Jason Hoffman
Kaye Scholer LLP
901 Fifteenth Street, N.W.
Washington, DC  20005
202-682-3531
202-414-0431 (Fax)
jahoffman@kayescholer.com



|  |  |
|---|---|
| "Jordan, Brandon" <bjordan@deweyleboeuf.com> | |
| | To |
| | JaHoffman@kayescholer.com; |
| 07/17/2008 03:07 PM | AFisch@kayescholer.com; dcousineau@kayescholer.com |
| | cc |
| | "Auchter, Robert" <rauchter@DeweyLeBoeuf.com>; "Mahfood, George" <gmahfood@ferrellworldwide.com>; "Meade, Courtney" <cmeade@ferrellworldwide.com>; "Asbill, Henry" <HAsbill@deweyleboeuf.com> |
| | Subject |
| | Juniper v. Bahattab: Protective Order, Document Request Responses, Interrogatory Responses |




Mr. Hoffman,

This email is to follow-up with you regarding (1) the proposed protective order and (2) Juniper's apparent lack of response to Dr. Bahattab's document requests and interrogatories.

First, with regards to the protective order, we provided you on Monday, July 14, 2008, an updated copy of the protective order reflecting Dr. Bahattab's positions regarding Juniper's various edits and additions.  At that time, we asked you for a date by which we would receive your final round of edits reflecting your positions so that it could be filed with the Court.  It is now Thursday, July 17, and we have had no word from you.

Recalling the history of our exchanges regarding a protective order (which was partially stated to you in my email to you on June 30, 2008): during our L.Cv.R. 16.3 status conference held on May 21, 2008, you indicated that Juniper would provide Dr. Bahattab with its proposed protective order for review.  Over a month passed from the L.Cv.R. 16.3 conference without any proposal or other word from Juniper regarding a protective order.  Given this period of silence on the issue, we provided you with our own initial draft protective order via email on Monday, June 23, 2008, in the hopes that we could agree on an order without judicial intervention and avoid any unnecessary delays in discovery.  As we have previously noted to you, discovery from Juniper remains of critical importance to Dr. Bahattab as was discussed during the teleconference with Judge Kay.  Hence, in the email attaching the proposed protective order, we also expressed the desire to file a stipulated order within the week beginning on June 23.  (On the following day, Tuesday, June 24, 2008, you requested via email an editable "Word" version of the draft protective order, and we provided to you such a copy within approximately twenty minutes of your request.)  A week passed without word from Juniper, at which time we followed-up with you via email on Monday, June 30, 2008, asking you for a date certain when Juniper would provide its revisions to the protective order.  On the following day, you indicated by email that you would provide us with your revisions on Wednesday, which was followed by an email on Wednesday, July 2nd with Juniper's revisions to the protective order, just before the July 4th holiday weekend.  We then provided you with an updated draft particularly stating our positions regarding the various substantive additions and deletions on July 14, 2008, and asked that Juniper let us know when they would provide us with the final round of edits stating its positions so that it could be filed with the court.  Having no word from you as of today, we ask that you let us know a date certain that we will receive your last round of edits to the protective order.  We intend on unilaterally filing a motion proposing our latest version of the protective order with the Court on Monday, July 21, 2008 should we not hear from you, though we will not represent that you have agreed to the proposal.

Second, we wish to inquire as to Juniper's apparent lack of response to Dr. Bahattab's document requests and interrogatories.  As you know, both parties exchanged document requests and interrogatories (along with initial disclosures) with one another on June 12, 2008.  Pursuant to Fed. R. Civ. P. 34(b)(2)(A), the time period to respond to document requests is "30 days after being served."  The parties have not stipulated otherwise, nor are we under a court order to the contrary.  Hence, responses to document requests were due on July 14, 2008 (July 12 being a Saturday).  As of today, July 17, 2008, it has been three days past the deadline for responses, and we have yet to receive service of Juniper's responses to Dr. Bahattab's first set of document requests.  Note that Dr. Bahattab dutifully responded to Juniper's 45 document requests on July 14, 2008 with hand delivery to your offices of his responses and objections, as well as 608 pages of discovery documents accompanied by a privilege log.  Furthermore, pursuant to Fed. R. Civ. P. 33(b)(2), the time period to respond to interrogatories is "30 days after being served with the interrogatories."  The parties have not stipulated otherwise, nor are we under a court order to the contrary.  Hence, responses to Dr. Bahattab's interrogatories were also due on July 14, 2008.  Similarly, it has now been three days past the deadline for responses to interrogatories, and we have yet to receive service of Juniper's responses to Dr. Bahattab's first set of interrogatories.  Note

that Dr. Bahattab dutifully responded to Juniper's interrogatories on July
14, 2008 with hand delivery to your offices of his responses and and
objections.  Please inform us as to the status of your responses to both
Dr. Bahattab's document requests and interrogatories.

Thank you,

Brandon

-----------------------------------------------------------
Brandon M. Jordan
Associate Pending Admission
Dewey & LeBoeuf LLP
1101 New York Avenue, N.W., Suite 1100
Washington, D.C. 20005
Direct: +1 202 346 7915
General: +1 202 346 8000
Fax: +1 202 346 8102
brandon.jordan@dl.com
www.dl.com


========================================================================

Pursuant to U.S. Treasury Department Circular 230, unless we
expressly state otherwise, any tax advice contained in this
communication (including any attachments) was not intended
or written to be used, and cannot be used, for the purpose
of (i) avoiding tax-related penalties or (ii) promoting,
marketing or recommending to another party any matter(s)
addressed herein.


This e-mail message, including attachments, is confidential,
is intended only for the named recipient(s) above and may
contain information that is privileged, attorney work product,
proprietary or exempt from disclosure under applicable law.
The unauthorized use, dissemination, distribution or reproduction
of this e-mail message, including attachments, is strictly
prohibited.  If you have received this message in error, or are
not an intended recipient, please immediately notify the sender
and delete this e-mail message, including attachments,
from your computer.  Thank you.
========================================================================


                    *   *   *   *


IRS CIRCULAR 230 DISCLOSURE:  To ensure compliance with Treasury Department regulations, we inform you that
any U.S. federal tax advice contained in this correspondence (including any attachments) is not intended or written to be
used, and cannot be used for the purpose of (i) avoiding penalties that may be imposed under the U.S. Internal Revenue
Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

# EXHIBIT B

## Jordan, Brandon

| | |
|---|---|
| **From:** | JaHoffman@kayescholer.com |
| **Sent:** | Tuesday, July 22, 2008 6:29 PM |
| **To:** | Jordan, Brandon |
| **Cc:** | AFisch@kayescholer.com; Meade, Courtney; dcousineau@kayescholer.com; Mahfood, George; Asbill, Henry; SChu@kayescholer.com; SChu@kayescholer.com; Auchter, Robert |
| **Subject:** | Juniper v. Bahattab:  Proposed Protective Order |

Brandon,

Juniper has reviewed Bahattab's suggested revisions and arguments in support of those revisions with regard to the proposed protective order. Juniper's responses are below.  Juniper is hopeful that the parties can agree upon the language of the protective order without burdening the Court and in a manner which will sufficiently protect the respective interests of the parties and facilitate the progress of disclosure and discovery in this case.  However, Juniper is prepared, if necessary, to take these issues to Magistrate Judge Kay.

1.   In response to Bahattab's proposed section 2.1.3, Juniper proposes sections 2.1.3.1 and 2.1.3.2.  Juniper proposes that section 2.1.3.1 read as follows:

"Any producing party may redact privileged or protected material from documents and things it produces, including matter that the producing party claims is subject to the attorney-client privilege, work product immunity or other privilege or immunity. The producing party shall mark each document or thing where matter has been redacted with a legend stating "REDACTED FOR PRIVILEGE" or a comparable descriptive notice. Where a document consists of more than one page, at least the first page and each page on which information has been redacted shall be so marked. The producing party shall preserve an unredacted version of each document. This provision shall not affect any obligation to provide a log of information redacted or otherwise withheld on the basis of the attorney-client privilege, work product immunity or other privilege or immunity.  This provision shall not apply where it is impractical, infeasible, or unduly burdensome to redact the affected document."

2.   Juniper proposes that section 2.1.3.2 read as follows:

"Notwithstanding the requirements of FRCP 26(b)(5), a party may withhold and not log privileged communications to or from its outside litigation counsel of record or privileged documents created by its outside litigation counsel of record that were created or made after the party consulted that counsel to obtain professional legal services from that counsel in the prosecution or defense of a specific claim in the litigation."

3.   Juniper opposes the addition of section 2.2.3 in its entirety.  The suggestion by Bahattab that Juniper has the burden of examining 20 million lines of source code to determine which parts are potentially non-confidential is unduly burdensome.

4.   Juniper opposes Bahattab's proposed section 3.1.2.4.  Juniper's proposed section 3.1.2.4 provides reasonable access to source code through the close of expert discovery at the expense of the producing party, should

the producing party so choose to produce source code in that manner.

5.    Juniper opposes Bahattab's removal of the following language from Section 3.2.1.9; Bahattab's suggestion that it would unilaterally submit confidential Juniper materials obtained in this litigation to a foreign court would place Bahattab and his counsel in violation of the yet-to-be-agreed-to protective order.

"Source Code shall be viewed within the designated United States offices of the Source Code Custodian.  Source Code shall not be removed from the United States, and shall not be transmitted outside the United States in any format."

6.    Juniper opposes Bahattab's removal of the page count limitation with regard to Source Code in Section 3.2.1.11.

7.    With regard to Section 4.2, Juniper proposes 5 business days to object in writing.

8.    With regard to Section 4.4, Juniper proposes 5 business days to file the motion and 5 business days to oppose the motion.

9.    Finally, with regard to Bahattab's proposed section 5.2, Juniper will agree to the following language:

"In any motion challenging a designation, the designating Party shall have the burden of establishing the need for classification as 'Confidential Information.'"

Regards,
--Jason

***********************************
Jason Hoffman
Kaye Scholer LLP
901 Fifteenth Street, N.W.
Washington, DC  20005
202-682-3531
202-414-0431 (Fax)
jahoffman@kayescholer.com

*  *  *  *

IRS CIRCULAR 230 DISCLOSURE:  To ensure compliance with Treasury Department regulations, we inform you that any U.S. federal tax advice contained in this correspondence (including any attachments) is not intended or written to be used, and cannot be used for the purpose of (i) avoiding penalties that may be imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

# EXHIBIT C

# Jordan, Brandon

| | |
|---|---|
| **From:** | Jordan, Brandon |
| **Sent:** | Monday, June 30, 2008 5:14 PM |
| **To:** | JaHoffman@kayescholer.com; AFisch@kayescholer.com; dcousineau@kayescholer.com |
| **Cc:** | Auchter, Robert; Meade, Courtney; Mahfood, George |
| **Subject:** | Protective Order Follow-Up |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |

Mr. Hoffman,

This is to follow-up on the proposed protective order I sent to you in email on Monday, June 23, 2008. During our L.Cv.R. 16.3 status conference held on May 21, 2008, you indicated that Juniper would provide Dr. Bahattab with its proposed protective order for review. During that conference, we also proposed an accelerated discovery schedule, despite our concerns of possible discovery delays, in an effort to reach a compromise in light of Juniper's desire for an early trial date.

Over a month passed from the L.Cv.R. 16.3 conference without any proposal or other word from Juniper regarding a protective order. Given this period of silence on the issue, we provided you with our own draft protective order via email last Monday, June 23, 2008, in the hopes that we could agree on an order without judicial intervention and avoid any unnecessary delays in discovery. Discovery from Juniper remains of critical importance to Dr. Bahattab as was discussed during the teleconference with Judge Kay. Hence, in the email attaching the proposed protective order, we also expressed the desire to file a stipulated order within the week. On the following day, Tuesday, June 24, 2008, you requested via email an editable "Word" version of the draft protective order, and we provided to you such a copy within approximately twenty minutes of your request.

A week has passed, and as of today, Monday, June 30, 2008, we have received no word from you regarding the draft protective order.

Please let us know a date certain when Juniper will provide us with any comments on the proposed protective order. We note that we have not heard anything from Juniper regarding a protective order in over six weeks and, under these circumstances, the absence of a protective order will not excuse any delay in the production of responsive documents. We hope to hear from you soon.

Thank you,

Brandon

------------------------------------------------------------------

Brandon M. Jordan
Associate Pending Admission
Dewey & LeBoeuf LLP
1101 New York Avenue, N.W., Suite 1100
Washington, D.C. 20005
Direct: +1 202 346 7915
General: +1 202 346 8000
Fax: +1 202 346 8102
brandon.jordan@dl.com
www.dl.com

# EXHIBIT D

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **JUNIPER NETWORKS, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil No. 1:07cv1771-PLF** |
| | ) | |
| **ABDULLAH ALI BAHATTAB,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## JUNIPER NETWORKS, INC.'S OBJECTIONS AND ANSWERS TO ABDULLAH ALI BAHATTAB'S FIRST SET OF INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff Juniper Networks, Inc. ("Juniper") hereby provides objections and answers to Defendant Abdullah Ali Bahattab's ("Bahattab") First Set of Interrogatories Pursuant to Fed. R. Civ. P. 33 (the "Interrogatories").

## GENERAL OBJECTIONS

1. Juniper objects to the Interrogatories and the definitions and instructions therein to the extent that they purport to impose any discovery obligation greater than or different from those required by the Federal Rules of Civil Procedure and the Rules of this Court.

2. Juniper objects to these Interrogatories to the extent they seek information that is not reasonably available to Juniper or that is not within Juniper's possession, custody, or control.

3. Juniper objects to these Interrogatories to the extent they seek information not relevant to a claim or defense of any party and are not reasonably calculated to lead to the discovery of admissible evidence.

4.    Juniper objects to these Interrogatories to the extent the information requested may be derived or ascertained from the documents produced in this lawsuit and the burden for deriving or ascertaining the answers to the Interrogatories is substantially the same for Bahattab as it is for Juniper.

5.    Juniper objects to these Interrogatories to the extent they call for information subject to the attorney-client privilege and/or work product doctrine. Juniper will not disclose information that constitutes trial preparation materials prepared in anticipation of litigation, or which is otherwise protected from discovery pursuant to the Federal Rules of Civil Procedure or the Rules of this Court.

6.    Juniper objects to these Interrogatories to the extent that they request confidential, proprietary, or trade secret information. Subject to its other objections, Juniper will provide such information (if responsive to other non-objectionable discovery requests) after entry of a suitable protective order which limits access and dissemination of such information in a manner so as to preserve and protect Juniper's confidential, proprietary, or trade secret information.

7.    Juniper objects to these Interrogatories to the extent they call for information in Juniper's possession, the disclosure of which is subject to or precluded by restrictions of confidentiality imposed by, or pursuant to, an agreement with a third party or protective order entered by a court. Juniper will provide such information after it has obtained the requisite consent of the appropriate third parties.

8.    To the extent that these Interrogatories seek discovery of materials within the scope of Fed. R. Civ. P. 26(a)(2), Juniper objects to these Interrogatories as premature and improper discovery of expert opinion.

9.      Juniper provides responses based upon information and documents that are reasonably available to Juniper at this time.  Further discovery, investigation, legal research and/or analysis may supply additional facts or documents and/or meaning to known facts or documents.  The responses set forth are given without prejudice to Juniper's right to introduce evidence of subsequently discovered or compiled facts or interpretations thereof, or to supplement, modify, or otherwise change these responses.

## SPECIFIC OBJECTIONS

1.      Juniper objects to Bahattab's attempt to categorize multiple discrete subparts of interrogatories herein as one interrogatory, instead of separate interrogatories, as required by Fed. R. Civ. P. 33(a).

2.      Juniper objects that Bahattab's definition of "Products in Question" is overly broad and beyond the scope of the claims set forth in U.S. Patent No. 6,816,457 ("the '457 Patent" or the "Patent-at-Issue").  Moreover, the definition of all such models as "Products in Question" is unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  For purposes of responding to these Interrogatories, Juniper will limit the scope of its answers to interrogatories with information sufficient to show the processes by which Juniper routers determine active routes to network destinations and install such active routes into forwarding tables.

## OBJECTIONS AND ANSWERS

### INTERROGATORY NO. 1:

Describe all facts upon which you base your allegation that the '457 patent is invalid for failure to satisfy the provisions of section 102 and 103 of Title 35 of the U.S. Code, as stated in paragraph 15 of the Complaint. In answering this interrogatory, identify the claim(s) alleged to be invalid, the statutory basis for the allegation *(i.e.* 35 U.S.C. §§ 102(a), 102(b), 102(c), . . ., 103), all facts related to or supporting Juniper's claim of invalidity, and persons with knowledge of those facts. For each piece of prior art identified in response to this interrogatory:

> a. State which claims of the '457 patent the prior art allegedly anticipates;

> b. State what combination of prior art, and which claims of the '457 patent the prior art allegedly renders obvious;

> c. For each claim that a piece of prior art allegedly anticipates, describe on an element-by-element basis in a claim chart how the piece of prior art anticipates the claim, including specific citations to the prior art's relevant content; and

> d. For each claim that a prior art combination allegedly renders obvious, describe on an element-by-element basis in a claim chart how the combination renders the claim obvious, including specific citations to the prior art's relevant content and a description of where a teaching and/or motivation to combine the prior art references is allegedly found.

### OBJECTIONS AND ANSWER

Juniper incorporates its General Objections by reference. Juniper objects to Bahattab's

attempt to categorize the multiple discrete subparts herein as one interrogatory instead of separate

interrogatories as required by Rule 33(a). Subject to and without waiving the foregoing

objections, Juniper states that the claimed use of an autoregressive moving average ("ARMA")

temporal model was well known to those of skill in the art long prior to the earliest filing date of

the '457 Patent. The following table sets forth prior art references that either independently

anticipate or in combination render obvious claims 1 and 2 of the '457 Patent pursuant to 35

U.S.C. §§ 102 and 103:

| Claim Number | Reference | Statutory Basis |
|---|---|---|
| 1 | U.S. Patent No. 6,411,946 ("the '946 Patent"), issued June 25, 2002 and filed August 28, 1998 | §102(e), §103(a) |
| 1 | U.S. Patent No. 6,118,760 ("the '760 Patent"), issued September 12, 2000 and filed June 30, 1997 | §103(a) |
| 1 | U.S. Patent No. 6,032,190 ("the '190 Patent"), issued February 29, 2000 and filed October 3, 1997 | §103(a) |
| 1 | U.S. Patent No. 6,067,569 ("the '569 Patent"), issued May 23, 2000 and filed July 10, 1997 | §103(a) |
| 1 | "Improving Gateway Performance with a Routing-Table Cache", David C. Feldmeier, IEEE, Infocom 1998, p. 298-307 | §103(a) |
| 1 | D. Yu, B. Smith, B. Wei, "Forwarding Engine For Fast Routing Lookups and Updates," IEEE Globecom' 1999 | §103(a) |
| 1 | E. Besson, P. Brown, "Performance Evaluation of Hierarchical Caching in High-Speed Routers," IEEE Globecom 1998 | §103(a) |
| 1 | U.S. Patent No. 5,884,037 ("the '037 Patent"), issued March 16, 1999 and filed October 21, 1996 | §103(a) |
| 1 | U.S. Patent No. 6,574,587 ("the '587 Patent"), issued June 3, 2003 and filed February 27, 1998 | §103(a) |
| 1 | U.S. Patent No. 6,597,660 ("the '660 Patent"), issued July 22, 2003 and filed December 31, 1997 | §103(a) |
| 1 | U.S. Patent No. 5,355,366 ("the '366 Patent"), issued October 11, 1994 and filed April 23, 1993 | §103(a) |
| 1 | Fan, Z.; Mars P., Access flow control scheme for ATM networks using neural-network-based traffic prediction, Communications, IEEE Proceedings - vol.: 144 5, Oct. 1997, pp.:295-300 | §103(a) |
| 1 | Tarraf, A.A.; Habib, I.W.; Sadawi, T.N.; Ahmed, S.A., ATM multimedia traffic prediction using neural networks, Global Data Networking, 1993. Proceeding, pp.: 77-84, Jul. 1997 | §103(a) |
| 1 | R. Grunenfelder, J. P. Cosmas, S. Manthrope, and A. Odinma-Okafor, "Characterization of Video Codecs as Autoregressive Moving Average Processes and Related Queueing System Performance", IEEE Journal on Selected Areas in Communications, Vol. 9, No. 3, April 1991 | §103(a) |
| 1 | Iyengar, A.; Squillante, M.; Zhang, L., Analysis and characterization of Large-Scale Web Server access patterns and performance, World Wide Web 2 (1999), 85-100 | §103(a) |
| 1 | J. Bolot, P. Hoschka, "Performance Engineering of the World Wide Web: Application to Dimensioning and Cache Design," Computer Networks and ISDN Systems 28 (1996) 1397-1405 | §103(a) |

| Claim Number | Reference | Statutory Basis |
|---|---|---|
| 1 | P. Tantatsanawong, H. Phien, K. Kanchanasut, "Modeling and Forecasting of Hourly Transactions on a WWW and Proxy Cache Server", IEEE Internet Workshop, Feb. 1999 | §103(a) |
| 2 | U.S. Patent No. 6,411,946 ("the '946 Patent"), issued June 25, 2002 and filed August 28, 1998 | §102(e), §103(a) |
| 2 | U.S. Patent No. 6,118,760 ("the '760 Patent"), issued September 12, 2000 and filed June 30, 1997 | §103(a) |
| 2 | U.S. Patent No. 6,032,190 ("the '190 Patent"), issued February 29, 2000 and filed October 3, 1997 | §103(a) |
| 2 | U.S. Patent No. 6,067,569 ("the '569 Patent"), issued May 23, 2000 and filed July 10, 1997 | §103(a) |
| 2 | "Improving Gateway Performance with a Routing-Table Cache", David C. Feldmeier, IEEE, Infocom 1998, p. 298-307 | §103(a) |
| 2 | D. Yu, B. Smith, B. Wei, "Forwarding Engine For Fast Routing Lookups and Updates," IEEE Globecom' 1999 | §103(a) |
| 2 | E. Besson, P. Brown, "Performance Evaluation of Hierarchical Caching in High-Speed Routers," IEEE Globecom 1998 | §103(a) |
| 2 | U.S. Patent No. 5,884,037 ("the '037 Patent"), issued March 16, 1999 and filed October 21, 1996 | §103(a) |
| 2 | U.S. Patent No. 6,574,587 ("the '587 Patent"), issued June 3, 2003 and filed February 27, 1998 | §103(a) |
| 2 | U.S. Patent No. 6,597,660 ("the '660 Patent"), issued July 22, 2003 and filed December 31, 1997 | §103(a) |
| 2 | U.S. Patent No. 5,355,366 ("the '366 Patent"), issued October 11, 1994 and filed April 23, 1993 | §103(a) |
| 2 | Fan, Z.; Mars P., Access flow control scheme for ATM networks using neural-network-based traffic prediction, Communications, IEEE Proceedings - vol.: 144 5, Oct. 1997, pp.:295-300 | §103(a) |
| 2 | Tarraf, A.A.; Habib, I.W.; Sadawi, T.N.; Ahmed, S.A., ATM multimedia traffic prediction using neural networks, Global Data Networking, 1993. Proceeding, pp.: 77-84, Jul. 1997 | §103(a) |
| 2 | R. Grunenfelder, J. P. Cosmas, S. Manthrope, and A. Odinma-Okafor, "Characterization of Video Codecs as Autoregressive Moving Average Processes and Related Queueing System Performance", IEEE Journal on Selected Areas in Communications, Vol. 9, No. 3, April 1991 | §103(a) |
| 2 | Iyengar, A.; Squillante, M.; Zhang, L., Analysis and characterization of Large-Scale Web Server access patterns and performance, World Wide Web 2 (1999), 85-100 | §103(a) |

| Claim Number | Reference | Statutory Basis |
|---|---|---|
| 2 | J. Bolot, P. Hoschka, "Performance Engineering of the World Wide Web: Application to Dimensioning and Cache Design," Computer Networks and ISDN Systems 28 (1996) 1397-1405 | §103(a) |
| 2 | P. Tantatsanawong, H. Phien, K. Kanchanasut, "Modeling and Forecasting of Hourly Transactions on a WWW and Proxy Cache Server", IEEE Internet Workshop, Feb. 1999 | §103(a) |

As to discrete subpart (a), *see* the above table.

As to discrete subpart (b), *see* the above table and the claim charts annexed as Attachment 1.

As to discrete subpart (c), *see* the claim chart annexed as Attachment 2.

As to discrete subpart (d), *see* the claim charts annexed as Attachment 1. Juniper objects that Bahattab's request for a "description of where a teaching and/or motivation to combine the prior art references is allegedly found" is an inappropriate approach to evaluating obviousness in light of the Supreme Court's decision in *KSR Int'l Co. v. Teleflex, Inc.*, 127 S. Ct. 1727 (2007). Subject to and without waiving the foregoing objections, Juniper states:

A.     **U.S. Patent No. 6,118,760**

U.S. Patent No. 6,118,760 ("the '760 Patent") generally teaches an apparatus and methods for use in a communications network to search for and update information in a forwarding memory (another term for a routing cache table). More specifically, the '760 Patent discloses a router which receives packets from external connections and then forwards packets to specific external connections. According to the '760 Patent specification, each packet is switched to specific destination addresses stored in a forwarding memory which is updated based on a temporal model generated by a central processing system. As such, the '760 Patent

- 7 -

discloses each element of claims 1 and 2 of the '457 Patent with the exception of the term "autoregressive moving average."

Given the use of temporal models in the '760 Patent, it would be obvious to one skilled in the art to employ other well known temporal models in order to efficiently route information packets. Given the widespread knowledge of using ARMA in the networking and router industry, incorporating a temporal model based on autoregressive moving average into the router disclosed in the '760 Patent would have been obvious to those of ordinary skill in the art.

| '760 PATENT IN COMBINATION WITH: | DESCRIPTION: |
|---|---|
| **U.S. Patent No. 6,411,946**<br><br>In addition to anticipating the claims of the '457 Patent, the '946 Patent generally discloses the use of ARMA to route packets across a network. The '946 Patent discloses a router containing a router table updated by a processor using a temporal model based on ARMA/ARIMA. (*See* '946 Patent, Col. 2:65-Col.3:8.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in the '946 Patent, with the temporal model used to update the routing table cache of the router disclosed in the '760 Patent. As such, the '760 Patent in combination with the '946 Patent teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| **U.S. Patent No. 5,884,037**<br><br>The '037 Patent generally discloses the use of an autoregressive moving average model to predict packet traffic. More specifically, the '037 Patent uses "seasonal Autoregressive Integrated Moving Average ('ARIMA') trend analysis to enhance reservation-based management systems." ('037 Patent, Col. 2:66-3:7.) The '037 Patent indicates that the application of ARMA may be "applicable to switched networks such as those based on ATM (asynchronous transfer mode), Frame-Relay or switched-Ethernet, to shared media networks such as Ethernet or Token-Ring and | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in the '037 Patent, with the temporal model used to update the routing table cache of the router disclosed in the '760 Patent. As such, the '760 Patent in combination with the '037 Patent teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |

| '760 PATENT IN COMBINATION WITH: | DESCRIPTION: |
|---|---|
| mixed networks that contain both point-to-point (switched) and shared segments." ('037 Patent, Col. 12:60-65.) | |
| *U.S. Patent No. 6,574,587*<br><br>The '587 Patent generally discloses a system and method to overcome performance limitations associated with conventional forecasting tools by applying "an autoregressive model to electronically generated empirical data to produce accurate and reliable computing platform resource performance forecasts." ('587 Patent, Col. 1:59-65.) "One feature of the present invention is an autoregressive modeling tool, which is applied to the converted time series to forecast a particular aspect of the computing platform." ('587 Patent, Col. 4:23-44.) The '587 Patent teaches that ARMA may be applied to many other applications, such as internet metering data, internet traffic, and, more importantly, internet communications packet traffic. ('587 Patent, Col. 21:36-50.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in the '587 Patent, with the temporal model used to update the routing table cache of the router disclosed in the '760 Patent. As such, the '760 Patent in combination with the '587 Patent teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| *U.S. Patent No. 6,597,660*<br><br>The '660 Patent generally discloses traffic characterization techniques: "autoregressive moving average (ARMA) models, Bernoulli process modeling, Markov chain modeling, neural network models, self-similar models, transform-expand-sample (TES) models, traffic flow models, and wavelet models." ('660 Patent, Col. 3:57-63.) The '660 Patent may provide a characterization of the "traffic on packet networks suitable for a real-time implementation." ('660 Patent, Col. 7:61-8:17.) The data produced by the algorithm in the '660 Patent can be used for performance prediction. (*Id.*) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in the '660 Patent, with the temporal model used to update the routing table cache of the router disclosed in the '760 Patent. As such, the '760 Patent in combination with the '660 Patent teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| *U.S. Patent No. 5,355,366*<br><br>The '366 Patent generally discloses that the prediction mechanism suggested by the article "R. Grunenfelder, J. P. Cosmas, S. Manthrope, | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in the '366 Patent, with the temporal model used to update the routing table cache of the router disclosed in the '760 |

| '760 PATENT IN COMBINATION WITH: | DESCRIPTION: |
|---|---|
| and A. Odinma-Okafor, "Characterization of Video Codecs as Autoregressive Moving Average Processes and Related Queueing System Performance," IEEE Journal on Selected Areas in Communications, Vol. 9, No. 3, April 1991," provides good models for the output traffic from a video codec and is readily applicable to a circuit. ('366 Patent, Col. 1: 47-56.) The '366 Patent teaches that the ARMA model may be used on applications, "such as multimedia or file transfers, video or image frames [that] require large blocks of data to be partitioned into smaller packets (.ltoreq.2K bytes) before they are transmitted through the network." ('366 Patent, Col. 1: 28-34.) | Patent. As such, the '760 Patent in combination with the '366 Patent teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| **The Fan Reference**<br><br>The reference entitled "Access flow control scheme for ATM networks using neural-network-based traffic prediction," by Fan ("Fan") generally discloses "[a] continuous-state discrete-time autoregressive (AR) Markov" use to characterize network traffic." (Fan at p. 298.) Fan states that traffic "predictions can be used for improving ATM network efficiency by incorporating the predictions in schemes for multiplexing, routing, smoothing and bandwidth allocation." (Fan at p. 78.) | It would have been obvious to those of skill in the art to use the temporal model based on autoregressive Markov, a form of ARMA, disclosed in Fan, with the temporal model used to update the routing table cache of the router disclosed in the '760 Patent. As such, the '760 Patent in combination with Fan teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| **The Tarraf Reference**<br><br>The reference entitled "ATM multimedia traffic prediction using neural networks," by Tarraf, A.A. ("Tarraf") generally discloses a "first order Autoregressive (AR) markov process X(n) "used in ATM-based networks where the "multimedia information is packetized and transported in small size packets called 'cells'." (Tarraf at p. 77-78.) In describing the algorithms that may be used, Tarraf cites to R. Grunenfelder et al., "Characterization of video codecs as autoregressive moving average processes and | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in Tarraf, with the temporal model used to update the routing table cache of the router disclosed in the '760 Patent. As such, the '760 Patent in combination with Tarraf teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |

| '760 PATENT IN COMBINATION WITH: | DESCRIPTION: |
|---|---|
| related queuing system performance," IEEE JSAC, Vol. 9, No. 3, April 1991. (Tarraf at p. 78.) | |
| **The Grunenfelder Reference**<br><br>The reference entitled "Characterization of Video Codecs as Autoregressive Moving Average Processes and Related Queueing System Performance," by R. Grunenfelder ("Grunenfelder") generally discloses the use of ARMA as a means of modeling how cell arrivals of video codecs will affect switching networks. (Grunenfelder at 284.) Grunenfelder uses ARMA to predict or describe the video cell traffic, stating that the "methodology is not restricted to video sources." (Grunenfelder at 284, 286.) Grunenfelder further states that "ARMA processes can be applied to any type of source, with any type of correlation function" and that it is "demonstrated that the ARMA process is suited to video codecs and ATM traffic, in general." (Grunenfelder at 291.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in Grunenfelder, with the temporal model used to update the routing table cache of the router disclosed in the '760 Patent. As such, the '760 Patent in combination with Grunenfelder teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| **The Iyengar Reference**<br><br>The reference entitled "Analysis and characterization of Large-Scale Web Server access patterns and performance," by Iyengar A. ("Iyengar") generally discloses a "general methodology for analyzing and characterizing Web server access patterns, which supports the scaling of Web requests to any traffic intensity of interest and supports different forms of prediction." (Iyengar at 87.) Iyengar uses "a set of stochastic processes based on a time-series analysis of finite collections of observed data from real Web server systems." (*Id.*) The processes are of the "general class of ARIMA models for the time-series process $Z_m$ [, which] have been widely used in other fields to analyze time series data." (Iyengar at 88.) The processes are "essentially based on decomposing the time series into three components, namely the autoregressive (AR), | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in Iyengar, with the temporal model used to update the routing table cache of the router disclosed in the '760 Patent. As such, the '760 Patent in combination with Iyengar teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |

| '760 PATENT IN COMBINATION WITH: | DESCRIPTION: |
|---|---|
| the integration (I) and the moving-average (MA) linear filters." (*Id.*) | |
| ***The Bolot Reference***<br><br>The reference entitled "Performance Engineering of the World Wide Web: Application to Dimensioning and Cache Design," by J. Bolot ("Bolot") generally discloses the "use of time series analysis techniques for Web traffic modeling and forecasting" such that the "the number of Web requests handled by a server, or the amount of data retrieved per hour by a server, can be accurately modeled with time series such as seasonal ARIMA models." (Bolot at p. 1.) Bolot further states that "ARMA models have been widely used to analyze time series in many different areas," for example, video traffic, call requests in telephone networks, memory references in software, and computer networking. (Bolot at p. 3.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in Bolot, with the temporal model used to update the routing table cache of the router disclosed in the '760 Patent. As such, the '760 Patent in combination with Bolot teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| ***The Tantatsanawong Reference***<br><br>The reference entitled "Modeling and Forecasting of Hourly Transactions on a WWW and Proxy Cache Server," by P. Tantatsanawong ("Tantatsanawong") generally discloses "models for arrival patterns to a WWW server, proxy server and hierarchical proxy server." (Tantatsanawong at 165.) The data observed by Tantatsanawong can be "analyzed with time series technique, which is concerned with serially correlated data." (Tantatsanawong at 166.) More specifically, time series models, "known as the seasonal autoregressive integrated moving average (ARIMA) models" can be used to analyze the internet traffic. (*Id.*) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in Tantatsanawong, with the temporal model used to update the routing table cache of the router disclosed in the '760 Patent. As such, the '760 Patent in combination with Tantatsanawong teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |

B.    **U.S. Patent No. 6,032,190**

U.S. Patent No. 6,032,190 ("the '190 Patent") generally teaches a system and methods for

use in a communications network to reduce the amount of time necessary to retrieve header

information from a packet and the associated switching information in a router table. (*See* '190 Patent, Col. 2:31-54.) More specifically, the '190 Patent discloses a router which is depicted as a packet processing system. (*See id.*, Figure 2.) The router includes media cards that have a plurality of input ports for receiving data packets and a plurality of output ports for outputting data packets as well as a switching fabric for connecting the input port of one media card to the output port of another media card. (*See id.*, Col. 5:1-6.) The router contains a packet processor unit that builds a temporal model to populate a cache memory which stores a routing table, for example based on the "most frequently used." (*See id.*, Col. 1:39-41.) Based on the information in the routing table cache, incoming packets are switched to the appropriate output port. (*See id.*, Col. 5:1-6.) As such, the '190 Patent discloses each element of claims 1 and 2 of the '457 Patent, including the generation of a temporal model, but does not teach that the temporal model uses an "autoregressive moving average."

Given the use of temporal models in the '190 Patent, it would be obvious to one skilled in the art to employ other well known temporal models in order to efficiently route information packets. Given the widespread knowledge of using ARMA in the networking and router industry, incorporating a temporal model based on autoregressive moving average into the router disclosed in the '190 Patent would have been obvious to those of ordinary skill in the art.

| '190 PATENT IN COMBINATION WITH: | DESCRIPTION: |
|---|---|
| *U.S. Patent No. 6,411,946*<br><br>*See* above.  The '946 Patent discloses a router containing a router table updated by a processor using a temporal model based on ARMA/ARIMA.  (*See* '946 Patent, Col. 2:65-Col. 3:8.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in the '946 Patent, with the "most frequently used" temporal model used to update the routing table cache of the router disclosed in the '190 Patent.  As such, the '190 Patent in combination with the '946 Patent teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| *U.S. Patent No. 5,884,037* | It would have been obvious to those of skill in the art to use the temporal model based on |

| '190 PATENT IN COMBINATION WITH: | DESCRIPTION: |
|---|---|
| *See* above.  The '037 Patent discloses the use of an autoregressive moving average model to predict packet traffic. | ARMA, disclosed in the '037 Patent, with the temporal model used to update the routing table cache of the router disclosed in the '190 Patent.  As such, the '190 Patent in combination with the '037 Patent teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| *U.S. Patent No. 6,574,587*<br><br>*See* above.  The '587 Patent discloses a system and method to overcome performance limitations associated with conventional forecasting tools by applying "an autoregressive model to electronically generated empirical data to produce accurate and reliable computing platform resource performance forecasts." ('587 Patent, Col. 1:59-65.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in the '587 Patent, with the temporal model used to update the routing table cache of the router disclosed in the '190 Patent.  As such, the '190 Patent in combination with the '587 Patent teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| *U.S. Patent No. 6,597,660*<br><br>*See* above.  The '660 Patent discloses traffic characterization techniques: "autoregressive moving average (ARMA) models, Bernoulli process modeling, Markov chain modeling, neural network models, self-similar models, transform-expand-sample (TES) models, traffic flow models, and wavelet models." ('660 Patent, Col. 3:57-63.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in the '660 Patent, with the temporal model used to update the routing table cache of the router disclosed in the '190 Patent.  As such, the '190 Patent in combination with the '660 Patent teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| *U.S. Patent No. 5,355,366*<br><br>*See* above.  The '366 Patent discloses that the ARMA model may be used on applications, "such as multimedia or file transfers, video or image frames [that] require large blocks of data to be partitioned into smaller packets (.ltoreq.2K bytes) before they are transmitted through the network." ('366 Patent, Col. 1: 28-34.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in the '366 Patent, with the temporal model used to update the routing table cache of the router disclosed in the '190 Patent.  As such, the '190 Patent in combination with the '366 Patent teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| *The Fan Reference* | It would have been obvious to those of skill in the art to use the temporal model based on |

- 14 -

| '190 PATENT IN COMBINATION WITH: | DESCRIPTION: |
|---|---|
| *See* above. Fan discloses "[a] continuous-state discrete-time autoregressive (AR) Markov" use to characterize network traffic." (Fan at p. 298.) | autoregressive Markov, a form of ARMA, disclosed in Fan, with the temporal model used to update the routing table cache of the router disclosed in the '190 Patent. As such, the '190 Patent in combination with Fan teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| **The Tarraf Reference**<br><br>*See* above. Tarraf discloses a "first order Autoregressive (AR) markov process X(n) " used in ATM-based networks where the "multimedia information is packetized and transported in small size packets called 'cells'." (Tarraf at p. 77-78.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in Tarraf, with the temporal model used to update the routing table cache of the router disclosed in the '190 Patent. As such, the '190 Patent in combination with Tarraf teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| **The Grunenfelder Reference**<br><br>*See* above. Grunenfelder discloses the use of ARMA as a means of modeling how cell arrivals of video codecs will affect switching networks. (Grunenfelder at 284.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in Grunenfelder, with the temporal model used to update the routing table cache of the router disclosed in the '190 Patent. As such, the '190 Patent in combination with Grunenfelder teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| **The Iyengar Reference**<br><br>*See* above. Iyengar discloses a "general class of ARIMA models for the time-series process $Z_m$,[ which] have been widely used in other fields to analyze time series data." (Iyengar at 88.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in Iyengar, with the temporal model used to update the routing table cache of the router disclosed in the '190 Patent. As such, the '190 Patent in combination with Iyengar teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| **The Bolot Reference**<br><br>*See* above. Bolot discloses the "use of time series analysis techniques for Web traffic | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in Bolot, with the temporal model used to update the routing table cache of |

- 15 -

| '190 PATENT IN COMBINATION WITH: | DESCRIPTION: |
|---|---|
| modeling and forecasting" such that the "the number of Web requests handled by a server, or the amount of data retrieved per hour by a server, can be accurately modeled with time series such as seasonal ARIMA models." (Bolot at p. 1.) | the router disclosed in the '190 Patent.  As such, the '190 Patent in combination with Bolot teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| ***The Tantatsanawong Reference***<br><br>*See* above.  Tantatsanawong discloses time series models, "known as the seasonal autoregressive integrated moving average (ARIMA) models" to be used to analyze internet traffic.  (Tantatsanawong at 165.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in Tantatsanawong, with the temporal model used to update the routing table cache of the router disclosed in the '190 Patent.  As such, the '190 Patent in combination with Tantatsanawong teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |

## C.   U.S. Patent No. 6,067,569

U.S. Patent No. 6,067,569 ("the '569 Patent") generally teaches routing systems and related methods which "fast forward" packets to their destination addresses.  The term "fast forward" refers to the forwarding of packets that enter a routing system out of that system based on processing performed in a network card of the routing system instead of its main central processing unit.  (*See* '569 Patent, Col. 2: 59-3:8.)  More specifically, the '569 Patent discloses a routing system which has input ports at network cards for receiving packets and forwarding them to other network destinations.  (*See id.*, Col. 5:4-10.)  The '569 Patent discloses the use of a cache for storing routing table information in both a network card and the main processing unit of a routing system.  (*See id.*, Col. 2:21-30.)  The disclosed routing system uses the routing information to forward packets onto the appropriate communications link for the local area network to which a destination computer system is connected.  (*See id.*, Col. 5:26-52.)  The routing table information may be updated based on a temporal model such as "when packets are not sent to a certain Ethernet address for a certain time period." (*See id.*, Col. 6:23-27.)  As such, the '569 Patent discloses each element of claims 1 and 2 of the '457 Patent, including the

generation of a temporal model, but does not teach that the temporal model uses an "autoregressive moving average."

Given the use of temporal models in the '569 Patent, it would be obvious to one skilled in the art to employ other well known temporal models in order to efficiently route information packets. Given the widespread knowledge of using ARMA in the networking and router industry, incorporating a temporal model based on autoregressive moving average into the router disclosed in the '569 Patent would have been obvious to those of ordinary skill in the art.

| '569 PATENT IN COMBINATION WITH: | DESCRIPTION: |
|---|---|
| *U.S. Patent No. 6,411,946*<br><br>*See* above. The '946 Patent discloses a router containing a router table updated by a processor using a temporal model based on ARMA/ARIMA. (*See* '946 Patent, Col. 2:65-Col. 3:8.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in the '946 Patent, with the temporal model used to update the routing table cache of the router disclosed in the '569 Patent. As such, the '569 Patent in combination with the '946 Patent teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| *U.S. Patent No. 5,884,037*<br><br>*See* above. The '037 Patent discloses the use of an autoregressive moving average model to predict packet traffic. | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in the '037 Patent, with the temporal model used to update the routing table cache of the router disclosed in the '569 Patent. As such, the '569 Patent in combination with the '037 Patent teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| *U.S. Patent No. 6,574,587*<br><br>*See* above. The '587 Patent discloses a system and method to overcome performance limitations associated with conventional forecasting tools by applying "an autoregressive model to electronically generated empirical data to produce accurate | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in the '587 Patent, with the temporal model used to update the routing table cache of the router disclosed in the '569 Patent. As such, the '569 Patent in combination with the '587 Patent teaches a router that updates a routing table cache using a |

| '569 PATENT IN COMBINATION WITH: | DESCRIPTION: |
|---|---|
| and reliable computing platform resource performance forecasts." ('587 Patent, Col. 1:59-65.) | temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| **U.S. Patent No. 6,597,660**<br><br>*See* above. The '660 Patent discloses traffic characterization techniques: "autoregressive moving average (ARMA) models, Bernoulli process modeling, Markov chain modeling, neural network models, self-similar models, transform-expand-sample (TES) models, traffic flow models, and wavelet models." ('660 Patent, Col. 3:57-63.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in the '660 Patent, with the temporal model used to update the routing table cache of the router disclosed in the '569 Patent. As such, the '569 Patent in combination with the '660 Patent teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| **U.S. Patent No. 5,355,366**<br><br>*See* above. The '366 Patent discloses that the ARMA model may be used on applications, "such as multimedia or file transfers, video or image frames [that] require large blocks of data to be partitioned into smaller packets (.ltoreq.2K bytes) before they are transmitted through the network." ('366 Patent, Col. 1: 28-34.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in the '366 Patent, with the temporal model used to update the routing table cache of the router disclosed in the '569 Patent. As such, the '569 Patent in combination with the '366 Patent teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| **The Fan Reference**<br><br>*See* above. Fan discloses "[a] continuous-state discrete-time autoregressive (AR) Markov" use to characterize network traffic." (Fan at p. 298.) | It would have been obvious to those of skill in the art to use the temporal model based on autoregressive Markov, a form of ARMA, disclosed in Fan, with the temporal model used to update the routing table cache of the router disclosed in the '569 Patent. As such, the '569 Patent in combination with Fan teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| **The Tarraf Reference**<br><br>*See* above. Tarraf discloses a "first order Autoregressive (AR) markov process X(n) " used in ATM-based networks where the "multimedia information is packetized and transported in small size packets called 'cells'." (Tarraf at p. 77-78.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in Tarraf, with the temporal model used to update the routing table cache of the router disclosed in the '569 Patent. As such, the '569 Patent in combination with Tarraf teaches a router that updates a routing table cache using a temporal model based on |

| '569 PATENT IN COMBINATION WITH: | DESCRIPTION: |
|---|---|
| | ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| *The Grunenfelder Reference* <br><br> *See* above. Grunenfelder discloses the use of ARMA as a means of modeling how cell arrivals of video codecs will affect switching networks. (Grunenfelder at 284.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in Grunenfelder, with the temporal model used to update the routing table cache of the router disclosed in the '569 Patent. As such, the '569 Patent in combination with Grunenfelder teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| *The Iyengar Reference* <br><br> *See* above. Iyengar discloses a "general class of ARIMA models for the time-series process $Z_m$.[, which] have been widely used in other fields to analyze time series data." (Iyengar at 88.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in Iyengar, with the temporal model used to update the routing table cache of the router disclosed in the '569 Patent. As such, the '569 Patent in combination with Iyengar teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| *The Bolot Reference* <br><br> As discussed above, Bolot discloses the "use of time series analysis techniques for Web traffic modeling and forecasting" such that the "the number of Web requests handled by a server, or the amount of data retrieved per hour by a server, can be accurately modeled with time series such as seasonal ARIMA models." (Bolot at p. 1.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in Bolot, with the temporal model used to update the routing table cache of the router disclosed in the '569 Patent. As such, the '569 Patent in combination with Bolot teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| *The Tantatsanawong Reference* <br><br> *See* above. Tantatsanawong discloses time series models, "known as the seasonal autoregressive integrated moving average (ARIMA) models" to be used to analyze internet traffic. (Tantatsanawong at 165.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in Tantatsanawong, with the temporal model used to update the routing table cache of the router disclosed in the '569 Patent. As such, the '569 Patent in combination with Tantatsanawong teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |

- 19 -

**D.     Feldmeier Reference**

The reference entitled "Improving Gateway Performance with a Routing-Table Cache,"
by Feldmeier ("Feldmeier") generally teaches a method of improving the throughput of a
gateway, such as a router, using a routing-table cache. (*See* Feldmeier at 298.)  Feldmeier further
teaches that a routing table cache can be used to reduce the average lookup time per packet as
well as the best management policies for such a cache. (*See* Feldmeier at 299.)  More
specifically, Feldmeier discloses gateways that connect different networks and transport packets
to and from those networks using routing information to send the packet to its next network
destination. (*See id.* at 298.)  Feldmeier emphasizes the use of a routing-table cache that is
updated based on a temporal replacement strategy known as "least recent use." (*See id.* at 299.)
Feldmeier specifically states that a "LRU cache operates by storing not only the data, but also the
time that each datum was last referenced." (*See id.*)  It was well known to those skilled in the art
in 2000 that gateways, including the ARPANET gateways disclosed in Feldmeier, contained
processors which, among other things, update the router table information. (*See id.* at 298.)  As
such, Feldmeier discloses each element of claims 1 and 2 of the '457 Patent, including the
generation of a temporal model, but does not teach that the temporal model uses an
"autoregressive moving average."

Given the use of temporal models in Feldmeier, it would have been obvious to one skilled
in the art to employ other well known temporal models in order to efficiently route information
packets.  Given the widespread knowledge of using ARMA in the networking and router
industry, incorporating a temporal model based on autoregressive moving average into the router
disclosed in Feldmeier would have been obvious to those of ordinary skill in the art.

| FELDMEIER IN COMBINATION WITH: | DESCRIPTION: |
|---|---|
| *U.S. Patent No. 6,411,946*<br><br>*See* above.  The '946 Patent discloses a router containing a router table updated by a processor using a temporal model based on ARMA/ARIMA. (*See* '946 Patent, Col. 2:65- | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in the '946 Patent, with the temporal model used to update the routing table cache of the router disclosed in Feldmeier.  As such, Feldmeier in combination |

| FELDMEIER IN COMBINATION WITH: | DESCRIPTION: |
|---|---|
| Col.3:8.) | with the '946 Patent teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| *U.S. Patent No. 5,884,037*<br><br>*See* above. The '037 Patent discloses the use of an autoregressive moving average model to predict packet traffic. | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in the '037 Patent, with the temporal model used to update the routing table cache of the router disclosed in Feldmeier. As such, Feldmeier in combination with the '037 Patent teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| *U.S. Patent No. 6,574,587*<br><br>*See* above. The '587 Patent discloses a system and method to overcome performance limitations associated with conventional forecasting tools by applying "an autoregressive model to electronically generated empirical data to produce accurate and reliable computing platform resource performance forecasts." ('587 Patent, Col. 1:59-65.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in the '587 Patent, with the temporal model used to update the routing table cache of the router disclosed in Feldmeier. As such, Feldmeier in combination with the '587 Patent teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| *U.S. Patent No. 6,597,660*<br><br>*See* above. The '660 Patent discloses traffic characterization techniques: "autoregressive moving average (ARMA) models, Bernoulli process modeling, Markov chain modeling, neural network models, self-similar models, transform-expand-sample (TES) models, traffic flow models, and wavelet models." ('660 Patent, Col. 3:57-63.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in the '660 Patent, with the temporal model used to update the routing table cache of the router disclosed in Feldmeier. As such, Feldmeier in combination with the '660 Patent teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| *U.S. Patent No. 5,355,366*<br><br>*See* above. The '366 Patent discloses that the ARMA model may be used on applications, "such as multimedia or file transfers, video or | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in the '366 Patent, with the temporal model used to update the routing table cache of the router disclosed in |

- 21 -

| FELDMEIER IN COMBINATION WITH: | DESCRIPTION: |
|---|---|
| image frames [that] require large blocks of data to be partitioned into smaller packets (.ltoreq.2K bytes) before they are transmitted through the network." ('366 Patent, Col. 1:28-34.) | Feldmeier. As such, Feldmeier in combination with the '366 Patent teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| **The Fan Reference**<br><br>*See* above. Fan discloses "[a] continuous-state discrete-time autoregressive (AR) Markov" use to characterize network traffic." (Fan at p. 298.) | It would have been obvious to those of skill in the art to use the temporal model based on autoregressive Markov, a form of ARMA, disclosed in Fan, with the temporal model used to update the routing table cache of the router disclosed in Feldmeier. As such, Feldmeier in combination with Fan teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| **The Tarraf Reference**<br><br>*See* above. Tarraf discloses a "first order Autoregressive (AR) markov process X(n) " used in ATM-based networks where the "multimedia information is packetized and transported in small size packets called 'cells'." (Tarraf at p. 77-78.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in Tarraf, with the temporal model used to update the routing table cache of the router disclosed in Feldmeier. As such, Feldmeier in combination with Tarraf teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| **The Grunenfelder Reference**<br><br>*See* above. Grunenfelder discloses the use of ARMA as a means of modeling how cell arrivals of video codecs will affect switching networks. (Grunenfelder at 284.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in Grunenfelder, with the temporal model used to update the routing table cache of the router disclosed in Feldmeier. As such, Feldmeier in combination with Grunenfelder teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| **The Iyengar Reference**<br><br>*See* above. Iyengar discloses a "general class of ARIMA models for the time-series process $Z_m$[, which] have been widely used in other fields to analyze time series data." (Iyengar at | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in Iyengar, with the temporal model used to update the routing table cache of the router disclosed in Feldmeier. As such, Feldmeier in combination with Iyengar teaches |

| FELDMEIER IN COMBINATION WITH: | DESCRIPTION: |
|---|---|
| 88.) | a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| *The Bolot Reference*<br><br>*See* above. Bolot discloses the "use of time series analysis techniques for Web traffic modeling and forecasting" such that the "the number of Web requests handled by a server, or the amount of data retrieved per hour by a server, can be accurately modeled with time series such as seasonal ARIMA models." (Bolot at p. 1.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in Bolot, with the temporal model used to update the routing table cache of the router disclosed in Feldmeier. As such, Feldmeier in combination with Bolot teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| *The Tantatsanawong Reference*<br><br>*See* above. Tantatsanawong discloses time series models, "known as the seasonal autoregressive integrated moving average (ARIMA) models" to be used to analyze internet traffic. (Tantatsanawong at 165.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in Tantatsanawong, with the temporal model used to update the routing table cache of the router disclosed in Feldmeier. As such, Feldmeier in combination with Tantatsanawong teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |

E.    **Yu Reference**

The reference entitled "Forwarding Engine For Fast Routing Lookups and Updates," by Yu ("Yu") generally teaches a method for parallel table lookup in an IP router. (*See* Yu at 1557.) Yu further teaches a router that consists of network interfaces, a network processor, forwarding engines and an interconnecting switching fabric. (*See id.*) The router includes a routing table and a forwarding engine configured to make routing decisions based on a forwarding table. (*See id.*) The forwarding engine derives the forwarding table from the routing table in order to more quickly forward information packets onto their destination. (*See id.*) As such, Yu discloses each element of claims 1 and 2 of the '457 Patent, but does not teach a temporal model using an "autoregressive moving average."

- 23 -

Given the use of the forwarding engine and the forwarding table in Yu, it would have been obvious to one skilled in the art to employ other well known temporal models in order to efficiently route information packets. Given the widespread knowledge of using ARMA in the networking and router industry, incorporating a temporal model based on autoregressive moving average into the router disclosed in Yu would have been obvious to those of ordinary skill in the art.

| YU IN COMBINATION WITH: | DESCRIPTION: |
|---|---|
| *U.S. Patent No. 6,411,946*<br><br>*See* above. The '946 Patent discloses a router containing a router table updated by a processor using a temporal model based on ARMA/ARIMA. (*See* '946 Patent, Col. 2:65-Col. 3:8.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in the '946 Patent, with the forwarding engine used to update the forwarding table or routing table cache of the router disclosed in Yu. As such, Yu in combination with the '946 Patent teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| *U.S. Patent No. 5,884,037*<br><br>*See* above. The '037 Patent discloses the use of an autoregressive moving average model to predict packet traffic. | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in the '037 Patent, with the temporal model used to update the routing table cache of the router disclosed in Yu. As such, Yu in combination with the '037 Patent teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| *U.S. Patent No. 6,574,587*<br><br>*See* above. The '587 Patent discloses a system and method to overcome performance limitations associated with conventional forecasting tools by applying "an autoregressive model to electronically generated empirical data to produce accurate and reliable computing platform resource performance forecasts." ('587 Patent, Col. 1:59-65.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in the '587 Patent, with the temporal model used to update the routing table cache of the router disclosed in Yu. As such, Yu in combination with the '587 Patent teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |

| YU IN COMBINATION WITH: | DESCRIPTION: |
|---|---|
| *U.S. Patent No. 6,597,660*<br><br>*See* above. The '660 Patent discloses traffic characterization techniques: "autoregressive moving average (ARMA) models, Bernoulli process modeling, Markov chain modeling, neural network models, self-similar models, transform-expand-sample (TES) models, traffic flow models, and wavelet models." ('660 Patent, Col. 3:57-63.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in the '660 Patent, with the temporal model used to update the routing table cache of the router disclosed in Yu. As such, Yu in combination with the '660 Patent teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| *U.S. Patent No. 5,355,366*<br><br>*See* above. The '366 Patent discloses that the ARMA model may be used on applications, "such as multimedia or file transfers, video or image frames [that] require large blocks of data to be partitioned into smaller packets (.ltoreq.2K bytes) before they are transmitted through the network." ('366 Patent, Col. 1: 28-34.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in the '366 Patent, with the temporal model used to update the routing table cache of the router disclosed in Yu. As such, Yu in combination with the '366 Patent teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| *The Fan Reference*<br><br>*See* above. Fan discloses "[a] continuous-state discrete-time autoregressive (AR) Markov" use to characterize network traffic." (Fan at p. 298.) | It would have been obvious to those of skill in the art to use the temporal model based on autoregressive Markov, a form of ARMA, disclosed in Fan, with the temporal model used to update the routing table cache of the router disclosed in Yu. As such, Yu in combination with Fan teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| *The Tarraf Reference*<br><br>*See* above. Tarraf discloses a "first order Autoregressive (AR) markov process X(n) " used in ATM-based networks where the "multimedia information is packetized and transported in small size packets called 'cells'." (Tarraf at p. 77-78.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in Tarraf, with the temporal model used to update the routing table cache of the router disclosed in Yu. As such, Yu in combination with Tarraf teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| *The Grunenfelder Reference*<br><br>*See* above. Grunenfelder discloses the use of ARMA as a means of modeling how cell | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in Grunenfelder, with the temporal model used to update the routing |

- 25 -

| YU IN COMBINATION WITH: | DESCRIPTION: |
|---|---|
| arrivals of video codecs will affect switching networks. (Grunenfelder at 284.) | table cache of the router disclosed in Yu. As such, Yu in combination with Grunenfelder teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| **The Iyengar Reference**<br><br>*See* above. Iyengar discloses a "general class of ARIMA models for the time-series process $Z_m$.[, which] have been widely used in other fields to analyze time series data." (Iyengar at 88.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in Iyengar, with the temporal model used to update the routing table cache of the router disclosed in Yu. As such, Yu in combination with Iyengar teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| **The Bolot Reference**<br><br>*See* above. Bolot discloses the "use of time series analysis techniques for Web traffic modeling and forecasting" such that the "the number of Web requests handled by a server, or the amount of data retrieved per hour by a server, can be accurately modeled with time series such as seasonal ARIMA models." (Bolot at p. 1.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in Bolot, with the temporal model used to update the routing table cache of the router disclosed in Yu. As such, Yu in combination with Bolot teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| **The Tantatsanawong Reference**<br><br>*See* above. Tantatsanawong discloses time series models, "known as the seasonal autoregressive integrated moving average (ARIMA) models" to be used to analyze internet traffic. (Tantatsanawong at 165.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in Tantatsanawong, with the temporal model used to update the routing table cache of the router disclosed in Yu. As such, Yu in combination with Tantatsanawong teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |

F.    **Besson Reference**

The reference entitled "Performance Evaluation of Hierarchical Caching in High-Speed Routers," by Besson ("Besson") is a report on analytical and simulation studies of the

performance of hierarchical caching of route data in high speed routers. Besson discusses a router that accesses a routing table in order to forward incoming packets to their ultimate destination. (*See* Besson at 2640-41.) The disclosed router is capable of handling different types of communications traffic such "backups, ftp transfers, WWW accesses." (*See id.* at 2643) Besson's disclosed router may have a central cache table with the most updated routing data from the routing table. (*See id.* at 2640.) According to Besson, the central cache table data may be updated based on the "LRU (Least Recently Used) management policy." (*Id.*) As such, Besson discloses each element of claims 1 and 2 of the '457 Patent, including the use of a temporal model, but does not teach that the temporal model uses an "autoregressive moving average."

Given the use of the temporal model in Besson, it would have been obvious to one skilled in the art to employ other well known temporal models in order to efficiently route information packets. Given the widespread knowledge of using ARMA in the networking and router industry, incorporating a temporal model based on autoregressive moving average into the router disclosed in Besson would have been obvious to those of ordinary skill in the art.

| BESSON IN COMBINATION WITH: | DESCRIPTION: |
|---|---|
| *U.S. Patent No. 6,411,946*<br><br>*See* above. The '946 Patent discloses a router containing a router table updated by a processor using a temporal model based on ARMA/ARIMA. (*See* '946 Patent, Col. 2:65-Col.3:8.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in the '946 Patent, with the "LRU (Least Recently Used)" temporal model used to update the routing table cache of the router disclosed in Besson. As such, Besson in combination with the '946 Patent teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| *U.S. Patent No. 5,884,037*<br><br>*See* above. The '037 Patent discloses the use of an autoregressive moving average model to predict packet traffic. | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in the '037 Patent, with the temporal model used to update the routing table cache of the router disclosed in Besson. As such, Besson in combination with the '037 Patent teaches a router that updates a routing |

| BESSON IN COMBINATION WITH: | DESCRIPTION: |
|---|---|
| | table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| *U.S. Patent No. 6,574,587*<br><br>*See* above.  The '587 Patent discloses a system and method to overcome performance limitations associated with conventional forecasting tools by applying "an autoregressive model to electronically generated empirical data to produce accurate and reliable computing platform resource performance forecasts." ('587 Patent, Col. 1:59-65.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in the '587 Patent, with the temporal model used to update the routing table cache of the router disclosed in Besson. As such, Besson in combination with the '587 Patent teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| *U.S. Patent No. 6,597,660*<br><br>*See* above.  The '660 Patent discloses traffic characterization techniques: "autoregressive moving average (ARMA) models, Bernoulli process modeling, Markov chain modeling, neural network models, self-similar models, transform-expand-sample (TES) models, traffic flow models, and wavelet models." ('660 Patent, Col. 3:57-63.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in the '660 Patent, with the temporal model used to update the routing table cache of the router disclosed in Besson. As such, Besson in combination with the '660 Patent teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| *U.S. Patent No. 5,355,366*<br><br>*See* above.  The '366 Patent discloses that the ARMA model may be used on applications, "such as multimedia or file transfers, video or image frames [that] require large blocks of data to be partitioned into smaller packets (.ltoreq.2K bytes) before they are transmitted through the network." ('366 Patent, Col. 1: 28-34.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in the '366 Patent, with the temporal model used to update the routing table cache of the router disclosed in Besson. As such, Besson in combination with the '366 Patent teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| *The Fan Reference*<br><br>*See* above.  Fan discloses "[a] continuous-state discrete-time autoregressive (AR) Markov" use to characterize network traffic." (Fan at p. 298.) | It would have been obvious to those of skill in the art to use the temporal model based on autoregressive Markov, a form of ARMA, disclosed in Fan, with the temporal model used to update the routing table cache of the router disclosed in Besson.  As such, Besson in combination with Fan teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 |

| BESSON IN COMBINATION WITH: | DESCRIPTION: |
|---|---|
| | U.S.C. § 103(a). |
| *The Tarraf Reference*<br><br>*See* above.  Tarraf discloses a "first order Autoregressive (AR) markov process X(n) " used in ATM-based networks where the "multimedia information is packetized and transported in small size packets called 'cells'." (Tarraf at p. 77-78.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in Tarraf, with the temporal model used to update the routing table cache of the router disclosed in Besson.  As such, Besson in combination with Tarraf teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| *The Grunenfelder Reference*<br><br>*See* above.  Grunenfelder discloses the use of ARMA as a means of modeling how cell arrivals of video codecs will affect switching networks.  (Grunenfelder at 284.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in Grunenfelder, with the temporal model used to update the routing table cache of the router disclosed in Besson. As such, Besson in combination with Grunenfelder teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| *The Iyengar Reference*<br><br>*See* above.  Iyengar discloses a "general class of ARIMA models for the time-series process $Z_m$.[, which] have been widely used in other fields to analyze time series data." (Iyengar at 88.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in Iyengar, with the temporal model used to update the routing table cache of the router disclosed in Besson.  As such, Besson in combination with Iyengar teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| *The Bolot Reference*<br><br>*See* above.  Bolot discloses the "use of time series analysis techniques for Web traffic modeling and forecasting" such that the "the number of Web requests handled by a server, or the amount of data retrieved per hour by a server, can be accurately modeled with time series such as seasonal ARIMA models." (Bolot at p. 1.) | It would have been obvious to those of skill in the art to use the temporal model based on ARMA, disclosed in Bolot, with the temporal model used to update the routing table cache of the router disclosed in Besson.  As such, Besson in combination with Bolot teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |
| *The Tantatsanawong Reference* | It would have been obvious to those of skill in the art to use the temporal model based on |

| BESSON IN COMBINATION WITH: | DESCRIPTION: |
|---|---|
| *See* above. Tantatsanawong discloses time series models, "known as the seasonal autoregressive integrated moving average (ARIMA) models" to be used to analyze internet traffic. (Tantatsanawong at 165.) | ARMA, disclosed in Tantatsanawong, with the temporal model used to update the routing table cache of the router disclosed in Besson. As such, Besson in combination with Tantatsanawong teaches a router that updates a routing table cache using a temporal model based on ARMA, rendering obvious claims 1 and 2 of the '457 Patent under 35 U.S.C. § 103(a). |

## INTERROGATORY NO. 2:

Describe all facts upon which you base your allegation that the '457 patent is invalid for failure to state all inventors on the patent application as stated in paragraph 16 of the Complaint.

### OBJECTIONS AND ANSWER

Juniper incorporates its General Objections by reference. Subject to and without waiving the foregoing objections, Juniper states:

Bahattab began the application process for the '457 Patent on June 2, 2000 with the filing of a provisional patent application, Ser. No. 60/208,888, with the Patent Office, identifying himself as the sole inventor. The provisional application did not put forward any claims, but consisted of a 127 page paper entitled "Predictive Router Line Card Cache Population" (the "Provisional Application Paper"). No co-authors were identified in the Provisional Application Paper; Dr. Bahattab's name appeared on the upper right-hand corner of each page as "AA Bahattab 1P." However, the use of first person plural pronouns throughout the Provisional Application Paper suggests that more than one person may have been involved in the underlying research. For example, the two and one-half page conclusion summary of the paper contains 24 references to "we":

- "We decided that . . ."

- "We started this research . . ."
- "We downloaded some files . . ."
- "Then we wrote our own Perl script . . ."
- "We started the data analysis . . ."
- "Then, we plotted the data . . ."
- "We found that . . ."
- "We divided the IP addresses . . ."
- "We chose the ARMA[1,2] model . . ."
- "[W]e chose the ARMA[1,3] model . . ."
- "[W]e wrote a C program . . ."
- "[W]e allowed only 32 IP addresses . . ."
- "[W]e created a database . . ."
- "[W]e had 500 points in each database."
- "While we are building the database . . ."
- "Then we run a MATLAB function . . ."
- "[W]e can distinguish between . . ."
- "[W]e calculate the Mean Absolute Error . . ."
- "Once we have the models, we predict all . . ."
- "Then we stop the ordinary . . ."
- "We compared the LRU . . ."
- "Also, we conduct a fair test . . ."
- "Finally, we tested . . ."

(Provisional Application Paper at 109-111).

The Provisional Application Paper contains a lengthy overview of the function and architecture of routers and the evolution of router technology. The Provisional Application Paper then specifically discusses how the authors employed "autoregressive moving average" or "ARMA" in their research:

> We divided the IP addresses into two groups, and built a particular model for each group. We chose the ARMA[1,2] model for the IP addresses that have strong correlation, and we chose the ARMA[1,3] model for the IP addresses that have weak correlation **[BODN2000]**.

(Provisional Application Paper at 61 (emphasis added).) The Provisional Application Paper cites to the reference "[BODN2000]" for the decision to choose ARMA. The Provisional Application Paper's bibliography contains references to 45 publications, of which "[BODN2000]" was one of the references.

- 31 -

The Provisional Application Paper's bibliography identifies the reference "[BODN2000]" as "Bodnar, B., Bahattab, A., Kraft, G., Evens, M., 'Predicting IP addresses to speed up routing lookup,' 2000 Advanced Simulation Technologies Conference, Proceedings of the Applied Telecommunication Symposium, April 16-20, 2000, pp. 207-213" (the "Bodnar Paper"). (Provisional Application Paper at 123.) The Bodnar Paper discloses the same subject matter as the Provisional Application Paper. Specifically, the Bodnar Paper, like the Provisional Application Paper, disclosed the use of ARMA:

> We divided the data into two groups, and built a particular model for each group. We chose the ARMA model for the IP addresses that are strong [sic] correlated. But, we chose the AR model for the IP addresses that are weakly correlated.

(Bodnar Paper at 210.)

The Bodnar Paper was published in Proceedings of the Applied Telecommunication Symposium, 2000 Advanced Simulation Technologies Conference, hosted by Dr. Bohdan Bodnar, then of Lucent Technologies, Inc. (Bodnar Paper at 207.) The Bodnar Paper was printed, along with 43 other articles, in a hardcover edition co-edited by Dr. Bodnar. The Bodnar Paper listed four authors: Bohdan Bodnar, Abdullah Ali Bahattab, George Kraft, and Martha Evens. Dr. Bodnar, not defendant Dr. Bahattab, is the first listed author. (*Id.* at 207.) The pronouns "we" and "our" appear 82 times throughout the Bodnar Paper to describe the work underlying the five-page paper. The Bodnar Paper also contains an "Acknowledgements" section, in which the four authors thank five other individuals who assisted with, but were not authors of, the article. (*Id.* at 211.)

Two years later, the same four authors published a revised version of the Bodnar Paper entitled "Producing a High Hit Ratio and Low Search Time in Forwarding Routing Tables by Predicting IP Addresses" ("Producing a High Hit Ratio"). The order of the author list shifted, with defendant Dr. Bahattab listed first, followed by Bodnar, Kraft, and Evens. Dr. Bodnar is now listed as an employee of Motorola. A footnote by Dr. Bodnar's name highlights that: "This work was done while Bodnar was at Lucent in 2000." ("Producing a High Hit Ratio" at 2338.)

- 32 -

This revised article included the same figures as the Bodnar Paper and a similar conclusion regarding ARMA:

> We divided the data into two groups, and built a particular model for each group. We chose the ARMA(1,2) model for the IP addresses that are strong correlated, and we chose the ARMA(1,3) model for the IP addresses that are weakly correlated.

(*Id.* at 2344.)

Approximately two months after filing the Provisional Application, on August 7, 2000, Dr. Bahattab filed U.S. Patent Application, Ser. No. 09/633,754 (the "Application"), entitled "Predictive Routing Table Cache Population," which claimed priority to the June 2, 2000 Provisional Application. The Application contained four proposed claims, two of which were dependent claims relating to the use of ARMA in a router. (Application at 30.)

The Patent Examiner rejected both independent claims put forward in the Application on December 11, 2003 as having been anticipated by the prior art. (*Id.* at 46-51.) The Patent Examiner found, however, that the two ARMA-related dependent claims "are objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims." (*Id.* at 50.) In short, the Patent Examiner found that the use of ARMA in the router context was the one aspect of the proposed invention that was not taught by the prior art of record, and therefore the one aspect of the proposed technology that was patentable. Dr. Bahattab subsequently amended the Application to consist only of two ARMA-related claims, which the examiner allowed. (*Id.* at 54-58.) The '457 Patent issued on November 9, 2004 with only two claims, both containing the same ARMA limitation: "wherein said temporal model is based on the autoregressive moving average of the occurrence of said destination addresses." ('457 Patent Claims 1 and 2.)


**INTERROGATORY NO. 3:**

Describe all facts upon which you base your allegation that the claims of the '457 patent are unenforceable due to breach of the duty of candor and good faith before the Patent

Office as stated in paragraphs 18-27 of the Complaint.

OBJECTIONS AND ANSWER

Juniper incorporates its General Objections by reference. Subject to and without waiving the foregoing objections, Juniper incorporates its answer to Interrogatory No. 2 and further states that, in April 2000, Bohdan Bodnar, Abdullah Bahattab, Martha Evens, and George Kraft co-authored a paper disclosing research regarding the use of autoregressive moving average ("ARMA") in network routers. Two months later, Dr. Bahattab filed a patent application based on the exact same technology, representing himself to the Patent Office as the "sole inventor" of the claimed invention. This application issued on November 9, 2004 as U.S. Patent No. 6,816,457, the Patent-at-Issue. During prosecution of the '457 Patent, however, Dr. Bahattab failed to provide a copy of the co-authored paper to the Patent Office. Had he done so, the filing would have been material to patentability because it would have raised a substantial question regarding Dr. Bahattab's contention that he alone was the inventor of the Patent-at-Issue. Because Dr. Bahattab failed to provide this information, the '457 Patent is invalid for failure to list the correct inventors and unenforceable due to Dr. Bahattab's inequitable conduct.


**INTERROGATORY NO. 4:**

Describe all facts upon which you base your allegation that Juniper has not infringed, contributed to the infringement, or actively induced infringement of any claim of the '457 patent, as stated in paragraph 29 of the Complaint. In answering this interrogatory, specify which claim(s) Juniper allegedly does not infringe, state in detail, on a limitation-by-limitation basis, how the Products in Question do not meet the limitations of the claims, and provide a claim chart comparing each limitation of each claim to the operation of the Products in Question.

OBJECTIONS AND ANSWER

Juniper incorporates its General Objections by reference. Juniper objects to Bahattab's attempt to categorize the multiple discrete subparts herein as one interrogatory instead of separate

interrogatories as required by Rule 33(a). Subject to and without waiving the foregoing objections, Juniper states that it does not infringe either claim 1 or claim 2 of the '457 Patent because none of its routers employ ARMA in the processes by which such routers determine active routes to network destinations and install such active routes into forwarding tables.


## INTERROGATORY NO. 5:

Identify by product designation number, model name, internal designation, brand name, trademark and dates of manufacture all Products in Question that constitute, incorporate or contain a routing table, forwarding table, routing table cache, or forwarding table cache.

### OBJECTIONS AND ANSWER

Juniper incorporates its General Objections by reference. Juniper objects to Bahattab's attempt to categorize the multiple discrete subparts herein as one interrogatory instead of separate interrogatories as required by Rule 33(a). Juniper objects that this Interrogatory is overly broad, unduly burdensome, not relevant to a claim or defense of any party, and not reasonably calculated to lead to the discovery of admissible evidence to the extent that this Interrogatory asks Juniper to identify by product designation number, model name, internal designation, brand name, trademark, and dates of manufacture all Products in Question that constitute, incorporate or contain a routing table, forwarding table, routing table cache, or forwarding table cache. Subject to and without waiving the foregoing objections, Juniper will identify products that incorporate or contain a routing table, forwarding table, routing table cache, or forwarding table cache after the entry of a suitable protective order.

**INTERROGATORY NO. 6:**

Identify by name, title, employer, address, telephone number, and email address each person involved in the design, development, and programming of the Products in Question, whether or not such persons are currently or previously employed by Juniper. In responding to this interrogatory, identify which product the person was involved with and the nature of his or her involvement.

OBJECTIONS AND ANSWER

     Juniper incorporates its General Objections by reference. Juniper objects to Bahattab's attempt to categorize the multiple discrete subparts herein as one interrogatory instead of separate interrogatories as required by Rule 33(a). Juniper objects that this Interrogatory is overly broad, unduly burdensome, not relevant to a claim or defense of any party, and not reasonably calculated to lead to the discovery of admissible evidence to the extent that this Interrogatory seeks the identification of "each person involved in the design, development, and programming of the Products in Question."

     Subject to and without waiving the foregoing objections, Juniper identifies the following personnel responsible for the Products in Question:

| Product | Name | Title | Address | Phone |
|---------|------|-------|---------|-------|
| E-Series | Jon Mischel | Sr. Product Mgr., E-Series Platforms | Westford Campus (10 Technology Park Dr., Westford, MA 01886) | (978) 589-0264 |
| J-Series | James Kawamoto | Product Line Manager, Volume Platforms and UTM Branch, (SSG 5/20, SSG 140, SSG 320/350, J2300, J2320, J2350) | Sunnyvale Campus (1194 N. Mathilda Ave., Sunnyvale, CA 94089) | (408) 936-4974 |

- 36 -

| Product | Name | Title | Address | Phone |
|---------|------|-------|---------|-------|
| J-Series | Kent Stevens | Product Line Manager, Mid Range Branch Platforms (SSG 520/550, J4350/J6350) | Sunnyvale Campus | (408) 936-7573 |
| J-Series | Raghavendra Mallya | | Sunnyvale Campus | (408) 745-2000 |
| JUNOS SW | Michael Bushong | Product Mgr., JUNOS | Sunnyvale Campus | (408) 936-2415 |
| JUNOSe SW | Sanjay Wadhwa | Product Mgr., JUNOSe | Westford Campus | (978) 589-0697 |
| M-Series | Truman Joe | Product Mgr., M-Series Platforms | Sunnyvale Campus | (408) 745-2948 |
| T-Series | Jim Sugg | Acting Product Mgr., T-Series Platforms | Sunnyvale Campus | (408) 745-2382 |

## INTERROGATORY NO. 7:

Identify the officer and/or managing agent and the employee most knowledgeable about each of the research and development, structure, operation, marketing, technical and/or customer support of each of the Products in Question.

### OBJECTIONS AND ANSWER

Juniper incorporates its General Objections by reference. Juniper objects to Bahattab's attempt to categorize the multiple discrete subparts herein as one interrogatory instead of separate interrogatories as required by Rule 33(a). Juniper objects that this Interrogatory is overly broad, unduly burdensome, not relevant to a claim or defense of any party, and not reasonably calculated to lead to the discovery of admissible evidence to the extent that this Interrogatory asks Juniper to identify the officer and/or managing agent and the employee most knowledgeable about each of the research and development, structure, operation, marketing, technical and/or customer support of each of the Products in Question.

Subject to and without waiving the foregoing objections, Juniper incorporates its answer to Interrogatory No. 6.

## INTERROGATORY NO. 8:

Identify all opinions, advice, analysis, or study, whether written or oral, relating to the infringement, validity, and/or enforceability, of the '457 patent. In responding, include the date, author, recipients, and substance of the opinion, advice, analysis, or study, including any prior art referenced in the opinion, advice, analysis, or study.

### OBJECTIONS AND ANSWER

Juniper incorporates its General Objections by reference. Juniper objects to Bahattab's attempt to categorize the multiple discrete subparts herein as one interrogatory instead of separate interrogatories as required by Rule 33(a). Juniper objects to this Interrogatory as seeking information protected by the attorney-client privilege and/or attorney work product doctrine. Subject to and without waiving the foregoing objections, Juniper states that it does not assert advice of counsel as a defense to any allegation of willful infringement by Bahattab, and further, that Bahattab has made no such assertion. In the event that Juniper asserts advice of counsel as a defense to an allegation of willful infringement by Bahattab, Juniper will supplement its response to this Interrogatory.

## INTERROGATORY NO. 9:

Identify all persons whom Juniper expects will offer testimony at trial in this case, including, without limitation, any expert witness, and state the substance of the facts or opinions on which the witness is expected to testify.

### OBJECTIONS AND ANSWER

Juniper incorporates its General Objections by reference. Juniper objects to Bahattab's attempt to categorize the multiple discrete subparts herein as one interrogatory instead of separate

interrogatories as required by Rule 33(a). Juniper objects that this Interrogatory is premature and not consistent with the Scheduling Order entered by the Court. Juniper objects to this Interrogatory as seeking discovery of expert opinion within the scope of Fed. R. Civ. P. 26(a)(2). Subject to and without waiving the foregoing objections, Juniper refers Bahattab to its Initial Disclosures with respect to individuals likely to have discoverable information. Juniper will supplement its response to this Interrogatory at a later date consistent with its obligations under Fed. R. Civ. P. 26(a)(2) and the Scheduling Order entered by the Court.

**INTERROGATORY NO. 10:**

Specifically describe the level or [sic] ordinary skill in the art which you contend is applicable to the '457 patent. Your response should explain the factual bases for your contention and identify any documents or witnesses with knowledge supporting your contention.

OBJECTIONS AND ANSWER

Juniper incorporates its General Objections by reference. Juniper objects to Bahattab's attempt to categorize the multiple discrete subparts herein as one interrogatory instead of separate interrogatories as required by Rule 33(a). Juniper objects to this Interrogatory as seeking discovery of expert opinion within the scope of Fed. R. Civ. P. 26(a)(2). Subject to and without waiving the foregoing objections, Juniper will provide its response to this Interrogatory at a later date consistent with its obligations under Fed. R. Civ. P. 26(a)(2) and the Scheduling Order entered by the Court.

**INTERROGATORY NO. 11:**

Identify any person who provided, was requested to provide, or was contacted or consulted in providing any information that was considered or used by Juniper's initial disclosures and responses to discovery requests in this matter, including, but not limited to, these interrogatories and concurrently served document requests.

<u>OBJECTIONS AND ANSWER</u>

Juniper incorporates its General Objections by reference.  Juniper objects to this Interrogatory as seeking information protected by the attorney-client privilege and/or attorney work product doctrine.  Juniper objects that Bahattab's use of the terms "information that was considered or used by Juniper's initial disclosures and responses to discovery requests" is vague and ambiguous.  Subject to and without waiving the foregoing objections, Juniper identifies Scott Coonan, Esq. in response to this Interrogatory.

**INTERROGATORY NO. 12:**

Describe Juniper's policies and practices with respect to the filing, storage, retention, and destruction of documents from January 1, 2000 to the present.

<u>OBJECTIONS AND ANSWER</u>

Juniper incorporates its General Objections by reference.  Subject to and without waiving the foregoing objections, Juniper will provide an answer to this Interrogatory after the entry of a suitable protective order.

Dated:  July 14, 2008

Alan M. Fisch (DC-453068)
afisch@kayescholer.com
Jason F. Hoffman (DC-467827)
jahoffman@kayescholer.com
David L. Cousineau (DC-482691)
dcousineau@kayescholer.com
KAYE SCHOLER LLP
The McPherson Building
901 Fifteenth Street, N.W.
Washington, D.C.  20005-2327
(202) 682-3500 Tel.
(202) 682-3580 Fax.

Attorneys for
JUNIPER NETWORKS, INC.

## CERTIFICATE OF SERVICE

I, Jason F. Hoffman, hereby certify that I caused a copy of the foregoing to be served by

first-class mail on the parties listed below on July 14, 2008:

Henry W. Asbill
DEWEY & LEBOEUF, LLP
1101 New York Avenue, N.W., Suite 1100
Washington, D.C. 20005-4213
hasbill@dl.com
Tel.: 202-986-8141
Fax: 202-956-3263

George G. Mahfood (*pro hac vice*)
FERRELL LAW, P.A.
34th Floor, Miami Center
201 S. Biscayne Boulevard
Miami, Florida 33131
gmahfood@ferrellworldwide.com
Tel.: 305-371-8585
Fax: 305-371-5732

*Attorneys for Defendant Abdullah Ali Bahattab*

Jason F. Hoffman

# EXHIBIT E

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JUNIPER NETWORKS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ABDULLAH ALI BAHATTAB,<br><br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil No. 1:07cv1771-PLF |

### JUNIPER NETWORKS, INC.'S OBJECTIONS AND RESPONSES TO ABDULLAH ALI BAHATTAB'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS (1-29)

Plaintiff Juniper Networks, Inc. ("Juniper") hereby provides objections and responses to Defendant Abdullah Ali Bahattab's ("Bahattab") First Set of Requests for Production of Documents and Things (1-29) (the "Requests").

### GENERAL OBJECTIONS

1.      Juniper objects to Bahattab's Requests and the definitions and instructions therein to the extent that they purport to impose any discovery obligation greater than or different from those required by the Federal Rules of Civil Procedure and the Rules of this Court.

2.      Juniper objects to these Requests to the extent they seek documents that are not reasonably available to Juniper or that are not within Juniper's possession, custody, or control.

3.    Juniper objects to these Requests to the extent they seek documents that are not relevant to a claim or defense of any party and are not reasonably calculated to lead to the discovery of admissible evidence.

4.    Juniper objects to these Requests to the extent they seek documents that are readily available or more accessible to Bahattab from Bahattab's own files and the burden of obtaining such documents is substantially the same for Bahattab as it is for Juniper.

5.    Juniper objects to these Requests to the extent they seek documents subject to the attorney-client privilege and/or work product doctrine. Juniper will provide a log identifying all such privileged documents and the bases for the assertion of privilege. Due to the undue burden and expense, however, Juniper will not log any documents subject to attorney-client privilege and the work product doctrine relating to the litigation and created after the date of the filing of the Complaint initiating this action.

6.    Juniper objects to these Requests to the extent that they request confidential, proprietary, or trade secret information. Subject to its other objections, Juniper will provide such information (if responsive to other non-objectionable discovery requests) after entry of a suitable protective order, which limits access and dissemination of such information in a manner so as to preserve and protect Juniper's confidential, proprietary or trade secret information.

7.    Juniper objects to each Request to the extent it calls for documents in Juniper's possession, the disclosure of which is subject to or precluded by restrictions of confidentiality imposed by, or pursuant to, an agreement with a third party or protective

order entered by a court. Juniper will provide such documents after it has obtained the requisite consent of the appropriate third parties.

8.      To the extent that these Requests seek discovery of materials within the scope of Fed. R. Civ. P. 26(a)(2), Juniper objects to these Requests as premature and improper discovery of expert opinion.

9.      Juniper provides responses based upon documents that are reasonably available to Juniper at this time. Further discovery, investigation, legal research and/or analysis may supply additional documents and/or meaning to known facts or documents. The responses set forth are given without prejudice to Juniper's right to introduce evidence of subsequently discovered or compiled facts or interpretations thereof, or to supplement, modify, or otherwise change these responses.

## SPECIFIC OBJECTIONS

1.      Juniper objects that Bahattab's definition of "Products in Question" is overly broad and beyond the scope of the claims set forth in U.S. Patent No. 6,816,457 ("the '457 Patent" or the "Patent-at-Issue"). Moreover, the definition of all such models as "Products in Question" is unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. For purposes of responding to these Requests, Juniper will limit the scope of its responses to document requests with documents sufficient to show the processes by which Juniper routers determine active routes to network destinations and install such active routes into forwarding tables.

2.      Juniper objects to Bahattab's request that Juniper provide a privilege log identifying all documents withheld from production on the basis of attorney-client privilege or work product immunity simultaneously with its objections and responses to

- 3 -

Bahattab's Requests. Juniper will provide a log identifying all such privileged

documents and the bases for the assertion of privilege at the appropriate stage in this

litigation and in compliance with all applicable rules and the Scheduling Order entered by

the Court.

   3.  Juniper objects to Bahattab's request that Juniper produce documents

responsive to the Requests for inspection and copying at the offices of Dewey & LeBoeuf,

LLP, 1101 New York Avenue, Suite 1100, Washington, DC 20005-4213. Juniper will

produce such documents at a time and place agreed upon by the parties through their

counsel.

## OBJECTIONS AND RESPONSES

### Request for Production No. 1:

All documents requested to be identified in Defendant's interrogatories, and all
documents which were reviewed in answering those interrogatories or that supported or
formed a basis for the preparation of the responses to those interrogatories.

   <u>Objections and Response</u>

   Juniper incorporates its General Objections by reference. Juniper objects to this

Request to the extent it seeks information protected by the attorney-client privilege and/or

attorney work product doctrine. Juniper objects that this Request is overly broad, unduly

burdensome, not relevant to the claim or defense of any party, and not reasonably

calculated to lead to the discovery of admissible evidence to the extent that this Request

seeks "all documents" which were reviewed in answering Bahattab's Interrogatories or

that supported or formed a basis for the preparation of the responses to those

Interrogatories. Juniper interprets this Request as seeking any documents referenced in

its responses to Bahattab's Interrogatories.

- 4 -

Subject to and without waiving the foregoing objections, upon entry of an

appropriate protective order, Juniper will produce non-privileged documents responsive

to the non-objectionable portions of this Request, to the extent such documents exist and

are reasonably available to Juniper.

**Request for Production No. 2:**

Documents sufficient to determine the organizational structure and personnel of Juniper
Networks, Inc., and its relationships to parent, subsidiary, sister, or other affiliated
corporations, including but not limited to research and/or development units, departments,
divisions, or other entities responsible for the Products in Question, including, but not
limited to, any organizational charts.

Objections and Response

Juniper incorporates its General Objections by reference.  Subject to and without

waiving the foregoing objections, upon entry of an appropriate protective order, Juniper

will produce documents responsive to the non-objectionable portions of this Request, to

the extent such documents exist and are reasonably available to Juniper.

**Request for Production No. 3:**

Documents sufficient to identify all persons, including their positions at the time and
currently, who participated or otherwise provided information in connection with the
design, development, or manufacture of each of the Products in Question.

Objections and Response

Juniper incorporates its General Objections by reference.  Juniper objects that this

Request is overly broad, unduly burdensome, not relevant to a claim or defense of any

party, and not reasonably calculated to lead to the discovery of admissible evidence to the

extent that this Request seeks the identification of "all persons who participated or

otherwise provided information" in connection with the design, development, or manufacture of each of the Products in Question.

Subject to and without waiving the foregoing objections, upon entry of an appropriate protective order, Juniper will produce documents sufficient to identify the individuals responsible for developing the processes by which Juniper routers determine active routes to network destinations and install such active routes into forwarding tables.

**Request for Production No. 4:**

Documents sufficient to identify the design and development timeline for each of the Products in Question.

Objections and Response

Juniper incorporates its General Objections by reference. Juniper objects that this Request is overly broad, unduly burdensome, not relevant to a claim or defense of any party, and not reasonably calculated to lead to the discovery of admissible evidence to the extent that this Request seeks documents identify[ing] the design and development timeline for "each of the Products in Question."

Subject to and without waiving the foregoing objections, upon entry of an appropriate protective order, Juniper will produce non-privileged documents sufficient to show the design and development timeline with respect to the processes by which Juniper routers determine active routes to network destinations and install such active routes into forwarding tables.

**Request for Production No. 5:**

All patents and patent applications whether foreign or domestic (and related prosecution histories) owned, licensed, or controlled by Juniper Networks, Inc., that refer or relate to the Products in Question.

<u>Objections and Response</u>

Juniper incorporates its General Objections by reference. Juniper objects that this

Request is overly broad, unduly burdensome, not relevant to a claim or defense of any

party, and not reasonably calculated to lead to the discovery of admissible evidence.

**Request for Production No. 6:**

Documents sufficient to describe Juniper's document retention, management, and/or destruction policies, including those with respect to e-mail from January 1, 2000 to the present.

<u>Objections and Response</u>

Juniper incorporates its General Objections by reference. Subject to and without

waiving the foregoing objections, upon entry of an appropriate protective order, Juniper

will produce documents responsive to the non-objectionable portions of this Request, to

the extent such documents exist and are reasonably available to Juniper.

**Request for Production No. 7:**

All documents including, without limitation, specifications, prints, data sheets, drawings, schematic diagrams, block diagrams, notes, notebooks, workbooks, engineering notebooks, engineering specifications, simulation files, software source code, prototypes, correspondence (including electronic mail), memoranda, conference papers, technical or marketing presentations, design requirements, design specifications, training manuals, technique manuals, technical articles, instructions, test results, and any materials included with the sale of the Products in Question, together with all comments that show, describe, or relate to the structure, function, operation, demonstration, or use of the routing tables and forwarding tables for each of the Products in Question.

Objections and Response

Juniper incorporates its General Objections by reference. Juniper objects that this Request is overly broad, unduly burdensome, not relevant to a claim or defense of any party, and not reasonably calculated to lead to the discovery of admissible evidence to the extent that the Request seeks "all documents" that show, describe, or relate to the structure, function, operation, demonstration, or use of the routing tables and forwarding tables for each of the Products in Question.

Subject to and without waiving the foregoing objections, upon entry of an appropriate protective order, Juniper will produce non-privileged documents sufficient to describe the processes by which Juniper routers determine active routes to network destinations and install such active routes into forwarding tables, to the extent such documents exist and are reasonably available to Juniper.

**Request for Production No. 8:**

All documents relating or referring to the development or specifications of methods, processes, techniques, or algorithms used in the operation, population, derivation, and/or updating of forwarding tables, routing table caches, or forwarding table caches in the Products in Question.

Objections and Response

Juniper incorporates its General Objections by reference. Juniper objects that this Request is overly broad, unduly burdensome, not relevant to a claim or defense of any party, and not reasonably calculated to lead to the discovery of admissible evidence to the extent that the Request seeks "all documents" relating or referring to the development or specifications of methods, processes, techniques, or algorithms used in the operation,

population, derivation, and/or updating of forwarding tables, routing table caches, or

forwarding table caches in the Products in Question.

Subject to and without waiving the foregoing objections, upon entry of an

appropriate protective order, Juniper will produce non-privileged documents sufficient to

describe the development and specifications of the processes by which Juniper routers

determine active routes to network destinations and install such active routes into

forwarding tables, to the extent such documents exist and are reasonably available to

Juniper.

**Request for Production No. 9:**

All documents relating or referring to the development or specifications of routing tables,
forwarding tables, and any form of caching used for such tables in Juniper's routers.

Objections and Response

Juniper incorporates its General Objections by reference.  Juniper objects that this

Request is overly broad, unduly burdensome, not relevant to a claim or defense of any

party, and not reasonably calculated to lead to the discovery of admissible evidence to the

extent that the Request seeks "all documents" relating or referring to the development or

specifications of routing tables, forwarding tables, and any form of caching used for such

tables in Juniper's routers.

Subject to and without waiving the foregoing objections, upon entry of an

appropriate protective order, Juniper will produce documents sufficient to describe the

development and specifications of the processes by which Juniper routers determine

active routes to network destinations and install such active routes into forwarding tables,

to the extent such documents exist and are reasonably available to Juniper.

- 9 -

**Request for Production No. 10:**

One (1) sample of each Product in Question, including all models within a given product series.

Objections and Response

Juniper incorporates its General Objections by reference. Juniper objects that this Request is overly broad and unduly burdensome in seeking samples of each Product in Question, including all models within a given product series. Bahattab has identified at least seven Juniper router series, including at least 30 enumerated models of Juniper routers, as Products in Question. Juniper specifically objects that Bahattab's definition of all models of Juniper's J, M, MX, T, E, EX, and BX series routers, along with "any other routers utilizing routing tables, forwarding tables, or other routing caches or forwarding caches offered for sale from January 1, 2000 to the present" as "Products in Question" is overly broad and beyond the scope of the claims set forth in U.S. Patent No. 6,816,457. Production of samples of each such model, along with samples of models not identified by Bahattab, if applicable, would be unduly expensive and would far outweigh any benefit to be obtained from such production.

**Request for Production No. 11:**

All documents referring or relating to the '457 patent, the '754 application, or the '888 application and their respective prosecutions, and all documents referring to the subject matter described, disclosed, or claimed therein.

Objections and Response

Juniper incorporates its General Objections by reference. Juniper objects that this Request is overly broad, unduly burdensome, not relevant to a claim or defense of any

- 10 -

party, and not reasonably calculated to lead to the discovery of admissible evidence to the extent that the Request seeks "all documents" referring or relating to the '457 patent, the '754 application, or the '888 application and their respective prosecutions, and "all documents" referring to the subject matter described, disclosed, or claimed therein.

Subject to and without waiving the foregoing objections, upon entry of an appropriate protective order, Juniper will produce non-privileged documents responsive to the non-objectionable portions of this Request, to the extent such documents exist and are reasonably available to Juniper.

**Request for Production No. 12:**

All documents referring or relating to Dr. Bahattab's "Predicting IP Addresses" paper.

Objections and Response

Juniper incorporates its General Objections by reference. Juniper objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.

Subject to and without waiving the foregoing objections, upon entry of an appropriate protective order, Juniper will produce non-privileged documents responsive to the non-objectionable portions of this Request, to the extent such documents exist and are reasonably available to Juniper.

**Request for Production No. 13:**

All documents referring or relating to Dr. Bahattab's IEEE article.

- 11 -

<u>Objections and Response</u>

Juniper incorporates its General Objections by reference.  Juniper objects to this

Request to the extent it seeks information protected by the attorney-client privilege and/or

attorney work product doctrine.

Subject to and without waiving the foregoing objections, upon entry of an

appropriate protective order, Juniper will produce non-privileged documents responsive

to the non-objectionable portions of this Request, to the extent such documents exist and

are reasonably available to Juniper.


**<u>Request for Production No. 14</u>:**

All documents referring or relating to when and how Juniper Networks first became
aware of each of the '457 patent, the '754 application, the '888 application, Dr.
Bahattab's "Predicting IP Addresses" paper, the IEEE article, and Dr. Bahattab himself.

<u>Objections and Response</u>

Juniper incorporates its General Objections by reference.  Juniper objects to this

Request to the extent it seeks information protected by the attorney-client privilege and/or

attorney work product doctrine.

Subject to and without waiving the foregoing objections, upon entry of an

appropriate protective order, Juniper will produce non-privileged documents responsive

to the non-objectionable portions of this Request, to the extent such documents exist and

are reasonably available to Juniper.


**<u>Request for Production No. 15</u>:**

All documents referring or relating to Dr. Bahattab or referring or relating to any
communications with Dr. Bahattab.

Objections and Response

Juniper incorporates its General Objections by reference.  Juniper objects to this

Request to the extent it seeks information protected by the attorney-client privilege and/or

attorney work product doctrine.

Subject to and without waiving the foregoing objections, upon entry of an

appropriate protective order, Juniper will produce non-privileged documents responsive

to the non-objectionable portions of this Request, to the extent such documents exist and

are reasonably available to Juniper.

**Request for Production No. 16:**

All documents that relate or refer to any communication between Juniper Networks, Inc.
and any other person regarding the '457 patent, the '754 application, the '888 application,
and the "Predicting IP Addresses" paper, the IEEE article, or this litigation, including
without limitation any reports, statements, or analysis by third parties.

Objections and Response

Juniper incorporates its General Objections by reference.  Juniper objects to this

Request to the extent it seeks information protected by the attorney-client privilege and/or

attorney work product doctrine.

Subject to and without waiving the foregoing objections, upon entry of an

appropriate protective order, Juniper will produce non-privileged documents responsive

to the non-objectionable portions of this Request, to the extent such documents exist and

are reasonably available to Juniper.

**<u>Request for Production No. 17</u>:**

All documents relating or referring to the predictive routing table cache population techniques as disclosed to Juniper by Dr. Bahattab in 2002, or any references to those techniques.

> <u>Objections and Response</u>

Juniper incorporates its General Objections by reference. Juniper objects that this Request is overly broad, unduly burdensome, not relevant to a claim or defense of any party, and not reasonably calculated to lead to the discovery of admissible evidence to the extent that the Request seeks "all documents" relating or referring to the predictive routing table cache population techniques as disclosed to Juniper by Dr. Bahattab in 2002, or any references to those techniques.

Subject to and without waiving the foregoing objections, upon entry of an appropriate protective order, Juniper will produce non-privileged documents responsive to the non-objectionable portions of this Request, to the extent such documents exist and are reasonably available to Juniper.

**<u>Request for Production No. 18</u>:**

All documents relating to Juniper's 35 U.S.C. §§ 102, 103 contentions as alleged in Paragraph 15 of the Complaint.

> <u>Objections and Response</u>

Juniper objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.

Subject to and without waiving the foregoing objections, Juniper will produce non-privileged documents responsive to the non-objectionable portions of this Request, to the extent such documents exist and are reasonably available to Juniper.

**<u>Request for Production No. 19</u>:**

All documents relating to Juniper's allegations that all inventors were not included during the application for the '457 patent, as alleged in Paragraphs 16, and 18-27 of the Complaint.

<u>Objections and Response</u>

Juniper incorporates its General Objections by reference. Juniper objects to this

Request to the extent it seeks information protected by the attorney-client privilege and/or

attorney work product doctrine.

Subject to and without waiving the foregoing objections, Juniper will produce

non-privileged documents responsive to the non-objectionable portions of this Request,

to the extent such documents exist and are reasonably available to Juniper.

**<u>Request for Production No. 20</u>:**

All documents relating to Juniper's non-infringement contentions as alleged in Paragraph 29 of the Complaint.

<u>Objections and Response</u>

Juniper incorporates its General Objections by reference. Juniper objects that this

Request is overly broad, unduly burdensome, not relevant to a claim or defense of any

party, and not reasonably calculated to lead to the discovery of admissible evidence to the

extent that the Request seeks "all documents" relating to Juniper's non-infringement

contentions as alleged in Paragraph 29 of the Complaint. Juniper objects to this Request

to the extent it seeks information protected by the attorney-client privilege and/or

attorney work product doctrine.

- 15 -

Subject to and without waiving the foregoing objections, upon entry of an

appropriate protective order, Juniper will produce non-privileged documents responsive

to the non-objectionable portions of this Request, to the extent such documents exist and

are reasonably available to Juniper.

**Request for Production No. 21:**

All documents that Juniper contends either alone or in combination disclose or constitute
prior art that anticipates or renders obvious or in any other way renders a claim of the
'457 patent invalid or unenforceable.

Objections and Response

Juniper incorporates its General Objections by reference.  Subject to and without

waiving the foregoing objections, Juniper will produce documents responsive to this

Rquest.

**Request for Production No. 22:**

All documents referring to or relating to any prior art reference relating in any manner to
the '457 patent, including without limitation any study, search, or analysis to determine
the patentability, the validity, enforceability, or enforceable scope of any of the claims of
the '457 patent.

Objections and Response

Juniper incorporates its General Objections by reference.  Juniper objects that this

Request is overly broad, unduly burdensome, not relevant to a claim or defense of any

party, and not reasonably calculated to lead to the discovery of admissible evidence to the

extent that the Request seeks "all documents" referring to or relating to any prior art

reference relating in any manner to the '457 patent, including without limitation any

study, search, or analysis to determine the patentability, the validity, enforceability, or

enforceable scope of any of the claims of the '457 patent. Juniper objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.

Subject to and without waiving the foregoing objections, upon entry of an appropriate protective order, Juniper will produce non-privileged documents responsive to the non-objectionable portions of this Request, to the extent such documents exist and are reasonably available to Juniper.

**Request for Production No. 23:**

All documents referring to, relating to, or constituting patents, publications, written descriptions or other prior art references of which you are aware that concern, disclose, describe, or claim any invention disclosed, described, or claimed in the '457 patent or any product embodying or using any invention disclosed, described, or claimed in the '457 patent and how, if at all, Juniper alleges these references affect the validity, enforceability, or scope of the '457 patent.

Objections and Response

Juniper incorporates its General Objections by reference. Subject to and without waiving the foregoing objections, Juniper will produce documents responsive to this Rquest.

**Request for Production No. 24:**

All documents referring or relating to knowledge or use by others of any invention disclosed, described, or claimed in the '457 patent.

Objections and Response

Juniper incorporates its General Objections by reference. Juniper objects that this Request is overly broad, unduly burdensome, not relevant to a claim or defense of any

party, and not reasonably calculated to lead to the discovery of admissible evidence to the extent that the Request seeks "all documents" referring or relating to knowledge or use by others of any invention disclosed, described, or claimed in the '457 patent.

Subject to and without waiving the foregoing objections, upon entry of an appropriate protective order, Juniper will produce non-privileged documents responsive to the non-objectionable portions of this Request, to the extent such documents exist and are reasonably available to Juniper.

**Request for Production No. 25:**

All documents referring or relating to the sale or offer for sale of any product constituting prior art that allegedly embodies or uses any invention disclosed, described, or claimed in the '457 patent, including without limitation all advertising, sales, promotional, and technical materials related to such offer or sale.

Objections and Response

Juniper incorporates its General Objections by reference. Juniper objects that this Request is overly broad, unduly burdensome, not relevant to a claim or defense of any party, and not reasonably calculated to lead to the discovery of admissible evidence to the extent that the Request seeks "all documents" referring or relating to knowledge or use by others of any invention disclosed, described, or claimed in the '457 patent.

Subject to and without waiving the foregoing objections, upon entry of an appropriate protective order, Juniper will produce non-privileged documents responsive to the non-objectionable portions of this Request, to the extent such documents exist and are reasonably available to Juniper.

**Request for Production No. 26:**

All documents that refer or relate to the public use or making, in this or another country, of any product embodying or using any invention disclosed, described, or claimed in the '457 patent, that allegedly renders the '457 patent invalid or unenforceable.

    Objections and Response

      Juniper incorporates its General Objections by reference. Juniper objects that this Request is overly broad, unduly burdensome, not relevant to a claim or defense of any party, and not reasonably calculated to lead to the discovery of admissible evidence to the extent that the Request seeks "all documents" referring or relating to knowledge or use by others of any invention disclosed, described, or claimed in the '457 patent.

      Subject to and without waiving the foregoing objections, upon entry of an appropriate protective order, Juniper will produce non-privileged documents responsive to the non-objectionable portions of this Request, to the extent such documents exist and are reasonably available to Juniper.

**Request for Production No. 27:**

All extrinsic evidence Juniper contends should be considered in construing the claims in the '457 patent.

    Objections and Response

      Juniper incorporates its General Objections by reference. Juniper objects that this Request is premature, as Juniper has not yet identified the extrinsic evidence that it contends should be considered in construing the claims of the '457 Patent.

      Subject to and without waiving the foregoing objections, Juniper will produce documents responsive to the non-objectionable portions of this Request at the appropriate

stage in this litigation and in compliance with all applicable rules and the Scheduling

Order entered by the Court.


**Request for Production No. 28:**

All documents referring or relating to any consideration given by Juniper to any possible liability for patent infringement should Juniper commence or continue to make, use, distribute, or sell each of the Products in Question, including without limitation any legal advice sought or received, and any documents, including analysis, relating to whether any Juniper product does or does not infringe any claim of the '457 patent either literally or by equivalents.

    <u>Objections and Response</u>

    Juniper incorporates its General Objections by reference.  Juniper objects that this

Request is overly broad, unduly burdensome, not relevant to a claim or defense of any

party, and not reasonably calculated to lead to the discovery of admissible evidence to the

extent that the Request seeks "all documents" referring or relating to any consideration

given by Juniper to any possible liability for patent infringement should Juniper

commence or continue to make, use, distribute, or sell each of the Products in Question.

Juniper objects to this Request as it seeks information protected by the attorney-client

privilege and/or attorney work product doctrine.


**Request for Production No. 29:**

Any documents provided to and any communications with any experts or technical consultants retained by Juniper in connection with this case or the '457 patent.

    <u>Objections and Response</u>

    Juniper incorporates its General Objections by reference.  Juniper objects to this

Request as prematurely seeking discovery of expert opinion within the scope of Fed. R.

Civ. P. 26(a)(2).  Juniper objects to this Request to the extent it seeks information

protected by the attorney-client privilege and/or attorney work product doctrine.

Subject to and without waiving the foregoing objections, Juniper will produce

non-privileged documents responsive to the non-objectionable portions of this Request at

the appropriate stage in this litigation and in compliance with all applicable rules and the

Scheduling Order entered by the Court.

Dated:  July 14, 2008

Alan M. Fisch (DC-453068)
afisch@kayescholer.com
Jason F. Hoffman (DC-467827)
jahoffman@kayescholer.com
David L. Cousineau (DC-482691)
dcousineau@kayescholer.com
KAYE SCHOLER LLP
The McPherson Building
901 Fifteenth Street, N.W.
Washington, D.C.  20005-2327
(202) 682-3500 Tel.
(202) 682-3580 Fax.

Attorneys for
JUNIPER NETWORKS, INC.

## CERTIFICATE OF SERVICE

I, Jason F. Hoffman, hereby certify that I caused a copy of the foregoing to be

served by first-class mail on the parties listed below on July 14, 2008:

Henry W. Asbill
DEWEY & LEBOEUF, LLP
1101 New York Avenue, N.W., Suite 1100
Washington, D.C. 20005-4213
hasbill@dl.com
Tel.: 202-986-8141
Fax: 202-956-3263

George G. Mahfood (*pro hac vice*)
FERRELL LAW, P.A.
34th Floor, Miami Center
201 S. Biscayne Boulevard
Miami, Florida 33131
gmahfood@ferrellworldwide.com
Tel.: 305-371-8585
Fax: 305-371-5732

*Attorneys for Defendant Abdullah Ali Bahattab*


Jason F. Hoffman

EXHIBIT F

## Jordan, Brandon

| | |
|---|---|
| **From:** | Jordan, Brandon |
| **Sent:** | Monday, July 14, 2008 1:14 PM |
| **To:** | JaHoffman@kayescholer.com; AFisch@kayescholer.com; dcousineau@kayescholer.com |
| **Cc:** | Auchter, Robert; Mahfood, George; Asbill, Henry; 'Meade, Courtney' |
| **Subject:** | Proposed Protective Order |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |
| **Attachments:** | Proposed Protective Order.doc |

Counsel,

See Dr. Bahattab's latest revisions to the Proposed Protective Order as attached.  This version highlights the variations in the two sides' proposals.  Please let us know when you can provide us with your edits so that it may be filed with the Court.

Thank you,

Brandon

------------------------------------------------
Brandon M. Jordan
Associate Pending Admission
Dewey & LeBoeuf LLP
1101 New York Avenue, N.W., Suite 1100
Washington, D.C. 20005
Direct: +1 202 346 7915
General: +1 202 346 8000
Fax: +1 202 346 8102
brandon.jordan@dl.com
www.dl.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUNIPER NETWORKS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 1:07cv1771-PLF (AK) |
| ) | |
| ABDULLAH ALI BAHATTAB, ) | |
| ) | |
| Defendant. ) | |
| ) | |

### [PROPOSED] PROTECTIVE ORDER

This stipulation is entered into by and among Juniper Networks, Inc. ("Juniper"), and Dr. Abdullah Ali Bahattab ("Dr. Bahattab") (individually referred to as a "Party," and collectively referred to as the "Parties");

WHEREAS, the Parties are engaged in discovery pursuant to the Federal Rules of Civil Procedure and may seek information from third parties to this litigation;

WHEREAS, the Parties believe that discovery will require the disclosure of information or matters that include trade secret or other confidential research, development, or commercial information within the meaning of Rule 26(c) of the Federal Rules of Civil Procedure;

Now, therefore, the Parties agree and the Court orders as follows:

1. **DEFINITIONS**

1.1. "Confidential Information" means Confidential Information that is technical, commercial, financial or marketing in nature and that the designating party reasonably and in good faith believes is confidential and that its disclosure would result in a clearly defined and very serious injury to its business.

1.2.    "Disclosing Party" means any Party or third party who produces for inspection, provides access to, provides copies of, or otherwise discloses Confidential Information in connection with this litigation.

1.3.    "Document" or "documents" mean documents and writings, and include, but are not limited to, records, exhibits, reports, samples, electronic messages, compilations, transcripts, video or audio recordings, disks, affidavits, briefs, summaries, notes, abstracts, drawings, company records and reports, answers to interrogatories, responses to requests for admissions, and motions, including copies or computer-stored or electronic versions or compilations of any of the foregoing.

1.4.    "Producing Party" shall mean any Party who discloses or produces for inspection Confidential Information.

1.5.    "Requesting Party" shall mean any Party who requests the production, inspection or disclosure of Confidential Information from a Producing Party.

1.6.    "Receiving Party" shall mean any Party who receives the Confidential Information of a Producing Party.

1.7.    "Outside Counsel" shall mean the attorneys and employees of Kaye Scholer LLP for plaintiff Juniper Networks, Inc. and the attorneys and employees of Dewey & LeBoeuf, LLP and Ferrell Law, P.A., for defendant Dr. Abdullah Ali Bahattab.

## 2.    PRODUCING AND DESIGNATING INFORMATION

2.1.    Generally

- 2 -

2.1.1.   Any information produced or disclosed in this action (in pretrial discovery, as a deposition transcript or exhibit, in a pleading or otherwise) deemed to contain or constitute Confidential Information shall be so designated by any party to this action, or any other supplier of that information, (1) in writing by typing, stamping, or affixing conspicuously on its face (in such a manner as will not interfere with the legibility thereof ) Confidential" or "Confidential -- Source Code" at the time of production or service thereof, or (2) orally on the record at a deposition or conference.  Oral notice shall be effective only for those parties in attendance personally or by counsel, or for those parties who receive a transcript containing or marked with a confidentiality designation.  The designating party shall use due care to designate only information that truly merits such designation.

2.1.2.   All documents produced by a Disclosing Party shall bear identifying numbers when a copy or copies are given to the Receiving Party together with a designation identifying the disclosing entity.

**[2.1.3.]**

*__Juniper__*

*[Plaintiff Juniper Networks opposes the inclusion of this section.]*

**Dr. Bahattab**

**Dr. Bahattab proposes a section specifying that an entire document should not be withheld as privileged if partial redaction of that document would suffice.  *See, e.g.*, *U.S. v. Am. Tel. & Tel. Co.*, 86 F.R.D. 603, 610-13, footnotes to Guideline No. 5 (D.D.C. 1979) (Greene, J.) ("When a document contains both privileged and unprivileged material, the unprivileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material.").  Such section would read as follows:**

- 3 -

"**Documents containing privileged information may not be withheld from production if the privileged information can be redacted. Any producing party may redact privileged or protected material from documents and things it produces, including matter that the producing party claims is subject to the attorney-client privilege, work product immunity or other privilege or immunity. The producing party shall mark each document or thing where matter has been redacted with a legend stating "REDACTED FOR PRIVILEGE" or a comparable descriptive notice. Where a document consists of more than one page, at least the first page and each page on which information has been redacted shall be so marked. The producing party shall preserve an unredacted version of each document. This provision shall not affect any obligation to provide a log of information redacted or otherwise withheld on the basis of the attorney-client privilege, work product immunity or other privilege or immunity.**"

2.1.4.   To the extent that documents, things, and deposition testimony are sought from a third party, such third party shall have the right to designate any such documents, things, or deposition testimony as "Confidential" and the use and disclosure of such Confidential Information by any Receiving Party shall be governed in all respects by the terms of this Order.

2.1.5.   The use of Confidential Information during trial or any hearing in this matter shall be governed by relevant local rules of the Court, future orders of the Court, or by stipulation between the parties.

2.2.     Production of Documents and Things

2.2.1.   The designating party shall mark each affected document or thing with a legend stating "Confidential" as appropriate, or a comparable notice. Where a document consists

- 4 -

of more than one page, at least the first page and each page on which Confidential Information appears shall be so marked. This provision shall not apply where it is impractical or infeasible to mark the affected document or thing such as in the case of an original that cannot be readily copied.  In that event, the designating party shall provide separate written notice.

2.2.2.   In the case of Confidential Information produced in a non-paper medium (e.g., videotape, audiotape, computer disks, etc.), the appropriate designation shall be affixed to the outside of the medium or its container so as to clearly give notice of the designation.

[2.2.3.]

*Juniper*

*[Plaintiff Juniper Networks opposes the inclusion of this section.]*

**Dr. Bahattab**

**Dr. Bahattab proposes a section specifying that an entire document should not be marked as confidential if partial marking of the document would suffice.  Marking an entire document as Confidential Information when such is only found in certain portions of the document runs the risk of abuse—especially with source code documents of extended length—and also would lack good cause pursuant to Fed. R. Civ. P. 26(c)(1).  *See generally In re Ullico Inc. Ligitation*, 237 F.R.D. 314 (D.D.C. 2006) (Kay, Mag.); *PHE, Inc. v. Dept. of Justice*, 139 F.R.D. 249, 252 (D.D.C. 1991) ("To establish 'good cause' . . . a movant must articulate a real and specific harm and not just stereotyped and conclusory statements.").**

**Furthermore, designating only confidential portions of documents as Confidential Information will make discovery more efficient, particularly with regards to Juniper's software.  The JUNOS operating system incorporates the "FreeBSD" operating**

system, which is an "open source" operating system whose code is readily available to the public. *See* JUNOS End User License Agreement, http://www.juniper.net/techpubs/glossary/copyright.html (last visited July 8, 2008) ("This product includes FreeBSD software developed by the University of California, Berkeley, and its contributors"); About FreeBSD, http://www.freebsd.org/about.html (last visited July 8, 2008) (". . . FreeBSD is available free of charge and comes with full source code."). Therefore, Dr. Bahattab expects that a significant portion of the JUNOS software should not be marked "Confidential-Source Code," and that those portions of the JUNOS code that *do* consist of Confidential Information will be of the most interest as they will likely include routing code that is not publicly available as part of the FreeBSD project. A judicious marking of only confidential portions of documents will assist Dr. Bahattab in determining which portions of the documents are of primary interest. This is especially important in light of the fact that the JUNOS operating system is purported to contain over 20 million lines of code. Jim Duffy, *Cisco's IOS vs. Juniper's JUNOS,* Network World, April 17, 2008, at 2, http://www.networkworld.com/news/2008/041708-cisco-juniper-operating-systems.html.

Accordingly, Dr. Bahattab proposes the inclusion of a section reading as follows:

"Documents should not be given a blanket designation of 'Confidential Information;' only confidential portions of documents should be designated."

2.2.4. The Parties must use reasonable care to avoid designating any material as Confidential Information that is not entitled to such designation or is generally available to the public.

2.3.    Depositions

2.3.1.   A party may designate deposition transcripts and exhibits as Confidential Information (a) orally on the record during the deposition; or (b) by notifying all other parties in writing within 30 calendar days of receiving the transcript of the exhibits, transcript, or portions thereof, that contain Confidential Information.

2.3.2.   Until 30 calendar days after receiving a deposition transcript, each party shall treat the entirety of each deposition transcript, all information disclosed therein, and each exhibit thereto as "Confidential" unless before the deposition, the exhibit was properly treated as not having any Confidential Information. After the 30 day period, however, deposition transcripts, all information disclosed therein and each exhibit thereto, shall be treated in accordance with how they are actually designated.

2.3.3.   During a deposition, Confidential Information may be disclosed to (a) stenographers, videographers, and Court personnel, as necessary; and (b) a deponent during the deponent's deposition if

2.3.3.1.    The deponent is listed as an author, addressee, or recipient on the face of a document designated "Confidential";

2.3.3.2.    The deponent had seen the Confidential Information prior to the deposition;

2.3.3.3.    The Confidential Information was produced by or obtained from said deponent or the deponent's employer;

- 7 -

2.3.3.4.    The parties stipulate in writing to allow the deponent to review the document; or

2.3.3.5.    Upon order of the Court for good cause shown.

## 3.    LIMITATIONS ON USING AND DISCLOSING INFORMATION

3.1.    Limitations on Use and Disclosure

3.1.1.    All Confidential Information produced, exchanged or disclosed in this lawsuit shall be used solely for the purpose of litigating this case, and for no other business, commercial or other purpose whatsoever.

3.1.2.    Anything designated "Confidential" shall not be disclosed or made available to any person or entity other than:

3.1.2.1.    Outside Counsel, including litigation support personnel (e.g., copy services, computer consulting and support services, visual aid providers, translators, or other independent litigation support services) who are retained by Outside Counsel for purposes of assisting counsel in this action.  Any outside attorney or law firm other than those indicated above may be added to this Protective Order as counsel of record for a Party upon 10 calendar days advance written notice to all other Parties, but shall not be added to the Protective Order nor entitled to access any Confidential Information should any other Party object in writing to the designation of counsel during such 10 day period.  Any objection to the addition of any attorney or law firm to Outside Counsel shall be resolved by the Court if not resolved by the Parties;

- 8 -

3.1.2.2.     Technical advisors pursuant to the provisions of Section 4 of this Protective Order;

3.1.2.3.     Mock jurors who are specifically retained by a Party to this action for purposes of this litigation and who are not otherwise currently employed by (1) a Party, or (2) any predecessor, parent or affiliated company of a Party; provided that each mock juror signs the Nondisclosure Agreement, Attachment A to the Protective Order;

3.1.2.4.     The Court and any persons the Court employs whose duties require access to the information, including jurors and court reporters; and

3.1.2.5.     Officers before whom a deposition or other testimony is taken (e.g., stenographic reporters and videographers) and necessary clerical and support personnel who are assisting such officers, who are provided a copy of this Protective Order and advised that Confidential Information disclosed to them may not be used in any manner other than with respect to this action.

3.2.     Source Code

3.2.1.  Documents or other things that are designated Confidential Information and contain a party's source code may be designated "Confidential – Source Code."  Source Code shall be produced in its entirety in computer searchable format, without redaction, alteration or deletion.  All "Comments" related to Source Code and source code files, including any "Comments" kept separately from the Source Code and/or source code files, shall be produced.  The definition of "Comments" includes "check-in comments," "revision comments,"

and other similar comments. Executable files and object code files shall be produced with the source code. Source Code shall be provided the following further protections

       3.2.1.1.     Each party producing software and/or computer source code ("Source Code") shall produce Source Code in searchable electronic form on CDs, DVDs, or hard drives bearing production identification numbers and marked as "Confidential – Source Code;"

       3.2.1.2.     The Source Code CDs, DVDs, or hard drives shall, at the Producing Party's discretion, be produced directly to the Receiving Party or made available for inspection as follows:

       In the case of production of Source Code by Juniper, the Source Code will be made available for review at a single secure site in Washington, DC, at a location within the control of outside counsel of record for Dr. Bahattab. In the case of production of Source Code at a secure site by Dr. Bahattab, the Source Code will be made available for review at a single secure site in Washington, DC, at a location within the control of outside counsel of record for Juniper.

       As an alternative, any Producing Party may make its source code available for review at a single secure site in Washington, DC within the control of a third party (*i.e.*, escrow company) according to the additional terms in Paragraphs 3.2.1.4 and 3.2.1.5. If a Producing Party exercises this option, it assumes the payment of all costs related thereto.

       3.2.1.3.     The Source Code will be viewed only on non-networked computers in secure, locked areas of the designated offices of the Receiving Party (the "Source Code Custodian") except as provided herein;

       3.2.1.4.     **For Third Party Control of Source Code.**

*Juniper*

*["The third party secure site shall be provided at the Producing Party's expense and shall be available from the date of this Protective Order until close of expert discovery in this matter on three (3) business days' written notice of the first use and on twenty-four (24) hours written notice of any subsequent use. If the secure site is used on consecutive days, fifteen (15) hours notice of use shall be sufficient (e.g., notice of use should be made by 5:00 p.m. on one day of intended use beginning at 8:00 a.m. the next day). A party reviewing the Source Code is limited to inspections during normal business hours."]*

### Dr. Bahattab

Dr. Bahattab opposes Juniper's proposal that access to source code shall end at the close of expert discovery. Dr. Bahattab notes that access to the source code may be helpful to the preparation of his case right up to the eve of trial, not unlike most relevant evidence produced in discovery. Juniper cannot show good cause for including such a restriction, pursuant to Fed. R. Civ. P. 26(c)(1), because "[t]o establish 'good cause' a movant must articulate a real and specific harm . . ." *PHE, Inc. v. Dept. of Justice*, 139 F.R.D. 249, 252 (D.D.C. 1991). In light of the various safeguards established for source code throughout this protective order, simply disallowing access to the source code after the March 13, 2009 close of expert discovery is without good cause. Dr. Bahattab also notes that any expense incurred by a party during this period is at their own election pursuant to section 3.2.1.2, as both parties have the option of simply providing source code directly to the other side without the use of a third party secure site.

Dr. Bahattab also opposes Juniper's proposal that access to the source code shall only be available "during normal business hours," as such proposal also lacks

good cause. *Id.* Dr. Bahattab proposes instead that access be made available on a 24-hour basis in anticipation of the pressures of preparing his case and the potential for technical advisors who are unavailable during normal business hours due to other employment or duties.

Dr. Bahattab proposes this section read as follows:

"The third party secure site shall be provided at the Producing Party's expense in the District of Columbia and shall be available from the date of this Protective Order until the date of trial in this matter on three (3) business days' written notice of the first use and on twenty-four (24) hours written notice of any subsequent use. If the secure site is used on consecutive days, notice should be given by 5:00 p.m. on the day prior to use. A party reviewing the Source Code shall, with proper notice, have 24-hour access to the secure site seven days a week."

          3.2.1.5.      Access to information designated "Confidential – Source Code," shall be limited to Source Code Custodians and the persons described in Paragraph 3.1.2. Information designated "Confidential – Source Code" shall not be produced, provided, disclosed, summarized, described, or characterized to any party, person, or entity other than those specified in Paragraph 3.1.2.

          3.2.1.7.      A Receiving Party may include excerpts of Source Code in a pleading, exhibit, expert report, discovery document, deposition transcript, other Court document, or any drafts of these documents ("Source Code Documents"); each excerpt of Source Code quoted in a Source Code Document shall be insubstantial when compared to the entire Source Code produced by the Producing Party – as an example, excerpts of approximately 25 to 40 lines in length would be allowed;

3.2.1.8.     To the extent portions of Source Code are quoted in a Source Code Document, either (1) the entire document will be stamped and treated as Confidential – Source Code or (2) those pages containing quoted Source Code will be separately bound, and stamped and treated as Confidential – Source Code;

3.2.1.9.     No electronic copies of Source Code shall be made, except as necessary to provide an electronic copy of such source code at each such location and to maintain back-up copies of the information on each such computer.  However, to the extent portions of Source Code are quoted in a Source Code Document, Source Code Custodians and the persons described in Paragraph 3.1.2. shall be permitted to store and access Source Code Documents on a computer and on a computer network that limits access to only necessary viewers; Source Code custodians and the persons described in Paragraph 3.1.2. may also send Source Code Documents to authorized persons via electronic mail;

### *Juniper*

*["Source Code shall be viewed within the designated United States offices of the Source Code Custodian.  Source Code shall not be removed from the United States, and shall not be transmitted outside the United States in any format."]*

### Dr. Bahattab

Dr. Bahattab contends that Plaintiff's proposal is, in effect, an unnecessary geographical limitation on who may serve as a technical advisor in this case. The procedures set forth in section 4.2 already require that the parties give notice in advance of providing confidential information to technical advisors.  This provision further requires that technical advisors read and acknowledge this order and enter into the attached non-disclosure agreement which includes consent to the jurisdiction of the District

- 13 -

Court for the District of Columbia for the enforcement of this order.  Section 4.2 of this order allows the parties to confer and lodge any non-resolvable objections with the court. This is the proper procedure for addressing Juniper's particular concerns as they may arise—it cannot be said that *every* transmission of source code, regardless of type and quantity, outside the United States *in any manner of format* under every circumstance poses an undue risk to Juniper.  Juniper's global presence and Dr. Bahattab's own foreign residency make it reasonably likely that a technical advisor best-suited to Dr. Bahattab is not located in the United States.  Furthermore, such a blanket limitation forecloses potential efficiencies in consulting with the Dubai Court of First Instance's court-appointed expert who is already conducting a technological investigation in the ongoing action between Dr. Bahattab and Juniper Networks in the United Arab Emirates.

> 3.2.1.10.     Source Code Documents stored on a computer or computer network shall be password protected so as to limit access to authorized persons;

> [3.2.1.11.]     Any and all such printouts or photocopies shall be marked "Confidential – Source Code";

> *Juniper*

> *["With respect to any Source Code made available at the office of a Source Code Custodian, the Source Code Custodian and the party's technical advisors shall be limited to no more than 500 pages of printouts or photocopies of the Source Code."]*

> Dr. Bahattab

> Dr. Bahattab contends that a page limitation is unnecessarily restrictive and unmerited, especially a page limitation that is so draconian as to effectively deny Dr. Bahattab access to what may be highly probative evidence.  Even thus far,

- 14 -

discovery requests have been directed toward thirty or more products, each of which may have multiple versions of software associated with them, resulting in untold numbers of relevant pages of code. For example, as noted on its website, Juniper has at least 33 major iterations of its JUNOS router software. *See* Titles and Descriptions of Juniper Networks Documentation for J-series, M-series, MX-series, and T-series Routing Platforms, http://www.juniper.net/techpubs/software/junos/titles.html (last visited July 8, 2008); JUNOS Software: Documentation Archives, http://www.juniper.net/techpubs/software/junos/eol.html (last visited July 8, 2008). Version 9.0 of the JUNOS operating system released in early 2008 is purported to have over 20 million lines of code. Jim Duffy, *Cisco's IOS vs. Juniper's JUNOS,* Network World, April 17, 2008, at 2, http://www.networkworld.com/news/2008/041708-cisco-juniper-operating-systems.html. Furthermore, Juniper's E-series routers run on a different operating system, JUNOSe, which has its own functions, feature sets, and presumably its own separate source code. *Id.*

In light of the source code involved, Juniper's proposed page limitation is unduly restrictive. Juniper's suggested rigid 500 page limit quickly reduces to a mere 15 pages per major software release. At 25 lines per page, this represents a mere 375 lines of code out of a possible 20 million that Dr. Bahattab would be able to print. Dr. Bahattab has no way of determining what portions of Juniper's source code are relevant to the case without further discovery, and it is doubtful that a 500 page limit would suffice given the scope of the code that is likely to be involved. Accordingly, Dr. Bahattab does not agree to a page limitation.

        3.2.1.12.     The Receiving Party shall maintain a log of all files that are printed or photocopied;

        3.2.1.13.     Should such printouts or photocopies be transferred back to electronic media, such media shall continue to be labeled "Confidential – Source Code" and shall continue to be treated as such;

        3.2.1.14.     If the Receiving Party or its technical advisor makes printouts or photocopies of portions of Source Code, the Receiving Party shall keep the printouts or photocopies in a secured locked area in the office of the outside counsel or technical advisor. The Receiving Party may also temporarily keep the printouts or photocopies at: (i) the sites where any depositions relating to source code are taken for the dates associated with the taking of the deposition; (ii) the Court; or (iii) any intermediate location reasonably necessary to transport the information (*e.g.,* a hotel prior to a deposition).

3.3.    Filing Under Seal

    3.3.1.  A Party seeking to file with the Court any material (including without limitation, pleadings, motions, transcripts or portions thereof) that comprises, contains, discloses, reproduces or paraphrases any designated Confidential Information shall file the material under seal with the Court pursuant to the procedures governed by L. Civ. R. 5.1(j)(2), (3), and (4).

3.4.    Depositions

    3.4.1.  Unless modified by agreement of counsel or Court order, only those persons authorized by this Protective Order to receive Confidential Information may be present during those portions of a deposition which may require the disclosure of Confidential Information.

3.4.2.  If during the course of a Disclosing Party's deposition, a Disclosing Party believes a portion of its testimony constitutes Confidential Information, counsel for the Producing Party may designate on the record such testimony and the resulting portion of the deposition transcript as "Confidential."

3.4.3.  Each deposition transcript and exhibits thereto shall be presumptively deemed to contain Confidential Information and subject to the provisions of this Stipulated Protective Order for a period of 30 calendar days following receipt of the transcript by counsel for the deponent. Within the 30 days, counsel for the deponent or for any Party to this action may designate certain portions of the transcript and/or exhibits as "Confidential" by notifying all counsel of record in writing of the designation, and such pages or portions thereof and exhibits shall be treated as Confidential Information subject to the terms of this Stipulated Protective Order. If no confidentiality designations are made within 30 calendar days after receipt of the transcript, the transcript shall be considered not to contain any Confidential Information.

3.5.    Exceptions

Notwithstanding any provision of this Protective Order, nothing in this Protective Order shall prohibit or otherwise restrict the use or disclosure of information, documents or things, if, at the time of such use or disclosure:

3.5.1.  A Party is merely using or disclosing its own information. A Party may freely use and disclose its own Confidential Information without restriction.

3.5.2.  The Court has ordered such use or disclosure, or the Court has ordered the relevant information undesignated.

- 17 -

3.5.3.   Each Party that produced the information or designated the information as Confidential Information has consented in writing to such use or disclosure.

3.5.4.   The information is used or disclosed in the examination, at a deposition hearing, or trial, of any current or former officer, director, employee, agent, expert or consultant of the Party whose information is used or disclosed, so long as that person had access or knowledge of the information.

3.5.5.   The person or entity receiving the information wrote, was the source for, or lawfully previously received that information.

3.5.6.   The information (1) was part of the public domain or publicly available when it was produced, or (2) becomes part of the public domain or publicly available through no act, omission or fault of any Receiving Party or its counsel or agents, and through no unlawful or improper act of any other person.

3.5.7.   The information is or was independently developed, prior to receipt in this litigation, by the Party wishing to use or disclose the information; or

3.5.8.   The information (1) is or was in the lawful possession of the Party wishing to use or disclose the information and (2) was not acquired under any obligation of confidentiality to the designating Party, nor through the illegal or improper act of any person.

## 4.    DISCLOSURE OF TECHNICAL ADVISORS

4.1.    Information designated by the producing party as "Confidential" or "Confidential - Source Code", and such copies of this information as are reasonably necessary for maintaining, defending or evaluating this litigation may be furnished and disclosed to the Receiving Party's

technical advisors.  The term "technical advisor" shall mean an independent, outside expert witness or consultant with whom counsel may deem it necessary to consult.

4.2.    No disclosure of Confidential Information to a technical advisor shall occur until a signed form attached hereto as Attachment A stating that the technical advisor has read and understands this Protective Order and agrees to be bound by its terms has been provided to the Producing Party.  A party desiring to disclose Confidential Information to a technical advisor shall also give prior written notice to the producing party, who shall have _____ days after such notice is given to object in writing. The party desiring to disclose Protected Information to a technical advisor must provide the following information for each technical advisor: name, address, curriculum vitae, current employer, employment history for the past four (4) years, and a listing of cases in which the witness has testified as an expert at trial or by deposition within the preceding four years. No Confidential Information shall be disclosed to such expert(s) or consultant(s) until after the expiration of the foregoing notice period.

### *Juniper*

*[Juniper proposes a period of ten (10) days (presumably business days and not calendar days) in which a party may object to a technical advisor]*

### Dr. Bahattab

Dr. Bahattab proposes that the parties serve an objection with the other side within five (5) calendar days of a party's initial notice of intent to involve a technical advisor. Plaintiff's proposals in this section combined with Plaintiff's proposals in section 4.4 incorporate an effective delay of at least twenty business days between initial notice of a technical advisor to the deadline for moving for a ruling on an objection.  Factoring in the Court's time to decide on any objections, introduction of a technical expert to the case

- 19 -

**could easily be delayed well over a month, and such delay would significantly impact Dr. Bahattab's ability to complete expert reports before the Court-ordered December 15, 2008 deadline. Dr. Bahattab proposes five calendar days after initial notice of a technical advisor to file an objection with the other side, preventing any unnecessary delay that would unfairly prejudice either party.**

4.3.    A party objecting to disclosure of Confidential Information to a technical advisor shall state with particularity the ground(s) of the objection and the specific categories of documents that are the subject of the objection. The objecting party's consent to the disclosure of Confidential Information to a technical advisor shall not be unreasonably withheld, and its objection must be based on that party's good faith belief that disclosure of its Confidential Information to the technical advisor will result in specific business or economic harm to that party.

4.4.    If after consideration of the objection, the party desiring to disclose the Confidential Information to a technical advisor refuses to withdraw the technical advisor, that party shall provide notice to the objecting party. Thereafter, the objecting party, shall move the Court, within _____ days of receiving such notice, for a ruling on its objection. A failure to file a motion within the _____ day period shall operate as an approval of disclosure of the Confidential Information to the technical advisor. The parties agree to cooperate in good faith to shorten the time frames set forth in this paragraph if necessary to abide by any discovery or briefing schedules.

***Juniper***

*[Juniper proposes a period of ten (10) days (presumably business days and not calendar days) in which a party may move for a court ruling on a technical advisor]*

### Dr. Bahattab

Dr. Bahattab proposes that a party must move for a ruling on a technical advisor within two (2) calendar days of a party's refusal to withdraw a technical advisor. By this time, the moving party will have had seven days to refine and/or reconsider their objection. Additionally, Dr. Bahattab proposes a three (3) calendar day period for the non-moving party to respond, with no further reply for the moving party. The timeline proposed by Juniper would involve at least twenty days, and potentially twenty-eight days including weekends, between an initial notice of a technical advisor to the deadline for moving for a ruling. Furthermore, Juniper's timeline fails to account for responses and replies, which could potentially delay a ruling on the dispute for weeks on end. Factoring in the Court's time to rule on any objections, introduction of a technical expert to the case could easily be delayed for months, and such delay would significantly impact Dr. Bahattab's ability to complete expert reports before the Court-ordered December 15, 2008 deadline. Dr. Bahattab proposes five calendar days after refusal to withdraw a technical advisor (10 calendar days total from initial notice of a technical advisor) to move for a ruling on a technical advisor, preventing any unnecessary delay that would unfairly prejudice either party.

Dr. Bahattab also wishes to clarify that no disclosure should be made to a technical advisor during the period pursuant to this section in which a party may yet move the Court

- 21 -

**for a ruling on the technical advisor, nor may a party otherwise make a disclosure to a technical advisor while such a motion on that technical advisor is pending before the Court.**

4.5.    The objecting party shall have the burden of showing to the Court "good cause" for preventing the disclosure of its Confidential Information to the technical advisor. This "good cause" shall include a particularized showing that: (1) the Confidential Information is confidential commercial information, (2) disclosure of the Confidential Information would result in a clearly defined and serious injury to the objecting party's business, and (3) the proposed technical advisor is in a position to allow the Confidential Information to be disclosed to the objecting party's competitors.

## 5.    CHALLENGES TO DESIGNATIONS

5.1.    Any Party to this action may contest at any time the designation of anything as Confidential Information by giving the designating Party written notice that identifies the relevant designated information and states in reasonable detail the reasons why the information should not be so designated. Any Parties in disagreement about such designations shall meet and confer in good faith in person or by telephone to attempt to resolve their disagreement. If those Parties cannot resolve their disagreement within 10 calendar days after a Party contests the designation, any Party may thereafter petition the court to resolve the matter. If such an objection or petition is made, such information shall be treated according to the designation that the designating Party gives it until the issue is resolved in writing by the Parties or the petition is decided by the Court or an appellate court, should appellate review by sought.

[5.2.]

**Juniper**

- 22 -

*[Juniper Opposes inclusion of this section]*

**Dr. Bahattab**

Dr. Bahattab contends that inclusion of a statement of the law on the burden of proof when challenging a confidentiality designation is appropriate pursuant to *John Does I-VI v. Yogi*, 110 F.R.D. 629, 632 (D.D.C. 1986) ("To establish good cause under Rule 26(c) the courts have generally required a 'particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements . . . . With respect to the claim of confidential business information, this standard demands that the company prove that disclosure will result in a 'clearly defined and very serious injury to its business.'"). The statement reads as follows:

"In any motion challenging a designation, the designating Party shall have the burden of establishing the need for classification as 'Confidential Information.'"

6.    **WAIVER AND INADVERTENT DISCLOSURES**

6.1.    Privilege

6.1.1.    Nothing in this Stipulated Protective Order shall require disclosure of information that is protected by the attorney-client privilege, work product doctrine, or other privilege or immunity.

6.1.2.    Nothing in this Protective Order shall be deemed to waive any applicable privilege or immunity, or to limit the relief available to a Party claiming that it inadvertently disclosed information subject to any privilege, doctrine, or immunity.

6.1.3.   If information subject to a claim of attorney-client privilege, work product doctrine, or other privilege or immunity is nevertheless inadvertently or unintentionally produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to any such privilege, doctrine, or immunity.

6.1.4.   Any party that inadvertently produces materials protected by the attorney-client privilege, work product doctrine, or other privilege or immunity may obtain the return of those materials by notifying the recipient(s), as soon as reasonably possible after the producing party becomes aware of any inadvertent or unintentional disclosure, and providing a privilege log for the inadvertently produced materials.  The recipient(s) shall then gather and return all copies of the privileged material to the Producing Party, except for any pages containing privileged markings by the recipient, which pages shall instead be destroyed and certified as such by the recipient to the Producing Party.

6.1.5.   This Stipulated Protective Order will not preclude any Party from moving the Court for an order directing the disclosure of information withheld under a claim of privilege or immunity.

6.2.    Inadvertent Disclosures - Confidential Information

6.2.1.   If a Party inadvertently fails to mark a document containing Confidential Information with the appropriate designation, it may later apply such a designation by providing counsel for each other Party written notice of the proper designation for each affected document or thing. Upon receiving such a notice, each party shall treat the affected documents or things, and all copies thereof, as designated as the notice states, and each Receiving Party shall make a reasonable effort to (1) prevent improper use or disclosure of such information and (2) obtain the

return of such information that it disclosed to any person not authorized to receive such designated information. The designating Party shall also provide a properly marked replacement for each affected document and thing.

       6.2.2.  If a Producing Party inadvertently discloses information without designating such information as Confidential Information, that disclosure shall not be deemed a waiver of confidentiality with regard to that information, or similar or related information.

       6.2.3.  Neither the existence of this Protective Order, nor the designation of anything as Confidential Information shall, in and of itself, raise any inference as to whether the designated information is confidential.

## 7.    COMPLIANCE

       7.1.    Individuals who receive Confidential Information agree to subject themselves to the jurisdiction of the United States District Court for the District of Columbia for the sole purpose of enforcement of the Protective Order.

       7.2.    If any information that is designated (at the time of use or disclosure) as Confidential Information is used or disclosed other than in the manner authorized by this Protective Order, then the Party responsible for such use or disclosure shall immediately disclose such use or disclosure to counsel of record and each entity that supplied or designated the affected information and, without prejudice to other rights and remedies available to the supplier or designator, shall make every effort to obtain the return of such information and prevent further improper use or disclosure of such information. Such disclosure shall include: (a) a description of the Confidential Information used or disclosed (with Bates numbers of any documents involved, if known); (b) the date and nature of the use and disclosure; (c) the identity of the

- 25 -

person(s) who made such use or disclosure and to whom the Confidential Information was disclosed; and (d) a description of the efforts taken to comply with the provisions of this paragraph.

7.3.    Except as provided for elsewhere in this Protective Order, any disclosure or use by any person or entity of any inadvertently disclosed or inadvertently non-designated information shall not be deemed a violation of this Protective Order if such disclosure or use occurs before that person or entity receives written notice of that inadvertent disclosure or nondesignation.

## 8.    CONCLUSION OF LITIGATION

8.1.    Absent a court order or written permission of the disclosing and designating Party or Parties, and unless otherwise stated in another provision in this Protective Order, all provisions of this Protective Order that restrict the disclosure or use of information shall continue to be binding after the conclusion of this action.

8.2.    Upon written request by the Disclosing Party after the conclusion of this litigation and all appeals therefrom, and absent a court order to the contrary, all documents or things containing or comprising "Confidential Information" shall be returned to the Disclosing Party or destroyed. Each Party or entity that received or has any such documents or things, or copies thereof, shall certify in writing to counsel for the Producing Party that it returned or destroyed, at its option, every such document and thing, and all copies, summaries and abstracts thereof, in its possession, custody or control.

8.3.    Each firm having counsel of record may retain for archival purposes one copy of all pleadings, papers filed with the court, written discovery requests, deposition transcripts,

transcripts of court proceedings, correspondence and work product, including portions designated as Confidential Information, subject to the continuing obligations of all other provisions of this Protective Order, and provided that nothing in said archival copy shall be disclosed to anyone other than that counsel's partners, associates or employees.

8.4.    The Court retains jurisdiction even after final disposition of this litigation to enforce this Protective Order and to make such amendments, modifications, deletions and additions to this Protective Order as the court may from time to time deem appropriate.

8.5.    The Parties reserve all rights to apply to the court at any time, before or after final disposition, for an order: (a) modifying this Protective Order; (b) seeking further protection against discovery or other use of Confidential Information, or documents, transcripts or other materials reflecting Confidential Information; or (c) seeking further production, discovery, disclosure or use of claimed Confidential Information, or documents, transcripts or other materials reflecting Confidential Information.

## 9.    MODIFICATION

9.1.    Changes or exceptions to this Protective Order may be made only by written agreement of the Parties subject to court approval, or by court order.

9.2.    This Protective Order does not abridge and is without prejudice to the rights of a Party (a) to oppose or object to the disclosure, production, use or admissibility of anything, or to refuse to disclose or produce anything based on any available legal grounds or objections, (b) to modify or seek relief from this Protective Order, (c) to seek judicial review or other appropriate action regarding any court ruling concerning information that is or was designated Confidential Information, (d) to seek any additional protection that the party deems appropriate, or (e) to seek

- 27 -

the joinder of additional persons authorized to review material under Paragraph 3.1.2, or to seek

leave to show a "Confidential" document to a particular person.

Respectfully Submitted,

| | |
|---|---|
| _____ | _____ |
| Alan M. Fisch (DC-453068) | Henry W. Asbill (DC-938811) |
| afisch@kayescholer.com | DEWEY & LEBOEUF LLP |
| Jason F. Hoffman (DC-467827) | 1101 New York Avenue, N.W. |
| jahoffman@kayesholer.com | Suite 1100 |
| David L. Cousineau (DC-482691) | Washington, D.C. 20005-4213 |
| dcousineau@kayescholer.com | hasbill@dl.com |
| KAYE SCHOLER LLP | Tel: (202) 986-8141 |
| 901 Fifteenth Street, N.W. | Fax: (202) 956-3263 |
| Washington, D.C. 20005-2327 | |
| Tel: (202) 682-3500 | |
| Fax: (202) 682-3580 | George G. Mahfood (Fl. Bar No. 0077356) |

*Attorneys for Plaintiff*
*Juniper Networks, Inc.*

George G. Mahfood (Fl. Bar No. 0077356)
(appearing *pro hac vice*)
FERRELL LAW, P.A.
34th Floor, Miami Center
201 South Biscayne Boulevard
Miami, FL 33131
gmahfood@ferrellworldwide.com
Tel: (305) 371-8585
Fax: (305) 371-5732

*Attorneys for Defendant*
*Abdullah Ali Bahattab*

Dated: _____, 2008

- 29 -

## ORDER

Good cause appearing, it is so **ORDERED**.

Dated: _____, 2008

_____
Honorable Alan Kay
United States Magistrate Judge
U.S. District Court, District of Columbia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **JUNIPER NETWORKS, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 1:07cv1771-PLF (AK) |
| | ) | |
| **ABDULLAH ALI BAHATTAB,** | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## NONDISCLOSURE AGREEMENT

     1.     My name is _____.

I live at _____, _____, _____.

I am employed as (position) _____ at

_____ (name and address of employer).

     2.     I have received a copy of the Stipulated Protective Order entered in the above captioned litigation and have reviewed its provisions.

     3.     I understand the provisions of the Stipulated Protective Order, and agree to comply with and to be bound by its provisions, unless and until modified by further order of the Court.

     4.     I will not disclose to any individuals, other than those specifically authorized in the Order, any information designated as Confidential Information pursuant to the Order. I will

not copy, use or disclose any information designated as Confidential Information, except for the purpose of the litigation.

5.    I understand that any violation of the Order may constitute contempt of a court order and/or subject me to sanctions. I hereby consent to the jurisdiction of the United States District Court for the District of Columbia for the sole purposes of enforcing this Order.  I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this _____ day of _____, 20___, at _____, _____.

Dated: _____                    _____
                                                 (Signature)

# EXHIBIT G

## Jordan, Brandon

**From:**    Jordan, Brandon
**Sent:**    Thursday, August 07, 2008 3:29 PM
**To:**    JaHoffman@kayescholer.com; AFisch@kayescholer.com; 'dcousineau@kayescholer.com'
**Cc:**    Auchter, Robert; 'Mahfood, George'; 'Meade, Courtney'
**Subject:** Conference Availability

Mr. Hoffman,

We would like to determine your availability for a teleconference between the parties to discuss the outstanding issues with regard to the protective order and to also discuss the status of Juniper's production of documents that Jupiter does not contend are confidential trade secrets.  As you know, it has been almost two-and-a-half months since Juniper first represented, during our L.Cv.R. 16.3 conference of May 21, 2008, that it would provide Dr. Bahattab with a draft protective order, and still a motion for a protective order has yet to be filed with the Court.  Juniper now repeatedly objects, in its July 14, 2008 document request and interrogatory responses, to producing information purportedly constituting trade secrets in the absence of a protective order.  These objections notwithstanding, Juniper has failed to provide Dr. Bahattab with any document production whatsoever. Juniper has yet to provide even the various IEEE articles referenced throughout Juniper's interrogatory responses.

Please let us know when you or other Juniper counsel are available to discuss these matters.  We would like to hold this call early next week.

Many thanks,

Brandon

------------------------------------------------------------
Brandon M. Jordan
Associate Pending Admission
Dewey & LeBoeuf LLP
1101 New York Avenue, N.W., Suite 1100
Washington, D.C. 20005
Direct: +1 202 346 7915
General: +1 202 346 8000
Fax: +1 202 346 8102
brandon.jordan@dl.com
www.dl.com

EXHIBIT H

## Jordan, Brandon

| | |
|---|---|
| **From:** | Jordan, Brandon |
| **Sent:** | Friday, August 15, 2008 5:06 PM |
| **To:** | 'JaHoffman@kayescholer.com' |
| **Cc:** | AFisch@kayescholer.com; cmeade@ferrellworldwide.com; dcousineau@kayescholer.com; gmahfood@ferrellworldwide.com; Asbill, Henry; Auchter, Robert; SChu@kayescholer.com |
| **Subject:** | RE: Juniper v. Bahattab Conference Recap |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |

Jason,

Dr. Bahattab does not agree to a time schedule that includes a reply period. Because the proposed order(s) contained a specific timetable for objections to experts and identified what pleadings were to be submitted and when, without either no reference to or explicit exclusion of a reply, and in view of the unambiguously expressed concerns regarding rapid resolution, it is unreasonable to presume that a reply was contemplated. Dr. Bahattab's position that no reply is contemplated was explicit in our e-mail of July 14 and Juniper was silent on that issue.

In view of Juniper's clarification on the reply issue, Dr. Bahattab is reluctantly forced to raise the timing of objections to Technical Advisors issue for consideration with the Court.

Thank you,

Brandon

------------------------------------------------------------
Brandon M. Jordan
Associate Pending Admission
Dewey & LeBoeuf LLP
1101 New York Avenue, N.W., Suite 1100
Washington, D.C. 20005
Direct: +1 202 346 7915
General: +1 202 346 8000
Fax: +1 202 346 8102
brandon.jordan@dl.com
www.dl.com

-----Original Message-----
From: JaHoffman@kayescholer.com [mailto:JaHoffman@kayescholer.com]
Sent: Friday, August 15, 2008 4:35 PM
To: Jordan, Brandon
Cc: AFisch@kayescholer.com; cmeade@ferrellworldwide.com; dcousineau@kayescholer.com; gmahfood@ferrellworldwide.com; Asbill, Henry; Auchter, Robert; SChu@kayescholer.com
Subject: RE: Juniper v. Bahattab Conference Recap

Brandon,

The agreement between the parties yesterday regarding Section 4.4 is based upon the version of Section 4.4 that appears in your July 14, 2008 email. That version does not contain the language "There will be no reply for the moving party." You have added that language to Bahattab's revised version of Section 4.4 in yesterday's email without the consent of Juniper. Your proposed language supercedes Local Rule 7(d), which provides the ability for the moving party to file a reply five (business) days after service of the opposition. Juniper would be amenable to limiting a reply to be filed three business days after service of the opposition.

Please let me know if Bahattab will agree to the addition of three business

1

days for the reply to Section 4.4.


**************************************
Jason Hoffman
Kaye Scholer LLP
901 Fifteenth Street, N.W.
Washington, DC  20005
202-682-3531
202-414-0431 (Fax)
jahoffman@kayescholer.com



|  |  |
|---|---|
| "Jordan, Brandon" <bjordan@deweyleb oeuf.com> 08/15/2008 01:51 PM | |
| | To |
| | JaHoffman@kayescholer.com |
| | cc |
| | AFisch@kayescholer.com; cmeade@ferrellworldwide.com; dcousineau@kayescholer.com; gmahfood@ferrellworldwide.com; "Asbill, Henry" <HAsbill@deweyleboeuf.com>; "Auchter, Robert" <rauchter@DeweyLeBoeuf.com>; SChu@kayescholer.com |
| | Subject |
| | RE: Juniper v. Bahattab Conference Recap |






Jason,

With regards to section 4.4, it appears that you have dropped the
sentence "There will be no reply for the moving party."  Please confirm
that this was inadvertent as the parties have negotiated specific
deadlines for filing a motion and specific deadlines for filing a
response, and insofar as the protective order under either proposal
contains no deadline period for a reply and the parties have not
discussed the issue of a reply, a reply is therefore not contemplated or
allowed for by the protective order.  As you know, Dr. Bahattab wishes
to keep any delay caused by the introduction of a technical advisor to a
minimum, so the addition of a reply period would not be agreeable.  With
the knowledge that we intend to file a motion for a protective ordert
this afternoon, please let us know as soon as possible whether Juniper
opposes the inclusion of this sentence.

Thank you,

Brandon

------------------------------------------------------------
2

Brandon M. Jordan
Associate Pending Admission
Dewey & LeBoeuf LLP
1101 New York Avenue, N.W., Suite 1100
Washington, D.C. 20005
Direct: +1 202 346 7915
General: +1 202 346 8000
Fax: +1 202 346 8102
brandon.jordan@dl.com
www.dl.com

-----Original Message-----
From: JaHoffman@kayescholer.com [mailto:JaHoffman@kayescholer.com]
Sent: Friday, August 15, 2008 12:16 PM
To: Jordan, Brandon
Cc: AFisch@kayescholer.com; cmeade@ferrellworldwide.com;
dcousineau@kayescholer.com; gmahfood@ferrellworldwide.com; Asbill,
Henry; Auchter, Robert; SChu@kayescholer.com
Subject: Re: Juniper v. Bahattab Conference Recap

Jordan,

Thank you for your email summary.  Juniper is amenable to the revised
wording for section 2.1.3.2 as detailed in your email below.

Your recitation of the revised section 4.4 is not consistent with the
agreement reached during yesterday's conference call.  Section 4.4
should
read as follows:

"If after consideration of the objection, the party desiring to disclose
the Confidential Information to a technical advisor refuses to withdraw
the
technical advisor, that party shall provide notice to the objecting
party.
Thereafter, the objecting party, shall move the Court, within five (5)
calendar days after receiving such notice, for a ruling on its
objection. A
failure to file a motion within the five (5) calendar day period shall
operate as an approval of disclosure of the Confidential Information to
the
technical advisor.  After the filing of the motion with the Court, the
non-moving party shall have five (5) calendar days to respond to the
motion.  The parties agree to cooperate in good faith to shorten the
time
frames set forth in this paragraph if necessary to abide by any
discovery
or briefing schedules."

I also note your email contains the following errors/omissions:

1.    Bahattab has proposed no limitation on the number of printed pages
in
response to the 500 page limitation as proposed in section 3.2.1.11.

2.    Bahattab has proposed access to Juniper's Source Code until trial.

3.    Juniper did not state that "it is awaiting the entry of a
protective
order to evaluate any further document production."  Juniper represented
that it is in the process of collecting documents, but will need to
evaluate the proper designation of those documents in accordance with
the

3

protective order as entered by the Court.

4.   Your email fails to identify Bahattab's counsel representation that
Bahattab may have confidential documents that would be subject to the proposed protective order.


**************************************
Jason Hoffman
Kaye Scholer LLP
901 Fifteenth Street, N.W.
Washington, DC  20005
202-682-3531
202-414-0431 (Fax)
jahoffman@kayescholer.com

| | |
|---|---|
| | "Jordan, Brandon" |
| | <bjordan@deweyleb |
| | oeuf.com> |
| To | |
| | JaHoffman@kayescholer.com; |
| 08/14/2008 05:17 | AFisch@kayescholer.com; |
| PM | dcousineau@kayescholer.com |
| | |
| cc | |
| | gmahfood@ferrellworldwide.com; |
| | cmeade@ferrellworldwide.com; |
| | "Auchter, Robert" |
| | <rauchter@DeweyLeBoeuf.com>; |
| | "Asbill, Henry" |
| | <HAsbill@deweyleboeuf.com> |
| | |
| Subject | |
| | Juniper v. Bahattab Conference |
| | Recap |

4

Mr. Hoffman,

I am writing to confirm our discussions today regarding the protective order and document production issues in Juniper v. Bahattab:

I.  Continued Disagreement

The parties were unable to reach an agreement on the following issues. (1) Juniper continues to disagree with Dr. Bahattab's proposed limitation that only confidential portions of documents should be designated and that no blanket designations of 'Confidential Information' should be designated as proposed in section 2.1.3.  (2) Dr. Bahattab continues to disagree with Juniper's proposed limitation that source code not be transmitted out of the United States under any circumstances as proposed in in section 3.2.1.9.  (3) Dr. Bahattab continues to disagree with Juniper's proposed limitation that source code cannot be printed in excess of 500 pages as proposed in section 3.2.1.11.  (4) Dr. Bahattab continues to disagree with Juniper's proposed limitation that source code be only made available until the close of expert discovery as proposed in section 3.2.1.4.

II.  Agreement

The parties were able to agree with respect to the timeframe for resolving objections to technical advisors.  As per our agreement, section 4.2 shall read in part "A party desiring to disclose Confidential Information to a technical advisor shall also give prior written notice to the producing party, who shall have six (6) calendar days after such notice is given to object in writing."  As per our agreement, section 4.4 shall read:

"If after consideration of the objection, the party desiring to disclose the Confidential Information to a technical advisor refuses to withdraw the technical advisor, that party shall provide notice to the objecting party. Thereafter, the objecting party, shall move the Court, within five (5) calendar days of receiving such notice, for a ruling on its objection. A failure to file a motion within the five (5) day period shall operate as an approval of disclosure of the Confidential Information to the technical advisor.  After the filing of the motion with the Court, the non-moving party shall have five (5) calendar days to respond to the motion.  There will be no reply for the moving party.  The parties agree to cooperate in good faith to shorten the time frames set forth in this paragraph if necessary to abide by any discovery or briefing schedules."

III.  Pending Issues

As per Juniper's proposed section 2.1.3.2, Dr. Bahattab suggested a revised

5

wording, and we expect to hear back from Juniper within 24 hours of our
conference as to whether it agrees with the revision.  The suggested
compromise wording is as follows:

"Notwithstanding the requirements of FRCP 26(b)(5), a party may withhold
and not log privileged communications to or from its outside counsel or
privileged documents created by its outside counsel that were created or
made after the party consulted that counsel to obtain professional legal
services from that counsel relating to the prosecution or defense of a
claim in this litigation."

IV.  Document Production

As for document production, Juniper indicated that it is awaiting the
entry
of a protective order to evaluate any further document production.

Thank you again for conferring with us on these issues, and as we
indicated, we intend to file a motion for a protective order tomorrow,
and
hope to hear back from you on the proposed section 2.1.3.2.

Best Regards,

Brandon

------------------------------------------------------------
Brandon M. Jordan
Associate Pending Admission
Dewey & LeBoeuf LLP
1101 New York Avenue, N.W., Suite 1100
Washington, D.C. 20005
Direct: +1 202 346 7915
General: +1 202 346 8000
Fax: +1 202 346 8102
brandon.jordan@dl.com
www.dl.com


======================================================================
======

Pursuant to U.S. Treasury Department Circular 230, unless we
expressly state otherwise, any tax advice contained in this
communication (including any attachments) was not intended
or written to be used, and cannot be used, for the purpose
of (i) avoiding tax-related penalties or (ii) promoting,
marketing or recommending to another party any matter(s)
addressed herein.


This e-mail message, including attachments, is confidential,
is intended only for the named recipient(s) above and may
contain information that is privileged, attorney work product,
proprietary or exempt from disclosure under applicable law.
The unauthorized use, dissemination, distribution or reproduction
of this e-mail message, including attachments, is strictly
prohibited.  If you have received this message in error, or are
not an intended recipient, please immediately notify the sender
and delete this e-mail message, including attachments,
from your computer.  Thank you.
======================================================================

======

* * * *

IRS CIRCULAR 230 DISCLOSURE:  To ensure compliance with Treasury
Department regulations, we inform you that any U.S. federal tax advice
contained in this correspondence (including any attachments) is not
intended or written to be used, and cannot be used for the purpose of
(i) avoiding penalties that may be imposed under the U.S. Internal
Revenue Code or (ii) promoting, marketing or recommending to another
party any transaction or matter addressed herein.


========================================================================

Pursuant to U.S. Treasury Department Circular 230, unless we
expressly state otherwise, any tax advice contained in this
communication (including any attachments) was not intended
or written to be used, and cannot be used, for the purpose
of (i) avoiding tax-related penalties or (ii) promoting,
marketing or recommending to another party any matter(s)
addressed herein.


This e-mail message, including attachments, is confidential,
is intended only for the named recipient(s) above and may
contain information that is privileged, attorney work product,
proprietary or exempt from disclosure under applicable law.
The unauthorized use, dissemination, distribution or reproduction
of this e-mail message, including attachments, is strictly
prohibited.  If you have received this message in error, or are
not an intended recipient, please immediately notify the sender
and delete this e-mail message, including attachments,
from your computer.  Thank you.
========================================================================


* * * *

IRS CIRCULAR 230 DISCLOSURE:  To ensure compliance with Treasury Department regulations, we inform you that
any U.S. federal tax advice contained in this correspondence (including any attachments) is not intended or written to be
used, and cannot be used for the purpose of (i) avoiding penalties that may be imposed under the U.S. Internal Revenue
Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.