## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **JUNIPER NETWORKS, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | Civil No. 1:07cv1771-PLF |
| | ) | |
| **ABDULLAH ALI BAHATTAB**, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF JUNIPER NETWORKS, INC.'S MEMORANDUM OF LAW AND OPPOSITION TO DEFENDANT BAHATTAB'S MOTION FOR PROTECTIVE ORDER AND CROSS MOTION FOR ENTRY OF PLAINTIFF'S PROTECTIVE ORDER

Alan M. Fisch (DC-453068)
*afisch@kayescholer.com*
Jason F. Hoffman (DC-467827)
*jahoffman@kayescholer.com*
David L. Cousineau (DC-482691)
*dcousineau@kayescholer.com*
KAYE SCHOLER LLP
901 Fifteenth Street, N.W.
Washington, D.C.  20005-2327
(202) 682-3500 telephone
(202) 682-3580 facsimile

August 29, 2008

*Attorneys for Plaintiff
Juniper Networks, Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ............................................................................................................... 2

I.     LEGAL STANDARD GOVERNING PROTECTIVE ORDERS ..................................... 2

II.    THE COURT SHOULD ADOPT JUNIPER'S PROVISIONS TO PROVIDE
SUFFICIENT PROTECTIONS TO JUNIPER'S HIGHLY VALUABLE SOURCE
CODE .......................................................................................................................... 3

    A.    Source Code is a Trade Secret That Must Be Afforded the Highest Level of
Confidentiality and Protection .............................................................................. 3

    B.    Juniper's Source Code Must Be Protected with the Highest Level of
Confidentiality and Restrictions............................................................................ 3

    C.    Additional Precautions Must be Implemented to Prevent Dr. Bahattab from
Producing JUNOS Source Code in the Dubai Litigation and Disseminating
Source Code to Individuals in the Middle East ..................................................... 5

        1.    Dr. Bahattab Intends to Violate General Provisions of the Protective
Order ............................................................................................................. 5

        2.    Specific Provisions Against Exportation of Juniper's Source Code
Outside the United States are Necessary; the Court Should Adopt
Proposed Section 3.2.1.9 .............................................................................. 6

    D.    Juniper's Restrictions on Access to its Source Code are Standard and
Conventional, As Proposed in Sections 3.2.1.11 and 3.2.1.4 ................................ 7

    E.    Dr. Bahattab's Proposed Section 2.2.3 Should Be Rejected.................................. 8

        1.    Juniper's Source Code is a Trade Secret and Cannot Be Segregated ......... 9

        2.    Dr. Bahattab's Proposed Provision, Section 2.2.3, is Unduly
Burdensome.................................................................................................. 9

    F.    Juniper Cannot Waive Its Opportunity to Object to Dr. Bahattab's
Technical Experts; the Court Should Adopt Juniper's Proposed Section 4.4....... 11

III.   DESIGNATION OF PRIVILEGED DOCUMENTS SHOULD NOT BE UNDULY
BURDENSOME; THE COURT SHOULD ADOPT JUNIPER'S SECTION 2.1.3 ........ 12

CONCLUSION ............................................................................................................. 12

# TABLE OF AUTHORITIES

## CASES

*Alexander v. FBI*,
    186 F.R.D. 71 (D.D.C. 1998) ......................................................................... 2

*Burka v. United States Dep't of Health and Human Servs.*,
    87 F.3d 508 (D.C. Cir. 1996) ......................................................................... 2

*Computer Assoc., Int'l v. Quest Software, Inc.*,
    333 F. Supp. 2d 695 (N.D. Ill. 2004) ............................................................ 9

*Dynamic Microprocessor Assoc. v. EKD Computer Sales*,
    919 F. Supp. 101 (E.D.N.Y. 1996) ............................................................... 3

*Eagle Comtronics v. Arrow Comm'n, Inc.*,
    305 F.3d 1303 (Fed. Cir. 2002) ..................................................................... 5

*GM Network Ltd. v. E-Gold, Ltd.*,
    No. 01-Civ-9621, 2002 U.S. Dist. LEXIS 9957 (S.D.N.Y. May 17, 1992) .................. 3, 8

*Infosint S.A. v. H. Lundbeck A.S.*,
    No. 06 Civ. 2869, 2007 U.S. Dist. LEXIS 36678 (S.D.N.Y. May 16, 2007) .................... 3

*Integrated Cash Management Services, Inc. v. Digital Transaction, Inc.*,
    732 F. Supp. 370 (S.D.N.Y. 1989),
    *aff'd* 920 F.2d 171 2d Cir. 1990) ................................................................. 9

*Klayman v. Judicial Watch*,
    247 F.R.D. 24 (D.D.C. 2007) ......................................................................... 2

*McKesson HBOC, Inc. v. Islamic Republic of Iran*,
    226 F.R.D. 56 (D.D.C. 2004) ....................................................................... 10

*Pacific Gas & Electric Co. v. United States*,
    79 Fed. Cl. 744 (2007) ................................................................................. 5

*Pause Tech, Inc. v. Tivo, Inc.*,
    No. 01-11657* (D. Mass. June 18, 2003) ...................................................... 3, 7

*QPSX Developments 5 PTY Ltd. v. Juniper Networks, Inc.*,
    No. 05-CV-268 (E.D. Tex. Mar. 2, 2006) .................................................. 1, 7, 8

*Unix Sys. Lab., Inc. v. Berkeley Software Design, Inc.*,
    27 U.S.P.Q. 2d 1721 (D.N.J. 1993) ............................................................... 9

*Visto Corp. v. Seven Networks*,
    No. 03-CV-3333, 2006 U.S. Dist. LEXIS 91453 (E.D. Tex. Dec. 19, 2006) ............... 5, 6

# RULES

Fed. R. Civ. P. 26 ................................................................................................... 2, 3, 9

Plaintiff Juniper Networks, Inc. ("Juniper") respectfully submits this memorandum in opposition to Defendant Abdullah Ali Bahattab's ("Dr. Bahattab") motion for protective order and cross-moves for entry of Juniper's proposed protective order.

## PRELIMINARY STATEMENT

These competing motions come before the Court after extensive negotiations between the parties regarding the treatment of confidential and privileged information in this litigation. The parties have met and conferred and agreed on almost all provisions of a protective order, with the exception of (1) protection for Juniper's highly confidential source code and (2) the procedures for designating privileged documents.

This is a patent case brought by Juniper against Dr. Bahattab seeking a declaration that U.S. Patent No. 6,816,457 is invalid, unenforceable, and not infringed by Juniper. Juniper recognizes that the discovery in this case will involve the production of its highly sensitive documents and trade secrets, including source code, whose continued secrecy is critical to Juniper's business. To maintain its secrecy and prevent widespread dissemination, Juniper proposes that all source code must be viewed and analyzed in the United States, and only by those authorized under this protective order. Juniper proposes additional conventional restrictions to protect Juniper's source code, including limits on hard-copy printouts and inspection of the code in a secured facility during business hours until the close of expert discovery. These provisions are required because Dr. Bahattab openly asserts that he intends to send Juniper's source code to foreign countries and even unilaterally disclose it to a foreign court not bound by this Court's jurisdiction and protections.

Juniper's proposed protective order includes terms for protection of source code that are conventional and standard in patent litigation. In fact, Juniper entered into a similar protective order more than two years ago, in *QPSX Developments 5 PTY Ltd. v. Juniper Networks, Inc.*, No. 05-CV-268 (E.D. Tex. Mar. 2, 2006), that includes many of the same source code provisions present in its proposed protective order here.

Finally, Juniper and Dr. Bahattab agree that an entire document should not be withheld as privileged if partial redaction would suffice to protect privileged communications. Juniper proposes a provision that redaction is not required if it would be impractical, infeasible, or unduly burdensome. Juniper's qualifying provision echoes the factors considered in issuing a protective order. Where redaction would cause undue burden, expense, or would be impossible, a privileged document should remain privileged.

Juniper respectfully requests that the Court reject Dr. Bahattab's proposed protective order and enter Juniper's proposed protective order. In addition, Juniper provides the Court with Exhibit 1, which provides a side-by-side comparison of the disputed proposals of the parties.

## ARGUMENT

### I.     LEGAL STANDARD GOVERNING PROTECTIVE ORDERS

Federal Rule of Civil Procedure 26(c) provides that a court may, for good cause, issue a protective order to protect a party or person from undue burden or expense of discovery, including "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." *Klayman v. Judicial Watch*, 247 F.R.D. 19, 24 (D.D.C. 2007); Fed. R. Civ. P. 26(c)(1)(G). Courts have broad discretion to decide the scope of a protective order to "limit the conditions, time, place, or topics of discovery; or limit the manner in which a trade secret or other confidential, research, development, or commercial information may be revealed." *Klayman,* 247 F.R.D. at 22 (quoting *Burka v. United States Dep't of Health and Human Servs*., 87 F.3d 508, 517 (D.C. Cir. 1996)). The party seeking the protective order bears the burden of making the showing of good cause contemplated by Rule 26(c). *Alexander v. FBI*, 186 F.R.D. 71, 75 (D.D.C. 1998).

II.    **THE COURT SHOULD ADOPT JUNIPER'S PROVISIONS TO PROVIDE SUFFICIENT PROTECTIONS TO JUNIPER'S HIGHLY VALUABLE SOURCE CODE**

A.    **Source Code is a Trade Secret That Must Be Afforded the Highest Level of Confidentiality and Protection**

It is well-established that "source code constitutes a trade secret," and is "clearly subject to the terms and conditions of a protective order issued pursuant to Rule 26(c)." *Dynamic Microprocessor Assoc. v. EKD Computer Sales*, 919 F. Supp. 101, 106 (E.D.N.Y. 1996). As a trade secret, source code is entitled to protection under Fed. R. Civ. P. 26(c)(1)(G), and further entitled to be designated as highly confidential with limited access. *See e.g., Infosint S.A. v. H. Lundbeck A.S.*, No. 06 Civ. 2869, 2007 U.S. Dist. LEXIS 36678 at *7 (S.D.N.Y. May 16, 2007) ("Protective orders limiting access to highly confidential information to counsel and experts 'are commonly entered in litigation involving trade secrets and other confidential research, development, or commercial information.'"). Courts routinely approve special measures to protect the trade secret status of source code. *Pause Tech, Inc. v. Tivo, Inc.*, No. 01-11657, 2003 U.S. Dist. LEXIS 27253 at *2 (D. Mass. June 18, 2003) (computer source code produced in this action shall be stored "only on a password protected stand-alone computer ('the Computer') . . . locked in a room . . . [and] shall not be connected to the Internet, a modem, network, or other computer or telecommunication system or device"); *GM Network Ltd. v. E-Gold, Ltd*, No. 01-Civ-9621, 2002 U.S. Dist. LEXIS 9957 at *7 (S.D.N.Y. May 17, 1992) (finding reasonable special provisions for protection of source code, including that a "paralegal . . . keeps a quiet and distant vigil while the [source code] inspection is conducted[,] simply to ensure that no software is copied (electronically) by plaintiffs' expert or counsel").

B.    **Juniper's Source Code Must Be Protected with the Highest Level of Confidentiality and Restrictions**

Juniper's single-operating-system approach to high-performance networking — as embodied in its JUNOS software — is the foundation of Juniper's network router technology business. (Declaration of Michael Bushong ("Bushong Decl.") at ¶ 5.) JUNOS is installed in all

Juniper network routers, including those that service computers at the United States Department of Defense ("DoD") and the Department of Homeland Security ("DHS").  (*Id.* at ¶ 6.)  Juniper takes extraordinary measures to ensure that its source code is carefully protected.  (*Id.* at ¶ 7.)  JUNOS source code physically resides on secure servers in secure areas of Juniper's Sunnyvale, CA, campus.  (*Id.* at ¶ 8.)  Security staff monitors every access point to such secure areas, and access is limited to personnel possessing the appropriate access badge.  (*Id.*)  Further, a very limited number of Juniper employees are permitted to access the server room that houses JUNOS source code.  (*Id.*)  These employees have badge access to the server room.  (*Id.*)

Juniper software developers requiring access to JUNOS source code may access the source code via Juniper's internal network.  (*Id.* at ¶ 9.)  Juniper uses the RSA SecurID two-tier security system to control access to its internal network.  (*Id.*)  Under this system, an employee accessing the Juniper network must first enter his or her assigned username and password, and then must enter a username and the authentication code that appears on his or her own RSA SecurID token.  (*Id.*)  The RSA SecurID token generates a different 6-digit authentication code every 60 seconds.  (*Id.*)  To perform work on JUNOS source code, an employee must "check out" the source code over the Concurrent Versions System repository ("CVS").  (*Id.* at ¶ 10.)  CVS is a version-control system software that allows several developers to work on the JUNOS source code simultaneously.  *Id.*  CVS checks the credentials of all individuals logging into the system and maintains a log of all instances when a person accesses source code.  (*Id.*)

The importance and value of JUNOS source code to Juniper's business cannot be overstated.  (*Id.* at ¶ 5)  A mistake in the handling of Juniper's source code, especially since it is capable of being copied and transmitted electronically, could result in catastrophic and irreparable loss of its extremely valuable trade secrets.  Disclosure of the JUNOS source code could also compromise software and routers installed around the world, including computers installed in locations critical to national security such as the DoD and DHS.  (*Id.* at ¶ 6.)  There is no dispute that the continued secrecy of the JUNOS source code is not only of enormous

- 4 -

commercial value to Juniper but is also necessary to protect the integrity of network routers wherever installed.

      **C.    Additional Precautions Must be Implemented to Prevent Dr. Bahattab from Producing JUNOS Source Code in the Dubai Litigation and Disseminating Source Code to Individuals in the Middle East**

           **1.    Dr. Bahattab Intends to Violate General Provisions of the Protective Order**

The parties have already agreed to Section 3.1.1 of the proposed Protective Order, regarding "Limitations of Use and Disclosure." Section 3.3.1 states, "All Confidential Information produced, exchanged or disclosed in this lawsuit shall be used solely for the purpose of litigating this case, and for no other business, commercial, or other purpose whatsoever." The purpose of this provision is clear: "[I]t is to allow discovery in this case to move forward and to prevent a party from using its opponent's confidential technical and financial information for purposes other than the prosecution or defense of this lawsuit." *Visto Corp. v. Seven Networks,* No. 03-CV-3333, 2006 U.S. Dist. LEXIS 91453, at *15 (E.D. Tex. Dec. 19, 2006) (evaluating a similar provision in a protective order). The Protective Order has not even been entered, yet Dr. Bahattab already intends to violate this unambiguous provision. Dr. Bahattab concedes his intent to use Juniper's source code for "consulting with the Dubai Court of First Instance's court-appointed expert." (Bahattab Motion at 7-8.) Any such exportation of the code produced in this case for use in a foreign tribunal would violate the protective order to be entered in this case. *See Pacific Gas & Elec. Co. v. United States,* 79 Fed. Cl. 744, 746-48 (2007) (plaintiff violated protective order by using documents produced in litigation in another case); *Eagle Comtronics v. Arrow Commc'n, Inc.*, 305 F.3d 1303, 1314 (Fed. Cir. 2002) ("Copying a competitor's patent application obtained through discovery and submitting it as your own for whatever reason is not using the material for purposes of the litigation.").

       2.      **Specific Provisions Against Exportation of Juniper's Source Code Outside the United States are Necessary; the Court Should Adopt Proposed Section 3.2.1.9**

Because it is clear that Dr. Bahattab has no intention of complying with the general provisions in Section 3.1.1, Juniper has proposed section 3.2.1.9 that prohibits the source code from leaving the United States. (Exhibit 2, Section 3.2.1.9.) In cases where concerns have arisen regarding *inadvertent* disclosure of sensitive information, courts have routinely enforced additional restrictions to protect sensitive information. *See, e.g., Visto Corp.,* 2006 U.S. Dist. LEXIS 91453, at *16 ("[n]otwithstanding the general prohibition on use and disclosure of confidential information, the parties to this case recognized that certain activities present an unacceptable risk of the inadvertent use or disclosure of sensitive information" and to that end, the protective order included additional specific restrictions). Where, as here, Dr. Bahattab has explicitly stated his intention to violate the terms of the protective order even before it has been entered, the need for additional protection is even more compelling.

In view of Dr. Bahattab's admissions to send Juniper's source code overseas for other use, Juniper's proposed section 3.2.1.9 is necessary to protect its invaluable source code. Juniper faces great risks to its core technology and valuable trade secrets by releasing its source code into a foreign jurisdiction that may not afford Juniper any protection. Further, source code transmitted to a foreign jurisdiction could be downloaded onto networked computers that could be subject to security breaches or appended in e-mails without any protection whatsoever. In fact, Juniper's source code could be accessed by persons not cleared under the Court's protective order, without notice to Juniper or this Court. Juniper's provisions properly balance the proprietary and confidential nature of source code with any slight inconvenience to Dr. Bahattab. Juniper has shown good cause and respectfully requests the entry of Section 3.2.1.9.

**D.    Juniper's Restrictions on Access to its Source Code are Standard and Conventional, As Proposed in Sections 3.2.1.11 and 3.2.1.4**

Juniper's proposed restrictions are not novel, but have been adopted in similar cases where highly confidential source code must be evaluated. Juniper proposes in Section 3.2.1.11 of its Protective Order that printouts of source code be limited to no more than 500 pages. (Exhibit 1, Section 3.2.1.11.) Such protections are reasonable and have been adopted by other courts. *See QPSX v. Juniper Networks, Inc.*, No. 05-CV-268, Protective Order at Section 11.j (attached as Exhibit 2) (Juniper produced source code subject to similar provisions); *see also Pause Tech, Inc.*, 2003 U.S. Dist. LEXIS 27253, at * 4 (protective order stated that "Limited portions of the Source Code may be printed from the Computer. Any printouts of the Source Code shall be kept in the locked cabinet in the Locked Room."). By contrast, Dr. Bahattab's proposal would permit his expert unlimited hardcopy printouts of Juniper's source code, and he could print every page of every version of the Juniper source code. Juniper is willing to produce its invaluable source code, but is opposed to the unlimited hard-copy printouts of its source code as each additional hard-copy page of Juniper's confidential source code unnecessarily increases the risk of unauthorized disclosure.

The parties agree that source code can be produced on CDs, DVDs, or hard drives, or alternatively be made available for inspection at a single secure site in Washington, D.C. (Proposed Protective Order, Section 3.2.1.1.) The single secure site can be within the control of a third-party escrow service. *Id.* In Section 3.2.1.4 further describing the third-party escrow, the parties agree that source code will be housed in a secured facility. (Exhibit 1, Section 3.2.1.4.) The parties disagree, however, as to the hours of operation of the third-party secure site and whether the source code can be inspected after the close of expert discovery. Juniper maintains tight controls on its source code, and the same or higher measures must protect Juniper's code in this litigation. At third-party secured facilities, access to the facility and security is best controlled during business hours. Accordingly, Juniper has shown good cause to limit access to business hours at third-party secured facilities. *QPSX v. Juniper Networks, Inc.*, No. 05-CV-268,

Protective Order at Section 11.d (Attached as Exhibit 2) (same provision); *GM Network Ltd. v. E-Gold, Ltd*, No. 01-Civ-9621, 2002 U.S. Dist. LEXIS 9957 at *7 (S.D.N.Y. May 17, 1992) (finding reasonable special provisions for protection of source code, including that a "paralegal . . . keeps a quiet and distant vigil while the [source code] inspection is conducted[,] simply to ensure that no software is copied (electronically) by plaintiffs' expert or counsel").

If the parties produce the source code for inspection at a third-party escrow service, pursuant to Fed. R. Civ. P. 34(b), the inspection would end at the close of expert discovery. *See QPSX v. Juniper Networks, Inc.*, No. 05-CV-268, Protective Order at Section 11.d (Attached as Exhibit 2). The Federal Rules of Civil Procedure provide that inspections, such as source code inspections, proceed only for a reasonable time and in a reasonable manner. Fed. R. Civ. P. 34(b). Dr. Bahattab's expert will have access to the JUNOS source code until the end of expert discovery on March 13, 2009. This period of time is more than sufficient for Dr. Bahattab's technical expert to complete the source code review. Dr. Bahattab's request to continue review of the source code after the close of expert discovery is a request, in effect, that the expert discovery deadline be improperly extended until the end of trial. Juniper has shown good cause for the entry of section 3.2.1.4.

### E.    Dr. Bahattab's Proposed Section 2.2.3 Should Be Rejected

Dr. Bahattab proposes that "Documents should not be given a blanket designation of 'Confidential Information;' only confidential portions of documents should be designated." (Exhibit 2, Section 2.2.3.) By example, Dr. Bahattab notes that since JUNOS is comprised largely of open source code, it is only partially confidential and its confidentiality should be designated on a line-by-line basis. (Bahattab Motion at 6.) Juniper disagrees with Dr. Bahattab's characterization regarding Juniper's JUNOS source code, and in addition opposes this provision as it would be unduly burdensome for Juniper to designate on a line-by-line basis its confidential information.

1.    **Juniper's Source Code is a Trade Secret and Cannot Be Segregated**

Like most source code, JUNOS is a combination of the publicly available open source and proprietary algorithms that work in combination to make the router operate.  (Bushong Decl. at ¶ 3.)  More than 22 million lines of code comprise version 9.2 of the JUNOS source code.  (*Id.*)  JUNOS is approximately 12 percent open source of which six percent is FreeBSD source code.  (FreeBSD is a Unix-like free operating system descended from AT&T Unix via the Berkeley Software Distribution branch.)  (*Id.*)  The remaining JUNOS code is developed internally by Juniper.  (*Id.*)  Nevertheless, the entirety of the JUNOS code is a trade secret, and every line of the JUNOS source code, including the open source, is treated by Juniper as being subject to the highest level of confidentiality, "Confidential - Source Code."  Juniper's trade secret in the JUNOS source code lies not only in the proprietary code developed by Juniper, but also in the structure, functionality, and organization of the overall JUNOS source code, including open source.  *See Integrated Cash Mgmt. Servs., Inc. v. Digital Transaction, Inc.*, 732 F. Supp. 370, 374 (S.D.N.Y. 1989), *aff'd* 920 F.2d 171 2d Cir. 1990) (combination of known software programs into a specific combination of modules having a unique interaction entitled to trade secret protection); *Computer Assoc., Int'l v. Quest Software, Inc.*, 333 F. Supp. 2d 688, 695-96 (N.D. Ill. 2004) (entire database source code qualifies for trade secret protection although incorporating publicly available algorithms) (citing *Unix Sys. Lab., Inc. v. Berkeley Software Design, Inc.*, 27 U.S.P.Q. 2d 1721, 1733-34 (D.N.J. 1993) ("[E]ven if all of the pieces of the 32V code had been thoroughly revealed in the publicly available literature, the overall organization of the code might remain a trade secret unless it too had been disclosed.")).

2.    **Dr. Bahattab's Proposed Provision, Section 2.2.3, is Unduly Burdensome**

Dr. Bahattab's Proposed Section 2.2.3 mandates designating partial confidentiality of documents that contain a mixture of confidential and non-confidential information.  (Exhibit 1, Section 2.2.3.)  Juniper opposes this provision in its entirety because it is unduly burdensome.  Pursuant to Fed. R. Civ. P. 26(c)(1)(B), this Court can issue a protective order to limit discovery

that would be an undue burden.  *McKesson HBOC, Inc. v. Islamic Republic of Iran*, 226 F.R.D. 56, 57 (D.D.C. 2004) (court can limit unduly burdensome discovery under showing of "clearly defined and serious injury"), *reversed on other grounds in* 2008 U.S. App. Lexis 18163 (D.D.C. Aug. 26, 2008).

 Dr. Bahattab suggests that confidential and non-confidential portions of source code be separately designated.  As discussed above, all of JUNOS is a trade secret, and it cannot be separated into confidential and non-confidential parts.  Moreover, Juniper would face an undue burden and expense in designating the confidentiality of the source code on a line-by-line basis, thereby creating unnecessary delay this case.  Further, the burdens of such line-by-line review would be far outweighed by any benefits to Dr. Bahattab.  Juniper estimates that a line-by-line review of the JUNOS source code would take over six months for one person to review one version of the code.  (Bushong Decl. at ¶ 11.)  JUNOS is currently in its 39th iteration, and in the event that Dr. Bahattab seeks multiple versions of the code, the burden on Juniper would increase exponentially.  (*Id.* at ¶ 2.)  Dr. Bahattab can point to no case where a court has ordered the designation of source code in such a manner, and Juniper has located none.  Juniper has shown good cause and requests the Court to reject Dr. Bahattab's provisions in Section 2.2.3.

 As to all other documents, Juniper opposes Dr. Bahattab's request for partial designation in favor of the universal practice of designating confidentiality on a document-by-document basis.  A substantial portion of Juniper's document production will be highly confidential documents regarding the design, development, and functionality of the JUNOS software.  A page-by-page review regarding confidentiality would needlessly delay this case and cause undue burden and expense.  Juniper has shown good cause to produce documents designated as confidential on a document-by-document basis.

**F.    Juniper Cannot Waive Its Opportunity to Object to Dr. Bahattab's Technical Experts; the Court Should Adopt Juniper's Proposed Section 4.4**

The parties generally hire experts and technical advisors to analyze each other's technical documentation and source code.  Such experts may be objectionable to the party producing confidential information for a number of reasons, including, for example, conflicts of interest.  Dr. Bahattab has signaled that he intends to hire an expert overseas and consult with the alleged court-appointed technical expert in the Dubai Litigation.  Juniper would likely object to Dr. Bahattab's technical advisor.

In a meet-and-confer session, the parties reached a tentative compromise that the time periods for objection to a technical advisor would be as follows:  (1) After initial disclosure of a proponent of its technical advisor, the other party has six calendar days to object; (2) After notice of objection and subsequent refusal by the proponent to withdraw the technical advisor, the objecting party would have five calendar days to file a motion with the court regarding its objection; and (3) the proponent would then have five calendar days to file a response.

The parties disagree, however, as to whether a reply brief should be allowed.  (Exhibit 1, Section 4.4.)  This Court's local rule LCvR7(d) expressly provides parties five business days after a response is filed to serve a reply brief.  In light of Dr. Bahattab's stated intentions, Juniper cannot relinquish its right to a reply and must address any newly raised arguments in Dr. Bahattab's responsive papers to thwart an objectionable technical advisor from accessing Juniper's source code.

Juniper brings to the Court's attention that during a meet-and-confer session, the parties did not discuss the time periods for a reply brief, but in a summary e-mail, opposing counsel surreptitiously included a provision stating that "There will be no reply for the moving party." (Exhibit 3.)  Dr. Bahattab labels his addition "an apparently mistaken presumption."  (Bahattab Motion at 10.)  Juniper cannot tolerate such gamesmanship in view of the risk to its source code.  Juniper ultimately proposed a reduced time limit for filing of a reply brief of three business days that was thereafter rejected by Dr. Bahattab.  (Exhibit 4.)  On balance, any delay of three

business days, sanctioned by a Court-provided filing period, causes no appreciable prejudice to the non-moving party, given the risks to Juniper of disclosure of its highly confidential trade secrets to an objectionable technical advisor.  For good cause shown, this Court should accept Juniper's proposed Section 4.4.

### III.   DESIGNATION OF PRIVILEGED DOCUMENTS SHOULD NOT BE UNDULY BURDENSOME; THE COURT SHOULD ADOPT JUNIPER'S SECTION 2.1.3

Dr. Bahattab proposes in Section 2.1.3 that an entire document should not be withheld as privileged if partial redaction of the document would suffice.  (Exhibit 1, Section 2.1.3.)  Juniper does not disagree with Dr. Bahattab's provision, but qualifies it with the additional statement: "This provision shall not apply where it is impractical, infeasible, or unduly burdensome to redact the affected document."  Juniper's provision expressly recognizes that in some instances the privileged information simply cannot be extricated from the non-privileged information or that redaction would be impossible.  These are the very circumstances that a protective order is designed to address.  Accordingly, the Court should accept Juniper's proposed provision.

### CONCLUSION

For the foregoing reasons, Juniper respectfully requests that this Court enter Juniper's proposed protective order, and deny entry of Dr. Bahattab's proposed protective order.

Respectfully submitted,


   /s/  Jason F. Hoffman
Alan M. Fisch (DC-453068)
*afisch@kayescholer.com*
Jason F. Hoffman (DC-467827)
*jahoffman@kayescholer.com*
David L. Cousineau (DC-482691)
*dcousineau@kayescholer.com*
KAYE SCHOLER LLP
901 Fifteenth Street, N.W.
Washington, D.C.  20005-2327
(202) 682-3500 telephone
(202) 682-3580 facsimile


*Attorneys for Plaintiff*
Dated: August 29, 2008                *Juniper Networks, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was electronically filed with the Clerk of the Court for the District of Columbia and served on all counsel of record via the CM/ECF system on August 29, 2008.


_____/s/ Jason F. Hoffman_____

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUNIPER NETWORKS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 1:07cv1771-PLF |
| ) | |
| ABDULLAH ALI BAHATTAB, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## DECLARATION OF MICHAEL BUSHONG

I, Michael Bushong, state as follows:

1.      I am the Senior Product Manager of Juniper Networks' ("Juniper")
JUNOS Core business unit, and have been employed by Juniper since 2001. Juniper is a
pioneer of computer network routers and has been at the forefront of innovations in
computer router technology, with numerous patents for router technology. I am
personally familiar with Juniper's JUNOS and JUNOSe software (collectively,
"JUNOS"). JUNOS, or Juniper Operating System, is Juniper's single network operating
system and the engine that drives Juniper's network routers, switches, and other products.
Based on a single code source, JUNOS software integrates routing, switching, security,
and an array of network services for high-performance network routing.

2.      Juniper released the first version of JUNOS on July 7, 1998. Since then,
Juniper has updated its JUNOS software with new versions released concurrently for all

product lines on a strict quarterly schedule. The release of JUNOS version 9.2 earlier this month marked the 39th consecutive release of the operating system.

3.      JUNOS version 9.2 comprises approximately 22 million lines of source code. Computer source code is the human-readable form of software that shows exactly what the software is doing and how it is doing it. Like most source code, JUNOS is a combination of publicly available, open source code and internally developed, proprietary algorithms. The open source code and proprietary algorithms work in combination to make the router operate. Approximately 12% of the JUNOS source code is open source, of which approximately 6% is FreeBSD source code. (FreeBSD is a Unix-like, free operating system descended from AT&T Unix via the Berkeley Software Distribution branch.)

4.      Although a portion of JUNOS incorporates open source code, Juniper treats the overall combination of open source code and internally developed code, including the manner in which the respective portions of code interoperate, as proprietary to Juniper and considers it to be an extremely valuable trade secret. JUNOS source code is one of the most confidential and safeguarded trade secrets that Juniper possesses.

5.      Juniper's single-operating-system approach to high-performance networking – as embodied in its JUNOS software – is the foundation of Juniper's network router technology business. Juniper's programmers continually develop and enhance that source code, including the interoperation of the proprietary and open source code. As such, the importance and value of JUNOS source code to Juniper's business cannot be overstated.

6.      In addition, Juniper must preserve the confidentiality of JUNOS source code to meet the requirements of the United States government, which utilizes Juniper products running JUNOS software in mission-critical government and national security applications. Among those that may be named, the Department of Defense ("DoD"), the Department of Homeland Security ("DHS"), and the United States Army, Navy, and Air Force use Juniper products, including Juniper network routers running JUNOS software. If JUNOS source code were to become known to unauthorized individuals, information transmitted through Juniper routers running JUNOS software – including Juniper routers installed at such agencies as DoD and DHS – would become vulnerable and could be compromised. Not surprisingly, such a breach would raise serious concerns at United States governmental agencies and could jeopardize national security.

7.      Accordingly, Juniper implements strong measures to tightly monitor and safeguard the secrecy security of the JUNOS source code.

8.      JUNOS source code physically resides on secure servers in secure areas of Juniper's Sunnyvale, CA, campus. Security staff monitor every access point to such secure areas, and access is limited to personnel possessing the appropriate access badge. Further, a very limited number of Juniper employees are permitted to access the server room that houses JUNOS source code. These employees have badge access to the server room.

9.      Juniper software developers requiring access to JUNOS source code may access the source code via Juniper's internal network. Juniper uses the RSA SecurID two-tier security system to control access to its internal network. Under this system, an employee accessing the Juniper network must first enter his or her assigned username and

password, and then must enter a username and the authentication code that appears on his or her own RSA SecurID token. The RSA SecurID token generates a different 6-digit authentication code every 60 seconds.

10.    To perform work on JUNOS source code, an employee must "check out" the source code over the Concurrent Versions System repository ("CVS"). CVS is a version control system software that allows several developers to work on the JUNOS source code simultaneously. CVS checks the credentials of all individuals logging into the system via secure shell ("SSH") and maintains a log of all instances when a person accesses source code.

11.    I understand that Dr. Bahattab is asking Juniper to parse the JUNOS source code to distinguish its proprietary code from open source code. Beyond the confidentiality concerns that arise because Juniper treats the entire JUNOS source code as a proprietary trade secret, such a task would be tremendously burdensome to Juniper. I estimate it would require a programmer at least 150 days – *i.e.*, over half a year (excluding weekends) – to go through a single version of JUNOS source code line by line to determine whether each line is proprietary or open source.


I declare under penalty of perjury that the foregoing is true and correct.


Dated: August 29, 2008

Michael Bushong

# Exhibit 1

*Juniper Networks, Inc. v. Abdullah Ali Bahattab, No. 1:07cv1771-PLF (AK)*
*Motions for Protective Order:  Disputed Provisions*

## Section 2.1.3.1. – Redaction of Privileged Documents

| *Juniper's Proposed Language* | *Dr. Bahattab's Proposed Language* |
|---|---|
| "Any producing party may redact privileged or protected material from documents and things it produces, including matter that the producing party claims is subject to the attorney-client privilege, work product immunity or other privilege or immunity. The producing party shall mark each document or thing that matter has been redacted with a legend stating "REDACTED FOR PRIVILEGE" or a comparable descriptive notice. Where a document consists of more than one page, at least the first page and each page on which information has been redacted shall be so marked. The producing party shall preserve an unredacted version of each document. This provision shall not affect any obligation to provide a log of information redacted or otherwise withheld on the basis of the attorney-client privilege, work product immunity or other privilege or immunity. **This provision shall not apply where it is impractical, infeasible, or unduly burdensome to redact the affected document.**" | "**Documents containing privileged information may not be withheld from production if the privileged information can be redacted.** Any producing party may redact privileged or protected material from documents and things it produces, including matter that the producing party claims is subject to the attorney-client privilege, work product immunity or other privilege or immunity.  The producing party shall mark each document or thing that matter has been redacted with a legend stating "REDACTED FOR PRIVILEGE" or a comparable descriptive notice. Where a document consists of more than one page, at least the first page and each page on which information has been redacted shall be so marked. The producing party shall preserve an unredacted version of each document. This provision shall not affect any obligation to provide a log of information redacted or otherwise withheld on the basis of the attorney-client privilege, work product immunity or other privilege or immunity." |

## Section 2.2.3. – Confidentiality Designations (Including Designation of Source Code)

| *Juniper's Proposed Language* | *Dr. Bahattab's Proposed Language* |
|---|---|
| Juniper opposes the inclusion of this section. | "**Documents should not be given a blanket designation of 'Confidential Information;' only confidential portions of documents should be designated.**" |

**Section 3.2.1.4. – Access to Source Code through Third Party Secure Site**

| *Juniper's Proposed Language* | *Dr. Bahattab's Proposed Language* |
|---|---|
| "The third party secure site shall be provided at the Producing Party's expense in the District of Columbia and shall be available from the date of this Protective Order **until close of expert discovery in this matter** on three (3) business days' written notice of the first use and on twenty-four (24) hours written notice of any subsequent use. If the secure site is used on consecutive days, notice should be given by 5:00 p.m. on the day prior to use. **A party reviewing the Source Code is limited to inspections during normal business hours.**" | "The third party secure site shall be provided at the Producing Party's expense in the District of Columbia and shall be available from the date of this Protective Order **until the conclusion of trial in this matter** on three (3) business days' written notice of the first use and on twenty-four (24) hours written notice of any subsequent use. If the secure site is used on consecutive days, notice should be given by 5:00 p.m. on the day prior to use. **A party reviewing the Source Code shall, with proper notice, have 24-hour access to the secure site seven days a week.**" |

**Section 3.2.1.9. – Prohibition of Removal of Source Code from the United States**

| *Juniper's Proposed Language* | *Dr. Bahattab's Proposed Language* |
|---|---|
| "**Source Code shall be viewed within the designated United States offices of the Source Code Custodian. Source Code shall not be removed from the United States, and shall not be transmitted outside the United States in any format.** No electronic copies of Source Code shall be made, except as necessary to provide an electronic copy of such source code at each such location and to maintain back-up copies of the information on each such computer. However, to the extent portions of Source Code are quoted in a Source Code Document, Source Code Custodians and the persons described in Paragraph 3.1.2. shall be permitted to store and access Source Code Documents on a computer and on a computer network that limits access to only necessary viewers; Source Code custodians and the persons described in Paragraph 3.1.2. may also send Source Code Documents to authorized persons via electronic mail;" | "No electronic copies of Source Code shall be made, except as necessary to provide an electronic copy of such source code at each such location and to maintain back-up copies of the information on each such computer. However, to the extent portions of Source Code are quoted in a Source Code Document, Source Code Custodians and the persons described in Paragraph 3.1.2. shall be permitted to store and access Source Code Documents on a computer and on a computer network that limits access to only necessary viewers; Source Code custodians and the persons described in Paragraph 3.1.2. may also send Source Code Documents to authorized persons via electronic mail;" |

**Section 3.2.1.11. – Limitation on Printouts of Source Code**

| *Juniper's Proposed Language* | *Dr. Bahattab's Proposed Language* |
|---|---|
| **"With respect to any Source Code made available at the office of a Source Code Custodian, the Source Code Custodian and the party's technical advisors shall be limited to no more than 500 pages of printouts or photocopies of the Source Code. Any and all such printouts or photocopies shall be marked 'Confidential – Source Code';"** | Dr. Bahattab opposes the inclusion of this section. |

**Section 4.4. – Motion for Ruling on Objection to Technical Advisor**

| *Juniper's Proposed Language* | *Dr. Bahattab's Proposed Language* |
|---|---|
| "If after consideration of the objection, the party desiring to disclose the Confidential Information to a technical advisor refuses to withdraw the technical advisor, that party shall provide notice to the objecting party.  Thereafter, the objecting party, shall move the Court, within five (5) calendar days after receiving such notice, for a ruling on its objection.  A failure to file a motion within the five (5) calendar day period shall operate as an approval of disclosure of the Confidential Information to the technical advisor.  After the filing of the motion with the Court, the non-moving party shall have five (5) calendar days to respond to the motion.  **Thereafter, the moving party shall have three (3) calendar days to file a reply.**  The parties agree to cooperate in good faith to shorten the time frames set forth in this paragraph if necessary to abide by any discovery or briefing schedules." | "If after consideration of the objection, the party desiring to disclose the Confidential Information to a technical advisor refuses to withdraw the technical advisor, that party shall provide notice to the objecting party. Thereafter, the objecting party, shall move the Court, within five (5) calendar days of receiving such notice, for a ruling on its objection.  A failure to file a motion within the five (5) calendar day period shall operate as an approval of disclosure of the Confidential Information to the technical advisor.  After the filing of the motion with the Court, the non-moving party shall have five (5) calendar days to respond to the motion.  **There will be no reply for the moving party.**  The parties agree to cooperate in good faith to shorten the time frames set forth in this paragraph if necessary to abide by any discovery or briefing schedules." |

**Exhibit 2**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **QPSX DEVELOPMENTS 5 PTY LTD,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | **Case No. 2-05CV-268 (TJW)** |
| | § | |
| **JUNIPER NETWORKS, INC., et al.** | § | |
| | § | |
| *Defendants.* | § | |

## AGREED PROTECTIVE ORDER

To expedite the flow of discovery materials, to facilitate the prompt resolution of

disputes over confidentiality of discovery materials, to adequately protect information the parties

are entitled to keep confidential, to ensure that only materials the parties are entitled to keep

confidential are subject to such treatment, and to ensure that the parties are permitted reasonably

necessary uses of such materials in preparation for and in the conduct of trial, pursuant to Fed. R.

Civ. P. 26(c), it is hereby ORDERED THAT:

## INFORMATION SUBJECT TO THIS ORDER

1.    For purposes of this Order, "CONFIDENTIAL INFORMATION" shall mean all

information or material produced for or disclosed to a receiving party that a producing party,

including any party to this action and any non-party producing information or material

voluntarily or pursuant to a subpoena or a court order, considers to constitute or to contain trade

secrets or other confidential technical, sales, marketing, financial, or other commercial

information, whether embodied in physical objects, documents, or the factual knowledge of

persons, and which has been so designated by the producing party.  Any CONFIDENTIAL

INFORMATION obtained by any party from any person pursuant to discovery in this litigation

may be used only for purposes of preparation and litigation of this matter.

2.    Any document or tangible thing containing or including any CONFIDENTIAL

INFORMATION may be designated as such by the producing party by marking it

"CONFIDENTIAL" prior to or at the time copies are furnished to the receiving party.

3.    At the request of any party, the original and all copies of any deposition transcript, in whole or in part, shall be marked "CONFIDENTIAL," "ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL-SOURCE CODE" by the reporter. This request may be made orally during the deposition or in writing within fifteen (15) days of receipt of the final certified transcript. Deposition transcripts shall be treated as ATTORNEYS' EYES ONLY until the expiration of the time to make confidentiality designation. Any portions so designated shall thereafter be treated in accordance with the terms of this Order.

4.    All CONFIDENTIAL INFORMATION not reduced to documentary, tangible or physical form or which cannot be conveniently designated as set forth in paragraph 2, shall be designated by the producing party by informing the receiving party of the designation in writing.

5.    Any documents (including physical objects) made available for inspection by counsel for the receiving party prior to producing copies of selected items shall initially be considered, as a whole, to constitute CONFIDENTIAL INFORMATION and shall be subject to this Order. Thereafter, the producing party shall have a reasonable time to review and designate the appropriate documents as CONFIDENTIAL INFORMATION prior to furnishing copies to the receiving party.

6.    The following information is not CONFIDENTIAL INFORMATION:

    a.    Any information which at the time of disclosure to a receiving party is in the public domain;

    b.    Any information which, after its disclosure to a receiving party, becomes part of the public domain as a result of publication not involving a violation of this Order;

    c.    Any information that the receiving party can show was already known to it prior to the disclosure;

    d.    Any information which the receiving party can show by written records was received by it after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the producing party; and

e.    Any information which the receiving party can show was independently developed by it after the time of disclosure by personnel who did not have access to the producing party's CONFIDENTIAL INFORMATION.

## NO WAIVER OF PRIVILEGE

7.    Inspection or production of documents (including physical objects) shall not constitute a waiver of the attorney-client privilege or work product immunity or any other applicable privilege if, as soon as reasonably possible after the producing party becomes aware of any inadvertent or unintentional disclosure, the producing party designates any such documents as protected from disclosure by attorney-client privilege or work product immunity or any other applicable privilege and requests return of such documents to the producing party. Upon request by the producing party, the receiving party immediately shall return to the producing party all copies of such inadvertently produced document(s), all copies thereof and any materials derived from or based thereon to the producing party.  Notwithstanding this provision, outside litigation counsel of record are not required to delete information that may reside on their respective firm's electronic back-up systems that are over-written in the normal course of business.

## INFORMATION DESIGNATED ATTORNEYS' EYES ONLY

8.    CONFIDENTIAL INFORMATION may be additionally designated ATTORNEYS' EYES ONLY.  The ATTORNEYS' EYES ONLY designation is reserved for CONFIDENTIAL INFORMATION that constitutes proprietary financial or technical data or commercially sensitive competitive information, including, without limitation CONFIDENTIAL INFORMATION obtained from a nonparty pursuant to a current Nondisclosure Agreement ("NDA"), CONFIDENTIAL INFORMATION relating to future products not yet commercially released, strategic plans, and settlement agreements or settlement communications, the disclosure of which is likely to cause harm to the competitive position of the producing party. Documents designated ATTORNEYS' EYES ONLY and information contained therein shall be available only to:

3

a.    Outside litigation counsel of record and supporting personnel employed in the law firm(s) of outside litigation counsel of record, such as attorneys, paralegals, legal translators, legal secretaries, legal clerks and shorthand reporters;

b.    Technical advisers who have complied with the provisions of paragraphs 12-13 herein and who have signed the form attached hereto as Attachment A;

c.    With respect to the documents designated ATTORNEYS' EYES ONLY, information contained therein shall be made available to one (1) in-house attorney (including support staff as reasonably necessary) for each Party who act in a legal capacity for that Party, who have signed the form attached hereto as Attachment A, who are responsible for and/or working directly in the prosecution or defense of this action, and are not presently directly involved in patent procurement activities and/or in business decision-making;

d.    The Court, its personnel and stenographic reporters (under seal or with other suitable precautions determined by the Court);

e.    Independent legal translators retained to translate in connection with this action; independent stenographic reporters and videographers retained to record and transcribe testimony in connection with this action; graphics, translation, or design services retained by counsel for purposes of preparing demonstrative or other exhibits for deposition, trial, or other court proceedings in the actions; non–technical jury or trial consulting services not including mock jurors.

4

**PERSONS AUTHORIZED TO RECEIVE CONFIDENTIAL INFORMATION**

9.   Except as otherwise agreed to by the parties, or ordered by the Court, in addition

to all persons identified in paragraph 8, the following persons shall have access to

CONFIDENTIAL information:

a.   A control group of no more than two (2) individuals who are employees,

managers, officers and/or members of the corporate board of directors of

such receiving party with responsibility for maintaining, defending or

evaluating this litigation (and supporting personnel), provided that such

individuals may not be directly involved in patent procurement activities.

(i)   Should counsel for a receiving party find it necessary for

maintaining, defending or evaluating this litigation to disclose a

producing party's CONFIDENTIAL INFORMATION to a control

group, counsel for the receiving party shall first obtain from such

individual a signed statement, in the form attached hereto as

Attachment A, stating he or she has read and understands this

Order and agrees to be bound by its terms.  Attachment A shall be

retained by counsel for the receiving party, and produced upon

demand.

10.   Any individual who obtains, receives, has access to, or otherwise learns, in whole

or in part, technical information designated ATTORNEYS' EYES ONLY under this Protective

Order shall not prepare, prosecute, supervise, or assist in the prosecution of any patent

application claiming ATM switching technology within two (2) years from the disclosure of

such technical information or one (1) year after the conclusion of this litigation, including any

appeals, whichever period is longer.  To ensure compliance with this provision, Plaintiff and

Defendants shall create an ethical wall between those persons with access to technical

information designated ATTORNEYS' EYES ONLY under this Protective Order and those

individuals who prepare, prosecute, supervise, or assist in the prosecution of any patent application claiming ATM switching technology.

11.    Documents or other things that are designated Confidential and contain a party's source code may be designated "RESTRICTED CONFIDENTIAL-SOURCE CODE" and shall be provided the following further protections:

a.    Each party producing software and/or computer source code ("Source Code") shall produce Source Code in searchable electronic form on CDs, DVDs, or hard drives bearing production identification numbers and marked as "RESTRICTED CONFIDENTIAL-SOURCE CODE;"

b.    The Source Code CD's, DVD's, or hard drives shall, at the producing party's discretion, be  produced directly to the receiving party or made available for inspection as follows:

In the case of production of source code by QPSX, the source code will be made available for review at a single secure site for each Defendant, in either Dallas, Texas or Houston, Texas, at a location within the control of outside counsel of record for each Defendant.  In the case of production of source code at a secure site by any of the Defendants, the source code will be made available for review at a single secure site, in either Dallas, Texas or Houston, Texas, at a location within the control of outside counsel of record for QPSX.

As an alternative, any producing party may make its source code available for review at a single secure site in either Dallas, Texas or Houston, Texas within the control of a third party (i.e., escrow company) according to the additional terms detailed in Sections 11(d) & (e).  If a producing party exercises this option, it assumes the payment of all costs related thereto.

6

c.    The Source Code will be viewed only on non-networked computers in secure, locked areas of the designated offices of the receiving party ("Source Code Custodian") except as provided herein;

d.    **For Third Party Control of Source Code.**  The third party secure site shall be provided at the producing party's expense and shall be available from the date of this Order until close of expert discovery in this matter on three (3) business day's written notice of the first use and on twenty-four (24) hours notice of any subsequent use.  If the secure site is used on consecutive days, 15 hours notice of use shall be sufficient (e.g., notice of use should be made by 5:00 pm on one day of intended use beginning at 8:00 am the next day).  A party reviewing the source code is not limited to inspections during normal business hours.

e.    **For Third Party Control of Source Code.**  The third party secure site shall be provisioned with all of the tools that are available to employees of the producing party that develop, maintain, or operate the computer source code either as source code or as executable code, including compilers, linkers, debugging programs, and any other tools useful in analyzing the computer source code.  The third party secure site shall be provisioned with a printer, watermarked printer paper and toner to allow printouts to be made from the source code.

f.    Access to information designated RESTRICTED CONFIDENTIAL-SOURCE CODE shall be limited to Source Code Custodians and the persons described in paragraph 8, except 8(c) (in-house counsel).  A receiving party may include excerpts of Source Code in  a pleading, exhibit, expert report, discovery document, deposition transcript, other Court document, or any drafts of these documents ("Source Code Documents"); each excerpt of Source Code quoted in a Source Code

Document shall be insubstantial when compared to the entire Source Code produced by the producing party – as an example, excerpts of approximately 25 to 40 lines in length would be allowed;

g.    To the extent portions of Source Code are quoted in a Source Code Document, either (1) the entire document will be stamped and treated as RESTRICTED CONFIDENTIAL-SOURCE CODE or (2) those pages containing quoted Source Code will be separately bound, and stamped and treated as RESTRICTED CONFIDENTIAL-SOURCE CODE.

h.    Source Code shall be viewed within the designated United States offices of the Source Code Custodian.  No electronic copies of Source Code shall be made, except as necessary to provide an electronic copy of such source code at each such location and to maintain back-up copies of the information on each such computer.  However, to the extent portions of Source Code are quoted in a Source Code Document, Source Code Custodians and the persons described in paragraph 8, except 8(c) (in-house counsel),  shall be permitted to store and access Source Code Documents on a computer and on a computer network that limits access to only necessary viewers; Source Code Custodians and the persons described in paragraph 8, except 8(c) (in-house counsel), may also send Source Code Documents to authorized persons via electronic mail;

i.    Documents containing Source Code stored on a computer or computer network shall be password protected so as to limit access to authorized persons;

j.    With respect to any source code made available at the office of Source Code Custodian, the Source Code Custodian and the party's technical advisors shall be limited to no more than 500 pages of printouts or photocopies of the Source Code.   Any and all such printouts or

photocopies shall be marked "RESTRICTED CONFIDENTIAL-SOURCE CODE."

k.    The receiving party shall maintain a log of all files that are printed or photocopied.

l.    Should such printouts or photocopies be transferred back to electronic media, such media shall continue to be labeled "RESTRICTED CONFIDENTIAL-SOURCE CODE" and shall continue to be treated as such.

m.    If the receiving party or its technical advisor makes printouts or photocopies of portions of Source Code, the receiving party shall keep the printouts or photocopies in a secured locked area in the office of the outside counsel or technical advisor. The receiving party may also temporarily keep the printouts or photocopies at: (i) the sites where any depositions relating to the source code are taken for the dates associated with the taking of the deposition; (ii) the Court; or (iii) any intermediate location reasonably necessary to transport the information (e.g., a hotel prior to a deposition).

## DISCLOSURE OF TECHNICAL ADVISERS

12.    Information designated by the producing party as CONFIDENTIAL, ATTORNEYS' EYES ONLY, or RESTRICTED CONFIDENTIAL-SOURCE CODE, and such copies of this information as are reasonably necessary for maintaining, defending or evaluating this litigation subject to the provisions of paragraph 11 above ("Protected Information"), may be furnished and disclosed to the receiving party's technical advisers. The term "technical adviser" shall mean an independent, outside expert witness or consultant with whom counsel may deem it necessary to consult.

13.    No disclosure of Protected Information to a technical adviser shall occur until a signed form attached hereto as Attachment A stating that the technical adviser has read and

understands this Order and agrees to be bound by its terms has been provided to the producing party.

14.    A party desiring to disclose Protected Information to a technical adviser shall also give prior written notice to the producing party, who shall have ten (10) days after such notice is given to object in writing. The party desiring to disclose Protected Information to a technical adviser must provide the following information for each technical adviser: name, address, curriculum vitae, current employer, employment history for the past four (4) years, and a listing of cases in which the witness has testified as an expert at trial or by deposition within the preceding four years. No Protected Information shall be disclosed to such expert(s) or consultant(s) until after the expiration of the foregoing notice period.

15.    A party objecting to disclosure of Protected Information to a technical adviser shall state with particularity the ground(s) of the objection and the specific categories of documents that are the subject of the objection. The objecting party's consent to the disclosure of Protected Information to a technical adviser shall not be unreasonably withheld, and its objection must be based on that party's good faith belief that disclosure of its Protected Information to the technical adviser will result in specific business or economic harm to that party.

16.    If after consideration of the objection, the party desiring to disclose the Protected Information to a technical adviser refuses to withdraw the technical adviser, that party shall provide notice to the objecting party. Thereafter, the objecting party shall move the Court, within ten (10) days of receiving such notice, for a ruling on its objection. A failure to file a motion within the ten (10) day period shall operate as an approval of disclosure of the Protected Information to the technical adviser. The parties agree to cooperate in good faith to shorten the time frames set forth in this paragraph if necessary to abide by any discovery or briefing schedules.

17.    The objecting party shall have the burden of showing to the Court "good cause" for preventing the disclosure of its Protected Information to the technical adviser. This "good

cause" shall include a particularized showing that: (1) the Protected Information is confidential commercial information, (2) disclosure of the Protected Information would result in a clearly defined and serious injury to the objecting party's business, and (3) the proposed technical advisor is in a position to allow the Protected Information to be disclosed to the objecting party's competitors.

18.    If the Court has not ruled on the motion within thirty (30) days from the conclusion of the briefing period, the parties agree to file a joint motion for expedited consideration of the objecting party's motion.

## CHALLENGES TO CONFIDENTIALITY DESIGNATIONS

19.    The parties shall use reasonable care when designating documents or information as CONFIDENTIAL, ATTORNEYS' EYES ONLY, or RESTRICTED CONFIDENTIAL-SOURCE CODE. Nothing in this Order shall prevent a receiving party from contending that any or all documents or information designated as CONFIDENTIAL, ATTORNEYS' EYES ONLY, or RESTRICTED CONFIDENTIAL-SOURCE CODE have been improperly designated. A receiving party may at any time request that the producing party cancel or modify the CONFIDENTIAL, ATTORNEYS' EYES ONLY, or RESTRICTED CONFIDENTIAL-SOURCE CODE designation with respect to any document or information contained therein.

20.    A party shall not be obligated to challenge the propriety of a CONFIDENTIAL, ATTORNEYS' EYES ONLY, or RESTRICTED CONFIDENTIAL-SOURCE CODE designation at the time made, and a failure to do so shall not preclude a subsequent challenge thereto. Such a challenge shall be written, shall be served on counsel for the producing party, and shall particularly identify the documents or information that the receiving party contends should be differently designated. The parties shall use their best efforts to resolve promptly and informally such disputes. If an agreement cannot be reached, the receiving party shall request that the Court cancel or modify a CONFIDENTIAL, ATTORNEYS' EYES ONLY, or RESTRICTED CONFIDENTIAL-SOURCE CODE designation. The burden of demonstrating

the confidential nature of any information shall at all times be and remain on the designating party.

## LIMITATIONS ON THE USE OF CONFIDENTIAL INFORMATION

21.     CONFIDENTIAL, ATTORNEYS' EYES ONLY and RESTRICTED CONFIDENTIAL-SOURCE CODE information shall be held in confidence by each person to whom it is disclosed, shall be used only for purposes of this litigation, shall not be used for any business purpose, and shall not be disclosed to any person who is not entitled to receive such information as herein provided.  All produced CONFIDENTIAL, ATTORNEYS' EYES ONLY and RESTRICTED CONFIDENTIAL-SOURCE CODE information shall be carefully maintained so as to preclude access by persons who are not entitled to receive such information.

22.     Except as may be otherwise ordered by the Court, any person may be examined as a witness at depositions and trial and may testify concerning all CONFIDENTIAL, ATTORNEYS' EYES ONLY and RESTRICTED CONFIDENTIAL-SOURCE CODE information of which such person has prior knowledge.  Without in any way limiting the generality of the foregoing:

  a.     A present director, officer, and/or employee of a producing party may be examined and may testify concerning all CONFIDENTIAL, ATTORNEYS' EYES ONLY and RESTRICTED CONFIDENTIAL-SOURCE CODE information which has been produced by that party;

  b.     A former director, officer, agent and/or employee of a producing party may be interviewed, examined and may testify concerning all CONFIDENTIAL, ATTORNEYS' EYES ONLY and RESTRICTED CONFIDENTIAL-SOURCE CODE information of which he or she has prior knowledge, including any CONFIDENTIAL, ATTORNEYS' EYES ONLY and RESTRICTED CONFIDENTIAL-SOURCE CODE information that refers to matters of which the witness has personal

12

knowledge, which has been produced by that party and which pertains to the period or periods of his or her employment; and

c.    Non-parties may be examined or testify concerning any document containing CONFIDENTIAL, ATTORNEYS' EYES ONLY and RESTRICTED CONFIDENTIAL-SOURCE CODE information of a producing party which appears on its face or from other documents or testimony to have been received from or communicated to the non-party as a result of any contact or relationship with the producing party or a representative of the producing party. Any person other than the witness, his or her attorney(s), or any person qualified to receive CONFIDENTIAL, ATTORNEYS' EYES ONLY and RESTRICTED CONFIDENTIAL-SOURCE CODE information under this Order shall be excluded from the portion of the examination concerning such information, unless the producing party consents to persons other than qualified recipients being present at the examination. If the witness is represented by an attorney who is not qualified under this Order to receive such information, then prior to the examination, the producing party shall request that the attorney provide a signed statement, in the form of Attachment A hereto, that he or she will comply with the terms of this Order and maintain the confidentiality of CONFIDENTIAL, ATTORNEYS' EYES ONLY and RESTRICTED CONFIDENTIAL-SOURCE CODE information disclosed during the course of the examination. In the event that such attorney declines to sign such a signed statement prior to the examination, the parties, by their attorneys, shall jointly seek a protective order from the Court prohibiting the attorney from disclosing CONFIDENTIAL, ATTORNEYS' EYES ONLY and RESTRICTED CONFIDENTIAL-SOURCE CODE.

13

23.    All transcripts of depositions, exhibits, answers to interrogatories, pleadings, briefs, and other documents submitted to the Court which have been designated as CONFIDENTIAL, ATTORNEYS' EYES ONLY, or RESTRICTED CONFIDENTIAL-SOURCE CODE or which contain information so designated, shall be filed in sealed envelopes or other appropriate sealed containers on which shall be endorsed the title of this matter, an indication of the nature of the contents of such sealed envelope or other container, the words "CONFIDENTIAL INFORMATION – UNDER PROTECTIVE ORDER," and a statement substantially in the following form:

> This envelope contains confidential information filed in this case by (name of party) and is not to be opened nor the contents thereof to be displayed or revealed except by order of the Court presiding over this matter.

Outside attorneys of record for the parties are hereby authorized to be the persons who may retrieve confidential exhibits and/or other confidential matters filed with the Court upon terminaton of this litigation without further order of this Court, and are the persons to whom such confidential exhibits or other confidential matters may be returned by the Clerk of the Court, if they are not so retreived.  No material or copies thereof so filed shall be released except by order of the Court, to outside counsel of record, or as otherwise provided for hereunder.

24.    Nothing in this Order shall prohibit the transmission or communication of CONFIDENTIAL, ATTORNEYS' EYES ONLY, or RESTRICTED CONFIDENTIAL-SOURCE CODE information between or among qualified recipients

a.    By hand delivery;

b.    In sealed envelopes or containers via mail or an established freight, delivery or messenger service; or

  c. By telephone, facsimile, e-mail or other electronic transmission system; where, under the circumstances, there is no reasonable likelihood that the transmission will be intercepted or misused by any person who is not a qualified recipient.

25. CONFIDENTIAL, ATTORNEYS' EYES ONLY and RESTRICTED CONFIDENTIAL-SOURCE CODE information shall not be copied or otherwise produced by a receiving party, except for transmission to qualified recipients, without the written permission of the producing party, or, in the alternative, by further order of the Court. Nothing herein shall, however, restrict a qualified recipient from making working copies, abstracts, digests and analyses of CONFIDENTIAL, ATTORNEYS' EYES ONLY and RESTRICTED CONFIDENTIAL-SOURCE CODE information for use in connection with this litigation and such working copies, abstracts, digests and analyses shall be deemed CONFIDENTIAL, ATTORNEYS' EYES ONLY, or RESTRICTED CONFIDENTIAL-SOURCE CODE information under the terms of this Order. Further, nothing herein shall restrict a qualified recipient from converting or translating CONFIDENTIAL, ATTORNEYS' EYES ONLY, or RESTRICTED CONFIDENTIAL-SOURCE CODE information into machine readable form for incorporation into a data retrieval system used in connection with this action, provided that access to CONFIDENTIAL, ATTORNEYS' EYES ONLY, or RESTRICTED CONFIDENTIAL-SOURCE CODE information, in whatever form stored or reproduced, shall be limited to qualified recipients.

## NONPARTY USE OF THIS PROTECTIVE ORDER

26. A nonparty producing information or material voluntarily or pursuant to a subpoena or a court order may designate such material or information as CONFIDENTIAL, ATTORNEYS' EYES ONLY, or RESTRICTED CONFIDENTIAL-SOURCE CODE information pursuant to the terms of this Protective Order.

27. A nonparty's use of this Protective Order to protect its CONFIDENTIAL, ATTORNEYS' EYES ONLY, or RESTRICTED CONFIDENTIAL-SOURCE CODE

information does not entitle that nonparty access to CONFIDENTIAL, ATTORNEYS' EYES
ONLY, or RESTRICTED CONFIDENTIAL-SOURCE CODE information produced by any
party in this case.

## MISCELLANEOUS PROVISIONS

28.    Any of the notice requirements herein may be waived, in whole or in part, but
only in writing signed by the attorney-in-charge for the party against whom such waiver will be
effective.

29.    Nothing in this Protective Order shall require production of information that a
party contends is protected from disclosure by the attorney-client privilege, the work product
doctrine, or other privilege, doctrine, right, or immunity. If information subject to a claim of
attorney-client privilege, work product doctrine, or other privilege, doctrine, right, or immunity
is nevertheless inadvertently or unintentionally produced, such production shall in no way
prejudice or otherwise constitute a waiver of, or estoppel as to, any such privilege, doctrine,
right, or immunity. Any party that inadvertently produces materials protected by the attorney-
client privilege, work product doctrine, or other privilege, doctrine, right, or immunity may
obtain the return of those materials by notifying the recipient(s), as soon as reasonably possible
after the producing party becomes aware of any inadvertent or unintentional disclosure, and
providing a privilege log for the inadvertently produced materials. The recipient(s) shall then
gather and return all copies of the privileged material to the producing party, except for any
pages containing privileged markings by the recipient, which pages shall instead be destroyed
and certified as such by the recipient to the producing party.

30.    Inadvertent or unintentional production of documents or information containing
CONFIDENTIAL, ATTORNEYS' EYES ONLY and/or RESTRICTED CONFIDENTIAL-
SOURCE CODE information which are not designated CONFIDENTIAL, ATTORNEYS'
EYES ONLY and/or RESTRICTED CONFIDENTIAL-SOURCE CODE shall not be deemed a
waiver in whole or in part of a claim for confidential treatment. With respect to documents, the
producing party shall immediately notify the other parties of the error in writing and provide

replacement pages bearing the appropriate confidentiality legend.  In the event of any

unintentional or inadvertent disclosure of CONFIDENTIAL, ATTORNEYS' EYES ONLY

and/or RESTRICTED CONFIDENTIAL-SOURCE CODE information other than in a manner

authorized by this Protective Order, counsel for the party responsible for the disclosure shall

immediately notify opposing counsel of all of the pertinent facts, and make every effort to

further prevent unauthorized disclosure including, retrieving all copies of the CONFIDENTIAL,

ATTORNEYS' EYES ONLY and/or RESTRICTED CONFIDENTIAL-SOURCE CODE

information from the recipient(s) thereof, and securing the agreement of the recipients not to

further disseminate the CONFIDENTIAL, ATTORNEYS' EYES ONLY and/or RESTRICTED

CONFIDENTIAL-SOURCE CODE information in any form.  Compliance with the foregoing

shall not prevent the producing party from seeking further relief from the Court.

     31.     Within sixty (60) days after the entry of a final non-appealable judgment or order,

or the complete settlement of all claims asserted against all parties in this action, each party

shall, at the option of the producing party, either return or destroy all physical objects and

documents which embody CONFIDENTIAL or ATTORNEYS' EYES ONLY information

which were received from the producing party, and shall destroy in whatever form stored or

reproduced, all physical objects and documents, including but not limited to, correspondence,

memoranda, notes and other work product materials, which contain or refer to CONFIDENTIAL

or ATTORNEYS' EYES ONLY information; provided, that all CONFIDENTIAL and

ATTORNEYS' EYES ONLY information, not embodied in physical objects and documents,

shall remain subject to this Order and each party shall return all RESTRICTED

CONFIDENTIAL-SOURCE CODE information to the producing party.  Notwithstanding this

provision, outside litigation counsel of record are not required to delete information that may

reside on their respective firm's electronic back-up systems that are over-written in the normal

course of business.  Notwithstanding the foregoing, outside counsel shall be entitled to maintain

copies of all pleadings, motions and trial briefs (including all supporting and opposing papers

and exhibits thereto), written discovery requests and responses (and exhibits thereto), deposition

17

transcripts (and exhibits thereto), trial transcripts, and exhibits offered or introduced into evidence at any hearing or trial, and their attorney work product which refers or is related to any CONFIDENTIAL and ATTORNEYS' EYES ONLY information for archival purposes only.  If a party opts to destroy CONFIDENTIAL or ATTORNEYS' EYES ONLY information, the party must provide a Certificate of Destruction to the producing party.

32.     If at any time documents containing CONFIDENTIAL, ATTORNEYS' EYES ONLY and/or RESTRICTED CONFIDENTIAL-SOURCE CODE information are subpoenaed by any court, arbitral, administrative or legislative body, the person to whom the subpoena or other request is directed shall immediately give written notice thereof to every party who has produced such documents and to its counsel and shall provide each such party with an opportunity to object to the production of such documents. If a producing party does not take steps to prevent disclosure of such documents within ten (10) days of the date written notice is given, the party to whom the referenced subpoena is directed may produce such documents in response thereto.

33.     This Order is entered without prejudice to the right of any party to apply to the Court at any time for additional protection, or to relax or rescind the restrictions of this Order, when convenience or necessity requires.

34.     The United States District Court for the Eastern District of Texas, Marshall Division, is responsible for the interpretation and enforcement of this Agreed Protective Order. After termination of this litigation, the provisions of this Agreed Protective Order shall continue to be binding except with respect to those documents and information that become a matter of public record.  This Court retains and shall have continuing jurisdiction over the parties and recipients of the CONFIDENTIAL, ATTORNEYS' EYES ONLY and/or RESTRICTED CONFIDENTIAL-SOURCE CODE information for enforcement of the provision of this Agreed Protective Order following termination of this litigation.  All disputes concerning CONFIDENTIAL, ATTORNEYS' EYES ONLY and/or RESTRICTED CONFIDENTIAL-SOURCE CODE information produced under the protection of this Agreed Protective Order

18

shall be resolved by the United States District Court for the Easter District of Texas, Marshall Division.

SIGNED this 2nd day of March, 2006.

_T. John Ward_

T. JOHN WARD
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **QPSX DEVELOPMENTS 5 PTY LTD,** | § | |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Case No. 2-05CV-268 (TJW)** |
| | § | |
| **JUNIPER NETWORKS, INC., et al.** | § | |
| | § | |
| *Defendants.* | | |

## <u>ATTACHMENT A TO THE AGREED PROTECTIVE ORDER</u>
### CONFIDENTIAL AGREEMENT

I reside at _____.

    1.    My present employer is _____.

    2.    My present occupation or job description is _____.

    3.    I have read the Agreed Protective Order dated _____, 2006, and have been engaged as _____ on behalf of _____ in the preparation and conduct of litigation styled QPSX Developments 5 PTY Ltd v. Juniper Networks, Inc. et al.

    4.    I am fully familiar with and agree to comply with and be bound by the provisions of said Order. I understand that I am to retain all copies of any documents designated as CONFIDENTIAL, ATTORNEYS' EYES ONLY and/or RESTRICTED CONFIDENTIAL-SOURCE CODE information in a secure manner, and that all copies are to remain in my

personal custody until I have completed my assigned duties, whereupon the copies and any writings prepared by me containing any CONFIDENTIAL, ATTORNEYS' EYES ONLY and/or RESTRICTED CONFIDENTIAL-SOURCE CODE information are to be returned to counsel who provided me with such material.

5.    I will not divulge to persons other than those specifically authorized by said Order, and will not copy or use except solely for the purpose of this action, any information obtained pursuant to said Order, except as provided in said Order. I also agree to notify any stenographic or clerical personnel who are required to assist me of the terms of said Order.

6.    In accordance with paragraph fourteen (14) of the Agreed Protective Order (if applicable), I have attached my resume, curriculum vitae or other information to this executed Confidentiality Agreement sufficient to identify my current employer and employment history for the past four (4) years, and the cases in which I have testified as an expert at trial or by deposition within the preceding four (4) years.

7.    I state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _____, 20__.


_____


31064367.1
AU\4175672.1
26573-27                                2

# Exhibit 3

Jason
Hoffman/DC/US/KSFHH
08/15/2008 04:35 PM

To  "Jordan, Brandon" <bjordan@deweyleboeuf.com>

cc  AFisch@kayescholer.com; cmeade@ferrellworldwide.com;
dcousineau@kayescholer.com;
gmahfood@ferrellworldwide.com; "Asbill, Henry"

bcc

Subject  RE: Juniper v. Bahattab Conference Recap

Brandon,

The agreement between the parties yesterday regarding Section 4.4 is based upon the version of Section
4.4 that appears in your July 14, 2008 email.  That version does not contain the language "There will be
no reply for the moving party."  You have added that language to Bahattab's revised version of Section 4.4
in yesterday's email without the consent of Juniper.  Your proposed language supercedes Local Rule 7(d),
which provides the ability for the moving party to file a reply five (business) days after service of the
opposition.  Juniper would be amenable to limiting a reply to be filed three business days after service of
the opposition.

Please let me know if Bahattab will agree to the addition of three business days for the reply to Section
4.4.


*****************************************
Jason Hoffman
Kaye Scholer LLP
901 Fifteenth Street, N.W.
Washington, DC  20005
202-682-3531
202-414-0431 (Fax)
jahoffman@kayescholer.com
"Jordan, Brandon" <bjordan@deweyleboeuf.com>



"Jordan, Brandon"
<bjordan@deweyleboeuf.com
>
08/15/2008 01:51 PM

To  JaHoffman@kayescholer.com

cc  AFisch@kayescholer.com; cmeade@ferrellworldwide.com;
dcousineau@kayescholer.com;
gmahfood@ferrellworldwide.com; "Asbill, Henry"
<HAsbill@deweyleboeuf.com>; "Auchter, Robert"
<rauchter@DeweyLeBoeuf.com>; SChu@kayescholer.com

Subject  RE: Juniper v. Bahattab Conference Recap


Jason,

With regards to section 4.4, it appears that you have dropped the
sentence "There will be no reply for the moving party." Please confirm
that this was inadvertent as the parties have negotiated specific
deadlines for filing a motion and specific deadlines for filing a
response, and insofar as the protective order under either proposal
contains no deadline period for a reply and the parties have not
discussed the issue of a reply, a reply is therefore not contemplated or
allowed for by the protective order. As you know, Dr. Bahattab wishes
to keep any delay caused by the introduction of a technical advisor to a

minimum, so the addition of a reply period would not be agreeable. With
the knowledge that we intend to file a motion for a protective ordert
this afternoon, please let us know as soon as possible whether Juniper
opposes the inclusion of this sentence.

Thank you,

Brandon

-----------------------------------------------------------
Brandon M. Jordan
Associate Pending Admission
Dewey & LeBoeuf LLP
1101 New York Avenue, N.W., Suite 1100
Washington, D.C. 20005
Direct: +1 202 346 7915
General: +1 202 346 8000
Fax: +1 202 346 8102
brandon.jordan@dl.com
www.dl.com

-----Original Message-----
From: JaHoffman@kayescholer.com [mailto:JaHoffman@kayescholer.com]
Sent: Friday, August 15, 2008 12:16 PM
To: Jordan, Brandon
Cc: AFisch@kayescholer.com; cmeade@ferrellworldwide.com;
dcousineau@kayescholer.com; gmahfood@ferrellworldwide.com; Asbill,
Henry; Auchter, Robert; SChu@kayescholer.com
Subject: Re: Juniper v. Bahattab Conference Recap

Jordan,

Thank you for your email summary.  Juniper is amenable to the revised
wording for section 2.1.3.2 as detailed in your email below.

Your recitation of the revised section 4.4 is not consistent with the
agreement reached during yesterday's conference call.  Section 4.4
should
read as follows:

"If after consideration of the objection, the party desiring to disclose
the Confidential Information to a technical advisor refuses to withdraw
the
technical advisor, that party shall provide notice to the objecting
party.
Thereafter, the objecting party, shall move the Court, within five (5)
calendar days after receiving such notice, for a ruling on its
objection. A
failure to file a motion within the five (5) calendar day period shall
operate as an approval of disclosure of the Confidential Information to
the
technical advisor.  After the filing of the motion with the Court, the
non-moving party shall have five (5) calendar days to respond to the
motion.  The parties agree to cooperate in good faith to shorten the
time
frames set forth in this paragraph if necessary to abide by any
discovery
or briefing schedules."

I also note your email contains the following errors/omissions:

1.    Bahattab has proposed no limitation on the number of printed pages in
response to the 500 page limitation as proposed in section 3.2.1.11.

2.    Bahattab has proposed access to Juniper's Source Code until trial.

3.    Juniper did not state that "it is awaiting the entry of a protective
order to evaluate any further document production." Juniper represented
that it is in the process of collecting documents, but will need to
evaluate the proper designation of those documents in accordance with the
protective order as entered by the Court.

4.    Your email fails to identify Bahattab's counsel representation that
Bahattab may have confidential documents that would be subject to the
proposed protective order.


**********************************
Jason Hoffman
Kaye Scholer LLP
901 Fifteenth Street, N.W.
Washington, DC  20005
202-682-3531
202-414-0431 (Fax)
jahoffman@kayescholer.com


|  |  |  |
|---|---|---|
| | "Jordan, Brandon" | |
| | <bjordan@deweyleb | |
| | oeuf.com> | |
| To | | JaHoffman@kayescholer.com; |
| | 08/14/2008 05:17 | AFisch@kayescholer.com; |
| | PM | dcousineau@kayescholer.com |
| cc | | gmahfood@ferrellworldwide.com; |
| | | cmeade@ferrellworldwide.com; |
| | | "Auchter, Robert" |
| | | <rauchter@DeweyLeBoeuf.com>; |
| | | "Asbill, Henry" |
| | | <HAsbill@deweyleboeuf.com> |
| Subject | | Juniper v. Bahattab Conference |

Recap

Mr. Hoffman,

I am writing to confirm our discussions today regarding the protective
order and document production issues in Juniper v. Bahattab:

I.  Continued Disagreement

The parties were unable to reach an agreement on the following issues.
(1)
Juniper continues to disagree with Dr. Bahattab's proposed limitation
that
only confidential portions of documents should be designated and that no
blanket designations of 'Confidential Information' should be designated
as
proposed in section 2.1.3.  (2) Dr. Bahattab continues to disagree with
Juniper's proposed limitation that source code not be transmitted out of
the United States under any circumstances as proposed in in section
3.2.1.9.  (3) Dr. Bahattab continues to disagree with Juniper's proposed
limitation that source code cannot be printed in excess of 500 pages as
proposed in section 3.2.1.11.  (4) Dr. Bahattab continues to disagree
with
Juniper's proposed limitation that source code be only made available
until
the close of expert discovery as proposed in section 3.2.1.4.

II.  Agreement

The parties were able to agree with respect to the timeframe for
resolving
objections to technical advisors.  As per our agreement, section 4.2
shall
read in part "A party desiring to disclose Confidential Information to a
technical advisor shall also give prior written notice to the producing
party, who shall have six (6) calendar days after such notice is given
to
object in writing."  As per our agreement, section 4.4 shall read:

"If after consideration of the objection, the party desiring to disclose
the Confidential Information to a technical advisor refuses to withdraw
the
technical advisor, that party shall provide notice to the objecting
party.

Thereafter, the objecting party, shall move the Court, within five (5) calendar days of receiving such notice, for a ruling on its objection. A failure to file a motion within the five (5) day period shall operate as an

approval of disclosure of the Confidential Information to the technical advisor. After the filing of the motion with the Court, the non-moving party shall have five (5) calendar days to respond to the motion. There will be no reply for the moving party. The parties agree to cooperate in

good faith to shorten the time frames set forth in this paragraph if necessary to abide by any discovery or briefing schedules."

III.  Pending Issues

As per Juniper's proposed section 2.1.3.2, Dr. Bahattab suggested a revised

wording, and we expect to hear back from Juniper within 24 hours of our conference as to whether it agrees with the revision. The suggested compromise wording is as follows:

"Notwithstanding the requirements of FRCP 26(b)(5), a party may withhold and not log privileged communications to or from its outside counsel or privileged documents created by its outside counsel that were created or made after the party consulted that counsel to obtain professional legal services from that counsel relating to the prosecution or defense of a claim in this litigation."

IV.  Document Production

As for document production, Juniper indicated that it is awaiting the entry

of a protective order to evaluate any further document production.

Thank you again for conferring with us on these issues, and as we indicated, we intend to file a motion for a protective order tomorrow, and

hope to hear back from you on the proposed section 2.1.3.2.

Best Regards,

Brandon

----------------------------------------------------------
Brandon M. Jordan
Associate Pending Admission
Dewey & LeBoeuf LLP
1101 New York Avenue, N.W., Suite 1100
Washington, D.C. 20005
Direct: +1 202 346 7915
General: +1 202 346 8000
Fax: +1 202 346 8102
brandon.jordan@dl.com
www.dl.com


======================================================================
======

Pursuant to U.S. Treasury Department Circular 230, unless we expressly state otherwise, any tax advice contained in this

communication (including any attachments) was not intended
or written to be used, and cannot be used, for the purpose
of (i) avoiding tax-related penalties or (ii) promoting,
marketing or recommending to another party any matter(s)
addressed herein.


This e-mail message, including attachments, is confidential,
is intended only for the named recipient(s) above and may
contain information that is privileged, attorney work product,
proprietary or exempt from disclosure under applicable law.
The unauthorized use, dissemination, distribution or reproduction
of this e-mail message, including attachments, is strictly
prohibited.  If you have received this message in error, or are
not an intended recipient, please immediately notify the sender
and delete this e-mail message, including attachments,
from your computer.  Thank you.
=====================================================================
======



                              *    *    *    *

IRS CIRCULAR 230 DISCLOSURE:  To ensure compliance with Treasury
Department regulations, we inform you that any U.S. federal tax advice
contained in this correspondence (including any attachments) is not
intended or written to be used, and cannot be used for the purpose of
(i) avoiding penalties that may be imposed under the U.S. Internal
Revenue Code or (ii) promoting, marketing or recommending to another
party any transaction or matter addressed herein.


==========================================================================
Pursuant to U.S. Treasury Department Circular 230, unless we
expressly state otherwise, any tax advice contained in this
communication (including any attachments) was not intended
or written to be used, and cannot be used, for the purpose
of (i) avoiding tax-related penalties or (ii) promoting,
marketing or recommending to another party any matter(s)
addressed herein.


This e-mail message, including attachments, is confidential,
is intended only for the named recipient(s) above and may
contain information that is privileged, attorney work product,
proprietary or exempt from disclosure under applicable law.
The unauthorized use, dissemination, distribution or reproduction
of this e-mail message, including attachments, is strictly
prohibited.  If you have received this message in error, or are
not an intended recipient, please immediately notify the sender
and delete this e-mail message, including attachments,
from your computer.  Thank you.
==========================================================================

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JUNIPER NETWORKS, INC.,** | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) <br> )    Civil No. 1:07cv1771-PLF (AK) |
| **ABDULLAH ALI BAHATTAB**, | ) <br> ) <br> ) |
| Defendant. | ) <br> ) <br> ) |

**[PROPOSED] STIPULATED PROTECTIVE ORDER**

This stipulation is entered into by and among Juniper Networks, Inc. ("Juniper"), and Dr. Abdullah Ali Bahattab ("Dr. Bahattab") (individually referred to as a "Party," and collectively referred to as the "Parties");

WHEREAS, the Parties are engaged in discovery pursuant to the Federal Rules of Civil Procedure and may seek information from third parties to this litigation;

WHEREAS, the Parties believe that discovery will require the disclosure of information or matters that include trade secret or other confidential research, development, or commercial information within the meaning of Rule 26(c)(7) of the Federal Rules of Civil Procedure;

Now, therefore, the Parties agree and the Court orders as follows:

1. **DEFINITIONS**

1.1. "Confidential Information" means Confidential Information that is technical, commercial, financial or marketing in nature and that the designating party reasonably and in good faith believes is confidential and that its disclosure would result in a clearly defined and very serious injury to its business.

1.2.    "Disclosing Party" means any Party or third party who produces for inspection, provides access to, provides copies of, or otherwise discloses Confidential Information in connection with this litigation.

1.3.    "Document" or "documents" mean documents and writings, and include, but are not limited to, records, exhibits, reports, samples, electronic messages, compilations, transcripts, video or audio recordings, disks, affidavits, briefs, summaries, notes, abstracts, drawings, company records and reports, answers to interrogatories, responses to requests for admissions, and motions, including copies or computer-stored or electronic versions or compilations of any of the foregoing.

1.4.    "Producing Party" shall mean any Party who discloses or produces for inspection Confidential Information.

1.5.    "Requesting Party" shall mean any Party who requests the production, inspection or disclosure of Confidential Information from a Producing Party.

1.6.    "Receiving Party" shall mean any Party who receives the Confidential Information of a Producing Party.

1.7.    "Outside Counsel" shall mean the attorneys and employees of Kaye Scholer LLP for plaintiff Juniper Networks, Inc. and the attorneys and employees of Dewey & LeBoeuf, LLP and Ferrell Law, P.A., for defendant Dr. Abdullah Ali Bahattab.

**2.    PRODUCING AND DESIGNATING INFORMATION**

2.1.    Generally

2.1.1.   Any information produced or disclosed in this action (in pretrial discovery, as a deposition transcript or exhibit, in a pleading or otherwise) deemed to contain or constitute Confidential Information shall be so designated by any party to this action, or any other supplier of that information, (1) in writing by typing, stamping, or affixing conspicuously on its face (in such a manner as will not interfere with the legibility thereof ) Confidential" or "Confidential -- Source Code" at the time of production or service thereof, or (2) orally on the record at a deposition or conference.  Oral notice shall be effective only for those parties in attendance personally or by counsel, or for those parties who receive a transcript containing or marked with a confidentiality designation.  The designating party shall use due care to designate only information that truly merits such designation.

2.1.2.   All documents produced by a Disclosing Party shall bear identifying numbers when a copy or copies are given to the Receiving Party together with a designation identifying the disclosing entity.

2.1.3.1.   Any producing party may redact privileged or protected material from documents and things it produces, including matter that the producing party claims is subject to the attorney-client privilege, work product immunity or other privilege or immunity. The producing party shall mark each document or thing where matter has been redacted with a legend stating "REDACTED FOR PRIVILEGE" or a comparable descriptive notice. Where a document consists of more than one page, at least the first page and each page on which information has been redacted shall be so marked. The producing party shall preserve an unredacted version of each document. This provision shall not affect any obligation to provide a log of information redacted or otherwise withheld on the basis of the attorney-client privilege, work product

immunity or other privilege or immunity.  This provision shall not apply where it is impractical, infeasible, or unduly burdensome to redact the affected document.

2.1.3.2.  Notwithstanding the requirements of FRCP 26(b)(5), a party may withhold and not log privileged communications to or from its outside counsel or privileged documents created by its outside counsel that were created or made after the party consulted that counsel to obtain professional legal services from that counsel relating to the prosecution or defense of a claim in this litigation.

2.1.4.  To the extent that documents, things, and deposition testimony are sought from a third party, such third party shall have the right to designate any such documents, things, or deposition testimony as "Confidential" and the use and disclosure of such Confidential Information by any Receiving Party shall be governed in all respects by the terms of this Order.

2.1.5.  The use of Confidential Information during trial or any hearing in this matter shall be governed by relevant local rules of the Court, future orders of the Court, or by stipulation between the parties.

2.2.     Production of Documents and Things

2.2.1.  The designating party shall mark each affected document or thing with a legend stating "Confidential" as appropriate, or a comparable notice. Where a document consists of more than one page, at least the first page and each page on which Confidential Information appears shall be so marked. This provision shall not apply where it is impractical or infeasible to mark the affected document or thing such as in the case of an original that cannot be readily copied.  In that event, the designating party shall provide separate written notice.

2.2.2.   In the case of Confidential Information produced in a non-paper medium (e.g., videotape, audiotape, computer disks, etc.), the appropriate designation shall be affixed to the outside of the medium or its container so as to clearly give notice of the designation.

2.2.3.   The Parties must use reasonable care to avoid designating any material as Confidential Information that is not entitled to such designation or is generally available to the public.

2.3.    Depositions

2.3.1.   A party may designate deposition transcripts and exhibits as Confidential Information (a) orally on the record during the deposition; or (b) by notifying all other parties in writing within 30 calendar days of receiving the transcript of the exhibits, transcript, or portions thereof, that contain Confidential Information.

2.3.2.   Until 30 calendar days after receiving a deposition transcript, each party shall treat the entirety of each deposition transcript, all information disclosed therein, and each exhibit thereto as "Confidential" unless before the deposition, the exhibit was properly treated as not having any Confidential Information. After the 30 day period, however, deposition transcripts, all information disclosed therein and each exhibit thereto, shall be treated in accordance with how they are actually designated.

2.3.3.   During a deposition, Confidential Information may be disclosed to (a) stenographers, videographers, and Court personnel, as necessary; and (b) a deponent during the deponent's deposition if

2.3.3.1.    The deponent is listed as an author, addressee, or recipient on the face of a document designated "Confidential";

2.3.3.2.    The deponent had seen the Confidential Information prior to the deposition;

2.3.3.3.    The Confidential Information was produced by or obtained from said deponent or the deponent's employer;

2.3.3.4.    The parties stipulate in writing to allow the deponent to review the document; or

2.3.3.5.    Upon order of the Court for good cause shown.

## 3.    LIMITATIONS ON USING AND DISCLOSING INFORMATION

3.1.    Limitations on Use and Disclosure

3.1.1.    All Confidential Information produced, exchanged or disclosed in this lawsuit shall be used solely for the purpose of litigating this case, and for no other business, commercial or other purpose whatsoever.

3.1.2.    Anything designated "Confidential" shall not be disclosed or made available to any person or entity other than:

3.1.2.1.    Outside Counsel, including litigation support personnel (e.g., copy services, computer consulting and support services, visual aid providers, translators, or other independent litigation support services) who are retained by Outside Counsel for purposes of assisting counsel in this action.  Any outside attorney or law firm other than those

indicated above may be added to this Protective Order as counsel of record for a Party upon 10

calendar days advance written notice to all other Parties, but shall not be added to the Protective

Order nor entitled to access any Confidential Information should any other Party object in

writing to the designation of counsel during such 10 day period.  Any objection to the addition of

any attorney or law firm to Outside Counsel shall be resolved by the Court if not resolved by the

Parties;

        3.1.2.2.      Technical advisors pursuant to the provisions of Section 4

of this Protective Order;

        3.1.2.3.      Mock jurors who are specifically retained by a Party to this

action for purposes of this litigation and who are not otherwise currently employed by (1) a

Party, or (2) any predecessor, parent or affiliated company of a Party; provided that each mock

juror signs the Nondisclosure Agreement, Attachment A to the Protective Order;

        3.1.2.4.      The Court and any persons the Court employs whose duties

require access to the information, including jurors and court reporters; and

        3.1.2.5.      Officers before whom a deposition or other testimony is

taken (e.g., stenographic reporters and videographers) and necessary clerical and support

personnel who are assisting such officers, who are provided a copy of this Protective Order and

advised that Confidential Information disclosed to them may not be used in any manner other

than with respect to this action.

    3.2.    Source Code

3.2.1.  Documents or other things that are designated Confidential Information and contain a party's source code may be designated "Confidential – Source Code" and shall be provided the following further protections:

3.2.1.1.     Each party producing software and/or computer source code ("Source Code") shall produce Source Code in searchable electronic form on CDs, DVDs, or hard drives bearing production identification numbers and marked as "Confidential – Source Code;"

3.2.1.2.     The Source Code CDs, DVDs, or hard drives shall, at the Producing Party's discretion, be produced directly to the Receiving Party or made available for inspection as follows:

In the case of production of Source Code by Juniper, the Source Code will be made available for review at a single secure site in Washington, DC, at a location within the control of outside counsel of record for Dr. Bahattab.  In the case of production of Source Code at a secure site by Dr. Bahattab, the Source Code will be made available for review at a single secure site in Washington, DC, at a location within the control of outside counsel of record for Juniper.

As an alternative, any Producing Party may make its source code available for review at a single secure site in Washington, DC within the control of a third party (*i.e.*, escrow company) according to the additional terms in Paragraphs 3.2.1.4 and 3.2.1.5.  If a Producing Party exercises this option, it assumes the payment of all costs related thereto.

3.2.1.3.     The Source Code will be viewed only on non-networked computers in secure, locked areas of the designated offices of the Receiving Party (the "Source Code Custodian") except as provided herein;

        3.2.1.4.       **For Third Party Control of Source Code.**  The third party secure site shall be provided at the Producing Party's expense in the District of Columbia and shall be available from the date of this Protective Order until close of expert discovery in this matter on three (3) business days' written notice of the first use and on twenty-four (24) hours written notice of any subsequent use.  If the secure site is used on consecutive days, notice should be given by 5:00 p.m. on the day prior to use.  A party reviewing the Source Code is limited to inspections during normal business hours.

        3.2.1.5.       Access to information designated "Confidential – Source Code," shall be limited to Source Code Custodians and the persons described in Paragraph 3.1.2. Information designated "Confidential – Source Code" shall not be produced, provided, disclosed, summarized, described, or characterized to any party, person, or entity other than those specified in Paragraph 3.1.2.

        3.2.1.7.       A Receiving Party may include excerpts of Source Code in a pleading, exhibit, expert report, discovery document, deposition transcript, other Court document, or any drafts of these documents ("Source Code Documents"); each excerpt of Source Code quoted in a Source Code Document shall be insubstantial when compared to the entire Source Code produced by the Producing Party – as an example, excerpts of approximately 25 to 40 lines in length would be allowed;

        3.2.1.8.       To the extent portions of Source Code are quoted in a Source Code Document, either (1) the entire document will be stamped and treated as Confidential – Source Code or (2) those pages containing quoted Source Code will be separately bound, and stamped and treated as Confidential – Source Code;

3.2.1.9.      Source Code shall be viewed within the designated United States offices of the Source Code Custodian.  Source Code shall not be removed from the United States, and shall not be transmitted outside the United States in any format.  No electronic copies of Source Code shall be made, except as necessary to provide an electronic copy of such source code at each such location and to maintain back-up copies of the information on each such computer.  However, to the extent portions of Source Code are quoted in a Source Code Document, Source Code Custodians and the persons described in Paragraph 3.1.2. shall be permitted to store and access Source Code Documents on a computer and on a computer network that limits access to only necessary viewers; Source Code custodians and the persons described in Paragraph 3.1.2. may also send Source Code Documents to authorized persons via electronic mail;

3.2.1.10.      Source Code Documents stored on a computer or computer network shall be password protected so as to limit access to authorized persons;

3.2.1.11.      With respect to any Source Code made available at the office of a Source Code Custodian, the Source Code Custodian and the party's technical advisors shall be limited to no more than 500 pages of printouts or photocopies of the Source Code.  Any and all such printouts or photocopies shall be marked "Confidential – Source Code";

3.2.1.12.      The Receiving Party shall maintain a log of all files that are printed or photocopied;

3.2.1.13.      Should such printouts or photocopies be transferred back to electronic media, such media shall continue to be labeled "Confidential – Source Code" and shall continue to be treated as such;

3.2.1.14.    If the Receiving Party or its technical advisor makes printouts or photocopies of portions of Source Code, the Receiving Party shall keep the printouts or photocopies in a secured locked area in the office of the outside counsel or technical advisor. The Receiving Party may also temporarily keep the printouts or photocopies at:  (i) the sites where any depositions relating to source code are taken for the dates associated with the taking of the deposition; (ii) the Court; or (iii) any intermediate location reasonably necessary to transport the information (*e.g.,* a hotel prior to a deposition).

3.3.    Filing Under Seal

3.3.1.   A Party seeking to file with the Court any material (including without limitation, pleadings, motions, transcripts or portions thereof) that comprises, contains, discloses, reproduces or paraphrases any designated Confidential Information shall file the material under seal with the Court pursuant to the procedures governed by L. Civ. R. 5.1(j)(2), (3), and (4).

3.4.    Depositions

3.4.1.   Unless modified by agreement of counsel or Court order, only those persons authorized by this Protective Order to receive Confidential Information may be present during those portions of a deposition which may require the disclosure of Confidential Information.

3.4.2.   If during the course of a Disclosing Party's deposition, a Disclosing Party believes a portion of its testimony constitutes Confidential Information, counsel for the Producing Party may designate on the record such testimony and the resulting portion of the deposition transcript as "Confidential."

3.4.3.   Each deposition transcript and exhibits thereto shall be presumptively deemed to contain Confidential Information and subject to the provisions of this Stipulated Protective Order for a period of 30 calendar days following receipt of the transcript by counsel for the deponent. Within the 30 days, counsel for the deponent or for any Party to this action may designate certain portions of the transcript and/or exhibits as "Confidential" by notifying all counsel of record in writing of the designation, and such pages or portions thereof and exhibits shall be treated as Confidential Information subject to the terms of this Stipulated Protective Order. If no confidentiality designations are made within 30 calendar days after receipt of the transcript, the transcript shall be considered not to contain any Confidential Information.

3.5.    Exceptions

Notwithstanding any provision of this Protective Order, nothing in this Protective Order shall prohibit or otherwise restrict the use or disclosure of information, documents or things, if, at the time of such use or disclosure:

3.5.1.   A Party is merely using or disclosing its own information. A Party may freely use and disclose its own Confidential Information without restriction.

3.5.2.   The Court has ordered such use or disclosure, or the Court has ordered the relevant information undesignated.

3.5.3.   Each Party that produced the information or designated the information as Confidential Information has consented in writing to such use or disclosure.

3.5.4.   The information is used or disclosed in the examination, at a deposition hearing, or trial, of any current or former officer, director, employee, agent, expert or consultant

of the Party whose information is used or disclosed, so long as that person had access or knowledge of the information.

       3.5.5.   The person or entity receiving the information wrote, was the source for, or lawfully previously received that information.

       3.5.6.   The information (1) was part of the public domain or publicly available when it was produced, or (2) becomes part of the public domain or publicly available through no act, omission or fault of any Receiving Party or its counsel or agents, and through no unlawful or improper act of any other person.

       3.5.7.   The information is or was independently developed, prior to receipt in this litigation, by the Party wishing to use or disclose the information; or

       3.5.8.   The information (1) is or was in the lawful possession of the Party wishing to use or disclose the information and (2) was not acquired under any obligation of confidentiality to the designating Party, nor through the illegal or improper act of any person.

## 4.      DISCLOSURE OF TECHNICAL ADVISORS

       4.1.    Information designated by the producing party as "Confidential" or "Confidential - Source Code", and such copies of this information as are reasonably necessary for maintaining, defending or evaluating this litigation may be furnished and disclosed to the Receiving Party's technical advisors.  The term "technical advisor" shall mean an independent, outside expert witness or consultant with whom counsel may deem it necessary to consult.

       4.2.    No disclosure of Confidential Information to a technical advisor shall occur until a signed form attached hereto as Attachment A stating that the technical advisor has read and

understands this Protective Order and agrees to be bound by its terms has been provided to the

Producing Party.  A party desiring to disclose Confidential Information to a technical advisor

shall also give prior written notice to the producing party, who shall have six (6) calendar days

after such notice is given to object in writing. The party desiring to disclose Protected

Information to a technical advisor must provide the following information for each technical

advisor: name, address, curriculum vitae, current employer, employment history for the past four

(4) years, and a listing of cases in which the witness has testified as an expert at trial or by

deposition within the preceding four years. No Confidential Information shall be disclosed to

such expert(s) or consultant(s) until after the expiration of the foregoing notice period.

4.3.    A party objecting to disclosure of Confidential Information to a technical advisor

shall state with particularity the ground(s) of the objection and the specific categories of

documents that are the subject of the objection. The objecting party's consent to the disclosure of

Confidential Information to a technical advisor shall not be unreasonably withheld, and its

objection must be based on that party's good faith belief that disclosure of its Confidential

Information to the technical advisor will result in specific business or economic harm to that

party.

4.4.    If after consideration of the objection, the party desiring to disclose the

Confidential Information to a technical advisor refuses to withdraw the technical advisor, that

party shall provide notice to the objecting party.  Thereafter, the objecting party, shall move the

Court, within five (5) calendar days after receiving such notice, for a ruling on its

objection.  A failure to file a motion within the five (5) calendar day period shall operate as an

approval of disclosure of the Confidential Information to the technical advisor.  After the filing

of the motion with the Court, the non-moving party shall have five (5) calendar days to respond

to the motion.  Thereafter, the moving party shall have three (3) calendar days to file a reply.

The parties agree to cooperate in good faith to shorten the time frames set forth in this paragraph

if necessary to abide by any discovery or briefing schedules.

      4.5.    The objecting party shall have the burden of showing to the Court "good cause"

for preventing the disclosure of its Confidential Information to the technical advisor. This "good

cause" shall include a particularized showing that: (1) the Confidential Information is

confidential commercial information, (2) disclosure of the Confidential Information would result

in a clearly defined and serious injury to the objecting party's business, and (3) the proposed

technical advisor is in a position to allow the Confidential Information to be disclosed to the

objecting party's competitors.

## 5.    CHALLENGES TO DESIGNATIONS

      5.1.    Any Party to this action may contest at any time the designation of anything as

Confidential Information by giving the designating Party written notice that identifies the

relevant designated information and states in reasonable detail the reasons why the information

should not be so designated. Any Parties in disagreement about such designations shall meet and

confer in good faith in person or by telephone to attempt to resolve their disagreement. If those

Parties cannot resolve their disagreement within 10 calendar days after a Party contests the

designation, any Party may thereafter petition the court to resolve the matter. If such an objection

or petition is made, such information shall be treated according to the designation that the

designating Party gives it until the issue is resolved in writing by the Parties or the petition is

decided by the Court or an appellate court, should appellate review by sought.

      5.2.    In any motion challenging a designation, the designating Party shall have the

burden of establishing the need for classification as "Confidential Information."

**6.     WAIVER AND INADVERTENT DISCLOSURES**

6.1.   Privilege

6.1.1.   Nothing in this Stipulated Protective Order shall require disclosure of information that is protected by the attorney-client privilege, work product doctrine, or other privilege or immunity.

6.1.2.   Nothing in this Protective Order shall be deemed to waive any applicable privilege or immunity, or to limit the relief available to a Party claiming that it inadvertently disclosed information subject to any privilege, doctrine, or immunity.

6.1.3.   If information subject to a claim of attorney-client privilege, work product doctrine, or other privilege or immunity is nevertheless inadvertently or unintentionally produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to any such privilege, doctrine, or immunity.

6.1.4.   Any party that inadvertently produces materials protected by the attorney-client privilege, work product doctrine, or other privilege or immunity may obtain the return of those materials by notifying the recipient(s), as soon as reasonably possible after the producing party becomes aware of any inadvertent or unintentional disclosure, and providing a privilege log for the inadvertently produced materials.  The recipient(s) shall then gather and return all copies of the privileged material to the Producing Party, except for any pages containing privileged markings by the recipient, which pages shall instead be destroyed and certified as such by the recipient to the Producing Party.

6.1.5.   This Stipulated Protective Order will not preclude any Party from moving the Court for an order directing the disclosure of information withheld under a claim of privilege or immunity.

6.2.    Inadvertent Disclosures - Confidential Information

6.2.1.   If a Party inadvertently fails to mark a document containing Confidential Information with the appropriate designation, it may later apply such a designation by providing counsel for each other Party written notice of the proper designation for each affected document or thing. Upon receiving such a notice, each party shall treat the affected documents or things, and all copies thereof, as designated as the notice states, and each Receiving Party shall make a reasonable effort to (1) prevent improper use or disclosure of such information and (2) obtain the return of such information that it disclosed to any person not authorized to receive such designated information. The designating Party shall also provide a properly marked replacement for each affected document and thing.

6.2.2.   If a Producing Party inadvertently discloses information without designating such information as Confidential Information, that disclosure shall not be deemed a waiver of confidentiality with regard to that information, or similar or related information.

6.2.3.   Neither the existence of this Protective Order, nor the designation of anything as Confidential Information shall, in and of itself, raise any inference as to whether the designated information is confidential.

**7.      COMPLIANCE**

7.1.    Individuals who receive Confidential Information agree to subject themselves to the jurisdiction of the United States District Court for the District of Columbia for the sole purpose of enforcement of the Protective Order.

7.2.    If any information that is designated (at the time of use or disclosure) as Confidential Information is used or disclosed other than in the manner authorized by this Protective Order, then the Party responsible for such use or disclosure shall immediately disclose such use or disclosure to counsel of record and each entity that supplied or designated the affected information and, without prejudice to other rights and remedies available to the supplier or designator, shall make every effort to obtain the return of such information and prevent further improper use or disclosure of such information. Such disclosure shall include: (a) a description of the Confidential Information used or disclosed (with Bates numbers of any documents involved, if known); (b) the date and nature of the use and disclosure; (c) the identity of the person(s) who made such use or disclosure and to whom the Confidential Information was disclosed; and (d) a description of the efforts taken to comply with the provisions of this paragraph.

7.3.    Except as provided for elsewhere in this Protective Order, any disclosure or use by any person or entity of any inadvertently disclosed or inadvertently non-designated information shall not be deemed a violation of this Protective Order if such disclosure or use occurs before that person or entity receives written notice of that inadvertent disclosure or nondesignation.

## 8.    CONCLUSION OF LITIGATION

8.1.    Absent a court order or written permission of the disclosing and designating Party or Parties, and unless otherwise stated in another provision in this Protective Order, all provisions of this Protective Order that restrict the disclosure or use of information shall continue to be binding after the conclusion of this action.

8.2.    Upon written request by the Disclosing Party after the conclusion of this litigation and all appeals therefrom, and absent a court order to the contrary, all documents or things containing or comprising "Confidential Information" shall be returned to the Disclosing Party or destroyed.  Each Party or entity that received or has any such documents or things, or copies thereof, shall certify in writing to counsel for the Producing Party that it returned or destroyed, at its option, every such document and thing, and all copies, summaries and abstracts thereof, in its possession, custody or control.

8.3.    Each firm having counsel of record may retain for archival purposes one copy of all pleadings, papers filed with the court, written discovery requests, deposition transcripts, transcripts of court proceedings, correspondence and work product, including portions designated as Confidential Information, subject to the continuing obligations of all other provisions of this Protective Order, and provided that nothing in said archival copy shall be disclosed to anyone other than that counsel's partners, associates or employees.

8.4.    The Court retains jurisdiction even after final disposition of this litigation to enforce this Protective Order and to make such amendments, modifications, deletions and additions to this Protective Order as the court may from time to time deem appropriate.

8.5.    The Parties reserve all rights to apply to the court at any time, before or after final disposition, for an order: (a) modifying this Protective Order; (b) seeking further protection

against discovery or other use of Confidential Information, or documents, transcripts or other materials reflecting Confidential Information; or (c) seeking further production, discovery, disclosure or use of claimed Confidential Information, or documents, transcripts or other materials reflecting Confidential Information.

## 9.    MODIFICATION

9.1.    Changes or exceptions to this Protective Order may be made only by written agreement of the Parties subject to court approval, or by court order.

9.2.    This Protective Order does not abridge and is without prejudice to the rights of a Party (a) to oppose or object to the disclosure, production, use or admissibility of anything, or to refuse to disclose or produce anything based on any available legal grounds or objections, (b) to modify or seek relief from this Protective Order, (c) to seek judicial review or other appropriate action regarding any court ruling concerning information that is or was designated Confidential Information, (d) to seek any additional protection that the party deems appropriate, or (e) to seek the joinder of additional persons authorized to review material under Paragraph 3.1.2, or to seek leave to show a "Confidential" document to a particular person.

## **<u>ORDER</u>**

Good cause appearing, it is so **ORDERED**.


Dated: _____, 2008                    _____
                                        Honorable Alan Kay
                                        United States Magistrate Judge
                                        U.S. District Court, District of Columbia

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JUNIPER NETWORKS, INC.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 1:07cv1771-PLF (AK) |
| ) | |
| **ABDULLAH ALI BAHATTAB**, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## <u>NONDISCLOSURE AGREEMENT</u>

1.      My name is _____.

I live at _____, _____, _____.

I am employed as (position) _____ at

_____ (name and address of employer).

2.      I have received a copy of the Stipulated Protective Order entered in the above

captioned litigation and have reviewed its provisions.

3.      I understand the provisions of the Stipulated Protective Order, and agree to

comply with and to be bound by its provisions, unless and until modified by further order of the

Court.

4.      I will not disclose to any individuals, other than those specifically authorized in

the Order, any information designated as Confidential Information pursuant to the Order.  I will

not copy, use or disclose any information designated as Confidential Information, except for the purpose of the litigation.

5.     I understand that any violation of the Order may constitute contempt of a court order and/or subject me to sanctions. I hereby consent to the jurisdiction of the United States District Court for the District of Columbia for the sole purposes of enforcing this Order.  I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this _____ day of _____, 20__, at _____, _____.

Dated:  _____                    _____
                                                                         (Signature)