## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JUNIPER NETWORKS, INC.,

      Plaintiff,

v.                                                                                    Case No.: 1:07-cv-01771-PLF (AK)

ABDULLAH ALI BAHATTAB,

      Defendant.

_____/

## DEFENDANT DR. BAHATTAB'S MEMORANDUM OF LAW AND RESPONSE TO PLAINTIFF JUNIPER NETWORKS, INC.'S CROSS MOTION FOR PROTECTIVE ORDER

Henry W. Asbill (DC Bar No. 938811)
DEWEY & LEBOEUF, LLP
1101 New York Avenue, N.W., Suite 1100
Washington, D.C. 20005-4213
hasbill@dl.com
Tel: 202-986-8141
Fax: 202-956-3263

George G. Mahfood (Fl. Bar No. 0077356)
*Appearing Pro Hac Vice*
FERRELL LAW, P.A.
34th Floor, Miami Center
201 South Biscayne Blvd.
Miami, FL 33131
gmahfood@ferrellworldwide.com
Tel: 305-371-8585
Fax: 305-371-5732

September 12, 2008

*Attorneys for the Defendant*
*Dr. Abdullah Ali Bahattab*

## TABLE OF CONTENTS

I.  Introduction............................................................................................................................. 1

II.  Argument ................................................................................................................................ 2

    A.  The Parties Should Properly Designate Privileged and Confidential Information..............4

    B.  Any Source Code Produce by the Parties Should be Available to Both Parties
        Until the Conclusion of Trial ...............................................................................................8

    C.  The Parties Should Not be Effectively Prohibited from Retaining Technical
        Advisors Outside the United States ......................................................................................9

    D.  Dr. Bahattab Should Not be Restricted to Printing Only 500 Pages of Source Code........10

    E.  Dr. Bahattab Should not be Precluded From Accessing Source After "Normal"
        Business Hours.....................................................................................................................12

    F.  The Timeframe for Resolving Objections to Technical Advisors Should Not be
        Unnecessarily Long ............................................................................................................13

III.  Conclusion ............................................................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**

*Computer Assoc., Int'l v. Quest Software, Inc.*,
    333 F.Supp.2d 688 (N.D. Ill. 2004)................................................................................................ 4

*In re Ullico Inc. Ligitation*,
    237 F.R.D. 314 (D.D.C. 2006) (Kay, Mag.)..................................................................................... 5

*Integrated Cash Mgmt. Servs., Inc. v. Digital Transaction, Inc.*,
    732 F.Supp. 370 (S.D.N.Y. 1989) ................................................................................................... 4

*\* John Does I-VI v. Yogi*,
    110 F.R.D. 629 (D.D.C. 1986) .................................................................................................... 5, 8

*PHE, Inc. v. Dept. of Justice*,
    139 F.R.D. 249 (D.D.C. 1991) ....................................................................................................... 5

*QPSX v. Juniper Networks, Inc.*,
    No. 05-CV-268 (E.D. Tx.)............................................................................................................ 12

*United States v. Am. Tel. & Tel. Co.*,
    86 F.R.D. 603 (D.D.C. 1979) ......................................................................................................... 8

*Unix Sys. Lab., Inc. v. Berkeley Software Design Inc.*,
    27 U.S.P.Q.2d 1721 (D.N.J. 1993)................................................................................................. 4

**Statutes**

Fed. R. Civ. P. 37 ................................................................................................................................. 7

Fed. R. Civ. P. 6(d)............................................................................................................................. 13

## I.    INTRODUCTION

Due to Juniper's delaying entry of a protective order, the discovery schedule as ordered by the Court may at serious risk if Dr. Bahattab is not to be unfairly prejudiced.  It is now September, with deadlines for amendment of pleadings and close of fact discovery on December 12, 2008 and January 30, 2009[1] respectively, and Dr. Bahattab has yet to receive a single document from Juniper that is relevant to refuting or establishing infringement in this case. Instead, Juniper has only produced documents that were attached to its complaint, publicly available prior art, or patents and patent file histories already produced to them by Dr. Bahattab. *See* Exhibit I, Index of Documents Produced by Juniper Networks.  Notwithstanding the indisputable fact that Juniper aggressively markets its products and makes numerous documents available on the Internet, Juniper has not produced a *single* page describing the products that Juniper asserts do not infringe Dr. Bahattab's patent.  Discovery is critical to Dr. Bahattab, and Juniper's delaying entry of a protective order[2] , and failure to produce documents has severely prejudiced Dr. Bahattab.

Juniper continues to insist on provisions that are unnecessarily restrictive and detrimental to Dr. Bahattab's efforts in obtaining discovery.  As such, Dr. Bahattab asks that the Court grant his motion for a protective order and deny Juniper's.

---

[1] *See* Scheduling Order of June 16, 2008.  Note that in the scheduling order, the date for close of Fact Discovery is listed as "January 30, 2008" which would fall prior to the scheduling order's date of entry.  Dr. Bahattab's understanding is that the Court intented Fact Discovery to close on January 30, 2009.

[2] For a summary of the exchanges between the parties, see Dr. Bahattab's Motion for Protective Order, pp. 1-4.

1

## II.     ARGUMENT

Dr. Bahattab and Juniper continue disagree regarding various provisions of a protective order.  These include (a) the Parties' obligations to properly designate privileged or confidential information, (b) the continued availability of source code through trial, (c) a blanket restriction on sending source code outside the United States that effectively restricts the retention of a technical advisor outside the United States, (d) an arbitrary and unreasonably low page limit on source code printouts, (e) an arbitrary and unreasonable restrictive limitation that source code not be made available after hours, and (f) the time periods for resolving an objection to a technical advisor.

Before addressing these continued areas of conflict, Dr. Bahattab responds to Juniper baseless assertions throughout its Opposition and Cross Motion for Protective Order (hereinafter "Juniper's Motion for Protective Order") that Dr. Bahattab intends to send Juniper's source code to foreign countries unilaterally.[3]  Dr. Bahattab will not act unilaterally, as this would be a violation of Section 4 of both parties' Proposed Protective Orders.  Juniper disingenuously bases their unfounded allegation on Dr. Bahattab's argument that:

> Juniper's global presence and Dr. Bahattab's own foreign residency make it reasonably likely that a technical advisor best-suited to Dr. Bahattab is not located in the United States [and] such a blanket limitation forecloses potential efficiencies in consulting with the Dubai Court of First Instance's court-appointed expert who is already conducting a technological investigation in the ongoing action between Dr. Bahattab and Juniper Networks in the United Arab Emirates.[4]

---

[3] *See* Juniper's Motion for Protective Order at pp. 1, 5, 6, 11.

[4] Dr. Bahattab's Protective Order Motion at 8.

Dr. Bahattab already explained to Juniper during a teleconference between counsel on August 14, 2008 that the aforementioned argument does not mean that Dr. Bahattab plans to act unilaterally in disclosing confidential information to technical experts – quite to the contrary. As Juniper recognizes, the procedures under the each proposed protective order require that opposing counsel provide advance notice of any proposed technical advisor, and that any objections over a technical advisor's proposed involvement would be resolved by this Court, if so warranted.[5] Under both parties' Proposed Protective Orders, objections must be settled before any disclosure is made to a proposed technical advisor. Dr. Bahattab intends to fully comply with this procedure, as must Juniper.

Juniper further argues that consultation with the Dubai Court of First Instance's independent court-appointed expert would be in violation of the parties' proposed Section 3.1.1, which requires that information exchanged in this lawsuit "be used solely for the purpose of litigating this case." It would seem that retaining and then consulting with the Dubai Court's appointed expert during the pendency of the Dubai case would not be permitted by the Dubai Court as retaining that expert would negate his independence. Dr. Bahattab does not intend to propose this individual as a technical expert in this case while the Dubai case is still pending. Dr. Bahattab urges that a determination as to whether it is appropriate to consult with the Dubai Court's expert after the conclusion of the Dubai case should be deferred until (if ever) the issue is ripe: i.e., if Dr. Bahattab proposes the Dubai expert as a technical advisor, and if Juniper objects at that time in accordance with Section 4 of the Proposed Protective Order. It is neither

---

[5] *See* Juniper's Proposed Protective Order §§ 4.2-4.5; Dr. Bahattab's Proposed Protective Order §§ 4.2-4.5.

3

necessary nor proper for this Court to decide the merits of technical experts that have not been and may never be proposed.

## A.    The Parties Should Properly Designate Privileged and Confidential Information

Juniper argues unpersuasively that all of the JUNOS source code is a trade secret that cannot be segregated from indisputably public open source material.  Juniper relies on three readily distinguished cases, all of which merely stand for the proposition that a trade secret can exist in the *overall configuration of code* despite containing code that is publicly-available, but that is irrelevant to how the relevant code sections should be designated here.  In *Integrated Cash Mgmt. Servs., Inc. v. Digital Transaction, Inc.*, 732 F.Supp. 370, 374 (S.D.N.Y. 1989), the court merely found that the "the package *as a whole*, and the specifications used . . . to make the parts of that package work together, are not in the public domain."  (Emphasis added).  Similarly the court in *Computer Assoc., Int'l v. Quest Software, Inc.*, 333 F.Supp.2d 688, 695-96 (N.D. Ill. 2004) found that there was trade secret in the "source code as a whole."  As Juniper directly quotes, "*the overall organization of the code* might remain a trade secret unless it too has been disclosed."  *Unix Sys. Lab., Inc. v. Berkeley Software Design Inc.*, 27 U.S.P.Q.2d 1721, 1733-34 (D.N.J. 1993) (emphasis added).  Juniper fails to recognize the important distinction between "overall organization" of code and portions of the code itself.

Juniper cites no case to show that publicly-available *portions* of such code are entitled to trade secret protection when they neither represent the whole code nor divulge the whole code's overall configuration.  Indeed, Dr. Bahattab is not suggesting that Juniper produce *the whole* of its code as non-confidential, merely the portions that are publicly available.  As such, Juniper fails to show a real and specific harm in accordance with having to show "good cause" for entry of a protective order.  *See generally In re Ullico Inc. Ligitation*, 237 F.R.D. 314 (D.D.C. 2006)

4

(Kay, Mag.); *PHE, Inc. v. Dept. of Justice*, 139 F.R.D. 249, 252 (D.D.C. 1991); *John Does I-VI v. Yogi*, 110 F.R.D. 629, 632 (D.D.C. 1986) ("To establish good cause under Rule 26(c) the courts have generally required a 'particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements . . . . With respect to the claim of confidential business information, this standard demands that the company prove that disclosure will result in a 'clearly defined and very serious injury to its business.'").

Furthermore, Juniper's argument that the publicly available portions of its source code cannot be segregated from the overall whole is directly at odds with its discrete knowledge that "[a]pproximately 12% of the JUNOS source code is open source, of which approximately 6% is FreeBSD source code."[6]  The open source portions of the JUNOS code were surely identifiable as publicly available in order to arrive at these percentages.

Despite Juniper's posturing on the alleged extreme importance of its source code, they apparently are willing to strategically burden Dr. Bahattab during discovery.  On the one hand, Juniper is attempting to narrow the scope of discovery, as it argues, to avoid document production that is allegedly unduly burdensome.[7]  When Dr. Bahattab requested documents related to Juniper's various routing products, Juniper objected to the scope of this request as "unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence" and Juniper unilaterally asserted that it will "limit[ed] the scope of its responses to document requests with documents sufficient to show the processes by which Juniper routers determine active routes to network destinations and install such active routes into forwarding

---

[6] Declaration of M. Bushong at ¶ 3.

[7] Dr. Bahattab's Protective Order Motion, Exhibit E at 3.

tables."[8]  Now having to deal with production of its source code, Juniper apparently intends on producing all twenty-two million lines of code corresponding to the total functionality of all of its routers, and is resisting steps to identify source code that is publicly available (i.e., likely irrelevant) or take any steps whatsoever to identify portions calculated to lead to discovery of relevant evidence.  Juniper should not be permitted to unduly narrow its responses in an effort to unilaterally determine what constitutes a relevant document while simultaneously dumping millions of pages of non-responsive and unrequested dense software code on Dr. Bahattab.  It is difficult to reconcile this threat of burying Dr. Bahattab under non-responsive source code with their insistence that the JUNOS source code is "invaluable" and that its importance "cannot be overstated."[9]  Instead of analyzing its source code for trade secrets and responsiveness, Juniper apparently prefers to burden Dr. Bahattab with analyzing the entirety of its source code in an impossibly short time and also obtain leverage for its Motion for Protective Order by inflating the risk to its business.  For instance, Juniper argues that the "[d]isclosure of the JUNOS source code could also compromise software and routers installed around the world," apparently under the presumption that the entirety of the software will be made available, notwithstanding that Dr. Bahattab has not asked for the entirety of Juniper's source code.[10]  Yet Juniper does not explain how portions of the code that would be responsive to document requests in this case would compromise the security of their routers.[11]  In light of the technology, it is indeed difficult to

---

[8] *Id.*

[9] Juniper's Protective Order Motion at 6, 4.

[10] Juniper's Protective Order Motion at 4.

[11] Dr. Bahattab has, *inter alia*, requested ". . . software source code . . . [that] relate[s] to the . . . use of the routing tables and forwarding tables for each of the Products in Question."  Dr. Bahattab's Motion for Protective Order, Exhibit E at 7.

understand how performance algorithms for caching tables represent a major threat to the security of Juniper's routers.

Furthermore, Juniper has indicated that a line-by-line review of a single version of JUNOS (of which there are 39 versions) would take one of its own software programmers "at least 150 days . . ."[12] This burden of review does not evaporate simply by giving Dr. Bahattab full access to the JUNOS code. Juniper simply prefers that Dr. Bahattab bear the burden of reviewing for responsiveness twenty-two million lines of code to which, according to Juniper is primarily confidential and therefore unfamiliar to Dr. Bahattab. This would be an onerous outcome, and a production of a large volume of generally unresponsive source code requiring a protracted time to review would constitute an evasive response under Fed. R. Civ. P. 37(a)(4).

It is important to recall that Juniper filed this suit against Dr. Bahattab. In so doing, Juniper had to evaluate its source code to determine that it could allege non-infringement. Yet, Juniper's arguments suggest that there was no inspection of their source code, as they are now complaining about the burden of establishing this proof. It cannot be said that Juniper's identification of responsive code would be unduly burdensome with the knowledge that this task was likely a necessary predicate for establishing a good faith basis for its non-infringement allegations.

Accordingly, Dr. Bahattab asks that the Court grant his Motion for Protective Order and require Juniper to properly designate documents as confidential.

Similarly, Dr. Bahattab opposes Juniper's proposal that it should be exempt from redacting privileged documents when Juniper unilaterally decides that "it is impractical,

---

[12] Declaration of M. Bushong at ¶ 11.

7

infeasible, or unduly burdensome to redact the affected request."[13]    In this judicial district, "[w]hen a document contains both privileged an unprivileged material, the unprivileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material." *United States v. Am. Tel. & Tel. Co.*, 86 F.R.D. 603, 610-13, footnotes to Guideline No. 5 (D.D.C. 1979).    Especially given the absence of any guidance as to how Juniper could construe "impractical" under its drafted protective order provision, Dr. Bahattab contends that the duty of redacting privileged documents should be governed by the law of this judicial district. Juniper has little room to argue that its proposal is needed to avoid or somehow alter the law of this Court, much less that it would be at risk of "very serious injury to its business."    *John Does I-VI v. Yogi*, 110 F.R.D. 629, 632 (D.D.C. 1986).    As Juniper is unable to show good cause, and in light of Dr. Bahattab's continued opposition to this provision, Dr. Bahattab asks that the Court decline to adopt Juniper's proposal.

## B.    Any Source Code Produce by the Parties Should be Available to Both Parties Until the Conclusion of Trial

Dr. Bahattab proposes that source code be made available until the close of trial, whereas Juniper argues for ending access to Dr. Bahattab (only) at the close of expert discovery.    In other words, Juniper wants to unfairly prejudice Dr. Bahattab at trial because Juniper would have access its source code but Dr. Bahattab would not.    Juniper fails to show good cause or explain how its proposed limitation is in any way calculated to avert a "clearly defined and very serious injury to its business." *John Does I-VI v. Yogi*, 110 F.R.D. 629, 632 (D.D.C. 1986) (citations omitted).    Instead, Juniper simply argues that rescinding access to source code at the end of discovery is "reasonable" and "more than sufficient to allow the technical expert to complete the

---

[13] Juniper's Proposed Protective Order at 2.1.3.1.

8

source code review."[14]  Dr. Bahattab's proposed provision that access to source code end at the conclusion of trial is eminently reasonable, providing both parties with access to relevant evidence at trial, and more than sufficient to allow the technical expert to complete source code review.  Were Juniper's arbitrary restriction adopted, Dr. Bahattab would lose access to source code that would be useful at trial, including potential impeachment evidence against Juniper's experts.  As such, Junipers proposal to disallow access to source code after March 13, 2009 is without good cause and should be rejected.

## C.      The Parties Should Not be Effectively Prohibited from Retaining Technical Advisors Outside the United States

Juniper continues to insist on a blanket restriction against transmission of source code outside the United States – even before a technical advisor has been identified in this case. Juniper's arguments are premature, as objections to proposed technical advisors are well accounted for in both parties' proposed protective order.  The Protective Order should not be drafted to categorically foreclose entire categories of technical advisors that might be contemplated, and rather each individual should be evaluated on his or her merits.  It cannot be said that *every* transmission of source code, regardless of type and quantity, outside the United States *in any manner of format* under every circumstance poses an undue risk to Juniper.  The parties are not yet in a position to negotiate an agreeable technical or other solution regarding the security of source code because *it has not yet been proposed* that source code be transmitted outside the United States, and no potential technical advisor has been identified by either side. Any impasse between the parties would be better resolved in the context of a known proposed

---

[14] Juniper's Protective Order Motion at 8.  As previously noted, Dr. Bahattab believes this schedule is at serious risk due to Juniper's delay.

technical advisor, and both Protective Orders have ample provisions to accomplish this in Section 4.

Juniper also fails to show good cause for a restriction against sending source code outside the United States.  None of the risks Juniper cites regarding transmission of source code are unique to transmission to foreign jurisdictions.  To borrow Juinper's argument nearly wholesale: "source code transmitted [in the United States] could be downloaded onto networked computers that could be subject to security breaches or appended in e-mails without any protection whatsoever.  In fact, Juniper's source code could be accessed by persons not cleared under the Court's protective order, without notice to Juniper or this Court."[15]

As such, Dr. Bahattab requests that the Court decline to adopt Juniper's proposed blanket restriction, and instead resolve any of Juniper's objections, should they ever arise, according to the procedures in Section 4 of the Dr. Bahattab's Proposed Protective Order.

### D.      Dr. Bahattab Should Not be Restricted to Printing Only 500 Pages of Source Code

Juniper proposes a 500-page limit on printable pages of source code, arguing that it is a "Standard and Conventional" restriction.  Juniper offers as evidence a single protective order from a previous case unrelated to Dr. Bahattab.[16]  The cited protective order, for reasons we know not, was apparently achieved by mutual agreement of the parties.[17]  However, Dr. Bahattab does not agree to such a limitation, nor has Juniper explained why an arbitrary limit of 500 pages is necessary to protect their interests.

---

[15] Plaintiff's Protective Order at 6 (substituting "in the United States" for "to a foreign jurisdiction").

[16] *See* Juniper's Protective Order Motion, Exhibit 2.

[17] *Id.* at 1 ("Agreed Protective Order").

Juniper argues that absent this arbitrary provision, an expert "could print every page of every version of the Juniper source code."[18] This argument is absurd on its face. JUNOS version 9.2 contains 22 million lines of code.[19] At 25 lines per page and an average 200 pages per inch of stacked paper, a printout of every page of JUNOS version 9.2 would be 367 feet tall. Furthermore, the hypothetical expert would have to repeat this 39 times over to account for each release of the JUNOS software, potentially creating a stack of paper 14,300 feet tall (2.7 miles) – slightly higher in elevation than Pikes Peak (14,110 ft.).[20] Dr. Bahattab is confident that, at some point during this multiyear print job, counsel for Juniper would lodge an objection.[21] Dr. Bahattab is not interested in printing anything beyond the scope of what is needed for litigating his case.

Dr. Bahattab remains opposed to an arbitrary page limitation. Juniper's suggested 500 page printout quickly reduces to 15 pages per major software release; representing a mere 375 lines of code out of a possible 22 million that Dr. Bahattab could print.[22] Dr. Bahattab has no way of determining what portions of Juniper's source code are relevant to the case without

---

[18] Juniper's Protective Order Motion at 7.

[19] Declaration of M. Bushong at ¶ 3.

[20] *See Id.* at ¶ 2 ("version 9.2 earlier this month marked the 39[th] consecutive release of the operating system.").

[21] Such a hypothetical print job would involve 34,320,000 sheets of paper and would take approximately 794 days to complete, assuming a printer printing at thirty pages per minute without ever jamming or running out of paper.

[22] Dr. Bahattab's Protective Order Motion at 9.

11

further discovery, and it seems doubtful that a 500 page limit would suffice given the scope of the code that Juniper apparently intends to produce.[23]

### E.   Dr. Bahattab Should not be Precluded From Accessing Source After "Normal" Business Hours

Dr. Bahattab proposes that source code be accessible at all times, provided ample notice as required under the provisions of both parties' proposed protective orders. While Juniper insists that source code only be accessible during normal business hours, 24-hour access is preferred due to the anticipation of the limited time for preparing his case and the potential for technical advisors who are unavailable during normal business hours.

The single justification for a limitation on the availability of source code, for which Juniper offers with no corroboration, is that "access to the [third-party secure] facility and security is best controlled during business hours."[24]  In fact, known third-party vendors in the local District of Columbia area routinely accommodate after-hours inspection of source code under the same security protections as normal business hours. *See* Declaration of Khizr Khan at ¶¶ 7 ("Third party secure site vendors routinely provide after-hours access to any data hosted by them, including source code, under the same security precautions as normal business hours. I am aware of at least three vendors providing such services in the local D.C. area . . .").

Furthermore, Juniper's position is inconsistent with protective orders it has voluntarily agreed to in other litigation. Juniper liberally references, as an exemplar throughout its brief, the protective order it agreed to in 2006 in *QPSX v. Juniper Networks, Inc.*, No. 05-CV-268 (E.D. Tx.). Juniper willingly agreed, in that case, that "[a] party reviewing the source code is **not**

---

[23]  *Id.*

[24]  Juniper's Protective Order Motion at 7.

12

limited to inspections during normal business hours."[25]   There is no reason to treat this case differently.

   For the forgoing reasons, Juniper fails to show good cause for its proposed business hour restriction on the availability of source code, and Dr. Bahattab opposes any arbitrary time limitation on when source code may be accessed.

### F.    The Timeframe for Resolving Objections to Technical Advisors Should Not be Unnecessarily Long

   Dr. Bahattab objects to unduly delaying resolution of expert disputes by adding an unnecessary reply period.  As previously noted, there has already been extended delay on the part of Juniper in moving forward with discovery, and this dispute over the reply period is but the latest example of discovery delay.  Juniper's proposal adds a needless three-day period to what should be a simple and expeditions process for ruling on what is essentially a discovery objection.  Furthermore, an inefficient process for settling objections risks further delays in an already-at-risk discovery schedule.  Juniper's proposal would effectively preclude the use of a technical advisor for an entire week when accounting for the occurrence of the reply date on a weekend or any additional three day period allotted for a response under electronic notice.[26]

   Furthermore, Dr. Bahattab rejects outright Juniper's characterization that continued disagreement between the parties as to the timing of objections is "gamesmanship" or the result of "surreptitio[n]" on the part of Dr. Bahattab.[27]   Juniper includes with its Motion an email

---

[25] Juniper's Protective Order Motion, Exhibit 2 at 11.d. (emphasis added).

[26] *See* Fed. R. Civ. P. 6(d).

[27] Juniper's Protective Order Motion at 11.

13

conversation in Exhibit 3 that represents an incomplete exchange between the parties.[28] In

following up on Mr. Hoffman's email, counsel for Dr. Bahattab explained before filing a motion

for a protective order that:

> . . . Because the proposed order(s) contained a specific timetable for objections to
> experts and identified what pleadings were to be submitted and when, without
> either no [sic.] reference to or explicit exclusion of a reply, and in view of the
> unambiguously expressed concerns regarding rapid resolution, it is unreasonable
> to presume that a reply was contemplated. Dr. Bahattab's position that no reply is
> contemplated was explicit in our e-mail of July 14 and Juniper was silent on that
> issue.[29]

Indeed, Dr. Bahattab communicated unequivocally that "Dr. Bahattab proposes a three

(3) calendar day period for the non-moving party to respond, with no further reply for the

moving party."[30] This has been the consistent position of Dr. Bahattab for nearly two months,

and Juniper's characterization, based on an incomplete record, is disingenuous at best.   This

Court should not countenance further delay, and grant Dr. Bahattab's Motion for Protective

Order.

---

[28]  Juniper's Motion for Protective Order, Exhibit 3.

[29] Exhibit J at 1 (Email Correspondence between B. Jordan and J. Hoffman, et al.).

[30] Dr. Bahattab's Protective Order Motion, Exhibit F at ECF page 23 (regarding section 4.4 of
the draft protective order).

14

## III.   CONCLUSION

For the foregoing reasons, Dr. Bahattab respectfully requests that the Court grant his motion for a protective order and deny Juniper's cross-motion for the same.

September 12, 2008                          Respectfully submitted,

DEWEY & LEBOEUF, LLP
1101 New York Avenue, N.W., Suite 1100
Washington, D.C. 20005-4213
hasbill@dl.com
Tel: 202-986-8141
Fax: 202-956-3263

By:  s/Henry W. Asbill
Henry W. Asbill (DC Bar No. 938811)

FERRELL LAW, P.A.
34th Floor, Miami Center
201 South Biscayne Blvd.
Miami, FL 33131
gmahfood@ferrellworldwide.com
Tel: 305-371-8585
Fax: 305-371-5732

By: s/George G. Mahfood
George G. Mahfood (Fl. Bar No.  0077356)
*Appearing Pro Hac Vice*

*Attorneys for the Defendant*

15

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUNIPER NETWORKS, INC.,

      Plaintiff,

          v.                                  Case No.: 1:07-cv-01771-PLF

ABDULLAH ALI BAHATTAB,

      Defendant.

_____/

## CERTIFICATE OF SERVICE

     I hereby certify that on September 12, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to received electronically Notices of Electronic Filing.

                      Respectfully submitted,

                      DEWEY & LEBOEUF, LLP
                      1101 New York Avenue, N.W., Suite 1100
                      Washington, D.C. 20005-4213
                      Tel: 202-986-8141

                      By:  _s/Henry W. Asbill_____
                           Henry W. Asbill (DC Bar No. 938811)

                      FERRELL LAW, P.A.
                      34th Floor, Miami Center
                      201 South Biscayne Blvd.
                      Miami, FL 33131
                      Tel: 305-371-8585

                      By:_s/George G. Mahfood_____
                         George G. Mahfood (Fl. Bar No. 0077356)
                       *Appearing Pro Hac Vice*

                      Attorneys for the Defendant

16

SERVICE LIST
JUNIPER NETWORKS, INC. v. ABDULLAH ALI BAHATTAB
CASE NO.: Case No.: 1:07-cv-01771-PLF
United States District Court for the District Of Colombia

Alan M. Fisch
E-mail: afisch@kayescholer.com
Jason F. Hoffman
E-mail: jahoffman@kayescholer.com
David L. Cousineau
E-mail: dcousineau@kayescholer.com
Kaye Scholer LLP
The McPherson Building
901 Fifteenth Street, N.W.
Washington, DC 20005
Tel: 202-682-3500 / Fax: 202-682-3580
Attorneys for Plaintiff