**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JUNIPER NETWORKS, INC.,

      Plaintiff

v.                               Case No.: 1:07-cv-01771-PLF (AK)

ABDULLAH ALI BAHATTAB,

      Defendant.

_____/

## DEFENDANT DR. BAHATTAB'S REPLY IN SUPPORT OF HIS OBJECTIONS TO THE MAGISTRATE JUDGE'S MEMORANDUM OPINION AND ORDER CONSTRUING THE CLAIM TERM ROUTING TABLE CACHE

Brandon M. Jordan (DC Bar No. 985986)
DEWEY & LEBOEUF, LLP
1101 New York Avenue, N.W.
Washington, D.C. 20005-4213
bjordan@dl.com
Tel: 202-346-7915
Fax: 202-299-1323

*Attorneys for Defendant Dr. Bahattab*

**TABLE OF CONTENTS**

I.      Introduction ........................................................................................................... 1

II.     Claims are Construed in Light of, But Without Incorporating LImitations From, The
        Patent Specification and Prosecution History ............................................................ 2

III.    Dr. Bahattab Did Not Make Broad and Unequivocal Statements of Disavowal
        Justifying a Narrow Claim Construction. ................................................................... 6

IV.     Magistrate Judge Kay's Construction of "Routing Table Cache" As Only Local
        Memory is Contrary to Law ....................................................................................... 8

V.      Magistrate Judge Kay's Claim Construction Constraining A "Routing Table Cache"
        To "A Small Part of the Destination Addresses in the Routing Table" is Contrary to
        Law. ........................................................................................................................... 9

VI.     Magistrate Judge Kay's Imposition of A Functional Limitation On The Claimed
        "Routing Table Cache" Structure is Contrary to Law. ............................................. 11

VII.    Routing Table Cache is Properly Construed as "an area of memory devoted to the
        retrieval of specified data where the specified data is routing table data." ............. 13

VIII.   Conclusion .............................................................................................................. 16

## TABLE OF AUTHORITIES

**Cases**

*Acumed LLC v. Stryker Corp.,*
    483 F.3d 800 (Fed. Cir. 2007) ........................................................................... 7, 8

*Anchor Wall Sys. v. Rockwood Retaining Walls, Inc.,*
    340 F.3d 1298 (Fed. Cir. 2003) ........................................................................... 11

*CollegeNet, Inc. v. ApplyYourself, Inc.,*
    418 F.3d 1225 (Fed. Cir. 2005). ........................................................................... 5

*Comark Commc'ns, Inc. v. Harris Corp.,*
    156 F.3d 1182 (Fed. Cir. 1998) ........................................................................... 8

*Comark Commc'ns, Inc. v. Harris Corp.,*
    156 F.3d 1182 (Fed. Cir. 1998) ........................................................................... 4

*Decisioning.com, Inc. v. Federated Dept. Stores, Inc.,*
    527 F.3d 1300 (Fed. Cir. 2008) ........................................................................... 4, 5

*E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.,*
    849 F.2d 1430 (Fed. Cir. 1988) ........................................................................... 12

*Ecolab, Inc. v. Envirochem, Inc.,*
    264 F.3d 1358 (Fed. Cir. 2001) ........................................................................... 17

*Gart v. Logitech, Inc.,*
    254 F.3d 1334 (Fed. Cir. 2001) ........................................................................... 11

*Hewlett-Packard Co. v. Bausch & Lomb, Inc.,*
    909 F.2d 1464 (Fed. Cir. 1990) ........................................................................... 15

*Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.,*
    222 F.3d 951 (Fed. Cir. 2000) ........................................................................... 11

*ICU Med., Inc. v. Alaris Med. Sys.,*
    558 F.3d 1368 (Fed. Cir. 2009) ........................................................................... 16

*Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.,*
    381 F.3d 1111 (Fed. Cir. 2004) ........................................................................... 2

*Interactive Gift Express, Inc. v. Compuserve Inc.,*
    256 F.3d 1323 (Fed. Cir. 2001). ........................................................................... 3

*JVW Enters., Inc. v. Interact Accessories, Inc.,*
    424 F.3d 1324 (Fed. Cir. 2005) ........................................................................... 8

*Karlin Tech., Inc. v. Surgical Dynamics, Inc.,*
    177 F.3d 968 (Fed. Cir. 1999). ........................................................................... 6

*Liebel-Flarsheim Co. v. Medrad, Inc.,*
   358 F.3d 898 (Fed. Cir. 1995) ................................................................. 7

*McCarty v. Lehigh Valley R.R. Co.,*
   160 U.S. 110 (1895) ................................................................................. 3

*Medrad, Inc. v. MRI Devices Corp.,*
   401 F.3d 1313 (Fed. Cir. 2005) ......................................................... 4, 16

*Paragon Solutions, LLC v. Timex Corp.,*
   2009 U.S. App. LEXIS 10884 (Fed. Cir. May 22, 2009) ........................ 15

*Phillips v. AWH Corp.,*
   315 F.3d 1303 (Fed. Cir. 2005) ..................................................... 2, 3, 5

*Raytheon Co. v. Roper Corp.,*
   724 F.2d 951 (Fed. Cir. 1983) ................................................................ 5

*SciMed Life Sys., Inc. v. Adv. Cardiovascular Sys., Inc.,*
   242 F.3d 1337 (Fed. Cir. 2001) ......................................................... 6, 7

*SRI Int'l v. Matsushita Elec. Corp.,*
   775 F.2d 1107 (Fed. Cir. 1985) (en banc) ............................................ 13

*Teleflex, Inc. v. Ficosa N. Am. Corp.,*
   299 F.3d 1313 (Fed. Cir. 2002) ....................................................... 8, 20

*TI Group Auto. Sys. (N. Am.), Inc. v. VDO N. Am., L.L.C.,*
   375 F.3d 1126 (Fed. Cir. 2004) ............................................................ 11

*Va. Panel Corp. v. MAC Panel Co.,*
   133 F.3d 860 (Fed. Cir. 1997) ................................................................ 5

**Statutes**

35 U.S.C. § 112 ............................................................................................. 3

Act of July 4, 1836, ch. 357, §6, 5 Stat. 117, 119 ........................................ 3

Defendant Dr. Abdullah Ali Bahattab ("Dr. Bahattab") respectfully submits this reply in support of his objections filed pursuant to LCvR 72.2 to Magistrate Judge Kay's May 8, 2009 memorandum opinion and order ("Order") (Dkt. No. 87) construing the phrase "routing table cache" in the claims of U.S. Patent No. 6,816,457 ("the '457 patent") ("Objections") (Dkt. No. 96) and in response to plaintiff Juniper Networks, Inc.'s Opposition to Defendant Bahattab's Objections to Judge Kay's Construction of 'Routing Table Cache'" ("Juniper's Opp'n") (Dkt. No. 108).

## I.    INTRODUCTION

Dr. Bahattab invented the use of temporal modeling to populate a routing table cache in a router. After over a year of litigation, Juniper Networks, a manufacturer of routers with presumably superior access to router-related prior art, has not identified a single prior art reference that discloses Dr. Bahattab's invention. Dr. Bahattab never narrowed the scope of his invention to a particular size or location of the routing table cache because there was never any reason to do so. Dr. Bahattab's patented invention is not limited to a particular size of routing table cache because of the prior art, nor is his invention properly limited to a particular size of routing table cache by what was "recognized" by his invention. The scope of Dr. Bahattab's invention is set forth in the claims of the '457 patent and should be construed as they would be understood by a person of ordinary skill in the art at the time of the invention, a person who would recognize that there are no size limitations in the claims of the '457 patent.

Magistrate Judge Kay did not err by considering the patent specification and prosecution history in construing the claims – rather, the error came from not merely considering but instead impermissibly incorporating structural and functional limitations from a patent specification that does not have any broad and unequivocal statements of disavowal. Not only is the '457 patent specification devoid of such disclaimers, it identifies counterbalancing considerations suggesting

1

a broad, rather than narrow, conception of Dr. Bahattab's invention. The law is clear – every limitation that can be gleaned from the patent specification is **not** a claim limitation. This is even truer with respect to descriptions of "typical" products in a provisional application or prosecution history. Nevertheless, that is how the claims of the '457 patent were construed and it is this incorporation of limitations from the patent specification into the claims of the '457 patent that is contrary to law.

## II.  CLAIMS ARE CONSTRUED IN LIGHT OF, BUT WITHOUT INCORPORATING LIMITATIONS FROM, THE PATENT SPECIFICATION AND PROSECUTION HISTORY.

The Federal Circuit has provided this Court with guidance on the proper role of the patent specification in claim construction, albeit not without wrestling with the issue for almost two hundred years. *Phillips v. AWH Corp.*, 315 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*). The Federal Circuit addressed the issue twice *en banc*, most recently in *Phillips* and before that in *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979-81 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996),

It has long been "a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips,* 315 F.3d at 1312 (citing *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.,* 381 F.3d 1111, 1115 (Fed. Cir. 2004)). Accordingly, care should be taken to avoid "reading-in" limitations or limiting the scope of claims to the embodiments disclosed in the specification. *Id.* at 1323. "In construing claims, the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to 'particularly point[] out and distinctly claim[] the subject matter which the patentee regards as his invention.'" *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) (quoting 35 U.S.C. § 112, ¶ 2).

This basic principle was recognized "as early as 1836, when Congress first required that the specification include a portion in which the inventor 'shall particularly specify and point out the part, improvement, or combination, which he claims as his own invention or discovery.'" *Id.* (*citing* Act of July 4, 1836, ch. 357, §6, 5 Stat. 117, 119). The central role of the claim language has been recognized for almost as long. *See, e.g., McCarty v. Lehigh Valley R.R. Co.,* 160 U.S. 110, 116 (1895) ("if we once begin to include elements not mentioned in the claim, in order to limit such claim . . . , we should never know where to stop").

The Federal Circuit recognizes that the claims of the patent do not exist in a vacuum – they are part of the patent specification and their meaning is informed by the prosecution before the Patent and Trademark Office. Accordingly, the claims should be construed with reference to the patent specification and prosecution history. *See Medrad, Inc. v. MRI Devices Corp.,* 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("We cannot look at the ordinary meaning of the term . . . in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history.").

Interpreting claims without incorporating limitations from the specification is difficult. The Federal Circuit acknowledges "that 'there is sometimes a fine line between reading a claim in light of the specification, and reading a limitation into the claim from the specification.'" *Decisioning.com, Inc. v. Federated Dept. Stores, Inc.,* 527 F.3d 1300, 1307-8 (Fed. Cir. 2008) (quoting *Comark Commc'ns, Inc. v. Harris Corp.,* 156 F.3d 1182, 1186 (Fed. Cir. 1998)). Although there is "no magic formula or catechism for claim construction," this Court should "read the specification in light of its purposes in order to determine 'whether the patentee is setting out specific examples of the invention to accomplish those goals, or whether the patentee

instead intends for the claims and the embodiments in the specification to be strictly coextensive.'" *Id.* (quoting *Phillips v. AWH Corp.*, 415 F.3d at 1323).

Claims should not be limited to the exemplary or preferred embodiments in the patent specification. *See, e.g., Va. Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 866 (Fed. Cir. 1997) ("[D]evice claims are not limited to devices which operate precisely as the embodiments described in detail in the patent."). *See also Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 957 (Fed. Cir. 1983) ("That claims are interpreted in light of the specification does not mean that everything expressed in the specification must be read into all the claims."). This maxim cannot be disregarded, even though this Court must consider the claims in light of the patent specification. "In examining the specification for proper context" it is improper to "import limitations from the specification into the claims." *CollegeNet, Inc. v. ApplyYourself, Inc.*, 418 F.3d 1225, 1231 (Fed. Cir. 2005).

Where, as here, the patentee discusses the present invention and illustrative embodiments in the patent specification, it is improper to construe the claims so as to require elements from either the described present invention or the illustrative embodiments. This is true even if, as in *Karlin Tech., Inc.*, the written description uses the term "present invention" and "preferred embodiment" interchangeably. *Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 973 (Fed. Cir. 1999).

Given the repeated admonitions against incorporating limitations from the specification into the claims, one may well ask how this Court is supposed to know when it should incorporate limitations from the specification and narrowly construe claims. The answer is that narrow construction is appropriate when the patentee has demonstrated a clear intention to limit the claims with words or expressions of manifest exclusion or restriction.

4

For example, in *SciMed Life Sys. v. Advanced Cardiovascular Sys.*, 242 F.3d 1337 (Fed. Cir. 2001), the patentee characterized a coaxial lumen (the claim limitation at issue) as the basic sleeve structure for all embodiments of the present invention contemplated and disclosed herein. The Federal Circuit upheld a restrictive claim interpretation even though, absent the disclaimer, other lumen structures could have been considered to fall within the scope of the claim language. *Id.* at 1344. It is important to note that, in *SciMed*, the patentee discussed the disadvantages of several prior art structures, *id.* at 1342-43, characterized the narrow structure as part of the present invention (and not as something that is merely "recognized" by the present invention), and proclaimed that the coaxial sleeve was "the basic sleeve structure for all embodiments of the present inventions contemplated and disclosed herein-..." *Id.* at 1343 (quoting patent specifications). That statement was a broad and unequivocal disclaimer mandating a narrow claim construction.

It should be noted that the narrow construction in *SciMed* was *not* affirmed simply because there was only one embodiment disclosed. Disclosure of a single embodiment will not justify a narrow claim construction. *See Liebel-Flarsheim Co. v. Medrad, Inc.,* 358 F.3d 898, 906 (Fed. Cir. 1995) ("Even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction.").

Even including a particular feature in all disclosed embodiments does not provide the requisite showing that the patentee intended for the claims and the disclosed embodiments to be strictly coextensive. In *Acumed LLC v. Stryker Corp.*, 483 F.3d 800 (Fed. Cir. 2007), the patent specification only disclosed perpendicular holes and the relevant claim term was "transverse."

The Federal Circuit affirmed a nonrestrictive claim construction despite the limited disclosure, reasoning "[t]hat preferred embodiment cannot be the only product covered by the claims; if it were, the claims themselves would be unnecessary." *Id.* at 809.

Patent claims are only limited to what was disclosed in the patent specification by clear expressions of manifest exclusion or restriction. "We do not import limitations into claims from examples or embodiments appearing only in a patent's written description, even when a specification describes very specific embodiments of the invention or even describes only a single embodiment, unless the specification makes clear that 'the patentee . . . intends for the claims and the embodiments in the specification to be strictly coextensive.'" *JVW Enters., Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1335 (Fed. Cir. 2005) (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc)). In the absence of broad and unequivocal statements of disavowal, "limitations from the specification are not to be read into the claims." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1326 (Fed. Cir. 2002) (citing *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186, (Fed. Cir. 1998)).

## III.    DR. BAHATTAB DID NOT MAKE BROAD AND UNEQUIVOCAL STATEMENTS OF DISAVOWAL JUSTIFYING A NARROW CLAIM CONSTRUCTION.

The patent-at-issue, the '457 patent entitled "Predictive Routing Table Cache Population," does *not* include broad statements of disavowal or assertions that structural elements or characteristics of disclosed embodiments are "essential" or "necessary" parts of the invention or are part of "all embodiments of the present inventions contemplated and disclosed herein." To the contrary, the '457 patent specification describes illustrative embodiments that are not narrowly constrained and provides guidance as to what should be taken into consideration in configuring elements thereof.

6

Juniper asks this Court to limit Dr. Bahattab's invention based on an alleged express limitation of his invention in the summary of the invention. Juniper's Opp'n at 7. However, this allegedly express limitation – "The present invention recognizes that a router with a small routing table cache can be fast if the routing table cache has a high hit ratio, and that a high hit ratio can be achieved by predicting which entries will be needed in the routing table cache in the future and by populating the routing table cache with those entries before they are needed" – is not an express limitation on the invention, let alone the clear and unequivocal statement of disavowal required under the law.

Dr. Bahattab's statement regarding what his present invention "recognizes" is plainly and indisputably not a clear statement of disavowal. A statement that one thing "recognizes" another thing is nothing more than a statement regarding what is acknowledged. What was acknowledged in this case was "that a router with a small routing table cache can be fast if the routing table cache has a high hit ratio, and that a high hit ratio can be achieved by predicting which entries will be needed in the routing table cache in the future and by populating the routing table cache with those entries before they are needed."[1] This is a statement about (1) what "can be", and (2) what is recognized, and it does not properly constrain the described invention to only what is specifically recited, let alone disavow variations on that invention that are contemplated and explicitly discussed elsewhere in the patent specification.[2]

---

[1] '457 Patent, col. 1, ln. 63 - col. 2, ln. 2.

[2] It is worth considering that "a router with a [large] routing table cache can be fast if the routing table cache has a high hit ratio, and that a high hit ratio can be achieved by predicting which entries will be needed in the routing table cache in the future and by populating the routing table cache with those entries before they are needed" is no less accurate than the statement in the '457 patent specification.

IV.    **MAGISTRATE JUDGE KAY'S CONSTRUCTION OF "ROUTING TABLE CACHE" AS ONLY LOCAL MEMORY IS CONTRARY TO LAW.**

Magistrate Judge Kay's imposition of a "local memory" limitation is contrary to law because there is nothing in the '457 patent specification or prosecution history that explicitly locates the routing table cache or disavows any particular location for the cache.  Neither the figures of the '457 patent or the description of a typical router in the introduction of the thesis which became the provisional application satisfy the legal requirements for supporting the importation of a claim limitation that is completely absent from the claims.

Figure 2 of the '457 patent "depicts a block diagram of the salient components of input port 101, which is a component of the router in FIG. 1."[3]  Figure 1 of the '457 patent "depicts a block diagram of the salient components of a router in accordance with the *illustrative embodiment* of the present invention."[4]  A block diagram is just that – a diagram of "blocks" that represent components without purporting to accurately depict either their appearance or their location.

Moreover, it is contrary to law to limit a claimed invention based on the drawings in a patent specification.  "'[T]he mere fact that the patent drawings depict a particular embodiment of the patent does not operate to limit the claims to that specific configuration.'"  *TI Group Auto. Sys. (N. Am.), Inc. v. VDO N. Am., L.L.C.*, 375 F.3d 1126, 1136 (Fed. Cir. 2004) (quoting *Anchor Wall Sys. v. Rockwood Retaining Walls, Inc.,* 340 F.3d 1298, 1306-07 (Fed. Cir. 2003) (citing *Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951, 956 (Fed. Cir. 2000))).  Where, as here, the patent drawings only depict a preferred or illustrative embodiment, the drawings do not limit the claimed invention.  *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1341 (Fed.

---

[3] '457 Patent, col. 2, lns. 27-29.
[4] '457 Patent, col. 2, lns. 23-26 (emphasis added).

Cir. 2001) ("These drawings are not meant to represent 'the' invention or to limit the scope of coverage defined by the words used in the claims themselves.").

It is equally erroneous to rely upon the statements gleaned from Dr. Bahattab's provisional patent application. In his order, the Magistrate Judge cites to J000018 of the Provisional Application. Order at 11. However, J000018 is the second page of the Introduction and the Statement of the Problem and the cited language appears in Dr. Bahattab's description of a typical router. See Juniper's Opp'n, Exhibit 2 at J000017-18. Even if this statement from the provisional application's description of a typical router describes an embodiment of Dr. Bahattab's invention, which is certainly open to question, it is not a clear statement of disavowal justifying a narrowing claim construction adding limitations that never appeared in the claims. *See E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1433 (Fed. Cir. 1988) (holding that it is improper to import an extraneous limitation from the specification into a claim).

Accordingly, Magistrate Judge Kay's construction of "routing table cache" as "local memory" is contrary to law and should be reversed.

## V.    MAGISTRATE JUDGE KAY'S CLAIM CONSTRUCTION CONSTRAINING A "ROUTING TABLE CACHE" TO "A SMALL PART OF THE DESTINATION ADDRESSES IN THE ROUTING TABLE" IS CONTRARY TO LAW.

Dr. Bahattab plainly recognized that a routing table cache can be small and that there may be benefits obtained therefrom. However, that mere recognition does not mandate limiting the claims of the '457 patent in ways that neither the Patent Examiner nor Dr. Bahattab though were necessary or appropriate. Dr. Bahattab did not narrow the claims of the '457 patent to limit the routing table cache to only a small part of the destination address in the routing table, although the plainly could have. But he did not. In the absence of broad and unequivocal statements of

disavowal, adding a limitation simply because it is described in the patent specification is contrary to law.

> If everything in the specification were required to be read into the claims, or if structural claims were to be limited to devices operated precisely as a specification-described embodiment is operated, there would be no need for claims. Nor could an applicant, regardless of the prior art, claim more broadly than that embodiment. Nor would a basis remain for the statutory necessity that an applicant conclude his specification with "claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112.

*SRI Int'l v. Matsushita Elec. Corp.,* 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc) (plurality opinion).

Magistrate Judge Kay's Order asserts that Juniper's proposed construction is supported by the specification and the prosecution history. Order at 11. Although Dr. Bahattab respectfully disagrees with that assertion, whether the narrowing limitation is discussed somewhere in the patent specification or the provisional application is not the appropriate standard for importation of a specification limitation into the claims. That is especially true where the patent specification explicitly and unambiguously leaves open how many entries should be in the routing table cache, teaching that "[i]t will be clear to those skilled in the art how to decide how many entries routing table 203 should contain."[5]

Furthermore, as discussed above with respect to the "local memory" claim limitation, the portion of the provisional application that is relied upon to support this claim limitation, (J000018 (Order at 11)), is the second page of the Introduction and the Statement of the Problem and the cited language again appears in Dr. Bahattab's description of a typical router. See Juniper's Opp'n, Exhibit 2 at J000017-18. Dr. Bahattab's description of a "typical" router is not even a description of a preferred embodiment, let alone the clear statement disavowing routing

---

[5] '457 patent, col. 4, lns. 32-33.

table caches containing more than a small part of the IP addresses of the routing table legally required for importation of a statement from the prosecution history in to the patent claims.

Dr. Bahattab's description of "typical" scenarios do not constitute clear and unequivocal statements by virtue of their characterization as merely "typical." Even if Dr. Bahattab had not tempered his discussion of small caches by, for example, clarifying that he was only describing typical embodiments or prior art, his patent specification includes teachings that preclude other statements regarding a small number of entries from being unequivocal. As discussed above, Dr. Bahattab explicitly leaves it to those skilled in the art "to decide how many entries routing table cache 203 should contain."[6] Dr. Bahattab then teaches that the router table cache can have a relatively large number of entries.

> First, as shown in FIG. 3, as the number of entries in routing table cache 203 increases, the hit ratio also increases, albeit with diminishing returns. This suggests that router 100 can be made faster by increasing the number of entries in routing table cache 203.

'457 Patent, col. 4, lns. 36-40. When the entirety of the '457 patent specification is considered, it is apparent that Dr. Bahattab did not make the clear and unequivocal statements necessary to provide legal support for importation of specification limitations into the patent claims. Accordingly, Magistrate Judge Kay's construction of "routing table cache" as only containing "a small part of the destination addresses in the routing table" is contrary to law and should be reversed.

## VI. MAGISTRATE JUDGE KAY'S IMPOSITION OF A FUNCTIONAL LIMITATION ON THE CLAIMED "ROUTING TABLE CACHE" STRUCTURE IS CONTRARY TO LAW.

The Federal Circuit emphasized the impropriety of imposing functional limitations on a structural claim element while reversing summary judgment of non-infringement on May 22,

2009 in *Paragon Solutions, LLC v. Timex Corp.,* 2009 U.S. App. LEXIS 10884 (Fed. Cir. May 22, 2009). In that case, the court identified injection of a use limitation into a claim written in structural terms as a problem, reiterating that "apparatus claims cover what a device is, not what a device does." 2009 U.S. App. LEXIS 10884, 34-35 (quoting *Hewlett-Packard Co. v. Bausch & Lomb, Inc.,* 909 F.2d 1464, 1468 (Fed. Cir. 1990)). As the Federal Circuit noted, adding functional limitations to apparatus claims improperly narrows the scope of the claims. "Absent an express limitation to the contrary, any use of a device that meets all of the limitations of an apparatus claim written in structural terms infringes that apparatus claim." 2009 U.S. App. LEXIS 10884 at 36 (citations omitted). The court further noted that improper importation of functional limitations frustrates fundamental aspects of the patent system. 2009 U.S. App. LEXIS 10884 at 37. ("Construing a non-functional term in an apparatus claim in a way that makes direct infringement turn on the use to which an accused apparatus is later put confuses rather than clarifies, frustrates the ability of both the patentee and potential infringers to ascertain the propriety of particular activities, and is inconsistent with the notice function central to the patent system.").

The claim phrase "routing table cache" is a purely structural term that is devoid of any functional limitations. This is not a case where the claim language is arguably ambiguous and functional language is necessary to resolve issues of degree. This case is accordingly readily distinguishable from cases like *Medrad, Inc. v. MRI Devices Corp.* and *ICU Med., Inc. v. Alaris Med. Sys.* In *Medrad,* functional language was used to construe the phrase "substantially uniform" because the claim language did not suggest how much a magnetic field may deviate from absolute uniformity before it is no longer uniform. *Medrad, Inc. v. MRI Devices Corp.* 401

---

[6] '457 patent, col. 4, lns. 32-33.

F.3d 1313, 1319 (Fed. Cir. 2005).  Similarly, in *ICU Med.*, the term "spike" did not suggest how

pointed the claimed spike must be and the functional language defined the degree to which the

spike must be pointed.  *ICU Med., Inc. v. Alaris Med. Sys.*, 558 F.3d 1368, 1375-1376 (Fed. Cir.

2009).  In contrast, the functional limitation added by the Magistrate Judge in this case is like

that rejected in *Paragon Solutions*, limiting the patent claims to a particular use without

clarifying an arguably ambiguous structural limitation.  Accordingly, Magistrate Judge Kay's

importation of a functional limitation into the structural claim limitation (". . . and its function is

to speed up the lookup of destination addresses by attempting to hold the most frequently

accessed entries of the routing table.") (Order at 10) is contrary to law and should be reversed by

this Court.  *See, e.g., Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1367 (Fed. Cir. 2001)

("Where the function is not recited in the claim itself by the patentee, we do not import such a

limitation.").

## VII.   ROUTING TABLE CACHE IS PROPERLY CONSTRUED AS "AN AREA OF MEMORY DEVOTED TO THE RETRIEVAL OF SPECIFIED DATA WHERE THE SPECIFIED DATA IS ROUTING TABLE DATA."

Claims 1 and 2 of the '457 patent each reference a "cache" that is populated on the basis

of the temporal model and/or routing table entries.  A cache is an area of memory devoted to the

retrieval of specified data such as address tables, forwarding tables, and/or routing tables.

It is without import whether the Court ultimately construes the term "cache" or the entire

phrase "routing table cache" in light of the parties' proposed constructions.  Dr. Bahattab argues

that "routing table cache" means "an area of memory devoted to the retrieval of specified data

where the specified data is **routing table** data."  (Dr. Bahattab's Objections at 6 (emphasis

added)).  Juniper argues that "routing table cache" should mean "local memory containing a

small part of the destination addresses in the **routing table** and its function is to speed up the

lookup of destination addresses by attempting to hold the most frequently accessed entries of the

**routing table**." (Juniper's Opp'n at 2 (emphasis added)).  Even Juniper includes the term "routing table" twice in its proposed definition.  Despite its assertions that the entire phrase needs construction, Juniper defines only the word "cache" – not "routing table," as a phrase is not defined by simply recycling the same term in the proposed definition of the phrase.

"Routing table" has an ordinary meaning as recognized by both parties.  It is of no moment to Dr. Bahattab whether or not the Court chooses to define the entire phrase "routing table cache" (as opposed to "cache") as "an area of memory devoted to the retrieval of specified data where the specified data is routing table data."  Nevertheless, Dr. Bahattab has repeatedly pointed out that the Court need only construe the term "cache" – reflecting the substantive differences in the parties' respective constructions.  *See* Dr. Bahattab's Opening Markman Brief at 14-15 (Docket No. 60); Dr. Bahattab's Responsive Markman Brief at 7-8 (Docket No. 67); Dr. Bahattab's Objections at 10-11 (Docket No. 96).

Dr. Bahattab demonstrated in his provisional application that a "cache" is a term of art referring to retrievable areas of memory containing specified data.

> Since retrieving a route (destination IP address) from the central table takes a long time, the central table can become a bottleneck in high speed networks.  Thus, the solution presented in this literature is to push the routing tables down into each forwarding engine.  The forwarding engines only require next hop information; therefore, a copy of a routing table (also called forwarding table or cache table) can hold 50K routes with a size of 100KB.

Dr. Bahattab's Objections, Ex. A, Provisional Application at BAH00491.  Dr. Bahattab is referring to teachings of the prior art in the quoted text.  However, Juniper argues that reliance upon this quote is improper in apparent presumption that Dr. Bahattab would seek to incorporate limitations from one of his own particular embodiments as Juniper has attempted (an error of law) rather than show how the term is generally understood in the art (the proper goal of claim construction).

Furthermore, Dr. Bahattab's proposed definition does not obviate the existence of a separate "routing table." Juniper's critique of Dr. Bahattab's definition as "impermissibly broad" is misplaced because "an area of memory devoted to the retrieval of specified data where the specified data is routing table data" necessarily presumes that there was a routing table from which data originated separate and distinct from the "routing table cache." Juniper also places the cart before the horse when it argues that "[i]f the routing table cache were a copy of the routing table, there would be no need for a 'method for routing table cache population.'" (Juniper's Opp'n at 17). However, if the claimed method of the '457 patent were used to populate a routing table cache, and the result were a copy of the original routing table, this would not render the method any less infringing. As such, Dr. Bahattab's claims are written to claim *any* population of a routing table according to his technique, whatever the outcome – and no particular outcome is dictated by his claims. Hence, Magistrate Judge Kay's limitation of the routing table cache to a "small part of the destination addresses in the routing table" was clear error.

Accordingly, the phrase "routing table cache" should be construed as "an area of memory devoted to the retrieval of specified data where the specified data is routing table data." It is neither necessary nor appropriate to add further limitations when construing "routing table cache." "[C]laim terms take on their ordinary and accustomed meanings unless the patentee demonstrated an intent to deviate from the ordinary and accustomed meaning of a claim term by redefining the term or by characterizing the invention in the intrinsic record using words or expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Teleflex*, 299 F.3d at 1327.

## VIII.  CONCLUSION

For the reasons stated herein and prior submissions on claim construction, Dr. Bahattab

asks that the Court reverse that portion of the Magistrate's May 8, 2009 order construing

"routing table cache" as contrary to law and construe "routing table cache" as "an area of

memory devoted to the retrieval of specified data where the specified data is routing table data."

in accordance with the law of claim construction.


Date:  June 15, 2009                    Respectfully submitted,


                                        /s/ Brandon M. Jordan
                                        Brandon M. Jordan (DC Bar No. 985986)
                                        DEWEY & LEBOEUF, LLP
                                        1101 New York Avenue, N.W.
                                        Washington, D.C. 20005-4213
                                        bjordan@dl.com
                                        Tel: 202-346-7915
                                        Fax: 202-299-1323

                                        *Attorneys for Defendant Dr. Bahattab*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JUNIPER NETWORKS, INC.,

      Plaintiff,

                              Case No.: 1:07-cv-01771-PLF-AK

ABDULLAH ALI BAHATTAB,

      Defendant.

_____/

### CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2009, I electronically filed the foregoing document with the Clerk of the Court and served the same on all counsel of record via the Court's CM/ECF system.

Date:  June 15, 2009

                                        Respectfully submitted,

                                        /s/ Brandon M. Jordan
                                        Brandon M. Jordan (DC Bar No. 985986)
                                        DEWEY & LEBOEUF, LLP
                                        1101 New York Avenue, N.W.
                                        Washington, D.C. 20005-4213
                                        bjordan@dl.com
                                        Tel: 202-346-7915
                                        Fax: 202-299-1323