## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**JUNIPER NETWORKS, INC.,**

    Plaintiff,

    v.

**ABDULLAH ALI BAHATTAB,**

    Defendant.

Civil Action No. 07-1771 (PLF) (AK)

## REPORT AND RECOMMENDATION[1]

Pending before the Court are cross-motions for partial summary judgment: Defendant Abdullah Ali Bahattab's ("Dr. Bahattab") Motion for Partial Summary Judgment as to Counts I and II With Respect to Inventorship [88], Defendant's Motion for Partial Summary Judgment as to Count II With Respect to Unenforceability [89], Plaintiff Juniper Networks Inc.'s ("Juniper") Consolidated Memorandum of Law in Opposition [106] and [107], and Defendant's Replies [110] and [111]; and Plaintiff Juniper's Motion for Partial Summary Judgment as to Count I with Respect to Inventorship and Count II with Respect to Unenforceability [115], Defendant Dr. Bahattab's Opposition [121], and Plaintiff's Reply [123]. Having reviewed the submissions and oral arguments of the parties, and the relevant case law, the Court issues the following Report and Recommendation.

---

[1] United States District Judge Paul Friedman referred this matter to the undersigned for Full Case Management, including issuing reports and recommendations on dispositive motions. (*See* Referral Order [22].)

I.    **Background**

Dr. Abdullah Ali Bahattab ("Defendant"), a citizen and resident of Saudi Arabia and

former resident of Chicago, Illinois, is the owner of United States Patent No. 6,816,457 ("the

'457 Patent"), titled "Predictive Routing Table Cache Population," which issued on November 9,

2004.  (Am. Compl. [28] ¶¶ 2-3)  The subject matter of the '457 Patent is identical to that of a

paper titled "Predicting IP Addresses to Speed Up Routing Lookup" ("Predicting IP Addresses")

that Defendant published in connection with the April 2000 Advanced Simulation Technologies

Conference.  (Am. Compl. ¶¶ 20.)  "Predicting IP Addresses" lists four authors: Abdullah

Bahattab, Bohdan Bodnar, George Kraft, and Martha Evens.  (*Id.*)  On June 2, 2000, Defendant

filed his Provisional Patent Application and listed "Predicting IP Addresses" in the bibliography.

(Pl.'s Mot. Summ. J. [115] Ex. 5 ("Provisional Application") at 123.)  Two months later,

Defendant filed his non-provisional Patent Application, which led to the issuance of the '457

Patent.  (Pl.'s Mot. Summ. J. at 11).)  The '457 Patent lists Defendant as the sole inventor.  ('457

Patent, Ex. A to Am. Compl.)

On January 29, 2005, Defendant sent an e-mail to Chris Moore, Regional Sales Manager

for Juniper Networks (Middle East)[2], stating his intent to file suit against Juniper ("Plaintiff") for

infringement of the '457 Patent.  (E-mail from Dr. Bahattab to Moore, Ex. B to Am. Compl..)

On May 30, 2005, Steven Wood, identifying himself as counsel for Defendant, sent a letter to

Plaintiff indicating that Juniper's JUNOS enterprise router may infringe the '457 Patent.  (Letter

from Wood to Gaynor, Ex. C to Am. Compl.)  Finally, on April 18, 2007, Defendant filed an

---

[2] According to Juniper, "Juniper Networks (Middle East) is the operating name of Juniper Networks Ireland Limited, which is a wholly owned subsidiary of Juniper" Networks, Inc.  (Am. Compl. ¶ 9.)

action in the Dubai Court of First Instance against Juniper Networks (Middle East) claiming that

Juniper Networks (Middle East) manufactures, uses and sells products that infringe at least one

claim of the '457 Patent.  (Am. Compl. ¶ 11.)

      While the litigation was pending in the United Arab Emirates, Juniper filed a three count

Complaint for Declaratory Judgment against Dr. Bahattab in the instant case.  (*See generally*

Compl. [1].)  An Amended Complaint was filed on July 25, 2008.  (Am. Compl. [28].)  In Count

I, Plaintiff alleges that the '457 Patent is invalid for failure to satisfy the provisions of 35 U.S.C.

§§ 102 and 103 and because Defendant failed to include all of the inventors on his patent

application, in violation of 35 U.S.C. §§ 102(f) and 116.  (Am. Compl. ¶¶ 15, 16.)  In Count II,

Juniper alleges that the '457 Patent is unenforceable because of Dr. Bahattab's inequitable

conduct, namely his alleged failure to disclose to the United States Patent and Trademark Office

("Patent Office") all of the inventors of the '457 Patent during the patent prosecution process.

(*Id.* ¶¶ 18, 19.)  Specifically, Juniper alleges that Drs. Bodnar, Kraft, and Evens were co-

inventors of the '457 Patent and therefore Dr. Bahattab was required to list their names on his

patent application.  (*Id.* ¶¶ 20-26.)  Finally, in Count III, Juniper alleged that it "has not directly

infringed, contributed to the infringement, or actively induced infringement of any claim of the

'457 Patent."[3]  (*Id.* ¶ 29.)

      On May 8, 2009, Defendant Dr. Bahattab filed two separate motions for partial summary

judgment.  Dr. Bahattab's first motion seeks partial summary judgment as to Counts I and II of

the Amended Complaint with respect to inventorship, and Dr. Bahattab's second motion seeks

---

[3]  On June 2, 2009, the trial court entered final judgment on Count III of the Amended Complaint in favor
of Juniper Networks, Inc., finding that Juniper Networks, Inc. does not infringe the '457 patent.  (*See* [105] Final
Judgment on Count Three of the Amended Complaint: Infringement.)

partial summary judgment on Count II with respect to unenforceability.  (*See* Def.'s Mot. Summ. J. on Inventorship [88]; Def.'s Mot. Summ. J. on Unenforceability [89].)  Juniper filed its Motion for Partial Summary Judgment on Count I with Respect to Inventorship and Count II with Respect to Unenforceability on June 22, 2009.  (*See* Pl.'s Mot. Summ J. [115].)  A hearing on the cross-motions was held July 9, 2009.

## II.    Legal Standard For Summary Judgment

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Potter v. District of* Columbia, 558 F.3d 542, 547 (D.C. Cir. 2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the non-moving party's favor and accept the non-moving party's evidence as true.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986) (citation omitted).  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Id*. at 587 (*quoting* FED. R. CIV. P. 56(e)).  The relevant substantive law determines the materiality of particular facts, and an issue as to one or more of the material facts is "genuine" when "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  On Defendant's motions the Court must therefore determine whether or not the evidence in the record, viewed in the light most favorable to Juniper, could support a reasonable finding, by clear and convincing evidence, that (1) there was more than one inventor of the '457 patent and (2) that there was inequitable conduct rendering the patent unenforceable.  On Plaintiff's motion, the Court must decide whether the evidence, viewed in the light most favorable to Dr. Bahattab, is so strong that no reasonable fact finder could fail to find (1) that there was more than one inventor of the '457 patent and (2) that there exists the materiality and intent required for a finding that Dr. Bahattab committed inequitable conduct by identifying himself to the patent office as the sole inventor.

## III.    **Discussion**

### A.    Inventorship

At dispute between the parties is whether Dr. Bahattab is the sole inventor of the '457 patent.  Juniper asserts that Dr. Bodnar, one of Dr. Bahattab's thesis advisors, was a co-inventor of the '457 Patent, and that Dr. Bahattab was required to list Bodnar's name on the patent application.[4]  (Am. Compl. ¶¶ 20-26.)  According to Juniper, Dr. Bodnar contributed significant

---

[4] Defendant argues that while Juniper's complaint alleges that Dr. Bahattab's two other thesis advisors, Drs. Evens and Kraft, were also co-inventors of the '457 patent and therefore improperly omitted from the patent application, Juniper's summary judgment motion and related pleadings focus entirely on the alleged co-inventorship of Dr. Bodnar. (*See* Am. Compl. ¶ 20; Def.'s Opp'n at 1-2.)  Juniper responds that it "has not retreated from its allegations, but rather has chosen in its Motion to focus on facts regarding Dr. Bodnar's contribution that are undisputed and are sufficient to both invalidate the patent and render it unenforceable."  (Pl.'s Reply at 2 n. 1.)  Because Juniper does not pursue its allegations with respect to Drs. Evens and Kraft in any pleading including its opposition to Dr. Bahattab's motions for summary judgment, the Court will treat Dr. Bahattab's motions for summary judgment as they relate to Drs. Evens and Kraft as conceded.  *See, e.g., Payne v. District of Columbia*, 592 F. Supp. 2d 29, 37 (D.D.C. 2008) ("Where a plaintiff addresses some but not all arguments raised in a defendant's motion to dismiss, courts in this district may treat such arguments as conceded.").  The Court will therefore focus

elements to two of Dr. Bahattab's patent claims – the building of a temporal model based on the occurrence of destination addresses and populating a routing table cache based on that temporal model – thus rendering Dr. Bodnar an unnamed co-inventor and the '457 patent invalid under 35 U.S.C. § 102(f).  (*See* Pl.'s Mot. Summ J. at 1.)  Juniper argues that evidence of this contribution is rooted in a 1999 email sent from Dr. Bodnar to Bahattab, his then thesis advisee, in which Dr. Bodnar allegedly communicated these two ideas to Bahattab which were then incorporated into the claimed invention.[5]  (*Id.* at 15 (citing Pl.'s Ex. J, Dep. Ex. 59 (Feb. 1, 1999 Email from B. Bodnar to A. Bahattab) ("Feb. 1, 1999 Email").)  Juniper also contends that the extensive email correspondence between the Bodnar, the thesis advisor, and Bahattab, the advisee, evidences an extensive collaboration which supports co-inventorship.  (*Id.* at 17-18.)

　　　Dr. Bahattab argues that Dr. Bodnar made no inventive contribution to the '457 patent, and that the evidence shows that Dr. Bodnar merely assisted Dr. Bahattab in understanding concepts that were well known in the art in his role as Dr. Bahattab's thesis technical advisor. (Def.'s Opp'n at 17-20.)  At most, Dr. Bahattab argues, Bodnar contributed a goal for Bahattab's research relating to model router simulations that would test address caching performance that Bahattab ultimately rejected in favor of independently conceived of research on the topic of finding a predictive algorithm which could serve to populate a routing table cache for more

---

entirely on the alleged co-inventorship of Dr. Bodnar.

　　　[5]  The February 1, 1999 email reads in salient part:

> The intent of the research is not to analyze internet traffic – the goal is to analyze address caching inside a router and superimpose on the caching model (which will probably be done via simulation) a real-time usage model which may, or may not, end up being a queueing [sic] model. Thus, one of the major differences will be looking at *address patterns* NOT autocorrelation in packet size distributions or interarrival time densities.

efficient routing.  (*See* Def.'s Mot. Summ. J. on Inventorship at 15-16; Def.'s Opp'n at 17-20.)

Dr. Bahattab also points to the declarations and testimony of all of the people involved in the

creation of Dr. Bahattab's thesis, including Dr. Bahattab and his thesis advisors Drs. Bodnar,

Evens and Kraft, to show that all involved believe Dr. Bahattab to be the sole inventor of the

'457 patent and that none of the thesis advisors believe that they are themselves a co-inventor.

(Def.'s Mot. Summ. J. on Inventorship. at 17-18.)  Finally, Dr. Bahattab argues that even if the

Court were to assume that Dr. Bodnar did communicate the research goal that lead Dr. Bahattab

to the '457 patent, this still would not legally render Dr. Bodnar a co-inventor because there was

no collaboration to produce a complete and operative invention.  (Def.'s Opp'n at 20.)

Issuance of a patent "creates a presumption that the named inventors are the true and only

inventors." *Caterpillar Inc. v. Sturman Industries Inc.*, 387 F.3d 1358, 1377 (Fed. Cir. 2004)

(citing *Hess v. Adv. Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed. Cir. 1997)).  "To rebut

this presumption, a district court must find clear and convincing evidence that the alleged

unnamed inventor was in fact a co-inventor . . ."[6]  *Id.*  "Conception is the touchstone of

inventorship, and each joint inventor must contribute in some significant manner to the

conception of the invention," which is "formation in the mind of the inventor a definite and

permanent idea of the *complete and operative invention as it is applied in practice*."  *BJ Services

Co. v. Halliburton Energy Services, Inc.*, 338 F.3d 1368, 1373 (Fed. Cir. 2003) (emphasis

added).  Conception is not complete unless "one of ordinary skill in the art could construct the

apparatus without unduly extensive research or experimentation."  *Sewall v. Walters*, 21 F.3d

---

[6] Inventorship is a question of law, that is supported by underlying findings of fact.  *Ethicon, Inc. v. U.S.
Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998); *see also Hess v. Advanced Cardiovascular Sys., Inc.* 106
F.3d 976, 980 (Fed Cir. 1997).

411, 415 (Fed. Cir. 1994). Therefore, "[o]ne who simply provides the inventor with well-known

principles or explains the state of the art without ever having a firm and definite idea of the

claimed invention as a whole does not qualify as a joint inventor." *Natron Corp. v. Schukra*

*U.S.A. Inc.*, 558 F.3d 1352, 1356 (Fed. Cir. 2009).

The Court concludes that the record evidence cannot support a reasonable finding that

there was more than one inventor of the '457 patent. Juniper rests its contention that Dr. Bodnar

was a co-inventor of the '457 patent on two central foundations: (1) that Dr. Bodnar's Feb. 1,

1999 email communicated two ideas that were subsequently incorporated into the claimed

invention; and (2) that the extensive email correspondence between the thesis advisor and

advisee reveals an extensive collaboration that supports co-inventorship. (Pl.'s Mot. Summ. J. at

15-18.) The undersigned finds that neither contention finds sufficient basis in the record to

support a finding of co-inventorship, nor creates a genuine issue of material fact such that

summary judgment in favor of Defendant should be precluded.

1.    *The Feb. 1, 1999 Email*

According to Juniper, the Feb. 1 1999 email contributed two elements to Claims 1 and 2

of the '457 patent. First, Juniper alleges that "Dr. Bodnar's suggestion that Dr. Bahattab 'analyze

address caching inside a router' to generate a 'real-time usage model' based on the destination

'address patterns' of incoming data" is equivalent to the claim language "'building [or

generating] a temporal model of the occurrence of said destination addresses.'" (Pl.'s Mot.

Summ. J. at 15-16 (citing Feb. 1, 1999 email; '457 Patent, Claims 1 and 2).) Second, Juniper

alleges that "Dr. Bodnar's suggestion that Dr. Bahattab 'superimpose on the caching model . . . a

real-time usage model'" is equivalent to the claim language "'populating said routing table cache

8

based on said temporal model.'" (Pl.'s Mot. Summ. J. at 15-17 (citing Feb. 1, 1999 email; '457 Patent, Claims 1 and 2).) While the research field and general terminology used in both the claim language and Dr. Bodnar's email have some similarity, the great weight of the record evidence indicates that Dr. Bodnar was not describing the creation of a predictive routing table cache population mechanism as described in the '457 patent but rather suggested a research goal involving creating more effective way to *simulate* the operations of a router that was ultimately rejected by Dr. Bahattab. However, even if the Court were to assume that Dr. Bodnar did communicate a research goal related to predictive routing table cache population that lead Dr. Bahattab to the invention contained in the '457 patent, that contribution would not be sufficient to render Dr. Bodnar the joint inventor of the complete and operative invention.

The record evidence overwhelmingly supports Dr. Bahattab's contention that Dr. Bodnar's Feb. 1, 1999 email did not describe the elements of predictive routing table cache mechanism, but rather encouraged a research goal for Bahattab's thesis that would focus on router simulation which Dr. Bahattab ultimately rejected. Dr. Bodnar, the purported co-inventor, has himself stated that he is not a co-inventor of the '457 patent and that he did not contribute the idea using a predictive algorithm for populating a routing table cache. (*See* Def.'s Opp'n Ex. 1, Decl. of Dr. Bohdan Bodnar ¶¶ 5,13, dated June 25, 2009.) Furthermore, Dr. Bodnar has repeatedly stated that his Feb. 1, 1999 email does not relate to Dr. Bahattab's ultimate invention, but instead "related to performing a simulation of a router, where address caching performance would be modeled." (*See* Def.'s Opp'n Ex. 1, Decl. of Dr. Bohdan Bodnar ¶¶ 7-8, dated June 25, 2009; Def.'s Opp'n Ex. 2, Bodnar Dep. Tr. at 62:16-66:4.) As Dr. Bodnar's deposition testimony indicates, Dr. Bahattab rejected Bodnar's proposed thesis topic relating to routing

9

simulation. (*See* Def.'s Opp'n Ex. 2, Bodnar Dep. Tr. at 22:2-18 ("Q: And what is your understanding as to Dr. Bahattab's reaction to your suggestion of doing a Monte Carlo simulation as his thesis? A: His reaction annoyed me because he complete rejected it.".) Instead, according to Dr. Bodnar, it was Dr. Bahattab who "proposed [the] cache prefetching algorithm analysis, the development of this algorithm and, of course, the analysis of it," (*Id.*, at 22:25-23:2.), an idea which Dr. Bodnar's initially thought was flawed. (*Id.*, at 22:25-23:2 ("initially, this annoyed me").) Dr. Bodnar further testified that it was Dr. Bahattab that refined his own thesis into an invention: "[Dr. Bahattab was the one who came up with the procedures and the algorithms that were used for the prediction. You know, I certainly did not come up with them." (*Id.*, at 154:6-9.) Finally, this testimony is confirmed by the sworn statements of Drs. Evens and Kraft, Dr. Bahattab's other thesis advisors. (*See*, *e.g.,* Def.'s Mot. Summ. J. on Inventorship Ex. 6, Martha Evens Decl. ¶ 6, May 15, 2008 ("[t]he original ideas, the core research work, the derivation of the equations, as well as the prototype implementation were all the independent work of Dr. Bahattab.").)

Juniper's creative speculation as to the import of the Feb. 1, 1999 email to the conception of predictive routing table cache population is not supported by any evidence other than the very rough similarity in topic and general terminology used in both the email and the '457 patent claim language, as well as Juniper's own expert's conclusion that Dr. Bodnar's email contributed two elements of the patent claim. (*See* Pl.'s Mot. Summ. J. at 15-17 (citing Sigler Decl. Ex. 6, Bhattacharjee Report at 36-37).) Upon close review of the Feb. 1, 1999 email, and the context of related contemporaneous emails between Dr. Bodnar and Dr. Bahattab, the Court concludes that the evidence proffered by Juniper does not support a reasonable finding of co-inventorship by

clear and convincing evidence, and therefore does not create a genuine issue of material fact that would prevent summary judgment on inventorship.

Even if the Court were to assume, contrary to the weight of the record evidence, that Dr. Bodnar's Feb. 1, 1999 email did relate to predictive routing table cache population, the email does not rise to the level of co-inventorship. The email describes, at most, Dr. Bodnar's view of the intent or goal of the research that he is suggesting Dr. Bahattab pursue, but does not conceive of or describe the means by which this research should be undertaken or an end result. As the record evidence in this case fully demonstrates, it was Dr. Bahattab, not Dr. Bodnar, who conceived of the core elements of the work such as the use of the autoregressive moving average model for populating the routing table cache and performed the research and modeling of that conception. (*See, e.g.,* Bodnar Dep. 22:22 -23:2 (Dr. Bahattab initially proposed the idea of looking for algorithms for prefetching into a routing cache); 154:3-155:7 (autoregressive moving average model conceived of by Dr. Bahattab and not Dr. Bodnar); 145:22-25, 194:20-195:10 (Dr. Bahattab created the two models for prediction disclosed in the '457 patent.) Because "[j]oint invention connotes collaboration of effort to produce a complete and operative invention . . . [o]ne who merely suggests an idea of a result to be accomplished, rather than means of accomplishing it, is not a joint inventor." *Garrett Corp. v. United States*, 422 F.2d 874, 881 (Ct. Cl. 1970). As such Dr. Bodnar's suggestion of a research goal – even if the Court were to assume that it was related directly to predictive routing table cache population – is insufficient to support a reasonable finding of joint inventorship.

> 2.    *Email Correspondence Between Bodnar and Bahattab*

Juniper further contends that extensive email correspondence between Dr. Bodnar and Dr.

Bahattab evidences a collaboration that supports a finding of co-inventorship. (Pl.'s Mot. Summ. J. at 17.) Juniper asserts that "Dr. Bodnar directed Dr. Bahattab's research, explained computer science concepts, corrected his research results, and assisted in writing his research papers and dissertation." (*Id.* at 18.) It is apparent from the record evidence, however, that the electronic correspondence between Bodnar and Bahattab reflects a customary relationship that would normally occur between a Ph.D student and his thesis advisor, and that Dr. Bodnar provided no more assistance than that which was well known to one of ordinary skill in the art. While Dr. Bodnar "provided general guidance on topics for Dr. Bahattab to study," identified problems with Bahattab's cache simulator and the form of his data, and explained concepts "regarding how to calculate performance parameters" for the research, (Pl.'s Mot. Summ. J. at 18-19 (citations to the record omitted)), such assistance does not rise to the level of inventive collaboration and co-inventorship. (*See* Def.'s Opp'n at 23-26 (detailing Dr. Bodnar's testimony regarding the email correspondence cited by Juniper.)

"An inventor may use the services, ideas, and aid of others in the process of perfecting his invention without losing his right to a patent." *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 624 (Fed. Cir. 1985) (citation omitted). The "critical question for joint conception is who conceived . . . the subject matter of the claims at issue." *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998). The email correspondence cited by Juniper demonstrates than Dr. Bodnar did no more than assisting Dr. Bahattab with the refinement and trouble-shooting of the research on Bahattab's own predictive routing table cache algorithm. Therefore, the thesis advisor-advisee relationship that is evidenced by Bodnar and Bahattab's email correspondence cannot support a reasonable finding of co-inventorship by clear

12

and convincing evidence.

     B.    <u>Inequitable Conduct</u>

Juniper alleges that Dr. Bahattab committed inequitable conduct by "withholding information showing his collaboration with Dr. Bodnar on the research that lead to his dissertation, the provisional patent application, and the patent-in-suit."  (Pl.'s Mot. Summ. J. at 22.)  Juniper asserts that information on the collaboration of the thesis advisor and advisee for more than a year "on the research that ultimately resulted in Dr. Bahattab's dissertation, [which was] filed word-for-word as Dr. Bahattab's Provisional [patent] Application,"was material information withheld from Bahattab's own patent attorney and the Patent Office.  (*Id.* at 28).  Furthermore, Juniper contends that because the information withheld was highly material, it is appropriate for the Court to infer that Dr. Bahattab intended to deceive the Patent Office.  (*Id.*)  Dr. Bahattab responds that the correspondence between Bodnar and Bahattab was not evidence of co-inventorship and therefore not material to the patentability of the '457 patent.  (Def.'s Opp'n at 31.)  Dr. Bahattab further argues that there is no evidence of intent to deceive the Patent Office because "of the universally-held good-faith belief by himself and the alleged co-inventors that Dr. Bahattab was the sole inventor of the '457 patent, as well as the fact that Dr. Bodnar is not a co-inventor of the '457 patent."  (*Id.* at 38.)

To prove its claim of inequitable conduct, Juniper must show "evidence of affirmative misrepresentation of a material fact, failure to disclose material information, or submission of

false material information, coupled with an intent to deceive [the Patent Office]."[7] *Dayco*

*Prods., Inc. v. Total Containment, Inc.* 329 F.3d 1358, 1362 (Fed. Cir. 2003) (quoting *Purdue*

*Pharma L.P. v. Boehringer Ingelheim GMBH*, 237 F.3d 1359, 1366 (Fed. Cir. 2001)).

Materiality and intent must be established by clear and convincing evidence. *Abbot Labs. v.*

*TorPharm, Inc.*, 300 F.3d 1367, 1379 (Fed. Cir. 2002). "Misrepresentation or non-disclosure

must meet 'threshold levels'" of both materiality and intent before the court weighs "materiality

and intent in order to determine 'whether the equities warrant a conclusion that inequitable

conduct occurred.'" *Grantley Patent Holdings, Ltd. v. Clear Channel Commc'ns, Inc.*, 540 F.

Supp. 2d 724, 729 (E.D. Tex. 2008) (citing *Honeywell Int'l Inc. v. Universal Avionics Sys.*, 488

F.3d 982, 999 (Fed. Cir. 2007)). "The greater the materiality of the information misrepresented

or withheld by the applicant, the less evidence of intent the court will require in order to find

inequitable conduct." *Id.* The final step of weighing the equities requires the court to decide

whether "the material misrepresentations or omissions in question are sufficiently serious in light

of the evidence of intent to deceive, under all the circumstances, to warrant the severe sanction of

holding the patent unenforceable." *Kemin Foods L.C. v. Pigmentos Vegetales Del Centro S.A. de*

*C.V.*, 464 F.3d 1339, 1346 (Fed. Cir. 2006) (citation omitted).

     *1.    Materiality*

     "Information is material if there 'is a substantial likelihood that a reasonable examiner

would consider it important in deciding whether to allow the application to issue as a patent.'"

*PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1321 (Fed. Cir. 2000)

---

    [7] A claim of inequitable conduct "is entirely equitable in nature, and thus not an issue for a jury to decide." *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1319 (Fed. Cir. 2000).

(citing *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1327 (Fed. Cir 1991)); *see also* 37

C.F.R. § 1.56). The Court's determination that there are no co-inventors, however, will not alone

determine the materiality of the proffered evidence in this case. *See Perseptive*, 225 F.3d at 1322

("[W]hether the inventorship of the patents as issued is correct does not determine the materiality

of the statements in this case, just as whether concealed prior art would actually invalidate the

patent is irrelevant to materiality.").

       The Court has undertaken a detailed review of the email correspondence between Bodnar

and Bahattab that Juniper urges evidences an extensive collaboration on the research that relates

to the claimed invention.[8]  (*See* Pl.'s Mot. Summ. J. 24-28 (detailing the nature of the email

correspondence).)  As discussed *supra*, the electronic correspondence demonstrates what

amounts to a typical working relationship between a thesis advisor and advisee, and does not

evidence co-inventorship of the '457 patent.  The evidence in this case does not come close to the

intentional failure to disclose an "extensive collaboration" supported by "contemporaneous

documentation" that showed "the extensive exchange of data" which supported a finding of

inequitable conduct in *PerSeptive*.  *See PerSeptive*, 225 F.3d at 1320.  Furthermore, the potential

materiality of the communication between Bodnar and Bahattab was greatly reduced by the fact

that all of the parties who were contemporaneously aware of and involved in Dr. Bahattab's

research believed that Dr. Bahattab was the sole inventor of the '457 patent.  The Court therefore

---

     [8]  The Court notes that while Dr. Bahattab did not provide the Patent Office with his email correspondence with Dr. Bodnar, the record evidence demonstrates that Dr. Bahattab did disclose Dr. Bodnar's status as a nominal co-author of the "Predicting IP Addresses" article that resulted from his research to both the Patent Office and his own patent attorney.  (*See* Provisional Application at 110, 123 (of 127); Bahattab Dep. Tr. at 177:6-178:6; DeMont [Bahattab's Patent Attorney] Dep. Tr. at 20:15-20:23 (Bahattab provided DeMont with "Predicting IP Addresses" article), 21:8-21:23 (DeMont decided not to include the article itself in the patent application because of his belief that "it's not 102 art and it isn't material under Rule 56.").)

concludes that detailed information about Bodar and Bahattab's advisor-advisee relationship, including their personal electronic correspondence, is at most *minimally* material to the patentability of the '457 patent.

    2. *Intent to Deceive*

   A court cannot find "inequitable conduct on an evidentiary record that is completely devoid of evidence of the patentee's intent to deceive the PTO." *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1358 (Fed. Cir. 2003). Because "courts must be vigilant in not permitting the defense of [inequitable conduct] to be applied to lightly," an inference of deceptive intent "must also be the single most reasonable inference able to be drawn from the evidence to meet the clear and convincing standard." *Star Schientific Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008).

   The Court finds no record evidence of an intent to deceive the Patent Office nor reason to infer deceptive intent. Dr. Bahattab's disclosure of Dr. Bodnar's status as a nominal co-author[9] of his article to the Patent Office and to his own patent attorney is wholly inconsistent with an intent to deceive the Patent Office.[10] Juniper points to no direct evidence of intent to deceive, and Juniper's argument that the Court should infer deceptive intent falls far short in light of the overall circumstances and the minimal materiality of the email correspondence between Bahattab and Bodnar. Because an inference of deceptive intent is nowhere near the "single most

---

[9] Dr. Bodnar has testified that he was listed as a co-author on the paper as a mere "courtesy." (*See* Bodnar Dep. Tr. at 169-171.)

[10] *See* n. 8 *supra*.

reasonable inference able to be drawn from the evidence," Juniper cannot prevail on its claim of inequitable conduct.


### IV.     <u>Conclusion</u>

The undersigned recommends that the trial court grant Defendant Dr. Bahattab's Motion for Partial Summary Judgment as to Counts I and II With Respect to Inventorship [88] and Defendant's Motion for Partial Summary Judgment as to Count II With Respect to Unenforceability [89].  The undersigned further recommends that the trial court deny Plaintiff Juniper's Motion for Partial Summary Judgment as to Count I with Respect to Inventorship and Count II with Respect to Unenforceability [115].


### V.     <u>Review by the District Court</u>

The parties are hereby advised that under the provisions of Local Rule 72.3(b) of the United States District Court for the District of Columbia, any party who objects to this Report and Recommendation must file a written objection thereto with the Clerk of this Court within ten days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the report and/or recommendation to which objection is made, and the basis for such objections.  The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985).  If this Report and Recommendation is served on the parties

by mail, calculation of the time period for filing written objections is as follows: ten business

days (excluding weekends and holidays) plus three calendar days (including weekends and

holidays).  *See CNPq-Conselho Nacional De Desenvolvimento Cientifico e Technologico v.

Inter-Trade, Inc.*, 50 F.3d 56, 58 (D.C. Cir. 1995) (*per curiam*).


Date: August  14, 2009                    _____/s/_____
                                          ALAN KAY
                                          UNITED STATES MAGISTRATE JUDGE